**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

PHOENIX BOND & INDEMNITY CO.,    :
et al.,    :
    :    CIVIL ACTION NO. 05-C-4095
    Plaintiffs,    :
    :
    v.    :    Judge Holderman
    :
JOHN BRIDGE, et al.,    :    Magistrate Judge Ian H. Levin
    :
    Defendants.    :

---

**MOTION TO QUASH BY DEFENDANTS JOHN BRIDGE, BARRETT ROCHMAN,
AND SABRE GROUP LLC**

Pursuant to Federal Rule of Civil Procedure 45, Defendants John Bridge, Barrett

Rochman, and Sabre Group LLC (the "moving Defendants") hereby move to quash the

overbroad and inappropriate subpoenas issued by Plaintiffs on October 24, 2005.

## I.    FACTS

1.    On July 15, 2005, Plaintiffs filed a five-count complaint against Defendants

alleging claims based on the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§

1962(c), (d) (RICO).

2.    On September 22, 2005, all Defendants moved to dismiss the Complaint, based

on the argument that, inter alia, Plaintiffs lacked standing to assert their RICO claims against

Defendants under controlling Seventh Circuit precedent.

3.    The motions to dismiss, if granted, would be case dispositive, leaving no

additional claims for the Court to adjudicate.

4.    On September 27, 2005, the parties appeared before the Court for a status

conference. A true and correct copy of the transcript of that proceeding is attached hereto as

Exhibit "A."

5.      In addition to the motions to dismiss, certain defendants had also filed a motion for a stay of discovery until after the Court had resolved the motions to dismiss and the standing arguments.

6.      At the September 27 hearing, the Court denied the motion to stay discovery, but also placed limits on the scope of discovery that could be conducted by the parties while the motions to dismiss were pending.  The Court, recognizing that that parties are competitors, allowed Plaintiffs to proceed with "sparing" discovery, that was "focused" and not directed toward "internal analysis of their pricing structures or their analysis of how they conduct their business", to which counsel for Plaintiffs agreed.  Ex. A, tr. at 11:11–12:1.

7.      Specifically, Plaintiffs' counsel represented to the Court that they would only issue three third-party subpoenas that would be "narrowly focused."  Ex. A, tr. at 12:18–23.  The Court allowed the subpoenas based on this limited number and scope.  *Id.*, tr. at 12:24–25.

8.      In direct contravention of the statements Plaintiffs' counsel made to the Court, on October 24, 2005, Plaintiffs issued ten (10) subpoenas to the banks with which Defendants conduct their business, requesting the following:  "As to each person and/or entity on Exhibit A any documents or records relating to loans, loan applications, letters of credit, applications for letters of credit, collateral for any loans, agreements regarding collateral, payment of interest on any loans, guarantees, cashiers checks, account opening documents including signature cards, and/or written correspondence or e-mails between any bank employee and the person or entity."  Exhibit "B" (subpoenas).

9.      The ten (10) banks that have relationships with some Defendants and that are the targets of the subpoenas are the following:

- First National Bank of Carmi — relationship with Sabre Group

- First DuPage Bank — relationship with Doug Nash

- Resource Bank, N.A. — relationship with Defendants Regal One, Jeff Bridge

- Bank One, N.A. — relationship with Doug Nash

- Citizens First National Bank — relationship with Defendants Optimum Finance Corp, Jason Bomback

- Leaders Bank

- Castle Bank N.A. — relationship with Defendants Regal One, Jeff Bridge

- First National Bank of Steeleville — relationship with Defendants CCJ, CRC, Jesse Rochman, Christopher Rochman, Corey Rochman, and Sabre

- Old Second National Bank — relationships with Defendants Georgetown Investors and Dr. Frances Alexander

- Lakeside Bank

10.     Moreover, while Plaintiffs issued the above-referenced subpoenas to the ten (10) banks on October 24, 2005, Defendants were not served with the subpoenas until October 27, 2005, and did not receive them until several days later, at which point one of the banks had already produced documents to Plaintiffs, prejudicing Defendants' rights to present their objections.

11.     Pursuant to Rule 37(a) and Local Rule 37.2, on October 31, 2005, counsel for Defendants John Bridge, Barrett Rochman and Sabre Group LLC contacted Plaintiffs' counsel Lisa Kistler via e-mail (lkellme@sachnoff.com) to seek Plaintiffs' agreement to voluntarily withdraw their subpoenas.  Counsel has received no response or agreement from Plaintiffs.

Because of the fact that Plaintiffs have already begun to receive documents, Defendants have moved expeditiously to enforce their rights.

**II.**    **<u>ARGUMENT</u>**

**A.**    **<u>Legal Standard</u>**

12.     Motions to quash are within the sound discretion of the district court. *See Wollenburg v. Comtech Mfg. Co*., 201 F.3d 973, 977 (7th Cir. 2000).

13.     A district court must quash or modify a subpoena if it "requires disclosure of privileged or otherwise protected matter and no exception or waiver applies." Fed. R. Civ. P. 45(c)(3)(A)(iii). A district court may also quash a subpoena if it seeks the production of "trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(c)(3)(B)(i).

**B.**    **Plaintiffs' Subpoenas Issued To Defendants' Banks Are Intrusive, Overbroad, And Outside The Scope Of The Limitations This Court Placed On Discovery.**

14.     Defendants move to quash the subpoenas issued to the ten (10) banks on the grounds that (1) the subpoenas were issued in contravention of this Court's direction to limit discovery and Plaintiffs' agreement to only serve three subpoenas; (2) the subpoenas seek highly confidential business information from Plaintiffs' competitors, which the Court was weary of when it allowed Plaintiffs to conduct limited discovery; (3) the subpoenas are overbroad and go well beyond the limits of discovery under Rule 26 as they are not reasonably tailored to lead to the discovery of admissible evidence; and (4) the discovery seeks to harass and annoy Defendants, requiring the disclosure of personal and confidential financial information without any attendant legitimate interest of Plaintiffs.

1.      **The Ten Subpoenas Were Issued In Contravention Of The Court's Discovery Limitation.**

15.      At the hearing on September 27, 2005, this Court specifically limited the scope of discovery that Plaintiffs could initially seek against Defendants.  Given that Defendants had presented the Court with binding authority that Plaintiffs lack standing to bring their RICO claims against the Defendants, the Court accordingly limited initial discovery, warning Plaintiffs that as Defendants' competitors, they were not to seek confidential or burdensome information.  Ex. A, tr. at 10:18–12:1.  Plaintiffs' counsel understood and agreed to this limitation without argument.  *Id*.

16.      In addition, the Court allowed the Plaintiffs to issue only three third-party subpoenas.  Ex. A, tr. at 12:18–13:1.  Again, Plaintiffs' counsel stated to the Court that it would issue "[o]nly three [third-party subpoenas], and they will be narrowly focused."  *Id*., tr. at 12:22–23.

17.      Plaintiffs have deceived the Court by their statements.  Instead of limiting the scope of their discovery, Plaintiffs rushed to issue subpoenas to not three but ten (10) banks with which Defendants conduct their businesses, requesting every single document in the banks' possession with respect to the Defendants.  These overly broad subpoenas seek highly confidential business and personal information that is neither "narrowly focused" as Mr. Sachnoff promised, nor limited to information that does not go to the heart of how Defendants conduct their business, as precluded by the Court.  *See* Ex. A, tr. at 11:23–25.

18.      Plaintiffs simply ignored the Court's directives and issued overly broad discovery sought to acquire highly sensitive business and personal financial information of the Defendants.  Because the subpoenas were issued in contravention of the Court's clear order, the subpoenas should be quashed.

### 2. Plaintiffs' Impermissible Subpoenas Seek Highly Confidential Business Information From Their Competitors.

19.     In instances where a subpoena requires disclosure of a trade secret or other

confidential or commercially sensitive information, "it should be quashed unless the party

serving the subpoena shows a substantial need and the court can devise an appropriate

accommodation to protect the interests of the party opposing such potentially harmful

disclosure." Fed. R. Civ. P. 45, Advisory Committee Notes (1991 Amendment). Indeed, the

Court should "evaluate all the circumstances and balance, *inter alia*, the requesting party's need

for the information and the potential prejudice imposed . . . ." *Insulate America v. Masco Corp.*,

227 F.R.D. 427, 432 (W.D.N.C. 2005). Where the potential harm to the moving party outweighs

any benefit to the requesting party, the Court should grant the motion to quash. *See Mannington*

*Mills, Inc. v. Armstrong World Industries, Inc.*, 206 F.R.D. 525, 529 (D. Del. 2002) ("this court

is required to apply the balancing standards — relevance, need, confidentiality and harm.").

20.     Plaintiffs' inappropriate subpoenas seek the following information from each

bank:  "any documents or records relating to loans, loan applications, letters of credit,

applications for letters of credit, collateral for any loans, agreements regarding collateral,

payment of interest on any loans, guarantees, cashiers checks, account opening documents

including signature cards, and/or written correspondence or e-mails between any bank employee

and the person or entity."  Ex. B (subpoenas).

21.     Such documentation includes highly confidential personal and business financial

information that is precisely the type of confidential competitive information that the Court

sought to prevent Plaintiffs from obtaining while the motion to dismiss is pending. This

information is highly sensitive and requires a heavy burden on the party seeking it to show that it

is necessary and relevant. *See Insulate America,* 227 F.R.D. at 432 ("Courts have concluded that disclosure to a competitor is more harmful than disclosure to a non-competitor.").

22.     To allow Plaintiffs to intrude upon the Defendants' confidential financial arrangements for both their personal and business accounts is without justification at this early stage of the litigation, particularly here where Plaintiffs have no standing to assert their claims. *See Israel Travel Advisory Service, Inc. v. Israel Identity Tours, Inc.*, 61 F.3d 1250, 1257–58 (7th Cir. 1995), *cert. denied*, 517 U.S. 1220, 116 S. Ct. 1847 (1996). Unless and until the Court denies the Defendants motions to dismiss, it is unnecessary for Plaintiffs to seek such intrusive discovery of competitive financial information.

23.     Balancing Plaintiffs' need for this sensitive information at this time and its limited relevance against the great harm it would cause Defendants to have their confidential financial information revealed to their competitors, it is clear that Plaintiffs' subpoenas are inappropriate and should be quashed.

### 3.     Plaintiffs' Impermissible Subpoenas Are Overly Broad

24.     Plaintiffs' subpoenas not only go beyond the scope of discovery authorized by the Court, but the subpoenas are also overbroad and go well beyond the limits of discovery under Rule 26 as they are not reasonably tailored to lead to the discovery of admissible evidence.

25.     Plaintiffs seek every document from the third-party banks that relate to their relationships with the Defendants. The subpoenas are not limited to business accounts and are not limited in time. The requests seek all variety of documents, including all documents regarding the letters of credit and other information that Defendants use to conduct their tax sale businesses. Such information is not narrowly tailored or reasonably likely to lead to the discovery of admissible information.

26.     Such requests are clearly a fishing expedition into Defendants' commercially sensitive bank accounts, and are not likely to yield any relevant or admissible information.

### 4.     Plaintiffs' Subpoenas Are Intended To Harass And Annoy Defendants.

27.     In the event that the Court denies Defendants well-supported motions to dismiss the Complaint for, *inter alia*, lack of standing, it will become clear to the Court and possibly a jury that Plaintiffs instituted this litigation to prevent their competitors from succeeding in the tax sale business in which they are all engaged.  In addition to the affront of having accused their competitors of engaging in criminal conduct, Plaintiffs seek to abuse the litigation process by prying into the various Defendants' confidential business records to obtain a competitive advantage that they cannot otherwise obtain through a legitimate competitive market.  As is belied by Plaintiffs' Complaint, the market for the purchase of tax liens has become increasingly competitive as the Cook County Treasurer's Office has implemented mechanisms to increase the number of bidders and keep delinquent tax payer penalties down.  Compl., ¶¶ 45, 46 (noting the rapid increase in the number of tax bidders).  Plaintiffs are using the litigation process to lessen that very competition.

28.     Plaintiffs have sought to abuse the subpoena power to harass, annoy and embarrass Defendants by requiring the disclosure of their personal and competitively sensitive financial records.  Plaintiffs assured the Court that discovery would be "focused" and "narrow" given the fact that the parties are close competitors, and yet Plaintiffs completely disregarded their representations and sought a full blitzkrieg against Defendants' commercially sensitive financial records.

29.     Defendants respectfully request the Court not allow such a tactic and grant Defendants' motion to quash the subpoenas issued to their banks.

### III.    <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request the Court quash the subpoenas issued to the banks.

DATED: November 1, 2005

Respectfully submitted,

DEFENDANTS JOHN BRIDGE,
BARRETT ROCHMAN, and SABRE LLC

By: <u>/s/ Daniel A. Hetzel</u>
      One of Their Attorneys

Theodore M. Becker
Daniel A. Hetzel
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive, Sixth Floor
Chicago IL 60601
Tel.: 312.324.1000
Fax: 312.324.1001

*Of Counsel:*

Jennifer B. Jordan
(admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Tel.: 215.963.5959
Fax: 215.963.5001