IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PHOENIX BOND & INDEMNITY CO., et al., | ) ) ) No. 05 CV 4095 |
| Plaintiffs, | ) ) ) Judge James F. Holderman |
| v. | ) ) ) Magistrate Judge Ian H. Levin |
| JOHN BRIDGE et al., | ) ) |
| Defendants. | ) ) |

**PLAINTIFFS' RESPONSE TO MOTION TO QUASH FILED BY
DEFENDANTS JOHN BRIDGE, BARRETT ROCHMAN, AND SABRE GROUP LLC**

Plaintiffs respectfully submit this Memorandum in response to the Motion to Quash filed by Defendants John Bridge, Barrett Rochman, and Sabre Group LLC (the "Sabre Defendants").

## INTRODUCTION

In this action Plaintiffs allege that Defendants committed fraud in that they misled the Cook County Treasurer regarding the relatedness of their businesses in order to gain access to the County's annual tax sale in violation of the County's rule prohibiting related bidding entities from simultaneously participating in the sale. The heart of this action therefore lies with Plaintiffs' allegations that Defendants constitute related bidding entities under the County's rule, which, among other things, prohibits bidders from sharing capital or other finances. (Compl. ¶ 50.)

In order to assist in proving their allegations in this action that Defendants are indeed related bidding entities, on October 24, 2005, Plaintiffs issued ten subpoenas to banks where Defendants had banking relationships. In keeping with the Court's encouragement to narrowly tailor discovery, the information Plaintiffs seek from these banks focuses specifically on issues

1

regarding the sources of funds used to acquire tax liens and the financial relationships among the Defendants. The information sought, among other things, could show that certain Defendants provided the necessary collateral to other Defendants in violation of the County rules. Tellingly, Defendants now object to Plaintiffs' access to information regarding their sources of funding primarily arguing that the information sought would reveal confidential and proprietary information. The subpoenas, however, are undoubtedly narrowly focused and certainly do not seek confidential or proprietary information of the type that cannot be addressed by a protective order. Indeed, if Plaintiffs are not entitled to information regarding how these Defendants fund their participation in the tax sales, it is hard to fathom what information Plaintiffs would be entitled to discover. As such, this Court should deny Defendants' Motion to Quash.

## **FACTUAL BACKGROUND**

On October 24, 2005, Plaintiffs issued ten subpoenas to banks with whom Defendants have banking relationships. These banks were identified from Plaintiffs' review of County records that indicated that accounts at the subpoenaed banks were the source of funding required for Defendants to participate in the annual tax sales. With an eye toward this Court's guidance on the breadth of discovery at this stage in the case, the subpoenas limited the information sought to the following types of documents: "loans, loan applications, letters of credit, applications for letters of credit, collateral for any loans, agreements regarding collateral, payment of interest on any loans, guarantees, cashiers checks, account opening documents, including signature cards, and/or written correspondence or e-mails between any bank employee and person or entity."

Plaintiffs properly provided Defendants with notice of these subpoenas on October 27, 2005, after Plaintiffs received certificates indicating that some of the subpoenas had been properly served. The subpoenas gave the banks 30 days to provide the information requested. On October 31, 2005, however, one of the subpoenaed banks, Resource Bank, provided Plaintiffs

with the requested documents. Given the fact that the parties were in the midst of negotiating an agreed protective order, in an abundance of caution, Plaintiffs' counsel immediately contacted Defendants' counsel informing them that she had received documents in response to the subpoena, but was resealing them given the ongoing negotiations. (*See* October 31, 2005 Email from L. Kistler to T. Becker and E. Rosenblum (attached hereto as Ex. A).)

In response to Plaintiffs' counsel's email, Defendants' counsel stated that they believed that the subpoenas were overly broad and should be withdrawn. Defendants' counsel, however, did not articulate in any way the reasons that they felt the subpoenas were overly broad or state what information, if any, could be produced by the banks. (*See* October 31, 2005 Email to L. Kistler from T. Becker (attached hereto as Ex. B).) Instead of waiting more than 24 hours for Plaintiffs' response to the email and without complying with the obligations of Federal Rule 37, Defendants rushed to Court and filed this Motion arguing that no further meet and confer was necessary because "Plaintiffs have already begun to receive documents." (Sabre Defs. Mot., at 4.) As discussed above, however, Plaintiffs already notified Defendants that they had not reviewed the documents they had received because a protective order had not yet been entered. In any event, as discussed below, Defendants' arguments that the subpoenas here are improper simply lack merit as the subpoenas both comply with the Federal Rules of Civil Procedure, as well as this Court's guidance regarding the scope of discovery.

## **ARGUMENT**

### I. THE MOTION SHOULD BE DENIED BECAUSE DEFENDANTS FAILED TO COMPLY WITH RULE 37

Rule 37 of the Federal Rules requires that any motion regarding a discovery dispute provide a certification "that the movant has in good faith conferred or attempted to confer with the party not making the disclosure in an effort to secure the disclosure without court action." Fed. R. Civ. P. 37(a)(2). As discussed above, however, the only correspondence Plaintiffs

received from Defendants regarding issues raised in this Motion was an email sent only 24 hours before Defendants sought relief before this Court. Defendants claim that they moved forward with filing the Motion before Plaintiffs responded because they were informed by Plaintiffs that the banks had begun producing documents. This argument, however, is disingenuous because Plaintiffs had informed Defendants that they were not even reviewing the documents the very same day that Defendants claimed that the subpoenas were overbroad. There was no reason therefore that Defendants could not have had at the very least a telephone call with Plaintiffs regarding the subpoenas. Defendants' argument that a meet and confer was not required because the banks had already produced documents should, therefore, be rejected and the Court should deny the Motion for failing to comply with Rule 37.

## II. THE MOTION SHOULD BE DENIED BECAUSE THE SUBPOENAS COMPLY WITH BOTH THIS COURT'S GUIDANCE REGARDING DISCOVERY AND THE FEDERAL RULES

On September 27, 2005, this Court held a hearing on Defendants' Motion to Stay Discovery pending the Court's ruling on Defendants' Motions to Dismiss. At that hearing, the Court *denied* Defendants' Motion to Stay Discovery. (*See* September 27, 2005 Order (attached hereto as Exhibit C).) During the hearing, in light of the fact that the parties are competitors, the Court encouraged the parties that any requested discovery should not be unduly burdensome, seek confidential information or focus on "the other side's internal analysis of their pricing structure or their analysis of how they conduct their business." (September 27, 2005 Hearing Transcript, at 11 (attached as Exhibit A to Sabre Defs' Motion).) Defendants claims that the subpoenas are improper given the Court's comments at the hearing is nothing more than a veiled attempt to seek a rehearing on the Court's ruling on the Motion to Stay Discovery. The subpoenas, however, comply both with the Court's guidance and the Federal Rules as that the

4

information requested could undoubtedly lead to the discovery of admissible evidence. Defendants' Motion to Quash should accordingly be denied.

### A.     The Information Sought Is Directly Relevant To Proving Plaintiffs' Claims

Defendants argue that the information sought in the subpoenas is overly broad because they seek "every document from the third-party banks that relate to their relationship with the Defendants." (Sabre Defs. Mot. at 7.) This claim is patently untrue. Instead, the subpoenas are limited to information regarding the funding sources for Defendants' accounts identified in County records as the sources of funding required to participate in the tax sales. They do not even seek account statements, cancelled checks, financial statements or certificates of deposit. There is little doubt that this information is discoverable because it is directly relevant to Plaintiffs' claims.

As this Court is aware this case arises out of auctions held by Cook County at which it offers for sale tax liens. To ensure the fair and equal distribution of liens at the auctions the County has a rule that limits all entities to one bidder. Specifically, the County's single bidder rule requires each bidder to represent, among other things, that it "has no capital, purchase money, or other finances in common with any other bidding entity" and that it "shares no common ownership interest or common source of funds" with any other bidding entity. (Compl. ¶ 50.) The Complaint alleges that Defendants engaged in a scheme to improperly increase the number of bidders they had at the auctions. It alleges that Defendants formed a series of entities to bid at the auctions to create the impression that they were separate bidders, and that these entities represented to the County that they were separate and unrelated. It asserts that these

representations were false because the entities were, in fact, related and/or had agreements in advance of the sale to transfer their liens to Defendant Sabre.[1]

The information sought is directly relevant to these Plaintiffs' allegations. For example, it would be relevant whether Defendants borrowed funds for use at the tax sale from the same bank, whether one defendant obtained bank financing for another, whether one Defendant used its existing relationship with a bank to obtain financing for another Defendant, whether one Defendant guaranteed loans made to another Defendant, how Certificates of Purchase were used to secure borrowing, were Certificates purchased by one Defendant used to secure loans made to another, who actually delivered the Certificates of Purchase to the banks and who picked them up upon redemption, did one Defendant assist in securing a letter of credit for another Defendant. In addition, a central issue in this case is whether Defendants had "common ownership," thus who opened bank accounts and who had signatory authority on that account is significant.[2]

Furthermore, as discussed above, one of the subpoenaed banks gathered and produced the requested information in a matter of days. Given that production, Defendants' argument that the subpoenas seek such an extensive amount of information to make them overly broad lacks merit. *See Kessell v. Cook County*, No. 00 C 3980, 2002 WL 398506, at *2 (N.D. Ill. Mar. 14, 2002) (rejecting argument that subpoenas were overly broad and stating that "[g]iven that the subpoenaed parties have produced documents, they obviously have not asserted that the

---

[1] Entities that bid at the Cook County Tax sale typically borrow funds to purchase the liens. When a lien is bought, the County provides the purchaser with a Certificate of Purchase, a negotiable instrument evidencing the lien. Banks that lend money to tax buyers typically require that the Certificates of Purchase be tendered to and held by the bank as collateral for the loan. When the property owner redeems, the tax buyer must go to the bank, obtain the lien and turn in into the County before it can obtain the redemption proceeds. It should also be noted that all participants at the annual tax sale are required to provide a letter of credit, cash or a bond to secure their ability to pay for any liens they acquire.

[2] Defendants' complaint that the information sought is not limited to business accounts lacks merit. The subpoena seeks information on any account identified in County records as providing the source of funds to participate in the auction. If Defendants utilized a personal account as such a source, Plaintiffs are certainly entitled to know the source of collateral for that personal account.

requested production was burdensome or inconvenient, or that the subpoenas sought documents so far removed from relevant issues in the case that the non-parties should be put to the task of producing them.").

### B     Plaintiffs Are Not Seeking Information That Could Give Them A Competitive Advantage

Defendants also argue that the Court should quash the subpoenas because they purportedly highly sensitive commercial information. Defendants, however, have not and can not articulate why production to Plaintiffs of the *collateral* for the accounts used to fund their participation in the auction would give Plaintiffs some type of competitive advantage.[3]

In any event, as discussed above, the parties are in the midst of negotiating an agreed protective order. That protective order contemplates that confidential information will be produced as part of this litigation and allows parties to designate documents as confidential to preclude their distribution. Notably, if Defendants had bothered to meet their obligations under Rule 37.2, perhaps the parties could have negotiated for some type of confidential treatment over the bank records.

### III.    THIS COURT DID NOT LIMIT THE AMOUNT OF PERMISSABLE THIRD PARTY SUBPOENAS

Defendants' claim that Plaintiffs "deceived" the Court regarding their intended third party discovery simply is not true. Although it is correct that Plaintiffs' counsel indicated during the September 27, 2005 hearing that Plaintiffs were considering three third party subpoenas, this Court did not limit Plaintiffs to only those subpoenas either during the hearing or when it issued its order. (*See* Ex. C (September 27, 2005 Order).) Accordingly, Plaintiffs determined that given the fact it had obtained information from the County records that Defendants utilized ten banks between them, there was no reason not to issue subpoenas to all ten banks. Notably,

---

[3] Although Defendants are not clear, Defendants would clearly only have standing to object to the subpoenas issued to the banks relevant to those particular Defendants.

7

Defendants' argument is not that three subpoenas to the banks would have been proper instead of ten. Rather, Defendants argue that Plaintiffs should not have issued any of the subpoenas because the information sought is overbroad. As discussed above, however, the subpoenas are undoubtedly narrowly tailored in keeping with the Court's guidance. The Motion should, therefore, be denied.

## CONCLUSION

Plaintiffs respectfully request that this Court deny Defendants' Motion to Quash.

Dated: November 2, 2005

Respectfully submitted,

**Plaintiffs Phoenix Bond & Indemnity Co., Oak Park Investments, Inc. and BCS Services, Inc.**

By: /s/ Arnold A. Pagniucci

Lowell E. Sachnoff
Arnold A. Pagniucci
John W. Moynihan
Lisa A. Kistler
Sachnoff & Weaver, Ltd.
10 South Wacker Drive, Suite 4000
Chicago, IL 60606

Jonathan L. Marks
Katten Muchin Rosenman LLP
525 West Monroe Street, Suite 1600
Chicago, IL 60661-3693

# Exhibit A

**Kistler, Lisa A.**

| | |
|---|---|
| **From:** | Kistler, Lisa A. |
| **Sent:** | Monday, October 31, 2005 1:55 PM |
| **To:** | 'tbecker@morganlewis.com'; 'Eli Rosenblum' |
| **Cc:** | 'jonathan.marks@kattenlaw.com'; Moynihan, John W.; Walton, Michele L.; Pagniucci, Arnold A. |
| **Subject:** | subpoena |

Ted and Eli:

As you know we subpoenaed a number of banks last week and as required under the rules, we sent you notice. This morning, I received a priority mail package. I opened it and when I realized that the documents contained within were in response to the subpoena on Resource Bank, I returned them to the envelope and re-sealed it.

We recognize that we are still in the process of negotiating a protective order. I wanted to advise you that we have received materials from Resource Bank, and give you the opportunity to advise us if you believe that those documents should be protected.

Lisa
Lisa A. Kistler
Sachnoff & Weaver, Ltd.
10 S. Wacker Drive
Suite 4000
Chicago, Illinois 60606
(312) 207-3927 (telephone)
(312) 207-6400 (facsimile)

1

# Exhibit B

# Kistler, Lisa A.

**From:** tbecker@morganlewis.com
**Sent:** Monday, October 31, 2005 2:11 PM
**To:** Kistler, Lisa A.
**Subject:** Re: subpoena

**Importance:** High

Lisa,
Thank you for re-sealing the envelope and for not reviewing the documents produced by Resource Bank. It is my clients' position that the subpoenas served by plaintiffs upon the banks should be quashed because, among other reasons, the scope of the documents requested is far too broad. I t is also my clients' position that any and all documents produced by any of the banks should be subject to a protective order. Please let me know whether the plaintiffs agree to withdraw the subpoenas or significantly limit the scope of documents being requested by the subpoenas. If plaintiffs will not so agree, we will file a motion to quash. If any other banks make production before the motion to quash is filed and ruled upon and the protective order is entered, please do not copy, distribute or review any documents produced and please hold them pending the court's ruling on the motion to quash. At your earliest convenience, please give me your comments on the draft protective order.
Thanks,
Ted

Theodore M. Becker
Morgan, Lewis & Bockius LLP
77 West Wacker Drive, Fifth Floor
Chicago, IL 60601
312.324.1190 (Direct Dial)
312.324.1001 (Fax)
tbecker@morganlewis.com
www.morganlewis.com


```
              "Kistler, Lisa
              A."
              <LKELLME@sachnoff                                          To
              .com>               tbecker@morganlewis.com, "Eli
                                  Rosenblum" <esrosenblum@okgc.com>
              10/31/2005 01:55                                           cc
              PM                  jonathan.marks@kattenlaw.com,
                                  "Moynihan, John W."
                                  <JMOYNIH@sachnoff.com>, "Walton,
                                  Michele L." <mwalton@sachnoff.com>,
                                  "Pagniucci, Arnold A."
                                  <APAGNIU@sachnoff.com>
                                                                    Subject
                                  subpoena
```

1

Ted and Eli:

As you know we subpoenaed a number of banks last week and as required under the rules, we sent you notice. This morning, I received a priority mail package. I opened it and when I realized that the documents contained within were in response to the subpoena on Resource Bank, I returned them to the envelope and re-sealed it.

We recognize that we are still in the process of negotiating a protective order. I wanted to advise you that we have received materials from Resource Bank, and give you the opportunity to advise us if you believe that those documents should be protected.

Lisa
Lisa A. Kistler
Sachnoff & Weaver, Ltd.
10 S. Wacker Drive
Suite 4000
Chicago, Illinois  60606
(312) 207-3927 (telephone)
(312) 207-6400 (facsimile)

DISCLAIMER
This e-mail message is intended only for the personal use of the recipient(s) named above. This message may be an attorney-client communication and as such privileged and confidential. If you are not an intended recipient, you may not review, copy or distribute this message. If you have received this communication in error, please notify us immediately by e-mail and delete the original message.

2

# Exhibit C

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 2.5
### Eastern Division

Phoenix Bond & Indemnity Co., et al.

                          Plaintiff,

v.                                       Case No.: 1:05-cv-04095
                                                    Honorable James F. Holderman

John Bridge, et al.

                          Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Tuesday, September 27, 2005:

       MINUTE entry before Judge James F. Holderman dated 9/27/05:Status hearing held on 9/27/05. Defendants, Cronus Projects, LLC, Robert Jensen, Joseph Varan, Gregory Ellis, LCC, Venture, LLC and GJ Venture, LLC's motion to stay (66) discovery pending motions to dismiss is denied. Motion terminated. Plaintiffs responses to MOTION by Defendants Robert Jensen, Joseph Varan, Cronus Projects, LLC, L.C.C. Venture, LLC, Gregory Ellis, GJ Venture, LLC to dismiss Plaintiffs' Complaint [62], MOTION by Defendants Jeffrey Bridge, Regal One, LLC, Jason Baumbach, Optimum Financial, Inc., Carpus Investments, LLC to dismiss and Memorandum of Law [61], MOTION by Defendants Francis Alexander, Georgetown Investors, LLC to dismiss [76], MOTION by Defendants John Bridge, Barrett Rochman, Sabre Group LLC to dismiss Plaintiffs' Complaint [68], MOTION by Defendants CCJ Investments, LLC, Christopher Rochman, Corinne Rochman, BRB Investments, LLC to dismiss [74], MOTION by Defendants DRN II, Inc., Jeshay, LLC, Douglas Nash, Mud Cats Real Estate, LLC to dismiss [71] are to be filed on or before 11/10/05. Replies due 12/5/05. Court will rule by mail and set additional dates if necessary. Rule 26(a)(1) discovery to be allowed. Parties are to focus on issues that need to be 26(a)(1) disclosures and third–party subpoenas allowed.Judicial staff mailed notice(gl, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.

# CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2005, I electronically filed **Plaintiffs' Response to Motion to Quash Filed by Defendants John Bridge, Barrett Rochman, and Sabre Group LLC** with the Clerk of the Court using the ECF system, which will send notification of such filings to the following:

| | |
|---|---|
| *Attorney for Defendants John Bridge, Barrett Rochman and Sabre Group, LLC* | Theodore M. Becker<br>Morgan Lewis & Bockius<br>77 West Wacker Drive, 5th Floor<br>Chicago, Illinois 60601 |
| *Attorney for Defendants Robert Jensen, Joseph Varan, Cronus Projects, LLC, Gregory Ellis, GJ Venture, LLC, and L.C.C. Venture, LLC* | Kevin J. Clancy<br>Martin W. McManaman<br>Patrick R. Moran<br>Lowis & Gellen LLP<br>200 West Adams Street, Suite 1900<br>Chicago, Illinois 60606 |
| *Attorney for Defendants Jeffrey Bridge, Regal One, LLC, Jason Baumbach, Optimum Financial, Inc., and Carpus Investments, LLC* | Elisha S. Rosenblum<br>Clifford G. Kosoff<br>O'Halloran, Kosoff, Geitner & Cook, P.C.<br>650 Dundee Road, Suite 475<br>Northbrook, Illinois 60062 |
| *Attorney for Defendants Douglas Nash, DRN II, Inc., Jeshay, LLC, and Mud Cats Real Estate, LLC* | David S. Rosenbloom<br>McDermott, Will & Emery LLP<br>227 West Monroe Street, Suite 4400<br>Chicago, Illinois 60606-5096 |
| *Attorney for Defendants Francis Alexander and Georgetown Investors, LLC* | Michael J. Kralovec<br>Joseph R. Lemersal<br>Sara R. McClain<br>Nash, Lalich & Kralovec, LLC<br>53 West Jackson Boulevard, Suite 1102<br>Chicago, Illinois 60604 |

and by facsimile and U.S. Mail to the following non-registered party:

| *Attorney for Defendants Jesse Rochman, Corinne Rochman, Christopher Rochman, BRB Investments, LLC, and CCJ Investments, LLC* | Neil S. Ament<br>Law Office of Neil S. Ament<br>1955 Shermer Road, Suite 400<br>Northbrook, Illinois 60062 |
|---|---|

By: /s/ Lisa A. Kistler
One of Their Attorneys

Lowell E. Sachnoff
Arnold A. Pagnuicci
John W. Moynihan
Lisa A. Kistler
Sachnoff & Weaver, Ltd.
10 South Wacker Drive
Suite 4000
Chicago, IL 60606
(312) 207-1000