**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PHOENIX BOND & INDEMNITY CO., et al., | ) ) ) | |
| Plaintiffs, | ) ) | No. 05 CV 4095 |
| v. | ) ) | Judge James F. Holderman |
| JOHN BRIDGE et al., | ) ) | Magistrate Judge Ian H. Levin |
| Defendants. | ) ) ) | |
| _____ | ) | |

**PLAINTIFFS' RESPONSE TO THE MOTION TO DISMISS FILED BY DEFENDANTS
DOUGLAS NASH, DRN II, INC.,
<u>JESHAY, LLC, AND MUD CATS REAL ESTATE, LLC</u>**

Plaintiffs respectfully submit this Memorandum in response to the Motion to Dismiss filed by Defendants Douglas Nash, DRN II, Inc., Jeshay, LLC and Mud Cats Real Estate, LLC (the "Defendants").[1] The Motion distorts Plaintiffs' claims and impermissibly references facts outside of the Complaint's four corners. Plaintiffs' claims are clear, and this Court should reject Defendants' efforts to redefine the claims in any way that conflicts with the Plaintiffs' well-plead allegations.[2]

## FACTUAL BACKGROUND

Plaintiffs allege that Defendants secretly agreed before the annual Cook County tax sales to bid on behalf of Sabre Group, LLC. (Compl. ¶ 1.) Their acts violated the County Rule prohibiting related bidding entities from simultaneously participating in the sale. (*Id.*) The Defendants submitted to the Cook County Treasurer's Office registrations to participate in the tax sales—registrations in which Defendants falsely attested that they complied with the County Rule. (*Id.* ¶¶ 54, 61.) Their scheme was to participate unlawfully in the auctions, deprive Plaintiffs of liens they would have obtained but for the wrongful conduct, and reap the profit from those liens. (*Id.* ¶ 1.)

At the annual tax sale auction, the County distributes liens to the bidder who bids the lowest penalty rate. (Compl. ¶ 36.) At every sale since 2000, virtually every bid was 0%, the lowest possible rate. (*Id.*) When multiple bidders make the same bid, the auctioneer allocates liens on a rotational basis among the bidders in the room. (*Id.*) A party who has multiple bidders in the room gains a substantial advantage over those who comply with the Single Bidder

---

[1] Six groups of Defendants have filed separate motions to dismiss Plaintiffs' Complaint. To the extent that a Defendant relies upon, cross-references and adopts other Defendants' arguments in their motions, the Plaintiffs also rely upon, cross-reference and adopt Plaintiffs' arguments contained in Plaintiffs' six response briefs.

[2] This court noted for the record that it would explicitly not consider Defendants' statements regarding their own business practices under Fed. R. Civ. Pro. 12(b)(6). (*See* Sept. 27, 2005 Tr. of Hearing, at 6.)

1

Rule, permitting the party with multiple bidders to acquire a greater share of liens offered for sale. (*Id*. ¶¶ 36, 51.) To ensure the equal distribution of liens, the County's Rule limits all participants to one bidder and prohibits registered bidders from having surrogates buy liens for them at the sales. (*Id*. ¶ 51.) To enforce the Single Bidder Rule, each bidder must represent under oath in submissions to the County, among other things, that the bidder did not share capital, finances, ownership, or source of funds with another bidder; that it had no agreements to purchase or sell liens it acquired to another bidder; and that it did not stand to benefit financially under an agreement with another bidder concerning liens bid on or purchased. (*Id.* ¶ 54.)

Defendants engaged in a fraudulent scheme to increase the number of bidders at the auction and thereby obtain more liens. (Compl. ¶ 52.) A series of entities were formed to create the impression that they were separate bidders. (*Id*. ¶ 53.) These entities registered to bid at the sales and represented that they were separate and unrelated. (*Id*.) These representations were false because the entities were, in fact, related and/or had agreements in advance of the sale to transfer their liens to Defendant Sabre Group after the auction. (*Id.* ¶¶ 61, 62.) Defendants obtained liens from the County and the related profits that would have been obtained by Plaintiffs absent Defendants' scheme.

Despite Defendants' contentions, Plaintiffs are not seeking to enforce the County Rule or to recover any damages of the County or the underlying property owners. Plaintiffs seek to recover profits that Defendants obtained and that Plaintiffs would have obtained but for Defendants' scheme to defraud, as well as injunctive relief to prevent such conduct in the future. (Compl. ¶¶ 56, 64, 92.) Plaintiffs' claims are based on the Federal RICO Statute and on tortious interference with prospective business advantage under Illinois common law.

The predicate acts underlying Plaintiffs' RICO claim are Defendants' violations of the mail fraud statute. Defendants' scheme involved deceiving the County with misrepresentations

2

in Defendants' registration applications for the tax sales that occurred in calendar years 2002, 2003, 2004 and 2005. (Compl. ¶¶ 61, 70, 76, 78, 83, 94.) Through Defendants' scheme, Defendants sought to, and did, obtain property, *i.e.* the tax liens and the profits on those tax liens. The "Take Notice" mailings were an essential part of the Defendants' scheme because the Defendants were precluded from obtaining the profits on the liens they acquired if the "Take Notices" were not mailed. (*Id.* ¶ 40.)

## ARGUMENT

In considering a motion to dismiss, the court must take all material allegations of the complaint as true and liberally construe those allegations in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *United States v. City of Chicago Heights*, No. 99 C 4461, 1999 U.S. Dist. LEXIS 18178, at *2-3 (N.D. Ill. Nov. 19, 1999) (Holderman, J.). A court may not grant a motion to dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Morgan v. Bank of Waukegan*, 804 F.2d 970, 973 (7th Cir. 1986).

The facts and permissible inferences in the Complaint sufficiently plead Plaintiffs' causes of action under RICO and the state law claim of tortious interference with prospective business advantage. The Motion wrongfully relies on facts not in the Complaint and misconstrues applicable pleading standards. The Motion should be denied.

A. **PLAINTIFFS HAVE ADEQUATELY ALLEGED THAT DEFENDANTS' OBTAINED PLAINTIFFS' MONEY OR PROPERTY THROUGH A SCHEME TO DEFRAUD**

Defendants' argument that Plaintiffs failed to allege a scheme to defraud because the only "property" the Defendants sought to deprive Plaintiffs of was a "fair bidding opportunity" ignores the explicitly plead allegations in the Complaint. Plaintiffs allege that Defendants' scheme to defraud was to gain unlawful access to the Cook County tax sales, obtain more liens

3

than they would be entitled to receive had they complied with the Rule, and obtain the profit from those liens. (Compl. ¶ 1.) Plaintiffs allege that Defendants furthered their scheme to defraud by causing the County to mail statutory notices to secure Defendants' profit on the liens that they unlawfully obtained, and in doing so, obtained Plaintiffs' money or property. (*Id.* ¶¶ 95-104.) Since the Complaint alleges that the Defendants' scheme sought to obtain property, *i.e.* the liens and the related profits, Defendants' assertion that the government's regulatory interests cannot constitute property under the mail fraud statute is inapposite.

Indeed, the opinion in *Cleveland v. United States*, 531 U.S. 12 (2000), clearly establishes that Plaintiffs have sufficiently alleged a scheme to obtain "property" under the mail fraud statute. The issue presented in *Cleveland* was whether the federal mail fraud statute reached false statements made in an application to obtain a Louisiana state poker license from the state. The United States Supreme Court held that the State of Louisiana's interest in an unissued video poker license was not "property" before the State issued the license, *i.e.* while the license was still the State's hands.[3] *Id.* at 22-23. The Court rejected the government's attempt to convert control over a purely regulatory process into property. *Id*. Since the defendants' scheme was to obtain an unissued license, their scheme was not to obtain "property," and the government failed to allege an essential element of the mail fraud claim. *Id.* at 22.[4]

---

[3] The Court's conclusion that Louisiana had no economic interest in the licenses was based on the fact that the State did not conduct gaming operations and it did not sell the licenses in any commercial sense. 531 U.S. at 23. Conversely, here, the County sells the tax liens.

[4] Similarly, the other cases the Nash Defendants cite are inapposite as they merely hold that the government's regulatory interest alone cannot constitute "property" under Section 1341. *See, e.g., United States v. F.J. Vollmer & Co.*, 1 F.3d 1511, 1520-21 (7th Cir. 1993) (rejecting the government's argument that its regulatory interest in controlling the disposition of firearms to third parties was a property right under the mail fraud statute because the government's interest was not one of a property holder, *i.e.* it did not own the firearms, but, rather, only of a regulator that controlled the disposition of guns that it never owned); *United States v. Henry*, 29 F.3d 112, 116 (3d Cir. 1994) (holding that a "fair bidding process" was merely a regulatory interest that was not traditionally recognized as a property right).

Here, Plaintiffs' allegations are quite the opposite. Plaintiffs allege that the Defendants scheme seeks to obtain two forms of Section 1341 "property," the liens themselves from the County and the profit on the liens from the other bidders at the auction. *See United States v. Wolf*, No. 92 CR 737, 1993 WL 169271, at *4-5 (N.D. Ill. May 18, 1993) (holding that allegations that a defendant lied to the County to participate in a tax auction during and obtain tax liens constituted a fraudulent scheme to obtain property under mail fraud); *Israel Travel Advisory Serv., Inc. v. Israel Identity Tours, Inc.*, 61 F.3d 1250, 1258 (7th Cir. 1995) (holding that "lost business opportunities . . . are property" under Section 1341).[5]

Further, even where the "property" the defendants seek to obtain is directly related to the government's regulatory process, as long as defendants seek to obtain "property" as defined in Section 1341, the conduct violates the mail fraud statute. *See Pasquantino v. United States,* 125 S.Ct. 1766, 1772 (2005) (holding that a petitioners' scheme to deprive Canada of taxes was a scheme to obtain "money or property" under the wire fraud statute, distinguishing *Cleveland* because the taxes sought were "property" while the unissued licenses in *Cleveland* were not property); *United States v. Duff*, 336 F. Supp. 2d 852, 855-56 (N.D. Ill. 2004) (holding that the defendants' scheme to obtain the city's money through a procurement program constituted "property" under the mail fraud statute because the scheme deprived the city of its control over the disposition of its money pursuant to the program's objectives).

---

[5] In *Pasquantino v. United States,* 125 S. Ct. 1766, 1772 (2005), the Court held that "property" under Section 1341 includes every right to which the victim is entitled under state law. Thus, the tax liens and the profits on those tax liens are property under Section 1341. *See In re Cook County Treasurer*, 542 N.E.2d 15, 16-17 (Ill. App. Ct. 1989) (tax liens are property); *Belden Corp. v. InterNorth, Inc.*, 413 N.E.2d 98, 101 (Ill. App. Ct. 1980) (in Illinois the tort of interference with prospective business advantage "recognize[s] that a person's business relationships constitute a property interest"); *In re Midway Airlines, Inc.*, 180 B.R. 851, 979 (Bankr. N.D. Ill. 1995) (same); *see also Diaz v. Parks*, 420 F.3d 897, 900 (9th Cir. 2005) (holding that allegations of lost business opportunities sufficiently plead an injury to "business or property" under RICO because they are protected under California tort law).

5

Plaintiffs have alleged that through their scheme to defraud, Defendants obtained property that is a cognizable economic—rather than regulatory—interest through use of the mails. Plaintiffs have not based their mail fraud allegations on the County's right to regulate the tax lien auction. As Plaintiffs allege that Defendants' scheme to defraud sought to and did obtain property, Plaintiffs' allegations sufficiently allege a mail fraud violation, thus supporting their RICO claim.

B. **PLAINTIFFS HAVE ADEQUATELY ALLEGED SEPARATE AND DISTINCT SCHEMES INVOLVING DOZENS OF TAX BUYERS AND HUNDREDS OF LIENS**

The Complaint sufficiently alleges a pattern of racketeering activity as Plaintiffs have alleged thousands of separate acts of mail fraud. Indeed, Plaintiffs allege that over a period of three years, Defendants caused separate mailings on thousands of distinct liens in furtherance of their fraudulent scheme to deceive the County, injuring these three Plaintiffs as well as numerous other bidders in the process.[6] Defendants only argue to the contrary by misstating Seventh Circuit authority.

Specifically, in support of their argument that Plaintiffs' allegations fail to sufficiently allege a pattern, Defendants direct the Court to the seminal case of *Morgan v. Bank of Waukegan*, 804 F.2d 970 (7th Cir. 1986). However, *Morgan* does not support the Defendants' argument because they get the Seventh Circuit's holding backwards. Contrary to the Nash Defendants' assertion, the Seventh Circuit in *Morgan* actually *reversed* the district court's dismissal of the complaint for failure to plead a pattern of racketeering activity. (*See* Defs.' Mem. at 11); *Morgan*, 804 F.2d at 972-73. *Morgan* supports the conclusion that Plaintiffs sufficiently allege a pattern of racketeering.

---

[6] Plaintiffs have alleged that 124 registered bidders and 195 registered bidders participated in the 2004 and 2005 auctions, respectively. (Compl. ¶¶ 45, 46.)

In *Morgan*, plaintiffs alleged that defendants fraudulently induced plaintiffs husband and wife to provide money and credit (in the form of a home mortgage) to corporations that the defendants established, who then foreclosed on the mortgage and obtained plaintiffs' home in the process. 804 F.2d at 972. The plaintiffs' allegations of a RICO pattern depended in large part on various acts of mail fraud committed related to the foreclosure sales of plaintiffs' home and the corporations in which plaintiffs invested. *Id.* at 973. The *Morgan* complaint survived where the plaintiffs alleged that defendants harmed two victims (a husband and wife) through a "single grand scheme" to defraud, furthered through mailings over a four–year period related to the separate foreclosure sales. *Id.* at 975-76. Certainly, Plaintiffs' allegations here regarding Defendants' commission of thousands of separate acts of mail fraud over a three year period harming not only three separate Plaintiffs, but numerous other bidders, are even stronger than those that the Seventh Circuit held sufficient in *Morgan*.

Plaintiffs' allegations also defeat Defendants' arguments that no pattern exists because Plaintiffs alleged only "one set of victims." In support, they cite cases where a *single victim* was insufficient to allege a RICO pattern.[7] As an initial matter, Plaintiffs are not a single victim. Indeed, Plaintiffs are three separate competing tax buying entities. Further, Plaintiffs allege that Defendants' scheme to defraud directly harmed not only themselves, but also all of the registered tax buyers who participated in any of the 2002 through 2005 County auctions who were not participants in Defendants' scheme to defraud. (*See, e.g.,* Compl. ¶¶ 1, 55, 56, 63). Each lien

---

[7] Specifically, Defendants cite *Lipin Enterprises, Inc. v. Lee*, 803 F.2d 322 (7th Cir. 1986), and *Jacobsohn v. Marks*, No. 92 C 6796, 1993 U.S. Dist. LEXIS 13987 (N.D. Ill. Oct. 6, 1993), to support their argument. In *Lipin*, the Seventh Circuit held that there was no pattern where a corporation alleged that it was the single victim of defendants' fraud involving the sale of an auto leasing company. *Lipin,* 803 F.2d at 324. In *Jacobsohn*, plaintiff was the single victim of defendants' scheme to fraudulently reduce plaintiff's overall interest in a family business. *Jacobsohn*, 1993 U.S. Dist. LEXIS 13987, at *31-32. Neither case bars a finding of pattern here because Plaintiffs have alleged that there are numerous victims-- *i.e.* all registered tax buyers participating in the relevant tax sales who are not participants in Defendants' scheme to defraud.

that Defendants obtained constitutes a distinct injury to those tax buyers who were not part of the conspiracy. While those victims may compose a "set" of similarly injured individuals and entities, such a set of victims is not a single victim for purposes of a RICO pattern analysis. *See, e.g.*, *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229 (1989) (thousands of customers who each suffered a distinct injury from unreasonable rates charged by a telephone company constituted multiple victims of the defendants' scheme, thus stating a RICO claim).[8]

Further, Defendants wrongfully infer that the Plaintiffs' pattern allegations succeed or fail based on the number of individual mailings related to each lien. To the contrary—even if each set of mailings relating to a specific lien only constitutes one mail fraud violation, there were thousands of liens, and therefore, thousands of mail fraud violations over a period of three years. Each such mail fraud violation related to a distinct piece of property and resulted in a distinct injury for one of the tax buyer victims. Plaintiffs have alleged an adequate number of distinct mailings to satisfy the pattern requirement where Defendants directly or indirectly caused mailings related to the hundreds of liens they purchased, and joined an enterprise that had thousands of such violations during the course of more than three years.[9]

## C. PLAINTIFFS HAVE PLEAD THE FACTS SURROUNDING DEFENDANTS' FRAUDULENT SCHEME WITH ADEQUATE PARTICULARITY

### 1. Plaintiffs' Information And Belief Allegations Are Proper

Defendants' arguments regarding Rule 9(b) requirements are misdirected, at best. While Rule 9(b) requires that alleged misrepresentations must be pled with specificity, the Rule

---

[8] Further, the Supreme Court in *H.J. Inc.* rejected Defendants' idea that multiple schemes must be proved to establish a pattern of racketeering activity. *See H.J. Inc.*, 492 U.S. at 240 ("it is implausible to suppose that Congress thought continuity might be shown *only* by proof of multiple schemes") (emphasis in original); *see also Morgan,* 804 F.2d at 975-76 (reversing dismissal of a complaint where plaintiffs alleged only one scheme).

[9] *See, e.g.,* Compl. ¶ 97 ("in 2002 and 2003, DRN II purchased hundreds of liens for Sabre's benefit in violation of the County Rule") *and* ¶ 103 ("in 2004, Jeshay purchased hundreds of liens for Sabre's benefit in violation of the County Rule").

8

requires a RICO plaintiff allege "only a general outline of the alleged fraud scheme — one sufficient to reasonably notify the defendants of their purported role in the scheme." *Senior Income Reverse Mortgage Corp. v. Olson*, No. 98C7250, 1999 WL 350836, at *6 (N.D. Ill. May 19, 1999) (citations omitted); *see also* Fed. R. Civ. P. 9(b) (it is "the circumstances constituting fraud [that] . . . shall be stated with particularity) (emphasis added). Plaintiffs' Complaint more than meets these standards as it explicitly alleges the who, what, where and how of the fraudulent statements. Specifically, as to each Defendant, it alleges that on or about a particular date, particular Defendants submitted registration statements to the County Treasurer containing attestations of fact that supported the conclusion that they were not related bidding entities as defined in the Rule. (*See, e.g.,* Compl. ¶¶ 53-59.) The particular language of those statements is contained in exhibits attached to the Complaint. (Compl. Exs. A, C.) The Complaint alleges that these statements were false because Defendants were, in fact, related entities and had pre-auction agreements, and, thus, were in violation of the Rule. (*See, e.g.,* Compl. ¶¶ 53-59.) The Complaint describes in detail how the scheme increased the number of bidders at the auction, permitting Defendants to obtain more liens and how Defendants then transferred these liens to Sabre Group. (*See, e.g., Id*. ¶¶ 59, 61, 69.) Throughout, the Complaint specifically identifies the roles of each particular Defendant in the scheme.

Instead of focusing on what Rule 9(b) requires on its face and taking the allegations as a whole, Defendants narrow Plaintiffs' itemized allegations to only two statements in the Complaint: 1) that the Nash Defendants purchased tax liens at a penalty rate of 0%; and 2) that the Nash Defendants then sold those properties before they paid any subsequent taxes on the properties. (*See* Defs.' Mem. at 13; Compl. ¶¶ 61, 70, 83.) Defendants argue that these two facts are insufficient to plead their involvement in the fraud. Defendants, however, choose to ignore the allegation *between* these two statements in the Complaint, a critical allegation that supports

9

Plaintiffs' belief that the Nash Defendants schemed with other Defendants to obtain innocent tax buyers' property. For instance, in Paragraph 61 of the Complaint, Plaintiffs allege: "On information and belief, all or virtually all of the tax liens acquired by DRN II at the 2002 sale were acquired at a penalty rate of 0%. *In addition, on information and belief, DRN II, at the direction of Nash, John Bridge, B. Rochman and Sabre, transferred all the tax liens it acquired to Sabre on May 15, 2002, less than one month after the County issued Certificates of Purchase evidencing the liens to DRN II.* On information and belief, DRN II had not paid any subsequent taxes on any of the items it had purchased." (Compl. ¶ 61.) Plaintiffs' allegation that DRN II, for example, transferred all tax liens it acquired to Sabre supports Plaintiffs' belief that these Defendants "could have no financial motive . . . unless there was some illicit agreement" with other Defendants. (*See id.*)

Defendants cannot ignore critical allegations that defeat their Motion. On a motion to dismiss, the court presumes that a plaintiff's well-pled allegations are true, viewing those allegations in the light most favorable to the plaintiff. *See City of Chicago Heights*, 1999 U.S. Dist. LEXIS 18178, at *2-3. Plaintiffs have properly pled these and other allegations on information and belief accompanied by a statement of facts upon which they base their beliefs. *See Fine ex rel. Maxitron Corp. v. Jansen*, No. 86 C 3695, 1986 WL 8731, at *2 (N.D. Ill. Aug. 1, 1986) (denying a motion to dismiss fraud allegations on information and belief where plaintiffs alleged a statement of facts within their knowledge that supported their belief). For example, Plaintiffs allege that their belief "is based on Plaintiffs' review of a substantial portion of County records related to the redemption of liens DRN II purchased in 2002, as well as a review of County records related to a sample of liens for which petitions for tax deed existed." (*See* Compl. ¶ 61; *see also id.* ¶¶ 70, 83.) Further, Plaintiffs have stated what evidence remained in Defendants' sole possession and inaccessible to Plaintiffs without pre-trial discovery:

10

"Plaintiffs do not have access to such information or assignment documents for liens that had not been either redeemed or the subject of a filed petition for deed, which documents are in the sole possession of the Defendants." (*See id.* ¶¶ 61, 70, 83.) [10]

While Defendants may disagree with Plaintiffs' inferences from the facts discovered in the investigation, their disagreement does not make Plaintiffs' allegations "reckless suspicion[s]." (Defs.' Mem. at 14.) Plaintiffs are not required to produce a confession by one of the Defendants to plead a claim related to a conspiracy. *See United States v. Scarbrough*, 990 F.2d 296, 299 (7th Cir. 1993) ("[c]onspiracies are secret by their very nature, so an agreement to conspire may be established by circumstantial evidence, including reasonable inferences drawn from the defendants' conduct and overt acts."). In viewing *all* of Plaintiffs' allegations in a light most favorable to them, this Court should find that Plaintiffs pled their claims with sufficient particularity.

Further, the Court should disregard Defendants' attempt to inject the record with facts *not* plead—*e.g.,* that Defendants sold the tax certificates at a loss, etc. (*See* Defs.' Mot. at 14; s*ee supra*, n.2.) For purposes of a Rule 12(b)(6) motion, Defendants must grapple with Plaintiffs' allegations as they stand. If Defendants believe that Plaintiffs' allegations are incorrect, they may move for summary judgment *after* discovery is taken. A motion to dismiss is not the proper

---

[10] To the extent that Defendants challenge Plaintiffs' ability to plead on information and belief at all, they are mistaken on the law. Plaintiffs have properly pled allegations on information and belief where they explain the information upon which the belief is based and they indicate that they could not obtain information absent pre-suit discovery (*i.e.* where the information was in sole control of the Defendants). *See e.g.*, *Duane v. Altenburg*, 297 F.2d 515, 518-19 (7th Cir. 1962) (stating that pleading fraud on "information and belief" is permissible as to matters peculiarly in defendant's knowledge when accompanied by statement of facts upon which beliefs are based); *Fine*, 1986 WL 8731, at *2. Further, this Court would be warranted in relaxing the restrictions of Rule 9(b) even if Plaintiffs' allegations did not satisfy Rule 9(b). *See Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1050-51 (7th Cir. 1998) (relaxing particularity requirements of Rule 9(b) for mail and wire fraud allegations where RICO plaintiff's complaint (1) stated generally the content of fraudulent communications; (2) failed to allege the time and place of the communications; and (3) stated that defendants possessed the specific information needed to complete Rule 9(b)'s specificity requirements).

11

place for Defendants to catapult new facts into the record in an attempt to muddy Plaintiffs' well-pled allegations.

### 2. Defendants Cannot Escape Liability Here Simply Because The County Has Yet To Take Action

Defendants also argue that Plaintiffs' claims fail because the Treasurer is the "sole and exclusive" arbiter with respect to its rules and since the Treasurer has yet to take action against Defendants, Plaintiffs well-pled allegations that Defendants violated the rule should be rejected. This argument, however, lacks merit.

First, Defendants argue that there can be no mail fraud because the Cook County Treasurer has exclusive discretion to determine if her Single Bidder Rule has been violated and she has taken no action against Defendants. This case is not about whether Defendants should be sanctioned under the penalty provisions of the Rule, and Plaintiffs have not brought suit to enforce the Rule. Rather, Plaintiffs allege that Defendants made fraudulent statements to the County as part of a scheme to defraud that was intended to injure Plaintiffs and is actionable under RICO.

Furthermore, Defendants' assertion that this Court should reject Plaintiffs' claims that they are related bidding entities because the Treasurer has yet to take action against them borders on the absurd. The Treasurer enforces the Single Bidding Rule by having each bidder attest prior to the auction that they are not related bidding entities. Defendants lied about their bidding status on these attestations. Plaintiffs only discovered Defendants' deceit by undertaking an intense and focused review of the County records. Simply because the Treasurer has not yet moved to bar Defendants from participating in auctions has no significance in this action. That the Treasurer has not challenged Defendants' conduct to be a violation does not mean that the Treasurer sanctioned that conduct. Indeed, the whole point of the scheme was to deceive the

12

County so it would allow Defendants to bid and would not take action against them. There are many reasons the Treasurer may not have acted, including that, as alleged in the Complaint, Defendants' scheme worked and deceived the Treasurer.[11]

**D.  PLAINTIFFS HAVE SUFFICIENTLY ALLEGED A TORTIOUS INTERFERENCE CLAIM.**

Defendants rely on the reasons set forth in Sabre Defendants' Motion to Dismiss to argue that Plaintiffs' state law claim fails; accordingly, Plaintiffs respectfully refer the court to their arguments set forth in Plaintiffs' Response to Motion to Dismiss of Defendants John Bridge, Barrett Rochman, and Sabre Group, LLC, filed simultaneously with the Court on this date.

## CONCLUSION

For the reasons set forth in this Memorandum, Plaintiffs respectfully request that this Court deny the Nash Defendants' Motion to Dismiss in its entirety.

Dated: November 10, 2005

**Plaintiffs Phoenix Bond & Indemnity Co., Oak Park Investments, Inc., and BCS Services, Inc.**

By:___/s/_ Lowell E. Sachnoff_____
        One of Their Attorneys

Lowell E. Sachnoff  (ARDC No. 2438062)
Arnold A. Pagnuicci  (ARDC No. 2134799)
John W. Moynihan  (ARDC No. 6212061)
Lisa A. Kistler  (ARDC No. 6273987)
SACHNOFF & WEAVER, LTD.
10 South Wacker Drive, Suite 4000
Chicago, Illinois  60606
(312) 207-1000

---

[11] Further, contrary to Defendants' assertions, the Treasurer's authority regarding the Rule is neither sole nor exclusive. *See Phoenix Bond & Indem. Co. v. Pappas*, 741 N.E.2d 248, 251 (Ill. 2000). Indeed, *Phoenix Bond*, a case cited by Defendants, clearly demonstrates that the court, not the Treasurer, makes the final determination as to the validity of whether the Treasurer's actions regarding a Rule comply with the law. *Id.* at 251-52.

                                                Harvey M. Silets  (ARDC No. 2604728)
Jonathan L. Marks  (ARDC No. 6227066)
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, Illinois  60661
(312) 902-5337

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 10, 2005, I electronically filed **Plaintiffs' Response to the Motion to Dismiss Filed by Defendants Douglas Nash, DRN II, Inc., Jeshay, LLC, and Mud Cats Real Estate, LLC** with the Clerk of the Court using the ECF system, which will send notification of such filings to the following:

| | |
|---|---|
| ***Attorney for Defendants John Bridge, Barrett Rochman and Sabre Group, LLC*** | Theodore M. Becker<br>Morgan Lewis & Bockius<br>77 West Wacker Drive, 5th Floor<br>Chicago, Illinois  60601 |
| ***Attorney for Defendants Robert Jensen, Joseph Varan, Cronus Projects, LLC, Gregory Ellis, GJ Venture, LLC, and L.C.C. Venture, LLC*** | Kevin J. Clancy<br>Martin W. McManaman<br>Patrick R. Moran<br>Lowis & Gellen LLP<br>200 West Adams Street, Suite 1900<br>Chicago, Illinois  60606 |
| ***Attorney for Defendants Jeffrey Bridge, Regal One, LLC, Jason Baumbach, Optimum Financial, Inc., and Carpus Investments, LLC*** | Elisha S. Rosenblum<br>Clifford G. Kosoff<br>O'Halloran, Kosoff, Geitner & Cook, P.C.<br>650 Dundee Road, Suite 475<br>Northbrook, Illinois  60062 |
| ***Attorney for Defendants Douglas Nash, DRN II, Inc., Jeshay, LLC, and Mud Cats Real Estate, LLC*** | David S. Rosenbloom<br>McDermott, Will & Emery LLP<br>227 West Monroe Street, Suite 4400<br>Chicago, Illinois  60606-5096 |
| ***Attorney for Defendants Francis Alexander and Georgetown Investors, LLC*** | Michael J. Kralovec<br>Joseph R. Lemersal<br>Sara R. McClain<br>Nash, Lalich & Kralovec, LLC<br>53 West Jackson Boulevard, Suite 1102<br>Chicago, Illinois  60604 |

2

and by U.S. Mail to the following non-registered party:

| *Attorney for Defendants Jesse Rochman, Corinne Rochman, Christopher Rochman, BRB Investments, LLC, and CCJ Investments, LLC* | Neil S. Ament<br>Law Office of Neil S. Ament<br>1955 Shermer Road, Suite 400<br>Northbrook, Illinois 60062 |
|---|---|

By: /s/ Lisa A. Kistler
      One of Plaintiffs' Attorneys

Lowell E. Sachnoff (ARDC No. 2438062)
Arnold A. Pagnuicci (ARDC No. 2134799)
John W. Moynihan (ARDC No. 6212061)
Lisa A. Kistler (ARDC No. 6273987)
SACHNOFF & WEAVER, LTD.
10 South Wacker Drive, Suite 4000
Chicago, Illinois 60606
(312) 207-1000