# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PHOENIX BOND & INDEMNITY CO., et al., | )<br>)<br>) No. 05 CV 4095 |
| Plaintiffs, | )<br>) |
| | ) Judge James F. Holderman |
| v. | )<br>) |
| | ) Magistrate Judge Ian H. Levin |
| JOHN BRIDGE et al., | )<br>) |
| Defendants. | )<br>) |

**PLAINTIFFS' RESPONSE TO THE MOTION TO DISMISS FILED BY DEFENDANTS
JOHN BRIDGE, BARRETT ROCHMAN, AND SABRE GROUP LLC**

Plaintiffs respectfully submit this Memorandum in response to the Motion to Dismiss filed by Defendants John Bridge, Barrett Rochman and Sabre Group LLC (the "Defendants").[1]

## FACTUAL BACKGROUND

Plaintiffs allege that Defendants secretly agreed before the annual Cook County tax sales to bid on behalf of Sabre Group, LLC. (Compl. ¶ 1.) Their acts violated the County Rule prohibiting related bidding entities from simultaneously participating in the sale. (*Id.*) The Defendants submitted to the Cook County Treasurer's Office registrations to participate in the tax sales—registrations in which Defendants falsely attested that they complied with the County Rule. (*Id.* ¶¶ 54, 61.) Their scheme was to participate unlawfully in the auctions, deprive Plaintiffs of liens they would have obtained but for the wrongful conduct, and reap the profit from those liens. (*Id.* ¶ 1.)

At the annual tax sale auction, the County distributes liens to the bidder who bids the lowest penalty rate. (Compl. ¶ 36.) At every sale since 2000, virtually every bid was 0%, the lowest possible rate. (*Id.*) When multiple bidders make the same bid, the auctioneer allocates liens on a rotational basis among the bidders in the room. (*Id.*) A party who has multiple bidders in the room gains a substantial advantage over those who comply with the Single Bidder Rule, permitting the party with multiple bidders to acquire a greater share of liens offered for sale. (*Id.* ¶¶ 36, 51.) To ensure the equal distribution of liens, the County's Rule limits all participants to one bidder and prohibits registered bidders from having surrogates buy liens for them at the sales. (*Id.* ¶ 51.) To enforce the Single Bidder Rule, each bidder must represent under oath in submissions to the County, among other things, that the bidder did not share capital, finances, ownership, or source of funds with another bidder; that it had no agreements to

---

[1] Six groups of Defendants have filed separate motions to dismiss Plaintiffs' Complaint. To the extent that a Defendant relies upon, cross-references and adopts other Defendants' arguments in their motions, the Plaintiffs also rely upon, cross-reference and adopt Plaintiffs' arguments contained in Plaintiffs' six response briefs.

purchase or sell liens it acquired to another bidder; and that it did not stand to benefit financially under an agreement with another bidder concerning liens bid on or purchased. (*Id.* ¶ 54.)

Defendants engaged in a fraudulent scheme to increase the number of bidders at the auction and thereby obtain more liens. (Compl. ¶ 52.) A series of entities were formed to create the impression that they were separate bidders. (*Id.* ¶ 53.) These entities registered to bid at the sales and represented that they were separate and unrelated. (*Id.*) These representations were false because the entities were, in fact, related and/or had agreements in advance of the sale to transfer their liens to Defendant Sabre Group after the auction. (*Id.* ¶¶ 61, 62.) Defendants obtained liens from the County and the related profits that would have been obtained by Plaintiffs absent Defendants' scheme.

Despite Defendants' contentions, Plaintiffs are not seeking to enforce the County Rule or to recover any damages of the County or the underlying property owners. Plaintiffs seek to recover profits that Defendants obtained and that Plaintiffs would have obtained but for Defendants' scheme to defraud, as well as injunctive relief to prevent such conduct in the future. (Compl. ¶¶ 56, 64, 92.) Plaintiffs' claims are based on the Federal RICO Statute and on tortious interference with prospective business advantage under Illinois common law.

The predicate acts underlying Plaintiffs' RICO claim are Defendants' violations of the mail fraud statute. Defendants' scheme involved deceiving the County with misrepresentations in Defendants' registration applications for the tax sales that occurred in calendar years 2002, 2003, 2004 and 2005. (Compl. ¶¶ 61, 70, 76, 78, 83, 94.) Through Defendants' scheme, Defendants sought to, and did, obtain property, *i.e.* the tax liens and the profits on those tax liens. The "Take Notice" mailings were an essential part of the Defendants' scheme because the Defendants were precluded from obtaining the profits on the liens they acquired if the "Take Notices" were not mailed. (*Id.* ¶ 40.)

**ARGUMENT**

In considering a motion to dismiss, the court must take all material allegations of the complaint as true and liberally construe those allegations in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). It is well established that a court may not grant a motion to dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Here, the facts and permissible inferences in the Complaint sufficiently plead Plaintiffs' causes of action under RICO and the state law claim of tortious interference with prospective business advantage. Defendants only argue to the contrary by wrongly relying on facts not in the Complaint, misapplying Seventh Circuit precedent and misconstruing applicable pleading standards. As such, Defendants' Motion should be denied in its entirety.

**I. THE COMPLAINT ALLEGES A RICO CAUSE OF ACTION**

**A. Defendants' Mail Fraud Violations Constitute Racketeering Activity Under RICO**

The racketeering activity that forms the basis of Plaintiffs' RICO claim is Defendants' violations of the Mail Fraud Statute. The elements of mail fraud are (1) a scheme to defraud and (2) the use of the U.S. mails in furtherance of that scheme. *See Messinger v. United States*, 872 F.2d 217, 221 (7th Cir. 1989). Both of these elements are present here and, accordingly, the Complaint should not be dismissed for lack of racketeering activity.

**1. Defendants Participated In A Scheme To Defraud**

First, with respect to the requirement of a scheme to defraud, Plaintiffs' allegations regarding Defendants' scheme are really quite simple. Defendants wanted to obtain more liens and the profits from those liens than they would be entitled to receive had they complied with the rules and practices utilized by the County in running its annual tax auction. In order to do so, Defendants lied to the County about its pre-auction agreements with other bidders. It was

through this deception that Defendants were able to obtain liens from the County and the profits related to those liens that other eligible bidders, such as Plaintiffs, would have received absent Defendants' scheme. These allegations are more than sufficient to constitute a scheme to defraud under mail fraud. *See United States v. Wolf*, No. 92 CR 737, 1993 WL 169271, at *4-5 (N.D. Ill. May 18, 1993) (holding that allegations that a defendant lied to the County to participate in a tax auction during which the defendant obtained tax liens constituted a fraudulent scheme under mail fraud).

Defendants' main argument that Plaintiffs have not adequately pled a fraudulent scheme is that no scheme can be established because Defendants did not violate the County's Single Bidder Rule when they transferred liens after the auction. (*See* Defs.' Mem. at 9.) This argument, however, misstates Plaintiffs' allegations. Plaintiffs do not allege that Defendants only agreed to sell or purchase tax liens after the sale. Plaintiffs allege that Defendants had *pre-auction* agreements with other bidders in violation of the rule. (*See, e.g.,* Compl. ¶¶ 53, 58.) The Court should also reject Defendants' argument that even if Defendants did violate the County's rules, such a violation cannot be a basis for a fraudulent scheme because County rules do not "carry the weight or effect of a statute or regulation created by a legislative body." (*See* Defs.' Mem. at 8-9.) Whether the County's rules carry the weight of a statute makes no difference here, however, because the mail fraud statute does not require that the ultimate objective of the scheme result in a violation of state criminal law. *See Wolf*, 1993 WL 169271, at *3.[2]

---

[2] Similarly, there is no merit to Defendants' argument that there can be no mail fraud because the Cook County Treasurer has exclusive discretion to determine if her Single Bidder Rule has been violated and she has taken no action against Defendants. This case is not about whether Defendants should be sanctioned under the penalty provisions of the Rule, and Plaintiffs have not brought suit to enforce the Rule. Rather, it alleges that Defendants made fraudulent statements to the County as part of a scheme to defraud that was intended to injure Plaintiffs and is actionable under RICO. Moreover, that the Treasurer has not challenged Defendants' conduct to be a violation does not mean that the Treasurer sanctioned that conduct. Indeed, the whole point of the scheme was to deceive the County so it would allow Defendants to bid and would not take action against them. There are many reasons the Treasurer may not have acted, including that, as alleged in the Complaint, Defendants' scheme worked and deceived the Treasurer.

### 2. Defendants Utilized The Mails In Furtherance Of Their Fraudulent Scheme

Defendants argue that Plaintiffs fail to meet the "in furtherance" requirement necessary to establish mail fraud because Defendants caused the County to mail the 22-5 notices or "Take Notices" after the tax sale and Defendants made their false statements to the County before the sale. (*See* Defs.' Mem. at 10.) The Court in *Wolf*, however, rejected this very argument. There, the defendant made misrepresentations to the County before the tax sale regarding his ownership interest in the properties on which he bid during the sale. *Wolf*, 1993 WL 169271, at *1. At the sale he then purchased the liens on the properties on which he was the actual owner and after the sale caused the County to mail take notices. *Id*. The defendant argued that the in furtherance requirement for mail fraud could not be met because the take notices were sent after the defendants' fraudulent misstatements to the County. *Id*. at *5-6. The court, however, rejected this argument in holding that "although the take notice mailings may not have contributed directly to the duping of the victim, *the mailings were incident to an essential part of Wolf's scheme, the avoidance of real estate taxes*." *Id.* at *7 (emphasis added, internal quotation marks and citations omitted). *See also Schmuck v. United States*, 489 U.S. 705, 710-15 (1989). Here, because Defendants cannot obtain any profit or their cash investment in the liens purchased if they fail to cause the Take Notices to be mailed, the mailings are a necessary and essential part of their fraudulent scheme.

### B. Plaintiffs Have Sufficiently Alleged An Enterprise

The Complaint meets the enterprise requirement in that it clearly alleges an "association-in-fact" enterprise comprised of all Defendants, which it defines as the "Rigged Bidding Enterprise." (Compl. ¶¶ 106-110.)[3] Defendants argue that Plaintiffs' Rigged Bidding Enterprise

---

[3] Defendants' argument that Sabre Group, LLC is alleged to be an association-in-fact enterprise is simply a misreading of the Complaint. The Complaint alleges two alternate enterprises. The Enterprise in Counts III and IV, Sabre Group, LLC, is separate from the Rigged Bidding Enterprise named in Counts I

allegations fail because the Complaint does not establish a difference between the defendant and the enterprise. (*See* Defs.' Mem. at 11.) However, as *Haroco, Inc. v. American Nat'l Bank & Trust Co.*, 747 F.2d 384 (7th Cir. 1984), a case upon which Defendants rely, makes clear, where an association-in-fact rather than a corporation is named as the enterprise, the association-in-fact may be the enterprise and "each participant in the enterprise may be a 'person' liable under RICO." *Id.* at 401. Thus, as here, where the enterprise is alleged to be an association-in-fact, which includes the defendants, the parties constituting the enterprise and the defendants need not be different. *Id. See also Trak Microcomputer Corp. v. Wearne Bros.*, 628 F. Supp. 1089, 1095 (N.D. Ill. 1985) (ruling that plaintiffs adequately alleged an "enterprise" within the meaning of RICO where the alleged enterprise was the association-in-fact of four corporate defendants, and the alleged liable persons were the same four corporate defendants). The Court should reject Defendants' arguments that an enterprise has not been sufficiently alleged.[4]

## II. PLAINTIFFS HAVE STANDING TO ASSERT THEIR RICO CLAIMS

### A. Plaintiffs Have Standing Under RICO Because They Were The Intended Victims of Defendants' Fraudulent Scheme

The Seventh Circuit has held that where, as here, plaintiffs are the intended victims of defendants' scheme to defraud, plaintiffs have standing under RICO. *See In re EDC, Inc.*, 930 F.2d 1275, 1279 (7th Cir. 1991). This is true even if plaintiffs are not the "primary victim" of the fraudulent scheme. *Id.* (reasoning that even though third party was the primary victim of the

---

and II. Defendants' association-in-fact arguments are inapplicable to Counts III and IV. As a "corporation," the Sabre Group clearly qualifies as an enterprise. 18 U.S.C. § 1961(4).

[4] Further, despite Defendants' contentions to the contrary, the Complaint does allege that the Rigged Bidding Enterprise has sufficient "structure, purpose and continuity." (*See, e.g.,* Compl. ¶¶ 53, 55, 107 (laying out agreements between the parties, structure, purpose, and roles played by each member and alleging how the scheme would have been beyond the capacity of each member acting alone).) Further, it is clear that the Enterprise does not fail for lack of continuity as the Complaint specifically alleges that the Defendants operated their fraudulent scheme over several years at different tax auctions, injuring numerous victims. (*See, e.g.*, *id.* ¶ 1.) *See also Morgan v. Bank of Waukegan*, 804 F.2d 970, 976 (7th Cir. 1986) (upholding RICO claim where plaintiffs alleged that defendants harmed two victims (a husband and wife) through a "single grand scheme" to defraud, furthered through mailings over a four–year period related to the separate foreclosure sales).

scheme, plaintiffs still had standing to sue under RICO based on mail and wire fraud because they were also intended victims).[5]

Plaintiffs here have alleged in considerable detail that they were the intended victims of Defendants' scheme, which was furthered by use of the mails. (*See, e.g.*, Compl. ¶¶ 63, 74, 90 ("By filing . . . false registration form[s] that failed to disclose the agreements among the[] [Defendant] entities to bid for the benefit of Sabre, each bid that [Defendant entities] made at the [respective] tax auction[s] was a step implementing the fraud on the Cook County Treasurer's Office, with the intended victims being . . . [Plaintiffs].").) As the Seventh Circuit reasoned in *EDC*, it makes no difference for standing purposes that the County was also victimized by Defendants' scheme to defraud. *In re EDC*, 930 F.2d at 1279. Rather, it is sufficient for Plaintiffs to allege that they were among the intended victims of the fraudulent scheme and that they suffered injury as a result. Plaintiffs have done that and, accordingly, have standing to bring this suit under RICO.

### B. Plaintiffs Have Standing To Maintain A RICO Action Predicated On Mail Fraud

Despite Plaintiffs' standing under RICO as the intended victims, Defendants argue that regardless of their intent to harm Plaintiffs, Plaintiffs do not have standing to assert their RICO claims because business rivals who suffer lost business opportunities are not among the individuals protected by the mail fraud statute, *i.e.*, they are outside of the statute's "zone of interest." (*See* Defs.' Mem. at 3.) In support of this argument, Defendants rely heavily on language contained in the Seventh Circuit's decision in *Israel Travel Advisory Service, Inc. v.*

---

[5] After determining that plaintiffs had standing to complain about the alleged fraud, even though they were not its primary victims, the Seventh Circuit in *EDC* went on to hold that plaintiffs' evidence at trial failed to meet their burden that defendants intended to create a fraudulent scheme in the first place. *See In re EDC,* 930 F.2d at 1280-81. Notably, there is no such issue here as Plaintiffs have more than adequately pled that Defendants intended to create a fraudulent scheme to defraud Cook County in order to gain access into the tax auction. (*See supra* at 3-4.)

*Israel Identity Tours, Inc.*, 61 F.3d 1250 (7th Cir. 1995). In so doing, however, Defendants both misstate and misapply *Israel Travel*'s holding.

> **1.** ***Israel Travel* Firmly Establishes That A Business Rival Can Maintain A RICO Action Where It Suffers Injuries Based On Statements Made To Third Parties**

*Israel Travel* involved a dispute between two competing travel agencies that specialized in organizing trips to Israel. *Israel Travel*, 61 F.3d at 1253. The plaintiff travel agency brought a number of claims against the defendant, including a RICO claim, which was based on allegations that the defendant agency mailed false advertisements to plaintiff's potential customers. *Id*. at 1253-54. The District Court granted summary judgment in favor of the defendant travel agency reasoning that the plaintiff could not sustain a RICO claim because plaintiff itself did not receive the false advertisements. *Id*. at 1257. Therefore, as the District Court reasoned, plaintiff's injury was only an indirect one and not cognizable under RICO. *Id.* The Seventh Circuit, however, disagreed with the District Court that RICO precludes recovery for injuries that are transmitted indirectly. *Id.* Rather, the Seventh Circuit expressly stated that RICO indeed "allows suits when the predicate offenses influence customers and, derivatively, injure business rivals." *Id.*[6]

In so determining that derivative injuries suffered by competitors are recoverable under RICO, the Seventh Circuit expressly adopted the Fourth Circuit's reasoning in *Mid Atlantic Telecom, Inc. v. Long Distance Services, Inc.*, 18 F.3d 260 (4th Cir. 1994). *See Israel Travel*, 61 F.3d at 1257. There, the plaintiff, a telecommunications reseller, brought a RICO claim against

---

[6] The Seventh Circuit in *Israel Travel* also rejected the concept that the plaintiff itself must read and rely on a misrepresentation to maintain a RICO action. Specifically, the District Court in *Israel Travel* had previously held that based on language contained in the Seventh Circuit's decision in *In re EDC*, 930 F.2d 1275 (7th Cir. 1991), the plaintiff must show that it received and relied on the misrepresentation to establish a RICO claim based on the predicate offenses of mail and wire fraud. *Israel Travel Advisory Serv., Inc. v. Israel Identity Tours, Inc.*, No. 92 C 2379, 1993 WL 15503, at *3 (N.D. Ill. May 10, 1993). The Seventh Circuit, however, expressly rejected this reasoning and instead determined that reliance on the misrepresentation is not required under RICO. *Israel Travel*, 61 F.3d at 1257-58 (rejecting lower court's analysis regarding plaintiff's reliance on misrepresentations as simply "restat[ing] the conclusion that derivative injury is never cogizable under RICO" that the Seventh Circuit had just rejected). Accordingly, any attempts by Defendants to argue that Plaintiffs here must have received and relied on the misrepresentations to sustain a RICO action should be rejected.

its competitor alleging that it was injured by the competitor's fraudulent billing scheme because the scheme caused plaintiff to lose profits as it lowered its rates to compete effectively. *Mid Atlantic*, 18 F.3d at 261. As here, the predicate act involved was mail fraud, as well as wire fraud. *Id.* In reversing the lower court's dismissal of the complaint, the Fourth Circuit held that plaintiff could maintain a RICO claim because it was not seeking to vindicate the rights of its former customers who were fraudulently billed by the defendant. *Id*. at 264. Rather, it was seeking to redress its own direct and distinct injuries. *Id.* The court held that the motion to dismiss should have been denied, and that plaintiff should be given the opportunity to prove causation and intended injury through discovery. *Id.* at 263.

As in *Mid Atlantic*, Plaintiffs here have also suffered direct and distinct injuries. Through their fraudulent scheme, Defendants impermissibly multiplied the number of bidders they had at the auctions. As a direct result, under the County's rotational system for fairly distributing liens at the annual tax auction, Defendants obtained more liens and Plaintiffs received fewer liens than they would have but for the fraudulent conduct. As such, Defendants seized for themselves the liens and corresponding profits that rightfully belonged to Plaintiffs. While the County was also defrauded, Plaintiffs' loss of liens and profits is different and distinct from any injury that may have been suffered by the County. As such, Plaintiffs have standing to bring their RICO claims to recover their lost profits caused by Defendants' scheme. *See Israel Travel*, 61 F.3d at 1257.

    **2.   The *Israel Travel* Vendor Analysis Cannot Be Extended To Preclude Plaintiffs' Claims**

After determining, as discussed above, that a RICO suit *can* be maintained by a business rival for injuries based on statements made to third parties, the Seventh Circuit in *Israel Travel* went on to affirm the granting of summary judgment for the defendant reasoning that the vendor plaintiff could not premise its RICO action on mail fraud because the mail fraud statute was not enacted to protect vendors who suffer derivative injuries when false advertisements are sent to its

9

potential customers. *Israel Travel*, 61 F.3d at 1258. Defendants' attempt to expand this holding to preclude a competitor from *ever* bringing a RICO claim predicated on mail fraud where the scheme deceived a third party resulting in a direct injury to the competitor should be rejected.

Defendants' argument is misplaced and ignores the fact that *Israel Travel* expressly accepted the reasoning in *Mid Atlantic*, where the court refused to dismiss plaintiff's RICO claims alleging that it was injured by a business rival when that business rival mailed fraudulent materials to a third party. Despite the fact that the deceptive mailings were not directed at the plaintiff, it was still able to maintain a RICO action to recover its damages. *See Mid Atlantic*, 18 F.3d at 261, 264.

Furthermore, Defendants' claim that Plaintiffs are not protected by the mail fraud statute because "lost business opportunities are not within the 'zone of interests' protected by the mail fraud statute" is a complete misstatement of the *Israel Travel* decision. (*See* Defs.' Mem. at 3.) Specifically, Defendants argue emphatically that the Seventh Circuit adopted the Ninth Circuit's reasoning in *Lancaster Community Hospital v. Antelope Valley Hospital District*, 940 F.2d 397, 405 (9th Cir. 1991), that lost opportunities are not property under the mail fraud statute. In reality, the *Israel Travel* Court stated just the opposite – that lost business opportunities are property under Section 1341. *Israel Travel*, 61 F.3d at 1258 ("Lost business opportunities . . . *are* property as § 1341 used that term before the amendment.") (emphasis added). Rather, the *Israel Travel* court held that vendors are not protected by the mail fraud statute as to the indirect and derivative injury the vendor suffers from its reduced sales when its potential customers fall prey to a competitor's false advertising.

This is not a case, however, involving a vendor trying to recover its damages indirectly caused by its potential customers deciding to buy from the deceptive competitor. On the contrary, Plaintiffs are unmistakably among the group of intended victims of Defendants'

fraudulent scheme to obtain more than their fair share of liens available at the annual tax sales and, as such, are among the individuals protected by the mail fraud statute. *See supra* at 6-7; *see also In re EDC*, 930 F.2d at 1279-81; *Mid Atlantic*, 18 F.3d at 263. Indeed, Defendants' entire scheme was concocted to gain an impermissible advantage over Plaintiffs by intentionally violating the County's Single Bidder Rule – a rule that was put in place to ensure that liens are equally distributed to bidders, like Plaintiffs.[7]

Further, Plaintiffs' damages are unlike the indirect and derivative injuries alleged by the vendor plaintiffs in *Israel Travel* and *Lancaster*. In both of those cases, the vendor plaintiffs' claimed damages were derivative of and dependent upon the injury to their customers because the vendors' damages were their lost profits from the amount the customer paid to the vendors' competitor. As such, the vendor plaintiffs' injury from fraudulently lost sales to its competitor was merely a subset of the amount the customer paid to plaintiffs' competitor due to the scheme. Conversely, Plaintiffs' damages here, the lost profits on the liens obtained by Defendants, are a direct injury and distinct from any damages suffered by the County. Through the tax lien auction, the tax buyer pays the County the taxes it is owed on the property. The County has no legal interest in any of the tax buyer's profits, whether from the penalty rate or the sale of the property after it goes to deed. (Compl. ¶¶ 32, 38, 39.) Thus, Plaintiffs' lost profit damages are not a subset of any injury of or payment to the County. Additionally, unlike in *Israel Travel* and *Lancaster*, Plaintiffs' damages are not dependent on the unpredictable actions of some third party. Rather, Defendants' fraudulent scheme was squarely directed at Plaintiffs, and Plaintiffs'

---

[7] Including Plaintiffs within the individuals protected by the mail fraud statute is consistent with the Sentencing Guidelines, which the court in *Israel Travel* looked to for guidance on whether the vendors in *Israel Travel* were protected under the mail fraud statute. *Israel Travel*, 61 F.3d at 1258. Specifically, the Sentencing Guidelines define loss in actions involving fraud as the greater of the "actual loss" or "intended loss." *See* U.S.S.G. § 2B1.1, Application Note 3. Therefore, if, as Plaintiffs allege, they were among the group that Defendants intended to harm, their losses would be factored into the loss analysis under the Sentencing Guidelines.

11

damages are the direct result of that fraudulent scheme and are not dependent on the actions of any third party.

Accordingly, Plaintiffs are not like vendors seeking to recovery a portion of the amount a third party, a potential customer, paid to their competitor due to a false advertising scheme. Instead, Plaintiffs were among the group of intended victims of the fraudulent scheme who suffered direct, distinct and independent injuries from Defendants' conduct. Plaintiffs are, therefore, among those protected by the mail fraud statute and as such have standing to assert the alleged RICO claims.[8]

### III. PLAINTIFFS HAVE PLED THE FACTS SURROUNDING DEFENDANTS' FRAUDULENT SCHEME WITH PARTICULARITY

While Rule 9(b) requires that alleged misrepresentations must be pled with specificity, the Rule requires a RICO plaintiff allege "only a general outline of the alleged fraud scheme — one sufficient to reasonably notify the defendants of their purported role in the scheme." *Senior Income Reverse Mortgage Corp. v. Olson*, No. 98C7250, 1999 WL 350836, at *6 (N.D. Ill. May 19, 1999) (citations omitted); *see also* Fed. R. Civ. P. 9(b) (it is "the circumstances constituting fraud [that] . . . shall be stated with particularity) (emphasis added). Plaintiffs' Complaint more than meets these standards as it explicitly alleges the who, what, where and how of the fraudulent statements. Specifically, as to each Defendant, it alleges Defendants submitted registration statements to the County Treasurer containing attestations of fact that supported the conclusion

---

[8] The holdings in *Honorable v. Easy Life Real Estate System, Inc.*, 182 F.R.D. 553 (N.D. Ill. 1998), and *Associated Bodywork & Massage Professionals v. American Massage Therapy Association*, 897 F. Supp. 1116 (N.D. Ill. 1995), two cases upon which Defendants rely, do not change this result. Indeed, *Honorable* did not even involve a RICO action predicated on mail fraud, but rather was based on allegations that defendant violated the bank fraud statute, thereby, injuring homeowners. *Honorable*, 182 F.R.D. at 563. Further, as for *Associated Bodywork*, there plaintiff alleged that it was injured when defendant sent false information to the legislature, causing it to pass certain legislation. *Associated Bodywork*, 897 F. Supp at 1121. The court rejected the RICO claim because the "injury [to plaintiff] complained of stems . . . from political decisions to legislate, not Defendant's conduct." *Id.* Here, as discussed above, Plaintiffs' lost profit injuries stem directly from Defendants' misrepresentations to the County about its bidder status.

that they were not related bidding entities as defined in the Rule. (*See, e.g.,* Compl. ¶¶ 53-59, Exs. A, C.) The Complaint alleges that these statements were false because Defendants were, in fact, related entities and had pre-auction agreements, and, thus, were in violation of the Rule. (*See, e.g., Id.*) It describes in detail how the scheme increased the number of bidders at the auction, permitting Defendants to obtain more liens and how Defendants then transferred these liens to Sabre Group. (*See, e.g., Id.* ¶¶ 59, 61, 69.) Throughout, the Complaint specifically identifies the roles of each particular Defendant in the scheme.[9]

Furthermore, the damages alleged by Plaintiffs satisfy Rule 8's more relaxed pleading requirements.[10] Plaintiffs allege that given the rotational allocation system of the Cook County tax sale (Compl. ¶ 36), they would have obtained liens acquired fraudulently by Defendants. (*See, e.g.*, *id.* ¶ 120.) Accordingly, Plaintiffs allege that due to Defendants' conduct, Plaintiffs lost the liens, deeds and resulting profits. (*Id.*) Defendants complain that Plaintiffs' allegations with respect to their damages fail because Plaintiffs did not itemize the specific properties they would have acquired but for Defendants' conduct. (*See* Defs.' Mem. at 6.) Plaintiffs, however, are not required to identify or itemize in the Complaint the specific properties they would have acquired but for Defendants' conduct. *See Williams v. Sabin*, 884 F. Supp. 294, 296 (N.D. Ill. 1995) (rejecting argument that fraud claim should be dismissed for failure to sufficiently plead

---

[9] Defendants complain that Plaintiffs have not set forth the mailings with sufficient particularity because Plaintiffs do not state the identity of the property holder that received the mailings. However, Rule 9(b) does not apply where, as here, it is not alleged that "the mailings or wire transmissions themselves" are false or misleading. *See Jerome M. Sobel & Co. v. Fleck*, No. 03 Civ. 1041, 2003 WL 22839799, at *5 (S.D.N.Y. Dec. 1, 2003). Further, even if Rule 9(b) does apply, Plaintiffs have certainly provided sufficient information regarding the mailings, including the date of the mailing and the PIN number for the property related to the mailing. (*See* Compl. ¶¶ 95-104; *see also* Compl. Exs. D-L.)

[10] While Rule 9(b) applies to the specifics of alleged misrepresentations, notice pleading requirements of Rule 8 apply to allegations regarding damages. *See Smith v. Short Term Loans, LLC*, No. 99 C 1288, 2001 WL 127303, at *6 (N.D. Ill. Feb. 14, 2001) (refusing to dismiss fraud claim for failure to sufficiently allege damages because "more particularity is not required as to damages (and similarly causation) where the facts alleged are sufficient to put the defendant on notice of the who, what, where, when, and how of the misleading practice").

specific damages because plaintiffs' damages theory would become more clear during discovery).[11]

## IV. PLAINTIFFS HAVE SUFFICIENTLY PLED TORTIOUS INTERFERENCE

Defendants argue that Plaintiffs' tortious interference with prospective business advantage claim should be dismissed because Plaintiffs have not sufficiently pled a reasonable expectation of entering into a valid business relationship. (*See* Defs.' Mem. at 13.) Defendants' argument misses the mark because given the closed bidding market and rotational system environments in which the tax sale operations, Plaintiffs most certainly had a reasonable expectation of entering into valid business relationships. (*See* Compl. ¶ 36.)

Specifically, admission to the auction requires registration and attestation with the Treasurer, resulting in a select pool composed of properly registered prospective tax buyers that have the opportunity to bid for and purchase liens. If one is not registered, one cannot bid. (*See* Compl. ¶ 35.) Those who have properly registered, therefore, have a reasonable expectation that they will have a business relationship stemming from that registration with both the County and the property owner – namely, the right to receive redemption of the underlying lien amount and penalty from the property owner and the right to acquire title to the property if the lien is not redeemed through the authority of the County. Further, when more than one buyer bids the same lowest penalty rate (as is routinely the case, *see id*. ¶ 36), the rotational allocation system provides for a fair, predictable apportionment of liens. The auction's rotational allocation system meant that Plaintiffs could expect that they would acquire liens that Defendants instead captured through their fraudulent scheme. In addition, Plaintiffs have properly pled a knowing,

---

[11] Defendants also argue that Plaintiffs cannot allege that they would have profited from any of the liens they would have acquired but for Defendants' fraud. (Defs.' Mem. at 7.) This argument is specious at this stage in the proceedings given that damage allegations need only satisfy Rule 8 notice pleading requirements and Plaintiffs allegations that they lost profit and Defendants engaged in the scheme to profit must be accepted as true. How much they would have profited is not something that need be established at this time.

14

purposeful interference with their business expectancy. Through their fraudulent bidding arrangement, Defendants knowingly provided false attestations to the County regarding the County's Single Bidder Rule. Defendants' scheme sought to obtain liens and the related profits that otherwise would have gone to legitimate bidders, and, therefore, Plaintiffs (and other bidders) were the scheme's intended victims.[12]

## CONCLUSION

For the reasons set forth in this Memorandum, Plaintiffs respectfully request that this Court deny Defendants' Motion To Dismiss in its entirety.

Dated: November 10, 2005

**Plaintiffs Phoenix Bond & Indemnity Co., Oak Park Investments, Inc., and BCS Services, Inc.**

By: ___/s/_ Lowell E. Sachnoff_____
    One of Their Attorneys

Lowell E. Sachnoff (ARDC No. 2438062)
Arnold A. Pagnuicci (ARDC No. 2134799)
John W. Moynihan (ARDC No. 6212061)
Lisa A. Kistler (ARDC No. 6273987)
SACHNOFF & WEAVER, LTD.
10 South Wacker Drive, Suite 4000
Chicago, Illinois 60606
(312) 207-1000

Harvey M. Silets (ARDC No. 2604728)
Jonathan L. Marks (ARDC No. 6227066)
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, Illinois 60661
(312) 902-5337

---

[12] Defendants also argue that Plaintiffs' tortious interference claim should be dismissed because their claimed damages are too speculative. Plaintiffs, however, have more than satisfied the pleading requirements with respect to their damages. (*See supra* at 14.) Indeed, as a result of their scheme, Defendants acquired an additional 2,280 tax liens, at a value of over $6.6 million, during the 2004 tax auction alone. (Compl. ¶ 91.)

# CERTIFICATE OF SERVICE

I hereby certify that on November 10, 2005, I electronically filed **Plaintiffs' Response to the Motion to Dismiss Filed by Defendants John Bridge, Barrett Rochman, and Sabre Group LLC** with the Clerk of the Court using the ECF system, which will send notification of such filings to the following:

| | |
|---|---|
| *Attorney for Defendants John Bridge, Barrett Rochman and Sabre Group, LLC* | Theodore M. Becker<br>Morgan Lewis & Bockius<br>77 West Wacker Drive, 5th Floor<br>Chicago, Illinois  60601 |
| *Attorney for Defendants Robert Jensen, Joseph Varan, Cronus Projects, LLC, Gregory Ellis, GJ Venture, LLC, and L.C.C. Venture, LLC* | Kevin J. Clancy<br>Martin W. McManaman<br>Patrick R. Moran<br>Lowis & Gellen LLP<br>200 West Adams Street, Suite 1900<br>Chicago, Illinois  60606 |
| *Attorney for Defendants Jeffrey Bridge, Regal One, LLC, Jason Baumbach, Optimum Financial, Inc., and Carpus Investments, LLC* | Elisha S. Rosenblum<br>Clifford G. Kosoff<br>O'Halloran, Kosoff, Geitner & Cook, P.C.<br>650 Dundee Road, Suite 475<br>Northbrook, Illinois  60062 |
| *Attorney for Defendants Douglas Nash, DRN II, Inc., Jeshay, LLC, and Mud Cats Real Estate, LLC* | David S. Rosenbloom<br>McDermott, Will & Emery LLP<br>227 West Monroe Street, Suite 4400<br>Chicago, Illinois  60606-5096 |
| *Attorney for Defendants Francis Alexander and Georgetown Investors, LLC* | Michael J. Kralovec<br>Joseph R. Lemersal<br>Sara R. McClain<br>Nash, Lalich & Kralovec, LLC<br>53 West Jackson Boulevard, Suite 1102<br>Chicago, Illinois  60604 |

and by U.S. Mail to the following non-registered party:

| *Attorney for Defendants Jesse Rochman, Corinne Rochman, Christopher Rochman, BRB Investments, LLC, and CCJ Investments, LLC* | Neil S. Ament<br>Law Office of Neil S. Ament<br>1955 Shermer Road, Suite 400<br>Northbrook, Illinois  60062 |
|---|---|

By:     /s/  Lisa A. Kistler
             One of Plaintiffs' Attorneys

Lowell E. Sachnoff  (ARDC No. 2438062)
Arnold A. Pagnuicci  (ARDC No. 2134799)
John W. Moynihan  (ARDC No. 6212061)
Lisa A. Kistler  (ARDC No. 6273987)
SACHNOFF & WEAVER, LTD.
10 South Wacker Drive, Suite 4000
Chicago, Illinois  60606
(312) 207-1000