**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| PHOENIX BOND & INDEMNITY CO., et al., | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) ) |
| JOHN BRIDGE et al., | ) ) |
| Defendants. | ) ) |

No. 05 CV 4095

Judge James F. Holderman

Magistrate Judge Ian H. Levin

**PLAINTIFFS' RESPONSE TO THE MOTION TO DISMISS FILED BY DEFENDANTS
JEFFREY BRIDGE, JASON BAUMBACH, REGAL ONE, LLC,
<u>OPTIMUM FINANCIAL, INC. AND CARPUS INVESTMENTS, LLC</u>**

Plaintiffs respectfully submit this Memorandum in response to the Motion to Dismiss filed by Defendants Jeffrey Bridge, Jason Baumbach, Regal One, LLC, Optimum Financial, Inc. and Carpus Investments, LLC (the "Defendants").[1]

## FACTUAL BACKGROUND

Plaintiffs allege that Defendants secretly agreed before the annual Cook County tax sales to bid on behalf of Sabre Group, LLC. (Compl. ¶ 1.) Their acts violated the County Rule prohibiting related bidding entities from simultaneously participating in the sale. (*Id.*) The Defendants submitted to the Cook County Treasurer's Office registrations to participate in the tax sales—registrations in which Defendants falsely attested that they complied with the County Rule. (*Id.* ¶¶ 54, 61.) Their scheme was to participate unlawfully in the auctions, deprive Plaintiffs of liens they would have obtained but for the wrongful conduct, and reap the profit from those liens. (*Id.* ¶ 1.)

At the annual tax sale auction, the County distributes liens to the bidder who bids the lowest penalty rate. (Compl. ¶ 36.) At every sale since 2000, virtually every bid was 0%, the lowest possible rate. (*Id.*) When multiple bidders make the same bid, the auctioneer allocates liens on a rotational basis among the bidders in the room. (*Id.*) A party who has multiple bidders in the room gains a substantial advantage over those who comply with the Single Bidder Rule, permitting the party with multiple bidders to acquire a greater share of liens offered for sale. (*Id.* ¶¶ 36, 51.) To ensure the equal distribution of liens, the County's Rule limits all participants to one bidder and prohibits registered bidders from having surrogates buy liens for them at the sales. (*Id.* ¶ 51.) To enforce the Single Bidder Rule, each bidder must represent

---

[1] Six groups of Defendants have filed separate motions to dismiss Plaintiffs' Complaint. To the extent that a Defendant relies upon, cross-references and adopts other Defendants' arguments in their motions, the Plaintiffs also rely upon, cross-reference and adopt Plaintiffs' arguments contained in Plaintiffs' six response briefs.

1

under oath in submissions to the County, among other things, that the bidder did not share capital, finances, ownership, or source of funds with another bidder; that it had no agreements to purchase or sell liens it acquired to another bidder; and that it did not stand to benefit financially under an agreement with another bidder concerning liens bid on or purchased. (*Id.* ¶ 54.)

Defendants engaged in a fraudulent scheme to increase the number of bidders at the auction and thereby obtain more liens. (Compl. ¶ 52.) A series of entities were formed to create the impression that they were separate bidders. (*Id*. ¶ 53.) These entities registered to bid at the sales and represented that they were separate and unrelated. (*Id*.) These representations were false because the entities were, in fact, related and/or had agreements in advance of the sale to transfer their liens to Defendant Sabre Group after the auction. (*Id.* ¶¶ 61, 62.) Defendants obtained liens from the County and the related profits that would have been obtained by Plaintiffs absent Defendants' scheme.

Despite Defendants' contentions, Plaintiffs are not seeking to enforce the County Rule or to recover any damages of the County or the underlying property owners. Plaintiffs seek to recover profits that Defendants obtained and that Plaintiffs would have obtained but for Defendants' scheme to defraud, as well as injunctive relief to prevent such conduct in the future. (Compl. ¶¶ 56, 64, 92.) Plaintiffs' claims are based on the Federal RICO Statute and on tortious interference with prospective business advantage under Illinois common law.

The predicate acts underlying Plaintiffs' RICO claim are Defendants' violations of the mail fraud statute. Defendants' scheme involved deceiving the County with misrepresentations in Defendants' registration applications for the tax sales that occurred in calendar years 2002, 2003, 2004 and 2005. (Compl. ¶¶ 61, 70, 76, 78, 83, 94.) Through Defendants' scheme, Defendants sought to, and did, obtain property, *i.e.* the tax liens and the profits on those tax liens.

The "Take Notice" mailings were an essential part of the Defendants' scheme because the Defendants were precluded from obtaining the profits on the liens they acquired if the "Take Notices" were not mailed. (*Id.* ¶ 40.)

## **ARGUMENT**

In considering a motion to dismiss, the court must take all material allegations of the complaint as true and liberally construe those allegations in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). It is well established that a court may not grant a motion to dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Here, the facts and permissible inferences in the Complaint sufficiently plead Plaintiffs' causes of action under RICO and the state law claim of tortious interference with prospective business relations. As such, Defendants' Motion should be denied in its entirety.

## I. THE COMPLAINT ALLEGES A RICO CAUSE OF ACTION

### A. Defendants' Mail Fraud Violations Constitute Racketeering Activity Under RICO

The racketeering activity that forms the basis of Plaintiffs' RICO claim is Defendants' violations of the Mail Fraud Statute. The elements of mail fraud are (1) a scheme to defraud and (2) the use of the U.S. mails in furtherance of that scheme. *See Messinger v. United States*, 872 F.2d 217, 221 (7th Cir. 1989). Both of these elements are present here and, accordingly, the Complaint should not be dismissed for lack of racketeering activity.

#### 1. Defendants Participated In A Scheme To Defraud

First, with respect to the requirement of a scheme to defraud, Plaintiffs' allegations regarding Defendants' scheme are really quite simple. Defendants wanted to obtain more liens than they would be entitled to receive had they complied with the rules and practices utilized by

3

the County in running its annual tax auction. In order to do so, Defendants lied to the County about its pre-auction agreements with other bidders. It was through this deception that Defendants were able to obtain liens from the County and the profits related to those liens that other eligible bidders, such as Plaintiffs, would have received absent Defendants' scheme. These allegations are more than sufficient to constitute a scheme to defraud under mail fraud. *See United States v. Wolf*, No. 92 CR 737, 1993 WL 169271, at *4-5 (N.D. Ill. May 18, 1993) (holding that allegations that a defendant lied to the County to participate in a tax auction during which the defendant obtained tax liens constituted a fraudulent scheme under mail fraud).

    Defendants' main argument is that Plaintiffs have not adequately pled a fraudulent scheme because the Complaint does not establish that Defendants deceived the County and violated the County's Single Bidder Rule in that the Complaint only alleges that Defendants transferred liens to other bidders after the sale. (*See* Defs.' Mem. at 4.) Plaintiffs, however, do not allege that Defendants only agreed to sell the tax liens after the sale. Rather, Plaintiffs specifically allege that Defendants had *pre-auction* agreements with other bidders in violation of the Rule and that Defendants concealed these *pre-auction* agreements and their violation through fraudulent affidavits provided to the County to enable their participation in the auctions. (*See, e.g.,* Compl. ¶¶ 53, 58.) It is because of these pre-auction agreements that, despite Defendants' contention to the contrary, Defendants constitute "related bidding entities" under the Rule. (*See* Defs.' Mem. at 4.) Indeed, the Complaint clearly alleges that these Defendants were essentially acting as Defendant Sabre's nominee during the auction in that prior to the auction Defendants and Sabre agreed that Defendants would purchase liens for Sabre's benefit which liens would be transferred to Sabre after the auction. (*See, e.g.,* Compl. ¶¶ 59, 69, 80.) Plaintiffs' allegations with respect to these pre-auction agreements sufficiently assert that Defendants and Sabre are

4

related bidding entities under the Single Bidder Rule and that Defendants' statements to the County in their registrations were fraudulent.

### 2. Defendants Utilized The Mails In Furtherance Of Their Fraudulent Scheme

Defendants argue that Plaintiffs fail to meet the "in furtherance" requirement necessary to establish mail fraud because Defendants caused the County to mail the 22-5 notices or "Take Notices" after the tax sale and after Defendants made their false statements to the County. (*See* Defs.' Mem. at 5.) The Court in *Wolf*, however, rejected this very argument. There, the defendant made misrepresentations to the County before the tax sale regarding his ownership interest in the properties on which he bid during the sale. *Wolf*, 1993 WL 169271, at *1. At the sale he then purchased the liens on the properties on which he was the actual owner and after the sale caused the County to mail take notices. *Id*. The defendant argued that the in furtherance requirement for mail fraud could not be met because the take notices were sent after the defendants' fraudulent misstatements to the County. *Id.* at *5-6. The court, however, rejected this argument in holding that "although the take notice mailings may not have contributed directly to the duping of the victim, *the mailings were incident to an essential part of Wolf's scheme, the avoidance of real estate taxes*." *Id.* at *7 (citing *Schmuck v. United States*, 489 U.S. 705, 712 (1989) (emphasis added)). Here, the purpose of Defendants' scheme was to obtain liens *and* reap the corresponding profits. Defendants cannot recover any profit from purchasing the liens at the auction if they fail to cause the Take Notices to be mailed, and thus, this Court should reject Defendants' argument here that the in furtherance requirement has not been satisfied.[2]

---

[2] *McDonald v. Schencker*, 18 F.3d 491 (7th Cir. 1994), the only case Defendants cite for this point is simply not instructive. In *McDonald*, the court held that the in furtherance requirement was not met because the "scheme was complete" at the time of the mailings because the fraudulently obtained monies

5

Similarly, Defendants' reliance on *Parr v. United States*, 363 U.S. 370, 391 (1960), for the proposition that the Take Notices cannot be the basis for mail fraud is misplaced. In *Parr*, the School District had to make the relevant mailings "under the imperative command of duty imposed by state law" on the School District. *Id*. Here, as alleged in the Complaint, Defendants were not compelled to cause the Take Notices to be mailed or risk violating state law. Instead, Defendants were compelled to cause the Take Notices to be mailed because the liens they obtained in the tax auction would be unenforceable if the Take Notices were not sent. The property they obtained through their scheme to defraud would become worthless, thus defeating the very purpose of their scheme. This fact shows why the Take Notices satisfy the "in furtherance" requirement of the mail fraud statute; it does not support the application of *Parr* to this case. *See United States v. Galloway*, 664 F.2d 161, 164 n.4 (7th Cir. 1981) (holding legally required mailings to satisfy the mail fraud statute because, unlike in *Parr*, "the mailings were inexorably tied to an essential step in the scheme"); *Wolf*, 1993 WL 169271, at *8 (same); *see also Schmuck*, 489 U.S. at 713 n.7 (limiting holding in *Parr* to the facts of that case).[3]

## II. PLAINTIFFS HAVE STANDING TO ASSERT THEIR RICO CLAIMS

### A. Plaintiffs Have Standing Under RICO Because They Were The Intended Victims of Defendants' Fraudulent Scheme

The Seventh Circuit has held that where, as here, plaintiffs are the intended victims of defendants' scheme to defraud, plaintiffs have standing under RICO. *See In re EDC, Inc.*, 930 F.2d 1275, 1279 (7th Cir. 1991). This is true even if plaintiffs are not the "primary victim" of

---

had already been received. *Id.* at 496. Here, however, the scheme was not complete before the mailings were sent because without the mailings there would be no profit.

[3] The Court can also summarily reject Defendants' argument that the Take Notices were "truthful letters" and as such they cannot satisfy the mail fraud statute. (Defs.' Mem. at 5.) It is well accepted that mailings made in furtherance of mail fraud do not need to contain false statements themselves. *See Schmuck*, 489 U.S. at 715.

6

the fraudulent scheme. *Id.* (reasoning that even though third party was the primary victim of the scheme, plaintiffs still had standing to sue under RICO based on mail and wire fraud because they were also intended victims).[4]

Plaintiffs here have alleged in considerable detail that they were the intended victims of Defendants' scheme, which was furthered by use of the mails. (*See, e.g.*, Compl. ¶¶ 63, 74, 90 ("By filing . . . false registration form[s] that failed to disclose the agreements among the[] [Defendant] entities to bid for the benefit of Sabre, each bid that [Defendant entities] made at the [respective] tax auction[s] was a step implementing the fraud on the Cook County Treasurer's Office, with the intended victims being . . . [Plaintiffs].").) As the Seventh Circuit reasoned in *EDC*, it makes no difference for standing purposes that the County was also victimized by Defendants' scheme to defraud. *In re EDC*, 930 F.2d at 1279. Rather, it is sufficient for Plaintiffs to allege that they were among the intended victims of the fraudulent scheme and that they suffered injury as a result. Plaintiffs have done that and, accordingly, have standing to bring this suit under RICO.[5]

---

[4] After determining that plaintiffs had standing to complain about the alleged fraud, even though they were not its primary victims, the Seventh Circuit in *EDC* went on to hold that plaintiffs' evidence at trial failed to meet their burden that defendants intended to create a fraudulent scheme in the first place. *See In re EDC,* 930 F.2d at 1280-81. Notably, there is no such issue here as Plaintiffs have more than adequately pled that Defendants intended to create a fraudulent scheme to defraud Cook County in order to gain access into the tax auction. (*See supra* at 4-5.)

[5] Defendants argue that Plaintiffs lack standing here because enforcement of the Single Bidder Rule is the exclusive authority of the County. Plaintiffs, however, do not bring this suit to enforce the County Rule. Rather, Plaintiffs bring this suit to recover profits obtained by Defendants, which Plaintiffs would have obtained but for Defendants' scheme to defraud. (*See, e.g.,* Compl. ¶ 1.) Further, to the extent that Defendants argue that this Court cannot conclude that Defendants participated in a fraudulent scheme to violate Cook County's rules because this Court must defer to the Cook County Treasurer as the final arbiter on whether conduct constitutes a violation of County rules, (*see* Defs.' Mem. at 3-4), this argument should be summarily rejected. Indeed, *Phoenix Bond & Indemnity Co. v. Pappas*, 741 N.E.2d 248 (Ill. 2000), demonstrates that the court, not the Treasurer, makes the final determination as to the validity of whether the Treasurer's actions regarding a Rule comply with the law. *Id.* at 251-52.

### B. Plaintiffs Have Standing To Maintain A RICO Action Predicated On Mail Fraud

Despite Plaintiffs' standing under RICO as the intended victims, Defendants argue that regardless of their intent to harm Plaintiffs, Plaintiffs do not have standing to assert their RICO claims because business rivals who suffer lost business opportunities are not among the individuals protected by the mail fraud statute, *i.e.*, they are outside of the statute's "zone of interests." (*See* Defs.' Mem. at 2.) In support of this argument, Defendants rely on language contained in the Seventh Circuit's decision in *Israel Travel Advisory Service, Inc. v. Israel Identity Tours, Inc.*, 61 F.3d 1250 (7th Cir. 1995). In so doing, however, Defendants both misstate and misapply *Israel Travel*'s holding.

### 1. *Israel Travel* Firmly Establishes That A Business Rival Can Maintain A RICO Action Where It Suffers Injuries Based On Statements Made To Third Parties

*Israel Travel* involved a dispute between two competing travel agencies that specialized in organizing trips to Israel. *Israel Travel*, 61 F.3d at 1253. The plaintiff travel agency brought a number of claims against the defendant, including a RICO claim, which was based on allegations that the defendant agency mailed false advertisements to plaintiff's potential customers. *Id.* at 1253-54. The District Court granted summary judgment in favor of the defendant travel agency reasoning that the plaintiff could not sustain a RICO claim because plaintiff itself did not receive the false advertisements. *Id.* at 1257. Therefore, as the District Court reasoned, plaintiff's injury was only an indirect one and not cognizable under RICO. *Id.* The Seventh Circuit, however, disagreed with the District Court that RICO precludes recovery for injuries that are transmitted indirectly. *Id.* Rather, the Seventh Circuit expressly stated that RICO indeed "allows suits when the predicate offenses influence customers and, derivatively, injure business rivals." *Id.*[6]

---

[6] The Seventh Circuit in *Israel Travel* also rejected the concept that the plaintiff itself must read and rely on a misrepresentation to maintain a RICO action. Specifically, the District Court in *Israel Travel* had previously held that based on language contained in the Seventh Circuit's decision in *In re EDC*, 930 F.2d

8

In so determining that derivative injuries suffered by competitors are recoverable under RICO, the Seventh Circuit expressly adopted the Fourth Circuit's reasoning in *Mid Atlantic Telecom, Inc. v. Long Distance Services, Inc.*, 18 F.3d 260 (4th Cir. 1994). *See Israel Travel*, 61 F.3d at 1257. There, the plaintiff telecommunications reseller brought a RICO claim against its competitor alleging that it was injured by the competitor's fraudulent billing scheme because the scheme caused plaintiff to lower its rates to compete effectively. *Mid Atlantic*, 18 F.3d at 261. As here, the predicate act involved was mail fraud, as well as wire fraud. *Id.* In reversing the lower court's dismissal of the Complaint, the Fourth Circuit held that plaintiff could maintain a RICO claim because it was not seeking to vindicate the rights of its former customers who were fraudulently billed by the defendant. *Id.* at 264. Rather, it was seeking to redress its own distinct injuries. *Id.* The court accordingly held that the motion to dismiss should have been denied and plaintiff should be given the opportunity to prove its allegations through discovery. *Id.* at 263.

As in *Mid Atlantic*, Plaintiffs here have also suffered direct and distinct injuries. Through their fraudulent scheme, Defendants impermissibly multiplied the number of bidders they had at the auctions. As a direct result, under the County's rotational system for fairly distributing liens at the annual tax auction, Defendants obtained more liens and Plaintiffs received fewer liens than they would have but for the fraudulent conduct. As such, Defendants seized for themselves the liens and corresponding profits that rightfully belonged to Plaintiffs. While the County was also defrauded, Plaintiffs' loss of liens and profits is different and distinct from any injury that may

---

1275 (7th Cir. 1991), the plaintiff must show that it received and relied on the misrepresentation to establish a RICO claim based on the predicate offenses of mail and wire fraud. *Israel Travel Advisory Serv., Inc. v. Israel Identity Tours, Inc.*, No. 92 C 2379, 1993 WL 15503, at *3 (N.D. Ill. May 10, 1993). The Seventh Circuit, however, expressly rejected this reasoning and instead determined that reliance on the misrepresentation is not required under RICO. *Israel Travel*, 61 F.3d at 1257-58 (rejecting lower court's analysis regarding plaintiff's reliance on misrepresentations as simply "restat[ing] the conclusion that derivative injury is never cogizable under RICO" that the Seventh Circuit had just rejected). Accordingly, any attempts by Defendants to argue that Plaintiffs here must have received and relied on the misrepresentations to sustain a RICO action should be rejected.

9

have been suffered by the County. As such, Plaintiffs have standing to bring their RICO claims to recover their lost profits caused by Defendants' scheme. *See Israel Travel*, 61 F.3d at 1257.

### 2. The *Israel Travel* Vendor Analysis Cannot Be Extended To Preclude Plaintiffs' Claims

After determining, as discussed above, that a RICO suit *can* be maintained by a business rival for injuries based on statements made to third parties, the Seventh Circuit in *Israel Travel* went on to affirm the granting of summary judgment for the defendant reasoning that the vendor plaintiff could not premise its RICO action on mail fraud because the mail fraud statute was not enacted to protect vendors who suffer derivative injuries when false advertisements are sent to its potential customers. *Israel Travel*, 61 F.3d at 1258. Defendants' attempt to expand this holding to preclude a competitor from *ever* bringing a RICO claim predicated on mail fraud where the scheme deceived a third party resulting in a direct injury to the competitor should be rejected.

Defendants' argument is misplaced and ignores the fact that *Israel Travel* expressly accepted the reasoning in *Mid Atlantic*, where the court refused to dismiss plaintiff's RICO claims alleging that it was injured by a business rival when that business rival mailed fraudulent materials to a third party. Despite the fact that the deceptive mailings were not directed at the plaintiff, it was still able to maintain a RICO action to recover its damages. *See Mid Atlantic*, 18 F.3d at 261, 264.

Furthermore, Defendants' claim that the *Israel Travel* decision bars Plaintiffs' claims because "the injury Plaintiffs allege is a lost business opportunity" is a complete misstatement of the *Israel* decision. (*See* Defs.' Mem. at 2.) Indeed, the *Israel Travel* Court stated just the opposite – that lost business opportunities are cognizable damages in a RICO action predicated on mail fraud. *Israel Travel*, 61 F.3d at 1258 ("Lost business opportunities . . . *are* property as § 1341 used that term before the amendment.") (emphasis added). Rather, the *Israel Travel*

court held that vendors are not protected by the mail fraud statute for the indirect and derivative injury the vendor suffers from reduced sales when its potential customers fall prey to a competitor's false advertising.

This is not a case, however, involving a vendor trying to recover its damages indirectly caused by its potential customers deciding to buy from the deceptive competitor. On the contrary, Plaintiffs are unmistakably among the group of intended victims of Defendants' fraudulent scheme to obtain more than their fair share of liens available at the annual tax sales and, as such, are among the individuals protected by the mail fraud statute. *See supra* at 7-8; *see also In re EDC*, 930 F.2d at 1279-81; *Mid Atlantic*, 18 F.3d at 263. Indeed, Defendants' entire scheme was concocted to gain an impermissible advantage over Plaintiffs by intentionally violating the County's Single Bidder Rule – a rule that was put in place to ensure that liens are equally distributed to bidders, like Plaintiffs.[7]

Further, Plaintiffs' damages are unlike the indirect and derivative injuries alleged by the vendor plaintiff in *Israel Travel*. There, the vendor plaintiff's claimed damages were derivative of and dependent upon the injury to their customers because the vendor's damages were their lost profits from the amount the customer paid to the vendor's competitor. As such, the vendor plaintiff's injury from fraudulently lost sales to its competitor were merely a subset of the amount the customer paid to plaintiff's competitor due to the scheme. Conversely, Plaintiffs' damages here, the lost profits on the liens obtained by Defendants, are a direct injury and distinct from any damages suffered by the County. Through the tax lien auction, the tax buyer pays the

---

[7] Including Plaintiffs within the individuals protected by the mail fraud statute is consistent with the Sentencing Guidelines, which the court in *Israel Travel* looked to for guidance on whether the vendors in *Israel Travel* were protected under the mail fraud statute. *Israel Travel*, 61 F.3d at 1258. Specifically, the Sentencing Guidelines define loss in actions involving fraud as the greater of the "actual loss" or "intended loss." *See* U.S.S.G. § 2B1.1, Application Note 3. Therefore, if, as Plaintiffs allege, they were among the group that Defendants intended to harm, their losses would be factored into the loss analysis under the Sentencing Guidelines.

County the taxes it is owed on the property. The County has no legal interest in any of the tax buyer's profits, whether from the penalty rate or the sale of the property after it goes to deed. (Compl. ¶¶ 32, 38, 39.) Thus, Plaintiffs' lost profit damages are not a subset of any injury of or payment to the County. Additionally, unlike in *Israel Travel*, Plaintiffs' damages are not dependent on the unpredictable actions of some third party. Rather, Defendants' fraudulent scheme was squarely directed at Plaintiffs, and Plaintiffs' damages are the direct result of that fraudulent scheme and are not dependent on the actions of any third party.

Accordingly, Plaintiffs are not like vendors seeking to recovery a portion of the amount a third party, a potential customer, paid to their competitor due to a false advertising scheme. Instead, Plaintiffs were among the group of intended victims of the fraudulent scheme who suffered direct, distinct and independent injuries from Defendants' conduct. Plaintiffs are, therefore, among those protected by the mail fraud statute and as such have standing to assert the alleged RICO claims.[8]

### C. Plaintiffs Do Not Lack Standing For Failure To Plead That Their Damages Were Proximately Caused By Defendants' Fraudulent Scheme

Plaintiffs' damages theory as set forth in the Complaint is clear: Absent Defendants' scheme to defraud, Plaintiffs, through the County's rotational system of distributing liens, would

---

[8] The holdings in *Alpha School Bus Co. v. Wagner*, No. 03 C 5009, 2004 WL 1368804 (N.D. Ill. June 17, 2004), and *Associated Bodywork & Massage Professionals v. American Massage Therapy Association*, 897 F. Supp. 1116 (N.D. Ill. 1995), two cases upon which Defendants rely, do not change this result. Indeed, in *Alpha School Bus*, the Court held that Plaintiff did not have standing because there was no direct connection between plaintiffs' injury and defendants' racketeering actions as plaintiffs' allegations did "not suggest that defendants were not entitled to obtain the bonds" that were the subject of the wire fraud. *Alpha Sch. Bus*, 2004 WL 1368804, at *7. Here, however, Plaintiffs specifically allege that Defendants were not entitled to participate in the auction, and that they were only able to do so by defrauding the County. Further, as for *Associated Bodywork*, there, plaintiff alleged that it was injured when defendant sent false information to the legislature, causing it to pass certain legislation. *Associated Bodywork*, 897 F. Supp at 1121. The court rejected the RICO claim because the "injury [to plaintiff] complained of stems . . . from political decisions to legislate, not Defendant's conduct." *Id*. Here, as discussed above, Plaintiffs' lost profit injuries stem directly from Defendants' misrepresentations to the County about its bidder status.

have earned the profits on many of the liens the Defendants obtained inappropriately through their scheme. In bringing this action, Plaintiffs seek to recover those lost profits.

Defendants argue, however, that Plaintiffs fail to allege that their damages were proximately caused by Defendants' fraudulent scheme because Plaintiffs' lost profits are "speculation and conjecture" as Plaintiffs cannot show that they would have received any of the properties that Defendants obtained through fraud. (Defs.' Mem. at 3.) Defendants' argument, however, does not take into account the allegations in the Complaint with respect to how the County runs its annual tax auction. Specifically, as described in the Complaint, typically the bidder who bids a penalty rate of 0% receives the property at the tax auction. (*See* Compl. ¶ 36.) If more than one tax buyer bids at the same lowest rate, the County auctioneer will allocate the liens on a rotational basis to ensure that there is a fair apportionment of liens among the lowest bidding entities. (*See id.*) Given these two factors, it is not "pure speculation and conjecture" to conclude that Plaintiffs would have received properties that Defendants received through fraud.[9]

In any event, the damages alleged by Plaintiffs certainly satisfy Rule 8's more relaxed pleading requirements.[10] Plaintiffs are not as Defendants argue required under Rule 8 to itemize each of the properties that they would have acquired but for Defendants' conduct or the amount of profit they would have obtained on each lien. Plaintiffs' allegations that they would have obtained liens acquired fraudulently by Defendants are more than sufficient at this stage. *See*

---

[9] Defendants also suggest that Plaintiffs' damages are speculative because there were "hundreds of bidders" at the tax sale and it is impossible to conclude that Plaintiffs would have been awarded tax liens and obtained profits. (Defs.' Mem. at 3.) This argument, however, goes to the amount of damages, not whether Plaintiffs sustained any damages.

[10] While Rule 9(b) applies to the specifics of alleged misrepresentations, notice pleading requirements of Rule 8 apply to allegations regarding damages. *See Smith v. Short Term Loans, LLC*, No. 99 C 1288, 2001 WL 127303, at *6 (N.D. Ill. Feb. 14, 2001) (refusing to dismiss fraud claim for failure to sufficiently allege damages because "more particularity is not required as to damages (and similarly causation) where the facts alleged are sufficient to put the defendant on notice of the who, what, where, when, and how of the misleading practice").

*Williams v. Sabin*, 884 F. Supp. 294, 296 (N.D. Ill. 1995) (rejecting argument that fraud claim should be dismissed for failure to sufficiently plead specific damages because plaintiffs' damages theory would become more clear during discovery).[11]

### CONCLUSION

For the reasons set forth in this Memorandum, Plaintiffs respectfully request that this Court deny Defendants' Motion To Dismiss in its entirety.

Dated: November 10, 2005

        **Plaintiffs Phoenix Bond & Indemnity Co., Oak Park Investments, Inc., and BCS Services, Inc.**

        By:___/s/_Lowell E. Sachnoff_____
            One of Their Attorneys

        Lowell E. Sachnoff (ARDC No. 2438062)
        Arnold A. Pagnuicci (ARDC No. 2134799)
        John W. Moynihan (ARDC No. 6212061)
        Lisa A. Kistler (ARDC No. 6273987)
        SACHNOFF & WEAVER, LTD.
        10 South Wacker Drive, Suite 4000
        Chicago, Illinois 60606
        (312) 207-1000

        Harvey M. Silets (ARDC No. 2604728)
        Jonathan L. Marks (ARDC No. 6227066)
        KATTEN MUCHIN ROSENMAN LLP
        525 West Monroe Street
        Chicago, Illinois 60661
        (312) 902-5337

---

[11] Indeed, Defendants' reliance on *Evans v. City of Chicago*, No. 00 C 7222, 2003 WL 22232963 (N.D. Ill. Sept. 26, 2003), only proves this point as there the Court *denied* the motion to dismiss and it was only *after* discovery that the Court granted summary judgment in favor of defendants because the facts bore out that plaintiffs' lost income claims were speculative as he had not been gainfully employed for quite some time. *Id*. at *7.

# CERTIFICATE OF SERVICE

I hereby certify that on November 10, 2005, I electronically filed **Plaintiffs' Response to the Motion to Dismiss Filed by Defendants Jeffrey Bridge, Jason Baumbach, Regal One, LLC, Optimum Financial, Inc. and Carpus Investments, LLC** with the Clerk of the Court using the ECF system, which will send notification of such filings to the following:

| | |
|---|---|
| *Attorney for Defendants John Bridge, Barrett Rochman and Sabre Group, LLC* | Theodore M. Becker<br>Morgan Lewis & Bockius<br>77 West Wacker Drive, 5th Floor<br>Chicago, Illinois 60601 |
| *Attorney for Defendants Robert Jensen, Joseph Varan, Cronus Projects, LLC, Gregory Ellis, GJ Venture, LLC, and L.C.C. Venture, LLC* | Kevin J. Clancy<br>Martin W. McManaman<br>Patrick R. Moran<br>Lowis & Gellen LLP<br>200 West Adams Street, Suite 1900<br>Chicago, Illinois 60606 |
| *Attorney for Defendants Jeffrey Bridge, Regal One, LLC, Jason Baumbach, Optimum Financial, Inc., and Carpus Investments, LLC* | Elisha S. Rosenblum<br>Clifford G. Kosoff<br>O'Halloran, Kosoff, Geitner & Cook, P.C.<br>650 Dundee Road, Suite 475<br>Northbrook, Illinois 60062 |
| *Attorney for Defendants Douglas Nash, DRN II, Inc., Jeshay, LLC, and Mud Cats Real Estate, LLC* | David S. Rosenbloom<br>McDermott, Will & Emery LLP<br>227 West Monroe Street, Suite 4400<br>Chicago, Illinois 60606-5096 |
| *Attorney for Defendants Francis Alexander and Georgetown Investors, LLC* | Michael J. Kralovec<br>Joseph R. Lemersal<br>Sara R. McClain<br>Nash, Lalich & Kralovec, LLC<br>53 West Jackson Boulevard, Suite 1102<br>Chicago, Illinois 60604 |

2

and by U.S. Mail to the following non-registered party:

| *Attorney for Defendants Jesse Rochman, Corinne Rochman, Christopher Rochman, BRB Investments, LLC, and CCJ Investments, LLC* | Neil S. Ament<br>Law Office of Neil S. Ament<br>1955 Shermer Road, Suite 400<br>Northbrook, Illinois  60062 |

By:     /s/  Lisa A. Kistler
       One of Plaintiffs' Attorneys

Lowell E. Sachnoff  (ARDC No. 2438062)
Arnold A. Pagnuicci  (ARDC No. 2134799)
John W. Moynihan  (ARDC No. 6212061)
Lisa A. Kistler  (ARDC No. 6273987)
SACHNOFF & WEAVER, LTD.
10 South Wacker Drive, Suite 4000
Chicago, Illinois  60606
(312) 207-1000