**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| PHOENIX BOND & INDEMNITY CO., et al., | ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | No. 05 CV 4095 |
| v. | Judge James F. Holderman |
| JOHN BRIDGE et al., | Magistrate Judge Ian H. Levin |
| Defendants. | |

**PLAINTIFFS' RESPONSE TO THE MOTION TO DISMISS FILED BY DEFENDANTS
CCJ INVESTMENTS, LLC, BRB INVESTMENTS, LLC,
<u>JESSE ROCHMAN, CHRISTOPHER ROCHMAN AND CORRINE ROCHMAN</u>**

Plaintiffs respectfully submit this Memorandum in response to the Motion to Dismiss filed by Defendants CCJ Investments, LLC, BRB Investments, LLC, Jesse Rochman, Christopher Rochman and Corrine Rochman (the "Defendants").[1]

## FACTUAL BACKGROUND

Plaintiffs allege that Defendants secretly agreed before the annual Cook County tax sales to bid on behalf of Sabre Group, LLC. (Compl. ¶ 1.) Their acts violated the County Rule prohibiting related bidding entities from simultaneously participating in the sale. (*Id.*) The Defendants submitted to the Cook County Treasurer's Office registrations to participate in the tax sales—registrations in which Defendants falsely attested that they complied with the County Rule. (*Id.* ¶¶ 54, 61.) Their scheme was to participate unlawfully in the auctions, deprive Plaintiffs of liens they would have obtained but for the wrongful conduct, and reap the profit from those liens. (*Id.* ¶ 1.)

At the annual tax sale auction, the County distributes liens to the bidder who bids the lowest penalty rate. (Compl. ¶ 36.) At every sale since 2000, virtually every bid was 0%, the lowest possible rate. (*Id.*) When multiple bidders make the same bid, the auctioneer allocates liens on a rotational basis among the bidders in the room. (*Id.*) A party who has multiple bidders in the room gains a substantial advantage over those who comply with the Single Bidder Rule, permitting the party with multiple bidders to acquire a greater share of liens offered for sale. (*Id.* ¶¶ 36, 51.) To ensure the equal distribution of liens, the County's Rule limits all participants to one bidder and prohibits registered bidders from having surrogates buy liens for them at the sales. (*Id.* ¶ 51.) To enforce the Single Bidder Rule, each bidder must represent

---

[1] Six groups of Defendants have filed separate motions to dismiss Plaintiffs' Complaint. To the extent that a Defendant relies upon, cross-references and adopts other Defendants' arguments in their motions, the Plaintiffs also rely upon, cross-reference and adopt Plaintiffs' arguments contained in Plaintiffs' six response briefs.

under oath in submissions to the County, among other things, that the bidder did not share capital, finances, ownership, or source of funds with another bidder; that it had no agreements to purchase or sell liens it acquired to another bidder; and that it did not stand to benefit financially under an agreement with another bidder concerning liens bid on or purchased.  (*Id.* ¶ 54.)

Defendants engaged in a fraudulent scheme to increase the number of bidders at the auction and thereby obtain more liens.  (Compl. ¶ 52.)  A series of entities were formed to create the impression that they were separate bidders.  (*Id*. ¶ 53.)  These entities registered to bid at the sales and represented that they were separate and unrelated.  (*Id*.)  These representations were false because the entities were, in fact, related and/or had agreements in advance of the sale to transfer their liens to Defendant Sabre Group after the auction.  (*Id.* ¶¶ 61, 62.)  Defendants obtained liens from the County and the related profits that would have been obtained by Plaintiffs absent Defendants' scheme.

Despite Defendants' contentions, Plaintiffs are not seeking to enforce the County Rule or to recover any damages of the County or the underlying property owners.  Plaintiffs seek to recover profits that Defendants obtained and that Plaintiffs would have obtained but for Defendants' scheme to defraud, as well as injunctive relief to prevent such conduct in the future. (Compl. ¶¶ 56, 64, 92.) Plaintiffs' claims are based on the Federal RICO Statute and on tortious interference with prospective business advantage under Illinois common law.

The predicate acts underlying Plaintiffs' RICO claim are Defendants' violations of the mail fraud statute.  Defendants' scheme involved deceiving the County with misrepresentations in Defendants' registration applications for the tax sales that occurred in calendar years 2002, 2003, 2004 and 2005.  (Compl. ¶¶ 61, 70, 76, 78, 83, 94.)  Through Defendants' scheme, Defendants sought to, and did, obtain property, *i.e.* the tax liens and the profits on those tax liens.

2

The "Take Notice" mailings were an essential part of the Defendants' scheme because the Defendants were precluded from obtaining the profits on the liens they acquired if the "Take Notices" were not mailed. (*Id.* ¶ 40.)

## ARGUMENT

In considering a motion to dismiss, the court must take all material allegations of the complaint as true and liberally construe those allegations in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). It is well established that a court may not grant a motion to dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Here, the facts and permissible inferences in the Complaint sufficiently plead Plaintiffs' causes of action under RICO and the state law claim of tortious interference with prospective business relations. As such, Defendants' Motion should be denied in its entirety.

I. **PLAINTIFFS HAVE STANDING TO ASSERT THEIR RICO CLAIMS**

   A. **Plaintiffs Have Standing Under RICO Because They Were The Intended Victims of Defendants' Fraudulent Scheme**

The Seventh Circuit has held that where, as here, plaintiffs are the intended victims of defendants' scheme to defraud, plaintiffs have standing under RICO. *See In re EDC, Inc.*, 930 F.2d 1275, 1279 (7th Cir. 1991). This is true even if plaintiffs are not the "primary victim" of the fraudulent scheme. *Id.* (reasoning that even though third party was the primary victim of the scheme, plaintiffs still had standing to sue under RICO based on mail and wire fraud because they were also intended victims).[2]

---

[2] After determining that plaintiffs had standing to complain about the alleged fraud, even though they were not its primary victims, the Seventh Circuit in *EDC* went on to hold that plaintiffs' evidence at trial failed to meet their burden that defendants intended to create a fraudulent scheme in the first place. *See In re EDC,* 930 F.2d at 1280-81. Notably, there is no such issue here as Plaintiffs have more than

3

Plaintiffs here have alleged in considerable detail that they were the intended victims of Defendants' scheme, which was furthered by use of the mails. (*See, e.g.*, Compl. ¶¶ 63, 74, 90 ("By filing . . . false registration form[s] that failed to disclose the agreements among the[] [Defendant] entities to bid for the benefit of Sabre, each bid that [Defendant entities] made at the [respective] tax auction[s] was a step implementing the fraud on the Cook County Treasurer's Office, with the intended victims being . . . [Plaintiffs].").) As the Seventh Circuit reasoned in *EDC*, it makes no difference for standing purposes that the County was also victimized by Defendants' scheme to defraud. *In re EDC*, 930 F.2d at 1279. Rather, it is sufficient for Plaintiffs to allege that they were among the intended victims of the fraudulent scheme and that they suffered injury as a result. Plaintiffs have done that and, accordingly, have standing to bring this suit under RICO.

**B. Plaintiffs Have Standing To Maintain A RICO Action Predicated On Mail Fraud**

Despite Plaintiffs' standing under RICO as the intended victims, Defendants argue that regardless of their intent to harm Plaintiffs, Plaintiffs do not have standing to assert their RICO claims because business rivals who suffer lost business opportunities are not among the individuals protected by the mail fraud statute, i.e., they are outside of the statute's "zone of interests." (*See* Defs.' Mot. at 3.) In support of this argument, Defendants rely heavily on language contained in the Seventh Circuit's decision in *Israel Travel Advisory Service, Inc. v. Israel Identity Tours, Inc.*, 61 F.3d 1250 (7th Cir. 1995). In so doing, however, Defendants both misstate and misapply *Israel Travel*'s holding.

---

adequately pled that Defendants intended to create a fraudulent scheme to defraud Cook County in order to gain access into the tax auction.

4

1.  *Israel Travel* **Firmly Establishes That A Business Rival Can Maintain A RICO Action Where It Suffers Injuries Based On Statements Made To Third Parties**

*Israel Travel* involved a dispute between two competing travel agencies that specialized in organizing trips to Israel. *Israel Travel*, 61 F.3d at 1253. The plaintiff travel agency brought a number of claims against the defendant, including a RICO claim, which was based on allegations that the defendant agency mailed false advertisements to plaintiff's potential customers. *Id*. at 1253-54. The District Court granted summary judgment in favor of the defendant travel agency reasoning that the plaintiff could not sustain a RICO claim because plaintiff itself did not receive the false advertisements, its potential customers did. *Id*. at 1257. Therefore, as the District Court reasoned, plaintiff's injury was only an indirect one and not cognizable under RICO. *Id.* The Seventh Circuit, however, disagreed with the District Court that RICO precludes recovery for injuries that are transmitted indirectly. *Id.* Rather, the Seventh Circuit expressly stated that RICO indeed "allows suits when the predicate offenses influence customers and, derivatively, injure business rivals." *Id.*

In so determining that derivative injuries suffered by competitors are recoverable under RICO, the Seventh Circuit expressly adopted the Fourth Circuit's reasoning in *Mid Atlantic Telecom, Inc. v. Long Distance Services, Inc.*, 18 F.3d 260 (4th Cir. 1994). *See Israel Travel*, 61 F.3d at 1257. There, the plaintiff telecommunications reseller brought a RICO claim against its competitor alleging that it was injured by the competitor's fraudulent billing scheme because the scheme caused plaintiff to lower its rates to compete effectively. *Mid Atlantic*, 18 F.3d at 261. As here, the predicate act involved was mail fraud, as well as wire fraud. *Id.* In reversing the lower court's dismissal of the complaint, the Fourth Circuit held that plaintiff could maintain a RICO claim because it was not seeking to vindicate the rights of its former customers who were fraudulently billed by the defendant. *Id*. at 264. Rather, it was seeking to redress its own district

5

injuries. *Id*. The court accordingly held that the motion to dismiss should have been denied and plaintiff should be given the opportunity to prove its allegations through discovery. *Id.* at 263.

As in *Mid Atlantic*, Plaintiffs here have also suffered direct and distinct injuries. Through their fraudulent scheme, Defendants impermissibly multiplied the number of bidders they had at the auctions. As a direct result, under the County's rotational system for fairly distributing liens at the annual tax auction, Defendants obtained more liens and Plaintiffs received fewer liens than they would have but for the fraudulent conduct. As such, Defendants seized for themselves the liens and corresponding profits that rightfully belonged to Plaintiffs. While the County was also defrauded, Plaintiffs' loss of liens and profits is different and distinct from any injury that may have been suffered by the County. As such, Plaintiffs have standing to bring their RICO claims to recover their lost profits caused by Defendants' scheme. *See Israel Travel*, 61 F.3d at 1257.

**2.  *Israel* Travel Also Established That Plaintiffs Themselves Do Not Need To Read And Rely On Defendants' Misrepresentations To Have Standing Under RICO**

Defendants also contend that Plaintiffs lack standing because Defendants' mail fraud violations stem from false statements made by Defendants to Cook County, not Plaintiffs. (Defs.' Mot. at 3.) The *Israel Travel* court, however, in holding that derivative injuries are cognizable under RICO firmly rejected the concept that the plaintiff itself must read and rely on a misrepresentation to maintain a RICO action. Specifically, the District Court in *Israel Travel* had previously held that based on language contained in the Seventh Circuit's decision in *In re EDC*, 930 F.2d 1275 (7th Cir. 1991), the plaintiff must show that it received and relied on the misrepresentation to establish a RICO claim based on the predicate offenses of mail and wire fraud. *Israel Travel Advisory Serv., Inc. v. Israel Identity Tours, Inc.*, No. 92 C 2379, 1993 WL 15503, at *3 (N.D. Ill. May 10, 1993). The Seventh Circuit, however, expressly rejected this

6

reasoning and instead determined that reliance on the misrepresentation is not required under RICO. *Israel Travel*, 61 F.3d at 1257-58 (rejecting lower court's analysis regarding plaintiff's reliance on misrepresentations as simply "restat[ing] the conclusion that derivative injury is never cogizable under RICO" that the Seventh Circuit had just rejected). Accordingly, any attempts by Defendants to argue that Plaintiffs here must have received and relied on the misrepresentations to sustain a RICO action should be rejected.

### 3. The *Israel Travel* Vendor Analysis Cannot Be Extended To Preclude Plaintiffs' Claims

After determining, as discussed above, that a RICO suit *can* be maintained by a business rival for injuries based on statements made to third parties, the Seventh Circuit in *Israel Travel* went on to affirm the granting of summary judgment for the defendant reasoning that the vendor plaintiff could not premise its RICO action on mail fraud because the mail fraud statute was not enacted to protect vendors who suffer derivative injuries when false advertisements are sent to its potential customers. *Israel Travel*, 61 F.3d at 1258. Defendants' attempt to expand this holding to preclude a competitor from *ever* bringing a RICO claim predicated on mail fraud where the scheme deceived a third party resulting in a direct injury to the competitor should be rejected.

Defendants' argument is misplaced and ignores the fact that *Israel Travel* expressly accepted the reasoning in *Mid Atlantic*, where the court refused to dismiss plaintiff's RICO claims alleging that it was injured by a business rival when that business rival mailed fraudulent materials to a third party. Despite the fact that the deceptive mailings were not directed at the plaintiff, it was still able to maintain a RICO action to recover its damages. *See Mid Atlantic*, 18 F.3d at 261, 264.

Furthermore, Defendants' claim that the *Israel Travel* decision bars Plaintiffs' claims because "lost business opportunities are not within the 'zone of interests' protected by the mail

7

fraud statute" is a complete misstatement of the *Israel Travel* decision. (*See* Defs.' Mot. at 3.) Indeed, the *Israel Travel* court stated just the opposite – that lost business opportunities are cognizable damages in a RICO action predicated on mail fraud. *Israel Travel*, 61 F.3d at 1258 ("Lost business opportunities . . . *are* property as § 1341 used the terms before the amendment.") (emphasis added). Rather, the *Israel Travel* court held that vendors are not protected by the mail fraud statute for the indirect and derivative injury the vendor suffers from reduced sales when its potential customers fall prey to a competitor's false advertising.

This is not a case, however, involving a vendor trying to recover its damages indirectly caused by its potential customers deciding to buy from the deceptive competitor. On the contrary, Plaintiffs are unmistakably among the group of intended victims of Defendants' fraudulent scheme to obtain more than their fair share of liens available at the annual tax sales and, as such, are among the individuals protected by the mail fraud statute. *See supra* at 4; *see also In re EDC*, 930 F.2d at 1279-81; *Mid Atlantic*, 18 F.3d at 263. Indeed, Defendants' entire scheme was concocted to gain an impermissible advantage over Plaintiffs by intentionally violating the County's Single Bidder Rule – a rule that was put in place to ensure that liens are equally distributed to bidders, like Plaintiffs.[3]

Further, Plaintiffs' damages are unlike the indirect and derivative injuries alleged by the vendor plaintiff in *Israel Travel*. There, the vendor plaintiff's claimed damages were derivative of and dependent upon the injury to their customers because the vendor's damages were their lost profits from the amount the customer paid to the vendor's competitor. As such, the vendor

---

[3] Including Plaintiffs within the individuals protected by the mail fraud statute is consistent with the Sentencing Guidelines, which the court in *Israel Travel* looked to for guidance on whether the vendors in *Israel Travel* were protected under the mail fraud statute. *Israel Travel*, 61 F.3d at 1258. Specifically, the Sentencing Guidelines define loss in actions involving fraud as the greater of the "actual loss" or "intended loss." *See* U.S.S.G. § 2B1.1, Application Note 3. Therefore, if, as Plaintiffs allege, they were among the group that Defendants intended to harm, their losses would be factored into the loss analysis under the Sentencing Guidelines.

plaintiff's injury from fraudulently lost sales to its competitor were merely a subset of the amount the customer paid to plaintiffs' competitor due to the scheme. Conversely, Plaintiffs' damages here, the lost profits on the liens obtained by Defendants, are a direct injury and distinct from any damages suffered by the County. Through the tax lien auction, the tax buyer pays the County the taxes it is owed on the property. The County has no legal interest in any of the tax buyer's profits, whether from the penalty rate or the sale of the property after it goes to deed. (Compl. ¶¶ 32, 38, 39.) Thus, Plaintiffs' lost profit damages are not a subset of any injury of or payment to the County. Additionally, unlike in *Israel Travel*, Plaintiffs' damages are not dependent on the unpredictable actions of some third party. Rather, Defendants' fraudulent scheme was squarely directed at Plaintiffs, and Plaintiffs' damages are the direct result of that fraudulent scheme and are not dependent on the actions of any third party.

Accordingly, Plaintiffs are not like vendors seeking to recovery a portion of the amount a third party, a potential customer, paid to their competitor due to a false advertising scheme. Instead, Plaintiffs were among the group of intended victims of the fraudulent scheme who suffered direct, distinct and independent injuries from Defendants' conduct. Plaintiffs are, therefore, among those protected by the mail fraud statute and as such have standing to assert the alleged RICO claims.

The holdings in *Honorable v. Easy Life Real Estate System, Inc.*, 182 F.R.D. 553 (N.D. Ill. 1998), and *Associated Bodywork & Massage Professionals v. American Massage Therapy Association*, 897 F. Supp. 1116 (N.D. Ill. 1995), two cases upon which Defendants rely, do not change this result. *Honorable* involved allegations that defendants violated the bank fraud statute when they misrepresented to banks that they did not provide any of the down payment on certain properties to the plaintiff homebuyers, when in truth they did. *Honorable*, 182 F.R.D. at

9

557-58. The court in *Honorable* held that defendants' alleged violations of the bank fraud statute were insufficient to establish a predicate act under RICO because plaintiffs were not within the zone of interests of the bank fraud statute as that the statute was enacted to protect "financial institutions," not homeowners who were participants in the fraud. *Id.* at 562-63. Defendants' analogy to the bank fraud statute at issue in *Honorable*, however, is simply lacks merit because the mail fraud statute, unlike the bank fraud statute, does not specifically limit the individuals falling under its protections.

*Associated Bodywork* is even more off point. There, the court granted a motion to dismiss plaintiff's RICO claims based on the allegation that it was injured when defendant mailed false information to the legislature, causing it to pass certain legislation. *Associated Bodywork*, 897 F. Supp at 1121. The court stated two grounds for its decision to dismiss the action, neither of which is relevant here. The Court first reasoned that the action could not be sustained because "Defendant's communications with the legislatures are entitled to First Amendment protections, despite allegations that those communications contained libelous statements." *Id.* Obviously, there are no such First Amendment implications here. Further, the court rejected the RICO claim because the "injury [to plaintiff] complained of stems . . . from political decisions to legislate, not Defendant's conduct." *Id*. Here, however, Plaintiffs' lost profit injuries stem directly from Defendants' misrepresentations to the County about its bidder status, not, as in *Associated Bodywork*, the actions of a third party.

## II. PLAINTIFFS HAVE PLED THE FACTS SURROUNDING DEFENDANTS' FRAUDULENT SCHEME WITH ADEQUATE PARTICULARITY

There is little doubt that Plaintiffs' allegations satisfy Rule 9(b), which requires that a RICO plaintiff allege "only a general outline of the alleged fraud scheme — one sufficient to reasonably notify the defendants of their purported role in the scheme." *Senior Income Reverse*

*Mortgage Corp. v. Olson*, No. 98 C 7250, 1999 WL 350836, at *6 (N.D. Ill. May 19, 1999) (citations omitted). Plaintiffs' detailed allegations provide Defendants with more than a general outline of the alleged fraud scheme.

Defendants' assertion to the contrary simply ignores what is pled and improperly infers allegations not pled. Defendants focus their particularity argument on Paragraph 73 of the Complaint, wherein Plaintiffs allege: "On information and belief, all or virtually all of the tax liens acquired by CCJ at the 2003 sale were acquired at a penalty rate of 0%. In addition, on information and belief, CCJ, at the direction of J. Rochman, Christopher Rochman, Corinne Rochman, John Bridge, B. Rochman and Sabre, transferred all the tax liens it acquired to Sabre on May 15, 2003, less than two months after the County issued Certificates of Purchase evidencing the liens to CCJ. On information and belief, CCJ had not paid any subsequent taxes on any of the items it had purchased." (Compl. ¶ 73.)

Despite the Defendants' contrary assertions, Plaintiffs never allege that Defendants "transferred the liens that they purchased to Sabre, *without any consideration*." (*See* Defs.' Mot. at 4 (emphasis added).) Plaintiffs make no assertion about consideration. Plaintiffs allege that Defendants Sabre, Cronus and individual Defendants conspired with each other to unlawfully increase the number of bidders in the tax sales, obtain profits to the Plaintiffs' detriment, and engage in a scheme that would generate illicit funds to be shared among the scheme's participants. Plaintiffs' allegations do not presume that the transactions among the Defendants are normal business transactions. Consideration is irrelevant to Plaintiffs' claims because Plaintiffs assert that the transfer of funds among the Defendants is nothing more than the distribution of illicit proceeds among co-conspirators.

Instead, Plaintiffs allege that CCJ "could have no financial motive . . . [absent] some illicit arrangement between defendants" to transfer to Sabre all tax liens that CCJ acquired before CCJ could "derive . . . income from any penalty . . . deed to property . . . or [income] from the statutory 12% penalty on the payment of subsequent taxes." (Compl. ¶ 73.) As demonstrated below, Plaintiffs' investigation supports their belief.

Plaintiffs have properly pled these and other allegations on information and belief accompanied by a statement of facts upon which they base their beliefs. *See Fine ex rel. Maxitron Corp. v. Jansen*, No. 86 C 3695, 1986 WL 8731, at *2 (N.D. Ill. Aug. 1, 1986) (denying a motion to dismiss fraud allegations on information and belief where plaintiffs alleged a statement of facts within their knowledge that supported their belief). Plaintiffs have stated what evidence remained in Defendants' sole possession and inaccessible to Plaintiffs without pre-trial discovery: "Plaintiffs do not have access to such information or assignment documents for liens that had not been either redeemed or the subject of a filed petition for deed, which documents are in the sole possession of the Defendants." (*See* Compl. ¶ 73.) Further, Plaintiffs allege that their belief "is based on Plaintiffs' review of a substantial portion of County records related to the redemption of liens CCJ purchased in 2003, as well as a review of County records related to a sample of liens for which petitions for tax deed existed." (*See id.*)[4]

---

[4] To the extent that the Defendants challenge Plaintiffs' ability to plead on information and belief at all, they are mistaken on the law. Plaintiffs have properly pled allegations on information and belief where they explain the information upon which the belief is based and they indicate that they could not obtain information absent pre-suit discovery (*i.e.* where the information was in sole control of the Defendants). *See e.g.*, *Duane v. Altenburg*, 297 F.2d 515, 518-19 (7th Cir. 1962) (stating that pleading fraud on "information and belief" is permissible as to matters peculiarly in defendant's knowledge when accompanied by statement of facts upon which beliefs are based); *Fine ex rel. Maxitron Corp. v. Jansen*, No. 86 C 3695, 1986 WL 8731, at *2 (N.D. Ill. Aug. 1, 1986). Further, this Court would be warranted in relaxing the restrictions of Rule 9(b) even if Plaintiffs' allegations did not satisfy Rule 9(b). *Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1050-51 (7th Cir. 1998) (relaxing particularity requirements of Rule 9(b) for mail and wire fraud allegations where RICO plaintiff's complaint (1) stated generally the content of fraudulent communications; (2) failed to allege the time and place of the communications; and

While the Defendants may disagree with Plaintiffs' inferences from the facts discovered in the investigation, their disagreement does not make Plaintiffs' allegations "incredible and unsupportable." (Defs.' Mot. at 4.) On a motion to dismiss, the court presumes that a plaintiff's well-pled allegations are true, viewing those allegations in the light most favorable to the plaintiff. *See United States v. City of Chicago Heights*, No. 99 C 4461, 1999 U.S. Dist. LEXIS 18178, at *2-3 (N.D. Ill. Nov. 19, 1999) (Holderman, J.) Plaintiffs are not required to produce a confession by one of the Defendants to plead a claim related to a conspiracy. "Conspiracies are secret by their very nature, so an agreement to conspire may be established by circumstantial evidence, including reasonable inferences drawn from the defendants' conduct and overt acts." *United States v. Scarbrough*, 990 F.2d 296, 299 (7th Cir. 1993). In viewing *all* of Plaintiffs' allegations in a light most favorable to them, this Court should find that Plaintiffs pled their claims with sufficient particularity.

### III. PLAINTIFFS HAVE SUFFICIENTLY ALLEGED A TORTIOUS INTERFERENCE CLAIM

Defendants argue that Plaintiffs' tortious interference claim should be dismissed because Plaintiffs fail to allege a reasonable expectation of entering into a business relationship. Given the environment within which the tax auction operations, however, it is clear that Plaintiffs have sufficiently alleged such a reasonable expectation of entering into a valid business relationship. Specifically, admission to the auction requires registration and attestation with the Treasurer, meaning only a select pool composed of properly registered prospective tax buyers have the opportunity to bid for and purchase liens. If one is not registered, one cannot bid. (*See* Compl. ¶ 35.) Those who have properly registered, therefore, have a reasonable expectation that they will have a business relationship with the County — i.e., that they will be permitted to bid on and

---

(3) stated that defendants possessed the specific information needed to complete Rule 9(b)'s specificity requirements).

purchase liens. Further, when more than one buyer bids the same lowest penalty rate (as is routinely the case, *see id*. ¶ 36), the rotational allocation system provides for a fair, predictable apportionment of liens among the bidders. The auction's rotational allocation system and the sharply restricted pool of tax buyers demonstrate that as Plaintiffs allege they would have received liens Defendants acquired through their fraudulent scheme.[5]

Defendants only argue to the contrary by misrepresenting the County's procedures for the tax auction. Specifically, Defendants argue that Plaintiffs do not adequately allege that they would have received any of the properties Defendants acquired through fraud because it is the "Collector's policy to select a winning bidder 'at random' from among multiple bidders at the same bid." (Defs.' Mot. at 5 (citing *Phoenix Bond & Indem. Co. v. Pappas*, 741 N.E.2d 248, 250 (Ill. 2000)).) As discussed above, however, the Complaint alleges that the auction is run on a rotational, not random system. Further, Defendants' reliance on *Phoenix Bond* for the factual assertion that the County operates on a random system is nothing short of extraordinary as the case makes clear, the random bid policy was used for only six days in 1998, after which time the County abandoned the "random bid selection policy" over concern that it "did not comport with the law." *Phoenix Bond*, 741 N.E.2d at 250. The Court should accordingly disregard Defendants' arguments on this point.

---

[5] Indeed, as a result of their scheme, Defendants acquired an additional 2,280 tax liens, at a value of over $6.6 million, during the 2004 tax auction alone. (Compl. ¶ 91.)

14

**CONCLUSION**

For the reasons set forth in this Memorandum, Plaintiffs respectfully request that this Court deny Defendants' Motion To Dismiss in its entirety.

Dated: November 10, 2005

        **Plaintiffs Phoenix Bond & Indemnity Co., Oak Park Investments, Inc., and BCS Services, Inc.**

        By:___/s/_Lowell E. Sachnoff_____
            One of Their Attorneys

Lowell E. Sachnoff  (ARDC No. 2438062)
Arnold A. Pagnuicci  (ARDC No. 2134799)
John W. Moynihan  (ARDC No. 6212061)
Lisa A. Kistler  (ARDC No. 6273987)
SACHNOFF & WEAVER, LTD.
10 South Wacker Drive, Suite 4000
Chicago, Illinois  60606
(312) 207-1000

Harvey M. Silets  (ARDC No. 2604728)
Jonathan L. Marks  (ARDC No. 6227066)
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, Illinois  60661
(312) 902-5337

# **CERTIFICATE OF SERVICE**

I hereby certify that on November 10, 2005, I electronically filed **Plaintiffs' Response to the Motion to Dismiss Filed by Defendants CCJ Investments, LLC, BRB Investments, LLC, Jesse Rochman, Christopher Rochman and Corrine Rochman** with the Clerk of the Court using the ECF system, which will send notification of such filings to the following:

| | |
|---|---|
| *Attorney for Defendants John Bridge, Barrett Rochman and Sabre Group, LLC* | Theodore M. Becker<br>Morgan Lewis & Bockius<br>77 West Wacker Drive, 5th Floor<br>Chicago, Illinois  60601 |
| *Attorney for Defendants Robert Jensen, Joseph Varan, Cronus Projects, LLC, Gregory Ellis, GJ Venture, LLC, and L.C.C. Venture, LLC* | Kevin J. Clancy<br>Martin W. McManaman<br>Patrick R. Moran<br>Lowis & Gellen LLP<br>200 West Adams Street, Suite 1900<br>Chicago, Illinois  60606 |
| *Attorney for Defendants Jeffrey Bridge, Regal One, LLC, Jason Baumbach, Optimum Financial, Inc., and Carpus Investments, LLC* | Elisha S. Rosenblum<br>Clifford G. Kosoff<br>O'Halloran, Kosoff, Geitner & Cook, P.C.<br>650 Dundee Road, Suite 475<br>Northbrook, Illinois  60062 |
| *Attorney for Defendants Douglas Nash, DRN II, Inc., Jeshay, LLC, and Mud Cats Real Estate, LLC* | David S. Rosenbloom<br>McDermott, Will & Emery LLP<br>227 West Monroe Street, Suite 4400<br>Chicago, Illinois  60606-5096 |
| *Attorney for Defendants Francis Alexander and Georgetown Investors, LLC* | Michael J. Kralovec<br>Joseph R. Lemersal<br>Sara R. McClain<br>Nash, Lalich & Kralovec, LLC<br>53 West Jackson Boulevard, Suite 1102<br>Chicago, Illinois  60604 |

2

and by U.S. Mail to the following non-registered party:

| *Attorney for Defendants Jesse Rochman, Corinne Rochman, Christopher Rochman, BRB Investments, LLC, and CCJ Investments, LLC* | Neil S. Ament<br>Law Office of Neil S. Ament<br>1955 Shermer Road, Suite 400<br>Northbrook, Illinois 60062 |
|---|---|

By:\_\_\_/s/\_Lisa A. Kistler_____
       One of Plaintiffs' Attorneys

Lowell E. Sachnoff (ARDC No. 2438062)
Arnold A. Pagnuicci (ARDC No. 2134799)
John W. Moynihan (ARDC No. 6212061)
Lisa A. Kistler (ARDC No. 6273987)
SACHNOFF & WEAVER, LTD.
10 South Wacker Drive, Suite 4000
Chicago, Illinois 60606
(312) 207-1000

Case: 1:05-cv-04095 Document #: 94 Filed: 11/10/05 Page 18 of 18 PageID #:614