IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PHOENIX BOND & INDEMNITY, CO., ) <br> OAK PARK INVESTMENTS, INC., and ) <br> BCS SERVICES, INC., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> JOHN BRIDGE, BARRETT ROCHMAN, ) <br> SABRE GROUP LLC, ROBERT JENSEN, ) <br> JOSEPH VARAN, CRONUS PROTJECTS, LLC, ) <br> JEFFREY BRIDGE, REGAL ONE, LLC ) <br> CCJ INVESTMENTS, LLC, DRN II, INC., ) <br> FRANCIS ALEXANDER, ) <br> GEORGETOWN INVESTORS, LLC, ) <br> JASON BAUMBACH, ) <br> OPTIMUM FINANCIAL, INC., L.C.C. ) <br> VENTURE, LLC, JESHAY, LLC, ) <br> JESSE ROCHMAN, CHRISTOPHER ROCHMAN,) <br> CORINNE ROCHMAN, ) <br> BRB INVESTMENTS, LLC, DOUGLAS NASH, ) <br> MUD CATS REAL ESTATE, LLC, ) <br> CARPUS INVESTMENTS, LLC, ) <br> GREGORY ELLIS, GJ VENTURE, LLC ) <br> ) <br> Defendants. ) | No. 05 C 4095 |

MEMORANDUM OPINION AND ORDER REGARDING
DEFENDANTS' MOTIONS TO DISMISS

JAMES F. HOLDERMAN, District Judge:

On July 15, 2005, plaintiffs Phoenix Bond & Indemnity Company ("Phoenix"), Oak Park

Investments, Inc. ("Oak Park"), and BCS Services, Inc. ("BCS") filed a complaint against

1

several defendants[1] that compete against the plaintiffs and other buyers at the annual Cook County tax lien sale. (Dkt. No. 1.) In the complaint, the plaintiffs raise claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962, 1964, and a state law claim of tortious interference with prospective business advantage. The defendants responded with motions to dismiss under Federal Rule of Civil Procedure 12(b). (Dkt. Nos. 61, 66, 68, 71, 74, 76.) For the reasons stated below, this court grants the defendants' motions to dismiss.

## BACKGROUND

Taking all well-pleaded factual allegations in the complaint as true and drawing inferences therefrom in favor of the plaintiffs, *Hernandez v. City of Goshen*, 324 F.3d 535, 537 (7th Cir. 2003), this court summarizes the basis for plaintiffs' claims as follows. Each year the Cook County Treasurer's Office holds a tax sale on properties on which the owner, after having been given due notice, has failed to pay real estate taxes thereon. At the tax sale, the County offers to the public the opportunity to purchase the tax lien on these properties through an auction. In exchange for the tax lien on the property, the buyer pays the County the delinquent taxes owed. The purchase of the tax lien does not affect the property owner's legal or equitable

---

[1] The complete list of defendant entities and their respective defendant principals or agents is as follows: (1) Sabre Group, LLC ("Sabre"), its principal Barrett Rochman, and its registered tax bidder John Bridges; (2) Regal One, LLC and its principal Jeffrey Bridges; (3) DRN II, Jeshay, Mud Cats Real Estate, LLC, and their principal Douglas Nash; (4) Cronus Projects, LLC, its principal Robert Jensen, and its principal Joseph Varan; (5) CCJ Investments, LLC, BRB Investments, LLC, their principal Christopher Rochman, their principal Jesse Rochman, and their principal Corinne Rochman; (6) Georgetown Investors, LLC and its principal Francis Alexander; (7) Optimum Financial, Inc., Carpus Investments, LLC, and their principal Jason Baumbach; and (8) L.C.C. Venture, LLC, GJ Venture, LLC, and their principal Gregory Ellis.

title to the property; rather, the owner has the right to redeem the property by paying the delinquent taxes and any penalties assessed within a statutorily established redemption period. If the owner does not pay the delinquent taxes and penalties within the redemption period, the tax buyer or the buyer's assignee may obtain a tax deed for the property and thereby buy the property for essentially the value of the delinquent taxes and any subsequent taxes. If the owner redeems the property within the statutory period, the buyer of the tax lien or the buyer's assignee has the right to receive the money paid to redeem the property including any penalties assessed. Once the tax buyer purchases the lien, the buyer may also pay any real estate taxes that become due after the purchase, and those subsequent taxes are subject to a statutory penalty of 12% should the owner wish to redeem the tax lien.

   The buyers of the tax liens at the auctions determine the penalty rate assessed on the properties' tax debt by bidding on the penalty percentage rate that will be assigned to the property. Under County rules, the rate ranges between 0% and a maximum penalty of 18%. The winning bids is the lowest penalty rate. For properties where several bidders bid the lowest penalty rate of 0%, the Treasurer allocates those properties on a rotational basis to each of those bidders. If multiple simultaneous bids of the same percentage penalty are made, with no bid being the least, no bid will be accepted. These rules benefit the delinquent property owners by rewarding the bidder who is willing to allow the owner to redeem the property for the smallest penalty is allowed to buy the property. Since the 2000 auction, increasing competition at the auctions has resulted in a typical penalty rate of 0%.

   Where the winning bid is 0% for the penalty percentage, there are three possible outcomes for the buyer. If the owner redeems the tax lien promptly, the buyer receives only the

repayment of the delinquent taxes. If the subsequent taxes are paid by the buyer before the owner redeems the tax lien, the buyer will receive the delinquent taxes plus the statutory 12% penalty. Should the owner not redeem the property, the buyer will have the opportunity to the obtain a tax deed and full ownership of the property after paying only the taxes on it. The value of the property at the auction depends on the bidders' assessment of these possible outcomes.

In order to complete the sale of the tax lien or to later petition for a deed to the property, a buyer must provide notice to the owner of the property in accordance with Illinois law. Within four months and 15 days of the purchase of the lien, buyers provide notice pursuant to 35 Ill. Comp. Stat. 200/22-5 ("22-5 notice") to the County that the County then mails to the owner. The buyer pays for the mailings to the owner. In addition, if the owner were not to redeem the property within the statutory period and the buyer wishes to petition for a deed, the buyer must file a petition five months before the end of the redemption period and provide notice of the petition pursuant to 35 Ill. Comp. Stat. 200/22-10 ("22-10 notice") to the owners, occupants, or other interested parties to the property. The County sheriff serves the 22-10 notice of the deed petition on the owners, occupants, or interested parties. Certified mail is used to send 22-10 notices to parties residing outside the state.

In the plaintiffs' complaint in this case, the claims center around one of the regulations that the Treasurer's Office has issued for bidding on tax liens: the "Single, Simultaneous Bidder Rule," which prohibits related bidding entities from simultaneously bidding on the same property at the auction, and requires that buyers affirm their compliance under penalty of

perjury.[2] Under the Single, Simultaneous Bidder Rule, a related bidding entity is "any individual, corporation, partnership, joint venture, limited liability company, business organization, or other entity that has a shareholder, partner, principal, officer, general partner, or other person or entity having an ownership interest in common with, or contractual relationship with, any other registrant" at the annual tax sale. A single bidder may represent several buyers, so long as the bidder is not acting on behalf of multiple buyers at the same time on the same property. The Treasurer or her designated representatives has sole or exclusive discretion to enforce the Single, Simultaneous Bidder Rule. (Dkt. No. 1, Ex. A at 7, "Acknowledgment of Single, Simultaneous Bidder Rule.")

According to the plaintiffs, the defendants violated the Single, Simultaneous Bidder Rule during the 2002, 2003, 2004, and 2005 Cook County tax sales by colluding to act together as related bidders and bidding on the same properties at the lowest penalty rate. The plaintiffs claim that by having more related bidders on each auction, the defendants can purchase from the Treasurer's rotational allocation a greater amount of those properties that receive multiple bids of the lowest percentage penalties.

The plaintiffs assert that the defendants' violation of the Single, Simultaneous Bidder Rule is part of a scheme to defraud the Treasurer and competing buyers of tax liens. According to the plaintiffs, the scheme is structured as follows. Each year before the tax sale, the defendant entities register with the Treasurer's office and sign sworn affidavits that they are not related

---

[2] The Single, Simultaneous Bidder Rule provides that "one tax buying entity (principal) may not have its/his/her/their actual or apparent agents, employees, or related entities, directly or indirectly register under multiple registrations for the intended or perceived purpose of having more than one person bidding at the tax sale at the same time for the intended or perceived purpose of increasing the principal's likelihood of obtaining a successful bid on a parcel."

bidding entities. But before the 2002 tax sale—the first year of the purported scheme—defendant Sabre agreed to act with the other defendant entities as related bidding entities and to have the entities transfer properties that they purchase at the tax sale to Sabre. Beginning in 2002, the plaintiff assert, Sabre directed the defendant entities Regal and DRN II to secretly bid on Sabre's behalf at the auction. During the next several years, more related entities were added or renamed to allegedly bid on Sabre's behalf. The last defendant entities to join the alleged scheme in 2005 were BRB, GJ, Carpus, Mud Cats, whose principals had formerly used the defendant entities CCJ, L.C.C., Optimum, and Jeshay in previous years of the scheme.

Seeking to end this alleged scheme, the plaintiffs filed a lawsuit in this court, alleging substantive RICO violations with the predicate acts of mail fraud and a state claim. The defendants now move to dismiss the complaint, arguing among other issues that the plaintiffs lack standing to bring the RICO claims.

## APPLICABLE LEGAL STANDARDS

Claims are subject to dismissal under Rule 12(b)(1) where this court does not have subject matter jurisdiction over the claim. Fed. R. Civ. P. 12(b)(1). For challenges under Rule 12(b)(1), the court may look beyond the complaint to other evidence submitted by the parties to determine whether subject matter jurisdiction exists. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 922, 946 (7th Cir. 2003).

In considering dismissal of a claim pursuant to Rule 12(b)(6), the court can only look to the complaint's allegations, and dismiss the complaint only when it appears beyond a doubt that the plaintiff can prove no set of facts that would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45 (1957). Unless a plaintiff is alleging fraud, a plaintiff need only plead "the bare

minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." Fed. R. Civ. P. 8; *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). Allegations of fraud subject a complaint to heightened pleading standards under Federal Rules of Civil Procedure 9(b), which requires a plaintiff to plead averments of fraud with particularity. *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 726 (7th Cir. 1998). For purposes of particularity, a plaintiff must allege "the who, what, where, and when of the alleged fraud." *Ackerman v. Nw. Mutual Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999); *see Slaney v. The Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001). Allegations of malice, intent, knowledge and other condition of mind, however, may be averred generally. Fed. R. Civ. P. 9(b); *United States v. N. Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004).

RICO, §§ 1962 and 1964

Briefly, RICO prohibits a "person" from conducting or participating in the conduct of an enterprise, which is engaged in activities affecting interstate or foreign commerce, through a pattern of racketeering activity or conspiracy to do the same. §§ 1964(c), (d); *see Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 482-83 (1985). Racketeering activity is "any act 'chargeable' under several generically described state criminal laws, and any act 'indictable'" under statutorily specified federal criminal provisions, including mail fraud. *Sedima,* 473 U.S. at 483. Private plaintiffs injured in their "business or property by reason of a violation of § 1962" may bring a civil suit against the alleged violators for treble damages. *See* § 1962. To adequately plead a RICO violation under § 1962, plaintiffs must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *See Roger Whitmore's Automative Servs., Inc. v. Lake County, Ill.*, 424 F.3d 659, 670 (7th Cir. 2005). A pattern of racketeering

activities consists of at least two predicate acts, such as mail fraud, committed within a ten year period. 18 U.S.C. § 1961(5). In addition, the RICO violation must be both the "but for" causation and the proximate cause for the injury to the plaintiffs' business or property. *See Holmes v. Securities Investor Protection Corp.*, 504 U.S. 258, 268 (1992); *Corley v. Rosewood Care Ctr., Inc., of Peoria*, 388 F.3d 990, 1005 (7th Cir. 2004).

In their complaint, the plaintiffs predicate their RICO claims on several acts of mail fraud. The conduct consists of the defendants' alleged scheme to defraud the Treasurer and other buyers during each tax sale since 2002 by violating the Single, Simultaneous Bidder Rule in order procure more of the properties allocated on a rotational basis. According to the plaintiffs, the mailing of the 22-5 and 22-10 notices that are required by the County to complete the purchase of the tax liens on the properties constitute the use of the mail in furtherance of the defendants' scheme. In defining the enterprise engaged in this scheme to defraud, the plaintiffs use two different definitions, labeling the enterprise in one count an "association in fact" of the "Rigged Bidding Enterprise" and calling the enterprise "Sabre" in another count.

## ANALYSIS

The various defendants each challenge the plaintiffs' RICO claims on many of the same grounds, and for the most part adopt each other's arguments. As a threshold matter, this court believes that proper analysis requires the court initially to address the defendants' contention that the plaintiffs lack standing to raise the RICO claims. Standing affects this court's subject matter jurisdiction to hear the case and therefore must be addressed first. *See DH2, Inc. v. S.E.C.,* 422 F.3d 591, 596 (7th Cir. 2005).

Defendants argue that a RICO claim with a predicate act of mail fraud protects only the

recipients of the fraudulent representations or the mailings; however, business rivals, who may suffer an indirect injury, should their customers receive the misrepresentations or mailings, are outside the "zone of interests" that RICO protects. As applied to the circumstances of this case, the defendants contend that the alleged violation of the Single, Simultaneous Bidder Rule and the subsequent mailed notices directly affect only the Treasurer and the property owners whose tax liens were purchased by the defendants. In response, the plaintiffs assert that, for purposes of standing, it is sufficient that the plaintiffs were the intended victims of the scheme to defraud—as competing bidders who lost out on a greater allocation of properties—even if they were not the primary victims. And, the plaintiffs continue, the responsibility for pursing a RICO claim against the defendants cannot rest with the primary victim, the Treasurer, because the Treasurer has suffered no loss of property or money from the defendants' scheme; the Treasurer still collects the delinquent taxes regardless of which buyer purchases the tax lien.

      RICO incorporates the common-law principles of proximate causation from tort law. *Holmes*, 503 U.S. at 267-8. As in tort law, a plaintiff claiming a RICO injury by the defendant's violation of a statute "must show not only that the defendant violated the law but also that the plaintiff is among the persons protected by the law." *Israel Travel Advisory Serv., Inc. v. Israel Identity Tours, Inc.*, 61 F.3d 1250, 1257-58 (7th Cir. 1995); *see Honorable v. Easy Life Real Estate Sys., Inc*., 182 F.R.D. 553, 562-63 (N.D. Ill. 1998) (customers have no standing in RICO case because bank fraud statute only meant to protect financial institutions). Competitors and business rivals may have standing to bring a RICO claim, even where an injury is indirect, so long as the relevant common law or statute protects the competitor or business rival and the injury satisfies the requirements of causation and foreseeability. *Israel Travel*, 61 F.3d at 1257-

58 (producer injured by campaign misinformation directed at customers may suffer compensable injury under tort law, such as common law of unfair competition).

In this case, the contours of the mail fraud statute's "zone of interests" is a close question. Only the plaintiffs and other competing buyers, as opposed to the Treasurer or the property owners, would suffer a financial loss from a scheme to violate the Single, Simultaneous Bidder Rule. That the plaintiffs would suffer a loss, however, is not enough to establish standing. The plaintiffs must establish that they are the beneficiaries of the mail fraud statute's protection, and they cannot do so. The plaintiffs were not the recipients of either the defendants' alleged misrepresentations that they were complying with the Single, Simultaneous Bidder Rule, nor were they sent the mailings that completed the purchase of the tax lien. The misrepresentations were made to the Treasurer and the mailings were sent to the property owners. This situation is distinguishable from the case, *In the Matter of EDC, Inc.*, 930 F.2d 1275, 1279 (7th Cir. 1991), on which the plaintiffs rely for the holding that "[o]ne can be an intended victim without being the primary victim." The plaintiffs in *EDC*, although not the primary victims, were the intended victims as direct recipients of the misrepresentations. Therefore, the EDC plaintiffs were held to be beneficiaries of the mail fraud statute's protection. *Id*. at 1280.

The plaintiffs here were not recipients of the alleged misrepresentations and, at best were indirect victims of the alleged fraud. Although a close question, the court holds that the plaintiffs are not in the class of individuals protected by the mail fraud statute, and therefore are not within the "zone of interests" that the RICO statute protects. Consequently, the court holds that plaintiffs lack standing to bring the alleged RICO claims. *See Travel*, 61 F.3d at 1258; *Honorable*, 182 F.R.D. at 562-63. Because the allegations in the plaintiffs' complaint do not

demonstrate plaintiffs' standing to bring their alleged RICO claims, this court dismisses those claims with prejudice and declines to extend supplemental jurisdiction to the remaining state law claim, which is dismissed without prejudice.

Having substantively resolved the RICO claims, this court need not address the other argument raised by the defendants that the plaintiffs did not adequately plead the RICO claims with particularity. That said, for the sake of judicial economy, this court briefly sets out several pleading deficiencies that, perhaps, should be corrected if this court's decision dismissing the plaintiffs' RICO claims were to be appealed, reversed, and remanded.

In pleading allegations of fraud, the plaintiffs are required to plead averments of fraud with particularity, alleging "the who, what, where, and when of the alleged fraud." *Ackerman*, 172 F.3d at 469; *see Slaney*, 244 F.3d at 597. Allegations made "on information and belief" do not satisfy the particularity requirements of Rule 9(b) and must be disregarded unless the allegations are based on facts inaccessible to the plaintiff and the plaintiff pleaded the grounds for his suspicions. *See Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683-84 (7th Cir. 1992); *Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines, Inc.*, 254 F.Supp.2d 1028, 1040 (N.D. Ill. 2003). As the Supreme Court acknowledged in *Rotella v. Wood,* 528 U.S. 549, 560 (2000), Federal Rule of Civil Procedure 11(b)(3) grants some flexibility to Rule 9(b) particularity requirement, allowing pleadings "based on evidence reasonably anticipated after further investigation or discovery."

In the complaint, the plaintiffs couch many of their allegations as being made on "information and belief" when alleging key elements of the alleged scheme to defraud. This court recognizes that certain of these alleged facts may be based on evidence that the plaintiffs

11

reasonably anticipate having access to only after further investigation or discovery, *see Rotella*, 528 U.S. at 560, but the plaintiffs also allege facts based on "information and belief" that, with proper diligence, they could locate in the public record.  As an example, the plaintiffs use "information and belief" to allege the jurisdictional RICO element that defendants sent certain 22-10 mailings to out of state to property owners.  (Cmplt. ¶¶ 95-103.)  With due diligence, the plaintiffs should be able to locate the tax liens purchased by the defendants at the auction and the identities and locations of the owners of those properties.  Failing to properly allege the jurisdictional element for the RICO claims is fatal.

Furthermore, the allegations supporting the defendants' scheme to defraud lack such specificity that an argument could be made that the allegations fail to allege any fraud at all.  The plaintiffs do not identify any properties on which the defendants simultaneously bid; and on which the plaintiffs also bid and lost.  If the defendants all participated in the tax sale as related entities but never simultaneously bid on a property, it appears they may not have lied under oath in their registration materials or violated the Treasurer's Single, Simultaneous Bidder Rule.  The plaintiffs also assert on "information and belief" only that the other defendants transferred tax liens to defendant Sabre after the auctions.  (Cmplt. ¶¶ 59, 61, 69, 70, 72, 73, 78, 80, 81, 82, 86, 88, 89.)  Without a proper allegation that Sabre in fact received properties from the other defendants, there is no support for the plaintiffs' contention that Sabre colluded with the defendants to secure their properties.  This court would expect that there would be a public record of assignments of tax liens to Sabre that the plaintiffs should be able to locate and allege.  This court delves no further into this issue than to advise the plaintiffs of some of what the court perceives at this stage to be defects in the complaint's allegations that could be alleged better

should this case return to this court for further proceedings.

## CONCLUSION

This court concludes that the plaintiffs lack standing to bring their RICO claims and declines to exercise supplemental jurisdiction over the state law claim of tortious interference with business advantage. The defendants' motions to dismiss (Dkt. Nos. 61, 66, 68, 71, 74, 76) are granted. Counts I through IV are dismissed with prejudice and Count V is dismissed without prejudice. The case is dismissed. Judgment is entered in favor of the defendants and against the plaintiffs.

ENTER

*James F. Holderman*
_____
JAMES F. HOLDERMAN
United States District Judge

DATE: December 21, 2005