# EXHIBIT A

**FILED** _LAL_

JUL 1 5 2005

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

*JH*

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PHOENIX BOND & INDEMNITY, CO.,<br>OAK PARK INVESTMENTS, INC.,<br>BCS SERVICES, INC.,<br><br>        Plaintiffs,<br><br>   v.<br><br>JOHN BRIDGE, BARRETT ROCHMAN,<br>SABRE GROUP LLC, ROBERT JENSEN,<br>JOSEPH VARAN, CRONUS PROJECTS, LLC,<br>JEFFREY BRIDGE, REGAL ONE, LLC,<br>CCJ INVESTMENTS, LLC, DRN II, INC.,<br>FRANCIS ALEXANDER, GEORGETOWN<br>INVESTORS, LLC, JASON BAUMBACH,<br>OPTIMUM FINANCIAL, INC.,<br>L.C.C. VENTURE, LLC, JESHAY, LLC,<br>JESSE ROCHMAN, CHRISTOPHER<br>ROCHMAN, CORINNE ROCHMAN, BRB<br>INVESTMENTS, LLC,<br>DOUGLAS NASH, MUD CATS REAL<br>ESTATE, LLC, CARPUS INVESTMENTS,<br>LLC, GREGORY ELLIS, GJ VENTURE, LLC<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>05C 4095<br><br>No.<br><br>JUDGE HOLDERMAN<br><br>MAGISTRATE JUDGE LEVIN |

## COMPLAINT AND DEMAND FOR JURY

Plaintiffs Phoenix Indemnity & Bond Co. ("Phoenix"), Oak Park Investments, Inc. ("Oak

Park"), and BCS Services, Inc. ("BCS") (collectively, "Plaintiffs"), by and through their

attorneys, Sachnoff & Weaver, Ltd., complaining against defendants John Bridge, Barrett

Rochman ("B. Rochman"), Sabre Group, LLC ("Sabre"), Jeffrey Bridge, Regal One, LLC

("Regal"), Robert Jensen ("Jensen"), Joseph Varan ("Varan"), Cronus Projects, LLC ("Cronus"),

Jesse Rochman ("J. Rochman"), Christopher Rochman, Corinne Rochman, CCJ Investments,

LLC ("CCJ"), Douglas Nash ("Nash"), DRN II, Inc. ("DRN II"), Francis Alexander

("Alexander"), Georgetown Investors, LLC ("Georgetown"), Jason Baumbach ("Baumbach"),

Optimum Financial, Inc. ("Optimum"), Gregory Ellis ("Ellis"), L.C.C. Venture, LLC ("L.C.C."),

Jeshay, LLC ("Jeshay"), BRB Investments LLC ("BRB"), Mud Cats Real Estate LLC ("Mud

Cats"), Carpus Investments ("Carpus"), and GJ Venture LLC, ("GJ") (collectively

"Defendants"), allege as follows:

## Nature of the Action

1.       Three tax buyers—Phoenix, Oak Park and BCS—bring this action against

individuals and corporate entities that conspired to violate and violated the Cook County Single

Simultaneous Bidder Rule (the "Rule" or the "County Rule") in the 2002, 2003, 2004 and 2005

tax sales, thereby damaging the Plaintiffs, as well as other tax buyer participants in those

auctions. John Bridge, B. Rochman, and Sabre (the "Sabre Defendants") directed and controlled

secret agreements with CCJ, DRN II, Georgetown, Regal, Optimum, L.C.C., Jeshay, Cronus,

BRB, Mud Cats, Carpus and GJ, and their respective principals, to do Sabre's bidding—literally.

Through a series of fraudulent schemes and collusive bidding, the Defendants unlawfully

obtained the opportunity to purchase a greater number of the liens available for bid at the

auctions through the conspiracy, thus reducing the number of liens Plaintiffs were able to

purchase and costing Plaintiffs the financial benefits flowing from those purchases. Phoenix, Oak

Park and BCS seek to enjoin the Defendants and to recover damages Plaintiffs suffered as a

result of these schemes under sections 1962(c) and 1962(d) of the Racketeer Influenced and

Corrupt Organizations Act ("RICO"), and tortious interference with prospective business

advantage.

2

## Jurisdiction and Venue

2.      This Court has jurisdiction over federal law claims under 28 U.S.C. § 1331 and 18 U.S.C. § 1965(a).  This Court has pendant jurisdiction over the state law claims of tortious interference with prospective business advantage arising out of these transactions.

3.      Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391 and 18 U.S.C. § 1965 because the Defendants reside in, are found in, have an agent in, and/or transact their affairs in, the Northern District of Illinois where a substantial part of the events complained of occurred.

## Parties

4.      Plaintiff Phoenix Bond & Indemnity Co. is an Illinois corporation.  Its business includes buying tax liens and acquiring deeds to properties for which real estate taxes were unpaid, and it participated in the 2002, 2003, 2004 and 2005 Cook County tax sales.

5.      Plaintiff Oak Park Investments, Inc. is an Illinois corporation. Its business includes buying tax liens and acquiring deeds to properties for which real estate taxes were unpaid, and it participated in the 2002, 2003, 2004 and 2005 Cook County tax sales.

6.      Plaintiff BCS Services, Inc. is an Illinois corporation.  Its business includes buying tax liens and acquiring deeds to properties for which real estate taxes were unpaid, and it participated in the 2002, 2003, 2004 and 2005 Cook County tax sales.

7.      Defendant John Bridge is an Illinois resident.  He was a registered tax bidder of Sabre Group, LLC in the 2004 tax sale.

8.      Defendant Barrett Rochman is an Illinois resident.  B. Rochman is a principal of Sabre Group, LLC.

3

9.      Defendant Sabre Group, LLC is an Illinois limited liability company. Its business includes buying tax liens and acquiring deeds to properties for which real estate taxes were unpaid, and it participated in the 2002, 2003 and 2004 Cook County tax sales. Its principal is Defendant Barrett Rochman.

10.     Defendant Regal One, LLC is an Illinois limited liability corporation. Its business includes buying tax liens, and it participated in the 2002, 2003, 2004 and 2005 Cook County tax sales. Its principal is Defendant Jeffrey Bridge.

11.     Defendant Jeffrey Bridge is an Illinois resident. Jeffrey Bridge is a principal of Regal One and was its registered tax bidder at the 2004 and 2005 tax sales. Jeffrey Bridge and John Bridge are brothers.

12.     Defendant DRN II, Inc. is an Illinois limited liability company. Its business includes buying tax liens, and it participated in the 2002 and 2003 Cook County tax sale. Its principal is Defendant Douglas Nash.

13.     Defendant Cronus Projects, LLC is an Illinois limited liability company. Its business includes buying tax liens, and it participated in the 2003, 2004 and 2005 Cook County tax sales. Its principals are Defendants Robert Jensen and Joseph Varan.

14.     Defendant Robert Jensen is an Illinois resident. He is a principal of Cronus and was a registered bidder for Cronus in the 2004 and 2005 tax sales.

15.     Defendant Joseph Varan is an Illinois resident. He is a principal of Cronus and was a registered bidder for Cronus at the 2004 tax sale.

16.     Defendant CCJ Investments, LLC is an Illinois limited liability company. Its business includes buying tax liens, and it participated in the 2003 and 2004 Cook County tax

4

sales. Its principals are Defendants Christopher Rochman, Jesse Rochman and Corinne
Rochman.

17.     Defendant Georgetown Investors, LLC is an Illinois limited liability company. Its
business includes buying tax liens, and it participated in the 2004 and 2005 Cook County tax
sales. Its principal is Defendant Francis Alexander.

18.     Defendant Francis Alexander is an Illinois resident. He is a principal of
Georgetown.

19.     Defendant Optimum Financial, Inc. is an Illinois corporation. Its business
includes buying tax liens, and it participated in the 2004 Cook County tax sale. Its principal is
Defendant Jason Baumbach.

20.     Defendant L.C.C. Venture, LLC, is an Illinois limited liability company. Its
business includes buying tax liens, and it participated in the 2004 Cook County tax sale. One of
its principals is Defendant Gregory Ellis.

21.     Defendant Jeshay, LLC is an Illinois limited liability company. Its business
includes buying tax liens, and it participated in the 2004 Cook County tax sale. Its principal is
Defendant Douglas Nash.

22.     Defendant BRB Investments, LLC is an Illinois limited liability company. Its
business includes buying tax liens, and it participated in the 2005 Cook County tax sale. Its
principals are Defendants Jesse Rochman, Corinne Rochman and Christopher Rochman.

23.     Defendant Jesse Rochman is an Illinois resident. He is a principal for BRB
Investments, LLC and was a registered bidder for BRB at the 2005 tax sale. He was a principal
for CCJ Investments and was a registered bidder for CCJ at the 2004 tax sale. On information
and belief, Jesse Rochman is Barrett Rochman's son.

5

24.    Defendant Christopher Rochman is an Illinois resident. He is a principal for BRB Investments, LLC. He was a principal for CCJ Investments and was one of its registered bidders at the 2004 auction. On information and belief, Christopher Rochman is Barrett Rochman's son.

25.    Defendant Corinne Rochman (a/k/a Corie Rochman) is a Florida resident. Corinne Rochman is a principal for BRB Investments, LLC, and was a principal for CCJ Investments. On information and belief, Corinne Rochman is related to Barrett Rochman.

26.    Defendant Mud Cats Real Estate, LLC is an Illinois limited liability company. Its business includes buying tax liens, and it participated in the 2005 Cook County tax sale. Its principal is Defendant Douglas Nash.

27.    Defendant Douglas Nash is an Illinois resident. He is a principal of Mud Cats and was one of its registered bidders at the 2005 tax sale. He was a principal for DRN II. He was also a principal of Jeshay and was Jeshay's registered bidder at the 2004 tax sale.

28.    Defendant Carpus Investments, LLC is an Illinois limited liability company. Its business includes buying tax liens, and it participated in the 2005 Cook County tax sale. Its principal is Defendant Jason Baumbach.

29.    Defendant Jason Baumbach is an Illinois resident. He is a principal of Carpus and was its registered bidder at the 2005 tax sale. He was a principal for Optimum and was one of Optimum's registered bidders at the 2004 tax sale.

30.    Defendant GJ Venture, LLC is an Illinois limited liability company. Its business includes buying tax liens, and it participated in the 2005 Cook County tax sale. Its principal is Defendant Gregory Ellis.

6

31.    Defendant Gregory Ellis is an Illinois resident. He is currently a principal of GJ and L.C.C. He was GJ's registered bidder at the 2005 tax sale and was one of L.C.C.'s registered bidders at the 2004 tax sale.

### Factual Background To All Counts

32.    The annual Cook County tax sale is part of the Illinois property tax system run by the Cook County Treasurer's Office. If a property owner fails to pay his property taxes due in a given year, the Cook County Treasurer offers for sale to the public a tax lien on that property. The purchaser of the tax lien, the "Tax Buyer," pays the delinquent tax. The property owner may redeem that lien by paying the delinquent tax plus a determined penalty. Upon redemption, the Tax Buyer surrenders the lien and receives the tax amount plus the determined penalty. If the property owner does not redeem the lien within two to three years, the Tax Buyer may commence a judicial proceeding by filing a Petition for Tax Deed and obtain title to the property.

33.    The annual tax sale process begins when the Cook Country Treasurer publishes a list of delinquent real estate parcels in area newspapers. The notice outlines when the Treasurer will apply to the Circuit Court for judgment to begin a tax sale on the property and also lists the time, date and location of the proposed sale. At the tax sale, the County auctions the rights to the tax liens on the delinquent properties in exchange for the County's receipt of the delinquent taxes. The Treasurer then applies to the Circuit Court for judgment to begin the sale. After ruling on any objections, the court orders the sale to commence on the date that the Treasurer previously published or within five business days of that date.

34.    Tax Buyers attend the auction to purchase tax liens. Each lien represents a different parcel of real estate for which taxes are delinquent.

35.    Tax Buyers must be registered and qualified to bid at the tax sale. Registration requires the submission of an application and sworn affidavit in compliance with rules established by the Cook County Treasurer. Registration requires the submission of an application and sworn affidavit in compliance with rules established by the Cook County Treasurer.

36.    Bids are not made in cash amounts and taxes are not sold to the highest bidder. The bidding process is designed to ensure that taxpayers/owners will be able to redeem their taxes at the lowest possible penalty rate. When a taxpayer redeems his taxes from a tax buyer, he pays the amount of taxes paid by the tax buyer at the sale, plus penalty. At the annual tax sale, the tax buyers bid on the rate of penalty. The tax buyer who bids the lowest rate of penalty will win the bid. If more than one tax buyer bids at the same lowest rate, the auctioneer will allocate the liens on a rotational basis to ensure that there is a fair apportionment of liens among the lowest bidding tax buyers. The highest permissible penalty rate is 18% of the delinquent tax per penalty period. Since approximately 2000, the typical penalty rate has been 0%.

37.    A few months after each annual tax sale, the County issues a Certificate of Purchase evidencing the tax lien sold on each parcel of real estate. The County issues Certificates of Purchase to and in the name of the Tax Buyer who made the successful bid. These documents are negotiable instruments that may be transferred.

38.    Tax Buyer's profit by receiving the determined penalty or by obtaining title to property. In addition, once a Tax Buyer purchases a tax lien, the Tax Buyer can pay any real estate taxes that become due after the purchase, known as subsequent taxes. The penalty rate on subsequent taxes is set by statute, not by auction, at 12%. When a property owner redeems the tax lien, they must pay not only the original amount of the delinquent tax plus the determined

penalty, but must also pay the subsequent taxes plus the statutory penalty rate of 12%. Tax

Buyers profit by receiving this additional penalty amount from the payment of subsequent taxes.

39.    Where the bid is 0%, the tax buyer has no possibility of making a profit from the

penalty on the delinquent taxes underlying the lien. Profit may only be obtained by obtaining a

deed or by paying subsequent taxes and receiving the statutory penalty amount of 12%. If the

tax buyer can obtain the deed for the property, the deed can be sold at a significant profit over the

amount paid for the lien.

40.    As a matter of law, no more than four months and fifteen days after purchase of a

lien, the tax buyer who owns the certificate of purchase must draft a notice pursuant to 35 ILCS

200/22-5 (the "22-5 notice"), alerting the last assessee that the lien has been sold for delinquent

taxes. The tax buyer provides the 22-5 notice to the County for the County to mail to the last

assessee. The tax buyer retains a file-stamped copy of the same. The certificate holder pays the

County for the mailing. The 22-5 notice is a mandatory condition to obtain a tax deed. The

failure to file the 22-5 notice renders the tax certificate incapable of foreclosure through a

petition for tax deed, leaving the Tax Buyer with no ability to secure a redemption of the tax lien,

to recover its money or to obtain a deed.

41.    In addition, if the property remains unredeemed after two to three years from the

date of purchase, a lien holder may file a petition for deed. These petitions must be filed five

months before the end of the period of redemption. Pursuant to 35 ILCS 200/22-10, in the first

sixty days of the five-month period, the lien holder is required to provide notice to property

owners, occupants and other interested parties (the "22-10 notice"). Pursuant to 35 ILCS

200/22-15, the Cook County Sheriff serves the lien holders' 22-10 notice of the deed petition and

the impending expiration of the period of redemption on property owners, occupants and other

interested parties in person.  If any owners or interested parties cannot be served in person within Cook County, Illinois, the sheriff will serve them by certified mail.  Certified mail will be used to send the 22-10 notices to all parties outside of Illinois.  The lien holder cannot obtain a deed without proper service of the 22-10 notice.

42.     Further, during the first sixty days of that five-month period before the period of redemption expires, the tax buyer prepares a notice pursuant to 35 ILCS 200/22-25 (the "22-25 notice") and delivers that notice with the requisite fee for mailing to the Circuit Court of Cook County with direction to mail it to the relevant property owners and occupants alerting them that the lien holder has filed a petition for tax deed and the date upon which the period of redemption will expire.  The lien holder cannot obtain a deed without proper service of the 22-25 notice.

43.     The 2002 annual tax sale was held from April 1, 2002 to April 26, 2002.  At the 2002 annual tax sale liens were sold based on property owners' failure to pay real estate taxes in 2000.

44.     The 2003 annual tax sale was held from March 10, 2003 to April 4, 2003.  At the 2003 annual tax sale liens were sold based on property owners' failure to pay real estate taxes in 2001.

45.     The 2004 annual tax sale was held from May 10, 2004 to June 7, 2004.  At the 2004 annual tax sale liens were sold based on property owners' failure to pay real estate taxes in 2002.  One hundred and twenty-four tax buying entities registered to participate in the sale.

46.     The 2005 annual tax sale began on July 6, 2005 and is expected to conclude on July 27, 2005.  At the 2005 annual tax sale liens were sold based on property owners' failure to pay real estate taxes in 2003.  At least one hundred and ninety-five tax buyers registered to participate in the sale.

### The Cook County Single Simultaneous Bidder Rule

47.    In order to participate in the auction, tax buyers can register at the Treasurer's Office up to thirty days before the annual tax sale begins.

48.    At the time of registration, the tax buyer, or its authorized agent, must affirm under penalty of perjury its adherence to Cook County's Single Simultaneous Bidder Rule. The Rule—established before the 2001 tax sale—prohibits related bidding entities from simultaneously participating in the sale.

49.    The Rule defines "related bidding entity" as "any individual, corporation, partnership, joint venture, limited liability company, business organization, or other entity that has a shareholder, partner, principal, officer, general partner or other person or entity having an ownership interest in common with, or contractual relationship with, any other registrant" in the annual tax sale.

50.    As part of the registration under the Rule, the tax buyer represents and warrants that it is not affiliated with any other entity registering to bid in that:  (A) It has no capital, purchase money, or other finances in common with any other bidding entity or person registering to bid at the annual auction; (B) It shares no common ownership interest or common source of funds; (C) It has no agreements to purchase or sell any parcels successfully bid on by any other registering bidding entity or person at the same sale; (D) It has no agreements to purchase or sell any parcels at the annual sale by any entity or person known to be ineligible to bid at the annual sale; (E) It does not stand to benefit financially under an agreement with any other bidder at the sale concerning parcels to be bid on or purchased by another entity.

51.    The Rule's purpose is to ensure that the same entity cannot increase its likelihood of obtaining a lien in the auction through two or more bidders.  The Rule protects the

auctioneer's just allocation of bids on a rotational basis to guarantee a fair apportionment of liens among all tax buyers who bid the lowest rates.

### Sabre's Scheme To Obtain Additional Liens Beyond Its Appropriate Portion

52.    Determined to provide Sabre an unfair advantage, B. Rochman and John Bridge devised methods through violations of the Single Simultaneous Bidder Rule to acquire more liens than Sabre should have been able to obtain at the 2002, 2003, 2004 and 2005 auctions.

53.    Through these methods, John Bridge, B. Rochman and Sabre organized an enterprise by having numerous entities created, including Regal, DRN II, Cronus, CCJ, Georgetown, Optimum, L.C.C., Jeshay, BRB, Mud Cats, Carpus, and GJ, and coordinated these entities' activities to acquire liens in the tax sales for Sabre's benefit. John Bridge, B. Rochman and Sabre accomplished this objective through the following means: directed the principals of the respective defendant entities to create the defendant entities and/or to register for the tax sale; directed all of the defendant entities to register to participate in the tax sale by filing false attestations that they conformed with the Single, Simultaneous Bidder Rule; directed each defendant entity to transfer the certificates of purchase to Sabre following the respective tax sales in which each participated.

54.    In the years 2002, 2003 and 2004, B. Rochman and John Bridge submitted false attestations under penalty of perjury that they adhered to the Single, Simultaneous Bidder Rule. Further, Rochman and Bridge falsely attested that Sabre was not affiliated with any other entity registering to bid in that: (A) It had no capital, purchase money, or other finances in common; (B) It shared no common ownership interest or common source of funds; (C) It had no agreements to purchase or sell any parcels successfully bid on by any other registering bidding entity or person at the same sale; (D) It had no agreements to purchase or sell any parcels at the

annual sale by any entity or person known to be ineligible to bid at the annual sale; (E) It did not stand to benefit financially under an agreement with any other bidder at the sale concerning parcels to be bid on or purchased by another entity. (*See e.g.*, Ex. A.)

55.     To the contrary, beginning in 2002, B. Rochman, John Bridge and Sabre had set in motion—through a series of secret agreements with various entities and individuals—their scheme to defraud the County and the other tax buyers through violation of the County Rule. Pursuant to those agreements, John Bridge, B. Rochman and Sabre directed the defendant entities and individuals to purchase liens for Sabre's benefit. This scheme would grow throughout the course of the next few years, ensnaring both new and pre-existing entities into the scheme to bid for Sabre's benefit.

56.     Through the course of the scheme, the Defendants' improper acquisition of liens through violation of the County Rule deprived the other tax buyers, including Plaintiffs, of the opportunity to acquire tax liens and obtain deeds on the distinct parcels of real estate, thus depriving them of the opportunity to profit from the payment of penalties on subsequent taxes and the sale of parcels for which a deed was acquired.

## The 2002 Tax Sale Auction

57.     B. Rochman, John Bridge and Sabre first tested the County's prosecution of the Rule at the 2002 tax sale auction. One method that B. Rochman, John Bridge, and Sabre devised to implement the scheme to obtain excessive liens for Sabre that year was to have other entities represent that they were acting on their own when in reality they were bidding secretly on Sabre's behalf in the 2002 auction.

58.     In preparation for the 2002 auction, B. Rochman, John Bridge and Sabre created, or had created, an entity—Regal—to secretly bid on Sabre's behalf.

13

59.    At the direction of John Bridge, B. Rochman, and Sabre, Jeffrey Bridge had Regal

incorporated on February 26, 2002, a little over a month before the 2002 auction. On or between

March 1, 2002 and April 26, 2002, at the direction of John Bridge, B. Rochman, and Sabre, and

in furtherance of its role in the conspiracy, Jeffrey Bridge had Regal submit a false registration to

the Cook County Treasurer's Office stating that it adhered to the Single, Simultaneous Bidder

Rule. On or between April 1, 2002 and April 26, 2002—at the direction of John Bridge, B.

Rochman and Sabre—Jeffrey Bridge had Regal purchase liens at the 2002 auction for Sabre's

benefit. On information and belief, all or virtually all of the tax liens acquired by Regal at the

2002 sale were acquired at a penalty rate of 0%. In addition, on information and belief, Regal, at

the direction of Jeffrey Bridge, John Bridge, B. Rochman and Sabre, transferred all the tax liens

it acquired to Sabre on May 15, 2002, less than one month after the County issued Certificates of

Purchase evidencing the liens to Regal. On information and belief, Regal had not paid any

subsequent taxes on any of the items it had purchased. As a result, Regal could derive no income

from any penalty on the underlying tax liens (because the rate was 0%), from any deed to

property (because the lien was transferred long before a deed could be obtained) or from the

statutory 12% penalty on the payment of subsequent taxes (because, on information and belief,

subsequent taxes were not or could not be paid before the transfer to Sabre). Regal could have

no financial motive to bid at the sale, obtain tax liens and transfer them in the manner that it did

to Sabre unless there was some illicit arrangement between defendants. This belief is based on

Plaintiffs' review of a substantial portion of County records related to the redemption of liens

Regal purchased in 2002, as well as a review of County records related to a sample of liens for

which petitions for deed existed. Plaintiffs do not have access to such information or assignment

14

documents for liens that had not been either redeemed or the subject of a filed petition for deed,
which documents are in the sole possession of the Defendants.

60.    B. Rochman, John Bridge, and Sabre also had Nash register his entity—DRN II—
for the 2002 tax sale with the purpose of bidding for Sabre's benefit.

61.    On or between March 1, 2002 and April 26, 2002, at the direction of John Bridge,
B. Rochman, and Sabre, and in furtherance of its role in the conspiracy, Nash had DRN II submit
a false registration to the Cook County Treasurer's Office stating that it adhered to the Single,
Simultaneous Bidder Rule. On or between April 1, 2002 and April 26, 2002—at the direction of
John Bridge, B. Rochman and Sabre—Nash had DRN II purchase liens at the 2002 auction for
Sabre's benefit. On information and belief, all or virtually all of the tax liens acquired by DRN
II at the 2002 sale were acquired at a penalty rate of 0%. In addition, on information and belief,
DRN II, at the direction of Nash, John Bridge, B. Rochman and Sabre, transferred all the tax
liens it acquired to Sabre on May 15, 2002, less than one month after the County issued
Certificates of Purchase evidencing the liens to DRN II. On information and belief, DRN II had
not paid any subsequent taxes on any of the items it had purchased. As a result, DRN II could
derive no income from any penalty on the underlying tax liens (because the rate was 0%), from
any deed to property (because the lien was transferred long before a deed could be obtained) or
from the statutory 12% penalty on the payment of subsequent taxes (because, on information and
belief, subsequent taxes were not or could not be paid before the transfer to Sabre). DRN II
could have no financial motive to bid at the sale, obtain tax liens and transfer them in the manner
that it did to Sabre unless there was some illicit arrangement between defendants. This belief is
based on Plaintiffs' review of a substantial portion of County records related to the redemption
of liens DRN II purchased in 2002, as well as a review of County records related to a sample of

liens for which petitions for deed existed. Plaintiffs do not have access to such information or assignment documents for liens that had not been either redeemed or the subject of a filed petition for deed, which documents are in the sole possession of the Defendants.

62.    John Bridge and B. Rochman also directed Sabre to purchase liens at the 2002 auction.

63.    By filing a false registration form that failed to disclose the agreements among these entities to bid for the benefit of Sabre, each bid that Sabre, Regal and DRN II made at the 2002 tax auction was a step implementing the fraud on the Cook County Treasurer's Office, with the intended victims being all the other tax buyers that were not participating in the conspiracy—including Phoenix, Oak Park and BCS.

64.    Absent the respective frauds and collusive bidding schemes that John Bridge, B. Rochman and Sabre operated and/or managed, Phoenix, Oak Park and BCS would have had an opportunity to obtain a much larger number of liens at the 2002 auction and would have enjoyed the financial benefits flowing from those purchases.

65.    John Bridge, B. Rochman and Sabre were successful in their scheme to defraud the County and the other tax buyers, including Plaintiffs, at the 2002 auction.

### The 2003 Tax Sale Auction

66.    Having successfully implemented the scheme in 2002, John Bridge, B. Rochman and Sabre grew the conspiracy in 2003.

67.    First, John Bridge and B. Rochman directed Sabre to purchase liens in its own name during the 2003 auction.

16

68.     Then, John Bridge, B. Rochman and Sabre directed Jeffrey Bridge and Nash to

have Regal and DRN II, respectively, bid for Sabre's benefit again at the 2003 sale, as they had

at the 2002 auction.

69.     On or between February 10, 2003 and April 4, 2003, at the direction of John

Bridge, B. Rochman, and Sabre, and in furtherance of its role in the conspiracy, Jeffrey Bridge

had Regal submit a false registration to the Cook County Treasurer's Office stating that it

adhered to the Single, Simultaneous Bidder Rule. On or between March 10, 2003 and April 4,

2003—at the direction of John Bridge, B. Rochman and Sabre—Jeffrey Bridge had Regal

purchase liens at the 2003 auction for Sabre's benefit. On information and belief, all or virtually

all of the tax liens acquired by Regal at the 2003 sale were acquired at a penalty rate of 0%. In

addition, on information and belief, Regal, at the direction of Jeffrey Bridge, John Bridge, B.

Rochman and Sabre, transferred all the tax liens it acquired to Sabre on May 15, 2003, less than

two months after the County issued Certificates of Purchase evidencing the liens to Regal. On

information and belief, Regal had not paid any subsequent taxes on any of the items it had

purchased. As a result, Regal could derive no income from any penalty on the underlying tax

liens (because the rate was 0%), from any deed to property (because the lien was transferred long

before a deed could be obtained) or from the statutory 12% penalty on the payment of

subsequent taxes (because, on information and belief, subsequent taxes were not or could not be

paid before the transfer to Sabre). Regal could have no financial motive to bid at the sale, obtain

tax liens and transfer them in the manner that it did to Sabre unless there was some illicit

arrangement between defendants. This belief is based on Plaintiffs' review of a substantial

portion of County records related to the redemption of liens Regal purchased in 2003, as well as

a review of County records related to a sample of liens for which petitions for deed existed.

17

Plaintiffs do not have access to such information or assignment documents for liens that had not been either redeemed or the subject of a filed petition for deed, which documents are in the sole possession of the Defendants.

70.    On or between February 10, 2003 and April 4, 2003, at the direction of John Bridge, B. Rochman, and Sabre, and in furtherance of its role in the conspiracy, Nash had DRN II submit a false registration to the Cook County Treasurer's Office stating that it adhered to the Single, Simultaneous Bidder Rule. On or between March 10, 2003 and April 4, 2003—at the direction of John Bridge, B. Rochman and Sabre—Nash had DRN II purchase liens at the 2003 auction for Sabre's benefit. On information and belief, all or virtually all of the tax liens acquired by DRN II at the 2003 sale were acquired at a penalty rate of 0%. In addition, on information and belief, DRN II, at the direction of Nash, John Bridge, B. Rochman and Sabre, transferred all the tax liens it acquired to Sabre on May 15, 2003, less than two months after the County issued Certificates of Purchase evidencing the liens to DRN II. On information and belief, DRN II had not paid any subsequent taxes on any of the items it had purchased. As a result, DRN II could derive no income from any penalty on the underlying tax liens (because the rate was 0%), from any deed to property (because the lien was transferred long before a deed could be obtained) or from the statutory 12% penalty on the payment of subsequent taxes (because, on information and belief, subsequent taxes were not or could not be paid before the transfer to Sabre). DRN II could have no financial motive to bid at the sale, obtain tax liens and transfer them in the manner that it did to Sabre unless there was some illicit arrangement between defendants. This belief is based on Plaintiffs' review of a substantial portion of County records related to the redemption of liens DRN II purchased in 2003, as well as a review of County records related to a sample of liens for which petitions for deed existed. Plaintiffs do not

18

have access to such information or assignment documents for liens that had not been either redeemed or the subject of a filed petition for deed, which documents are in the sole possession of the Defendants.

71.    Finally, in addition to maintaining their secret agreements with the previous participants bidding on Sabre's behalf again at the 2003 sale, John Bridge, B. Rochman and Sabre were able to add new bidders—such as Cronus—for Sabre's benefit and created a new entity—CCJ—to bid for Sabre's benefit at the 2003 sale.

72.    John Bridge, B. Rochman, and Sabre directed a previously existing entity— Cronus—to bid on Sabre's behalf at the 2003 auction. On or between February 10, 2003 and April 4, 2003—at the direction of John Bridge, B. Rochman and Sabre—Jensen and Varan had Cronus submit a false registration to the Cook County Treasurer's Office stating that it adhered to the Single. Simultaneous Bidder Rule. On or between March 10, 2003 and April 4, 2003—at the direction of John Bridge, B. Rochman and Sabre—Jensen and Varan had Cronus purchase liens at the 2003 tax auction for Sabre's benefit.  On information and belief, all or virtually all of the tax liens acquired by Cronus at the 2003 sale were acquired at a penalty rate of 0%.  In addition, on information and belief, Cronus, at the direction of Jensen, Varan, John Bridge, B. Rochman and Sabre, transferred all the tax liens it acquired to Sabre on May 15, 2003, less than two months after the County issued Certificates of Purchase evidencing the liens to Cronus.  On information and belief, Cronus had not paid any subsequent taxes on any of the items it had purchased.  As a result, Cronus could derive no income from any penalty on the underlying tax liens (because the rate was 0%), from any deed to property (because the lien was transferred long before a deed could be obtained) or from the statutory 12% penalty on the payment of subsequent taxes (because, on information and belief, subsequent taxes were not or could not be

19

paid before the transfer to Sabre). Cronus could have no financial motive to bid at the sale,
obtain tax liens and transfer them in the manner that it did to Sabre unless there was some illicit
arrangement between defendants. This belief is based on Plaintiffs' review of a substantial
portion of County records related to the redemption of liens Cronus purchased in 2003, as well as
a review of County records related to a sample of liens for which petitions for deed existed.
Plaintiffs do not have access to such information or assignment documents for liens that had not
been either redeemed or the subject of a filed petition for deed, which documents are in the sole
possession of the Defendants.

73.    At the direction of John Bridge, B. Rochman and Sabre—J. Rochman,
Christopher Rochman and Corinne Rochman had CCJ incorporated on February 10, 2003, a
month before the 2003 auction. On or between February 10, 2003 and April 4, 2003, at the
direction of John Bridge, B. Rochman, and Sabre, and in furtherance of its role in the conspiracy,
J. Rochman, Christopher Rochman and Corinne Rochman had CCJ submit a false registration to
the Cook County Treasurer's Office stating that it adhered to the Single, Simultaneous Bidder
Rule. On or between March 10, 2003 and April 4, 2003—at the direction of John Bridge, B.
Rochman and Sabre—J. Rochman, Christopher Rochman and Corinne Rochman had CCJ
purchase liens at the 2003 auction for Sabre's benefit. On information and belief, all or virtually
all of the tax liens acquired by CCJ at the 2003 sale were acquired at a penalty rate of 0%. In
addition, on information and belief, CCJ, at the direction of J. Rochman, Christopher Rochman,
Corinne Rochman, John Bridge, B. Rochman and Sabre, transferred all the tax liens it acquired
to Sabre on May 15, 2003, less than two months after the County issued Certificates of Purchase
evidencing the liens to CCJ. On information and belief, CCJ had not paid any subsequent taxes
on any of the items it had purchased. As a result, CCJ could derive no income from any penalty

20

on the underlying tax liens (because the rate was 0%), from any deed to property (because the

lien was transferred long before a deed could be obtained) or from the statutory 12% penalty on

the payment of subsequent taxes (because, on information and belief, subsequent taxes were not

or could not be paid before the transfer to Sabre). CCJ could have no financial motive to bid at

the sale, obtain tax liens and transfer them in the manner that it did to Sabre unless there was

some illicit arrangement between defendants. This belief is based on Plaintiffs' review of a

substantial portion of County records related to the redemption of liens CCJ purchased in 2003,

as well as a review of County records related to a sample of liens for which petitions for deed

existed. Plaintiffs do not have access to such information or assignment documents for liens that

had not been either redeemed or the subject of a filed petition for deed, which documents are in

the sole possession of the Defendants.

74.    By filing false registration forms that failed to disclose the agreements among

these entities to bid for the benefit of Sabre, each bid that Sabre, Regal, DRN II, Cronus, and

CCJ made at the 2003 tax auction was a step implementing the fraud on the Cook County

Treasurer's Office, with the intended victims being all the other tax buyers that were not

participating in the conspiracy—including Phoenix, Oak Park and BCS.

75.    Absent the respective frauds and collusive bidding schemes that John Bridge, B.

Rochman and Sabre operated and/or managed, Phoenix, Oak Park and BCS would have had an

opportunity to obtain a much larger number of liens at the 2003 auction and would have enjoyed

the financial benefits flowing from those purchases.

76.    John Bridge, B. Rochman and Sabre successfully kept their scheme to defraud the

County and the other tax buyers through violations of the Rule at the 2002 and 2003 auctions a

secret. As time passed from the dates of sale for each lien wrongfully acquired and Sabre's

21

ownership of liens grew through the assignments that Regal, DRN II, Cronus, and CCJ provided it, profits continued to roll into the coffers of John Bridge, B. Rochman and Sabre. They reaped the profits from the additional liens they were able to acquire by having multiple bidders for Sabre's benefit in violation of the Rule. They collected the penalty accrued on properties that were redeemed and received deeds for properties that were not redeemed.

### The 2004 Tax Sale

77.    Nonetheless, John Bridge, B. Rochman and Sabre wanted even more opportunities to gain excessive bids at the 2004 auction. They furthered their scheme to defraud in preparation for the 2004 tax sale through the same methods that were successful for them in the 2002 and 2003 sales.

78.    On information and belief, John Bridge, B. Rochman and Sabre maintained their secret agreements with the entities that had bid for Sabre's benefit in 2002 and 2003, to continue the practice at the 2004 sale. These entities, Regal, CCJ, Cronus and Jeshay (Nash's replacement for DRN II)—agreed to bid on liens that B. Rochman, John Bridge and Sabre chose before the auction. Pursuant to the secret agreements, these entities assigned all of their liens to Sabre after the auction. Sabre was thereby able to exercise more bids and obtain more liens through this scheme than was appropriate, thus injuring those tax buyers—including Phoenix, Oak Park and BCS—that complied with the County's Rule.

79.    The relationships among John Bridge, B. Rochman and Sabre and the other entities allowed John Bridge, B. Rochman and Sabre to effectively and efficiently direct and control all the entities' implementation of the scheme to obtain more liens for Sabre through the secret agreement. For instance, CCJ Investments lists its address in state records at B. Rochman's address—1345 East Park Street in Carbondale, Illinois. In addition, CCJ had Kelly

22

Penman—a registered bidder for Sabre in the 2004 sale (*see* Ex. A)—execute assignments of liens to Sabre on CCJ's behalf. An example of one of those assignments is attached as Ex. B.

80.    On or about April 19, 2004, at the direction of John Bridge, B. Rochman and Sabre and in furtherance of its role in the conspiracy, Jeffrey Bridge had Regal submit a false registration to the Cook County Treasurer's Office stating that it adhered to the Single, Simultaneous Bidder Rule. On or between May 10, 2004 and June 7, 2004—at the direction of John Bridge, B. Rochman and Sabre—Jeffrey Bridge had Regal purchase 335 liens at the 2004 tax auction for Sabre's benefit, each of which was acquired at a penalty rate of 0%. On information and belief, Regal, at the direction of Jeffrey Bridge, John Bridge, B. Rochman and Sabre transferred all of the liens it purchased at the 2004 auction to Sabre. This belief is based on Plaintiffs' review of a substantial portion of County records related to the redemption of liens Regal purchased in 2004, which indicated that the liens redeemed had been previously assigned to Sabre. Plaintiffs do not have access to such information or assignment documents for liens that had not been either redeemed or the subject of a filed petition for deed, which documents are in the sole possession of the Defendants.

81.    Implementing its continuing role in the conspiracy, on or around April 26, 2004, J. Rochman, Christopher Rochman and Corinne Rochman had CCJ submit a false registration to the Cook County Treasurer's Office stating that it adhered to the County Rule. On or between May 10, 2004 and June 7, 2004—at the direction of John Bridge, B. Rochman and Sabre—J. Rochman, Christopher Rochman and Corinne Rochman had CCJ purchase 352 liens at the auction, each of which was acquired at a penalty rate of 0%. On information and belief, CCJ transferred all of the liens it purchased at the 2004 auction to Sabre. This belief is based on Plaintiffs' review of a substantial portion of County records related to the redemption of liens

CCJ purchased in 2004, which indicated that the liens redeemed had been previously assigned to Sabre. Plaintiffs do not have access to such information or assignment documents for liens that had not been either redeemed or the subject of a filed petition for deed, which documents are in the sole possession of the Defendants.

82.    On April 30, 2004—at the direction of John Bridge, B. Rochman and Sabre—Jensen and Varan had Cronus submit a false registration to the Cook County Treasurer's Office stating that it adhered to the Single, Simultaneous Bidder Rule. On or between May 10, 2004 and June 7, 2004—at the direction of John Bridge, B. Rochman and Sabre—Jensen and Varan had Cronus purchase 276 liens at the 2004 tax auction, each of which was acquired at a penalty rate of 0%. On information and belief, Cronus, at the direction of Jensen, Varan, John Bridge, B. Rochman and Sabre, transferred all of the liens it purchased at the 2004 auction to Sabre. This belief is based on Plaintiffs' review of a substantial portion of County records related to the redemption of liens Cronus purchased in 2004, which indicated that the liens redeemed had been previously assigned to Sabre. Plaintiffs do not have access to such information or assignment documents for liens that had not been either redeemed or the subject of a filed petition for deed, which documents are in the sole possession of the Defendants.

83.    Nash incorporated Jeshay on March 11, 2004, just three months before the 2004 auction, as the replacement for the prior entity, DRN II. On April 22, 2004, at the direction of John Bridge, B. Rochman and Sabre and in furtherance of its role in the conspiracy, Nash had Jeshay submit a false registration to the Cook County Treasurer's Office stating that it adhered to the Single, Simultaneous Bidder Rule. On or between May 10, 2004 and June 7, 2004—at the direction of John Bridge, B. Rochman and Sabre—Nash had Jeshay purchase 264 liens at the 2004 tax auction for Sabre's benefit, each of which was acquired at a penalty rate of 0%. On

24

information and belief. Jeshay, at the direction of Nash, John Bridge, B. Rochman and Sabre transferred all of the liens it purchased at the 2004 auction to Sabre. This belief is based on Plaintiffs' review of a substantial portion of County records related to the redemption of liens Jeshay purchased in 2004, which indicated that the liens redeemed had been previously assigned to Sabre. Plaintiffs do not have access to such information or assignment documents for liens that had not been either redeemed or the subject of a filed petition for deed, which documents are in the sole possession of the Defendants.

84.    Similarly, John Bridge, B. Rochman and Sabre were able to expand the conspiracy further by adding another pre-existing entity Georgetown to the conspiracy and by having Georgetown violate the County Rule by participating in the scheme to bid and purchase liens for Sabre's benefit at the 2004 tax sales.

85.    On April 28, 2004, at the direction of John Bridge, B. Rochman and Sabre and in furtherance of its role in the conspiracy, Alexander had Georgetown submit a false registration to the Cook County Treasurer's Office stating that it adhered to the Single, Simultaneous Bidder Rule. Notably, Georgetown's 2004 tax sale registration originally listed the tax buying entity's name as "Sabre Group." The attestation accompanying Georgetown's registration (attached as Ex. C) shows that there was a line drawn through the Sabre Group name and the name "Georgetown" was written in instead.

86.    On or between May 10, 2004 and June 7, 2004—at the direction of John Bridge, B. Rochman and Sabre—Alexander had Georgetown purchase 281 liens at the 2004 tax auction, each of which was acquired at a penalty rate of 0%. On information and belief, Georgetown, at the direction of Alexander, John Bridge, B. Rochman and Sabre transferred all of the liens it purchased at the 2004 auction to Sabre. This belief is based on Plaintiffs' review of a substantial

portion of County records related to the redemption of liens Georgetown purchased in 2004,
which indicated that the liens redeemed had been previously assigned to Sabre. Plaintiffs do not
have access to such information or assignment documents for liens that had not been either
redeemed or the subject of a filed petition for deed, which documents are in the sole possession
of the Defendants.

87.     In addition to conspiring with existing entities, John Bridge, B. Rochman and
Sabre created, or agreed to have created, new tax buying entities for which the primary purpose
was to bid for Sabre's benefit at the 2004 sale. In preparation for the 2004 auction and in the
three months just prior to that auction, John Bridge, B. Rochman and Sabre added two newly
formed entities to the scheme—namely, Optimum and L.C.C.

88.     At the direction of John Bridge, B. Rochman and Sabre—Baumbach had
Optimum incorporated on March 1, 2004, just three months before the 2004 auction. On or
about April 19, 2004, at the direction of John Bridge, B. Rochman, and Sabre, and in furtherance
of its role in the conspiracy, Baumbach had Optimum submit a false registration to the Cook
County Treasurer's Office stating that it adhered to the Single, Simultaneous Bidder Rule. On or
between May 10, 2004 and June 7, 2004—at the direction of John Bridge, B. Rochman and
Sabre—Baumbach had Optimum purchase 182 liens at the 2004 tax auction for Sabre's benefit,
each of which was acquired at a penalty rate of 0%. On information and belief, Optimum, at the
direction of Baumbach, John Bridge, B. Rochman and Sabre transferred all of the liens it
purchased at the 2004 auction to Sabre. This belief is based on Plaintiffs' review of a substantial
portion of County records related to the redemption of liens Optimum purchased in 2004, which
indicated that the liens redeemed had been previously assigned to Sabre. Plaintiffs do not have
access to such information or assignment documents for liens that had not been either redeemed

or the subject of a filed petition for deed, which documents are in the sole possession of the Defendants.

89.    At the direction of John Bridge, B. Rochman and Sabre—Ellis had L.C.C. incorporated on May 4, 2004, almost one month before the 2004 auction. On April 30, 2004, at the direction of John Bridge, B. Rochman and Sabre and in furtherance of its role in the conspiracy, Ellis had L.C.C. submit a false registration to the Cook County Treasurer's Office stating that it adhered to the Single, Simultaneous Bidder Rule. On or between May 10, 2004 and June 7, 2004—at the direction of John Bridge, B. Rochman and Sabre—Ellis had L.C.C. purchase 291 liens at the 2004 tax auction for Sabre's benefit, each of which was acquired at a penalty rate of 0%. On information and belief, L.C.C., at the direction of Ellis, John Bridge, B. Rochman and Sabre transferred all of the liens it purchased at the 2004 auction to Sabre. This belief is based on Plaintiffs' review of a substantial portion of County records related to the redemption of liens L.C.C. purchased in 2004, which indicated that the liens redeemed had been previously assigned to Sabre. Plaintiffs do not have access to such information or assignment documents for liens that had not been either redeemed or the subject of a filed petition for deed, which documents are in the sole possession of the Defendants.

90.    By filing false registration forms that failed to disclose the agreements among these entities to bid for the benefit of Sabre, each bid that Sabre, CCJ, Georgetown, Optimum, Regal, L.C.C., Jeshay, and Cronus made at the 2004 tax auction was a step in implementing the fraud on the Cook County Treasurer's Office, with the intended victims being all the other tax buyers that were not participating in the conspiracy—including Phoenix, Oak Park and BCS.

91.    On or between May 10, 2004, and June 7, 2004, as a result of their fraudulent conduct, Sabre, CCJ, Georgetown, Optimum, Regal, L.C.C., Jeshay, and Cronus collectively

purchased 2280 liens sold at the 2004 auction, at a total value of over $6.6 million, well in excess of the 481 liens at a total value of $2.2 million that Sabre was able to purchase in its own name.

92.     Absent the respective frauds and collusive bidding schemes that John Bridge, B. Rochman and Sabre operated and/or managed, Phoenix, Oak Park and BCS would have had an opportunity to obtain a much larger number of liens and would have enjoyed the financial benefits flowing from those purchases.

## The 2005 Tax Sale

93.     Regal, Cronus and Georgetown are bidding on Sabre's behalf in the 2005 auction. Additionally, new tax buying entities were created for the primary purpose of bidding for Sabre's benefit at the 2005 sale. The new entities were incorporated within days of each other, within one month prior to the 2005 auction, and share principals with entities that bid for Sabre's benefit in previous auctions.

94.     John Bridge, B. Rochman and Sabre directed the principals of four conspirators— L.C.C., Optimum, CCJ and Jeshay—to have incorporated four new companies—BRB, Mud Cats, Carpus and GJ—in preparation for the 2005 auction. Pursuant to the scheme, the new entities were to participate in the 2005 auction in place of L.C.C, Optimum, CCJ and Jeshay. At the direction of John Bridge, B. Rochman and Sabre—J. Rochman, Christopher Rochman and Corinne Rochman had BRB incorporated on June 7, 2005. At the direction of John Bridge, B. Rochman and Sabre—Nash had Mud Cats incorporated on June 10, 2005. At the direction of John Bridge, B. Rochman and Sabre—Ellis had GJ incorporated on June 15, 2005. At the direction of John Bridge, B. Rochman and Sabre—Baumbach had Carpus incorporated on June 16, 2005. These four new entities in the 2005 auction share—through their principals—the same ties that their predecessors shared with Sabre. The principals are up to their old ways, simply

28

donning new entity identities with which to cloak their participation in the scheme to defraud the County and the tax buyers. These new entities and their principals—in conspiracy with John Bridge, B. Rochman, Sabre, CCJ, Francis Alexander, Georgetown, Optimum, Jeffrey Bridge, Regal, L.C.C., Jeshay, Jensen, Varan, and Cronus—are continuing the scheme to defraud the County and the other tax buyers in the 2005 auction, at the direction of John Bridge, B. Rochman and Sabre.

### RICO Predicate Acts

95.    During the auctions held in 2002, 2003 and 2004, Sabre purchased hundreds of liens. Sabre, John Bridge and B. Rochman prepared and caused to be prepared 22-5 notices of the lien sale and caused Cook County to mail those notices to the last tax assesses in order to ensure that Sabre could enforce the liens. On information and belief, these include liens on properties in which interested parties are located out of state. Sabre, John Bridge and B. Rochman also prepared and caused to be prepared 22-10 and 22-25 notices for the liens that were available to convert into deeds. Sabre, John Bridge and B. Rochman caused Cook County to mail these notices to enable them to convert the liens into deeds for Sabre. These mailings of the 22-5, 22-10, and 22-25 notices were integral to the scheme to profit by obtaining additional liens in violation of the County Rule. This conduct violated 18 U.S.C. § 1341. Exhibit D identifies a small sample of these mailings related to the liens that Sabre purchased during the auctions held in 2002, 2003 and 2004.

96.    During the auctions held in 2002, 2003 and 2004, Regal purchased hundreds of liens for Sabre's benefit in violation of the County Rule. On information and belief, these included liens on properties in which interested parties are located out of state. Regal, Sabre, Jeffrey Bridge, John Bridge and B. Rochman prepared and caused to be prepared 22-5 notices of

the lien sale and caused Cook County to mail those notices to the last tax assessees in order to ensure that Sabre could enforce the liens. Regal, Sabre, Jeffrey Bridge, John Bridge and B. Rochman also prepared and caused to be prepared 22-10 and 22-25 notices for the liens that were available to convert into deeds. Regal, Sabre, Jeffrey Bridge, John Bridge and B. Rochman caused Cook County to mail these notices to enable them to convert the liens into deeds for Sabre. These mailings of the 22-5, 22-10 and 22-25 notices were integral to the scheme to profit by obtaining additional liens in violation of the County Rule. This conduct violated 18 U.S.C. § 1341. Exhibit E identifies a small sample of these mailings related to the liens that Regal purchased during the auctions held in 2002, 2003 and 2004.

97.     During the auctions held in 2002 and 2003, DRN II purchased hundreds of liens for Sabre's benefit in violation of the County Rule. On information and belief, these included liens on properties in which interested parties are located out of state. DRN II, Sabre, Nash, John Bridge and B. Rochman prepared and caused to be prepared 22-5 notices of the lien sale and caused Cook County to mail those notices to the last tax assessees in order to ensure that Sabre could enforce the liens. DRN II, Sabre, Nash, John Bridge and B. Rochman also prepared and caused to be prepared 22-10 and 22-25 notices for the liens that were available to convert into deeds. DRN II, Sabre, Nash, John Bridge and B. Rochman caused Cook County to mail the 22-10 and 22-25 notices to enable them to convert the liens into deeds for Sabre. These mailings of the 22-5, 22-10 and 22-25 notices were integral to the scheme to profit by obtaining additional liens in violation of the County Rule. This conduct violated 18 U.S.C. § 1341. Exhibit F identifies a small sample of these mailings related to the liens that Cronus purchased during the auctions held in 2003 and 2004.

98.    During the auctions held in 2003 and 2004, Cronus purchased hundreds of liens for Sabre's benefit in violation of the County Rule. On information and belief, these included liens on properties in which interested parties are located out of state. Cronus, Sabre, Robert Jensen, Joseph Varan, John Bridge and B. Rochman prepared and caused to be prepared 22-5 notices of the lien sale and caused Cook County to mail those notices to the last tax assessees in order to ensure that Sabre could enforce the liens. Cronus, Sabre, Robert Jensen, Joseph Varan, John Bridge and B. Rochman also prepared and caused to be prepared 22-10 and 22-25 notices for the liens that were available to convert into deeds. Cronus, Sabre, Robert Jensen, Joseph Varan, John Bridge and B. Rochman caused Cook County to mail the 22-10 and 22-25 notices to enable them to convert the liens into deeds for Sabre. These mailings of the 22-5, 22-10 and 22-25 notices were integral to the scheme to profit by obtaining additional liens in violation of the County Rule. This conduct violated 18 U.S.C. § 1341. Exhibit G identifies a small sample of these mailings related to the liens that Cronus purchased during the auctions held in 2003 and 2004.

99.    During the auctions held in 2003 and 2004, CCJ purchased hundreds of liens for Sabre's benefit in violation of the County Rule. On information and belief, these included liens on properties in which interested parties are located out of state. CCJ, Sabre, Christopher Rochman, J. Rochman, Corinne Rochman, John Bridge and B. Rochman prepared and caused to be prepared 22-5 notices of the lien sale and caused Cook County to mail those notices to the last tax assessees in order to ensure that Sabre could enforce the liens. CCJ, Sabre, Christopher Rochman, J. Rochman, Corinne Rochman, John Bridge and B. Rochman also prepared and caused to be prepared 22-10 and 22-25 notices for the liens that were available to convert into deeds. CCJ, Sabre, Christopher Rochman, J. Rochman, Corinne Rochman, John Bridge and B.

31

Rochman caused Cook County to mail the 22-10 and 22-25 notices to enable them to convert the liens into deeds for Sabre. These mailings of the 22-5, 22-10 and 22-25 notices were integral to the scheme to profit by obtaining additional liens in violation of the County Rule. This conduct violated 18 U.S.C. § 1341. Exhibit H identifies a small sample of these mailings related to the liens that CCJ purchased during the auctions held in 2003 and 2004.

100.    During the auction held in 2004, Georgetown purchased hundreds of liens for Sabre's benefit in violation of the County Rule. On information and belief, these included liens on properties in which interested parties are located out of state. Georgetown, Sabre, Francis Alexander, John Bridge and B. Rochman prepared and caused to be prepared 22-5 notices of the lien sale and caused Cook County to mail those notices to the last tax assessees in order to ensure that Sabre could enforce the liens. 22-10 and 22-25 notices will also have to be mailed to convert unredeemed liens into deeds. These mailings of the 22-5 notices were integral to the scheme to profit by obtaining additional liens in violation of the County Rule. This conduct violated 18 U.S.C. § 1341. Exhibit I identifies a small sample of these mailings related to the liens that Georgetown purchased during the auction held in 2004.

101.    During the auction held 2004, Optimum purchased hundreds of liens for Sabre's benefit in violation of the County Rule. On information and belief, these included liens on properties in which interested parties are located out of state. Optimum, Sabre, Jason Baumbach, John Bridge and B. Rochman prepared and caused to be prepared 22-5 notices of the lien sale and caused Cook County to mail those notices to the last tax assessees in order to ensure that Sabre could enforce the liens. 22-10 and 22-25 notices will also have to be mailed to convert unredeemed liens into deeds. These mailings of the 22-5 notices were integral to the scheme to profit by obtaining additional liens in violation of the County Rule. This conduct violated 18

U.S.C. § 1341. Exhibit J identifies a small sample of these mailings related to the liens that Optimum purchased during the auction held in 2004.

102.    During the auction held in 2004, L.C.C. purchased hundreds of liens for Sabre's benefit in violation of the County Rule. On information and belief, these included liens on properties in which interested parties are located out of state. L.C.C., Sabre, Gregory Ellis, John Bridge and B. Rochman prepared and caused to be prepared 22-5 notices of the lien sale and caused Cook County to mail those notices to the last tax assessees in order to ensure that Sabre could enforce the liens. 22-10 and 22-25 notices will also have to be mailed to convert unredeemed liens into deeds. These mailings of the 22-5 notices were integral to the scheme to profit by obtaining additional liens in violation of the County Rule. This conduct violated 18 U.S.C. § 1341. Exhibit K identifies a small sample of these mailings related to the liens that L.C.C. purchased during the auction held in 2004.

103.    During the auction held in 2004, Jeshay purchased hundreds of liens for Sabre's benefit in violation of the County Rule. On information and belief, these included liens on properties in which interested parties are located out of state. Jeshay, Sabre, Nash, John Bridge and B. Rochman prepared and caused to be prepared 22-5 notices of the lien sale and caused Cook County to mail those notices to the last tax assessees in order to ensure that Sabre could enforce the liens. 22-10 and 22-25 notices will also have to be mailed to convert unredeemed liens into deeds. These mailings of the 22-5 notices were integral to the scheme to profit by obtaining additional liens in violation of the County Rule. This conduct violated 18 U.S.C. § 1341. Exhibit L identifies a small sample of these mailings related to the liens that Jeshay purchased during the auction held in 2004.

104.    Regal, Cronus, Georgetown, BRB, Mud Cats, Carpus, and GJ are participating in the auction being held presently in 2005 to obtain liens for the benefit of Sabre in violation of the County Rule. Each of those entity defendants, along with their principals, will have to prepare 22-5 notices of the lien sale and cause Cook County to mail those notices to the last tax assessees and other interested parties in order to ensure that Sabre can enforce the liens. These defendants will have to prepare 22-10 and 22-25 notices and cause those notices to be mailed by Cook County for liens to be able to be converted to deeds. Each such mailing is an anticipated act of mail fraud in violation of 18 U.S.C. § 1341 that the related defendants presently intend to engage in.

## COUNT I
## Substantive Racketeering – 18 U.S. C. §§ 1962(c) and 1964

105.    Plaintiffs incorporate by reference the allegations of paragraph 1 through 104 of the Complaint as though fully set forth herein.

106.    At all relevant times, Sabre, Regal, DRN II, Cronus, CCJ, Georgetown, John Bridge, B. Rochman, Jeffrey Bridge, Christopher Rochman, Jesse Rochman, Corinne Rochman, Robert Jensen, Joseph Varan, Francis Alexander, Jason Baumbach, Gregory Ellis, Douglas Nash, were "persons" within the meaning of RICO, 18 U.S.C. § 1961(3). This Count is brought against each of the defendants identified in this paragraph.

107.    All Defendants constitute an association-in-fact "enterprise" (the "Rigged Bidding Enterprise") as that term is defined in 18 U.S.C. § 1964(4), that engages in, and the activities of which affect, interstate commerce. The members of the Rigged Bidding Enterprise are and have been associated through time, joined in purpose and organized in a manner amenable to hierarchal and consensual decision-making, with each member fulfilling a specific and necessary role to carry out and facilitate its purpose. Specifically, Jeffrey Bridge, Christopher Rochman,

Jesse Rochman, Corinne Rochman, Robert Jensen, Joseph Varan, Francis Alexander, Jason
Baumbach, Gregory Ellis, and Douglas Nash incorporated and became the principals of entities,
and pretended to act as legitimate, unrelated bidders at annual tax sales on behalf of those
entities. Regal, DRN II, Cronus, CCJ, Georgetown, Optimum, L.C.C., Jeshay, BRB, Mud Cats,
Carpus, and GJ were formed to create the appearance of legitimate, unrelated entities, registered
to bid at annual tax sales, submitted false registrations to the Cook County Treasurer's Office
stating that they had adhered to the Single, Simultaneous Bidder Rule, purchased liens at the
annual tax sales and transferred those liens to Sabre. Sabre registered to bid at the 2002, 2003,
and 2004 sales, submitted false registrations to the Cook County Treasurer's Office in
connection with those sales stating that it had adhered to the Single, Simultaneous Bidder Rule,
purchased liens at those tax sales in its own name, acquired liens by transfer from other
defendants from the 2002, 2003 and 2004 tax sale and arranged to acquire liens obtained at the
2005 tax sale. John Bridge and B. Rochman directed the affairs of Sabre and of others which
included forming entities to bid at the annual tax sale, registering those entities to bid, submitting
false registrations to the Cook County Treasurer's Office falsely stating adherence to the Single,
Simultaneous Bidder Rule, purchasing liens at auction, having all those liens transferred to
Sabre, and insuring that participants were compensated for their participation. The planning and
carrying out of the scheme would have been beyond the capacity of each member of the
Enterprise acting singly and without the aid of each other.

108.    Each defendant is or has been employed by and/or associated with the Rigged
Bidding Enterprise.

109.    On information and belief, based on the County Records and the assignments of
liens filed with the County by many of the entity defendants, all of the individual defendants

other than John Bridge and B. Rochman and at least some of the entity defendants, other than Sabre, received a financial benefit for their participation in the scheme. Such financial benefits for defendants were the product of the scheme and could not have been realized had Sabre not been able to secure more liens than it was entitled to and the corresponding profits from such liens.

110.    Each of the defendants to this Count have mailed or caused to be mailed hundreds of mailings in furtherance of the scheme to obtain liens for the benefit of Sabre greatly in excess of the number of liens Sabre would have been allowed under the County Rule. A small sample of those mailings is identified in Exhibits D through L. Further, each of the defendants to this Count has conducted and/or participated in the conduct of the Rigged Bidding Enterprise's affairs through a pattern of racketeering activity in violation of RICO, 18 U.S.C. § 1962(c), by engaging in numerous acts of mail fraud.

111.    Plaintiffs have suffered the loss of property related to the liens they would have been able to acquire, and the profits flowing therefrom, had these defendants not implemented their scheme and acquired liens in excess of their appropriate share through their violation of the County Rule. If defendants had not engaged in such conduct, Plaintiffs would have been able to obtain additional liens, additional deeds to property, and additional sums based on the statutory penalty of 12% on subsequent taxes that could have been paid. Plaintiffs do not have access to sufficient information to identify the amount of damages they have incurred because that information, the Rigged Bidding Enterprise's profits from penalties and deeds, is in the sole possession of the Defendants.

WHEREFORE, Plaintiffs respectfully prays for judgment against defendants Sabre, Regal, DRN II, Cronus, CCJ, Georgetown, John Bridge, B. Rochman, Jeffrey Bridge,

Christopher Rochman, Jesse Rochman, Corinne Rochman, Robert Jensen, Joseph Varan, Francis

Alexander, Jason Baumbach, Gregory Ellis, and Douglas Nash, and for relief as follows:

      (a)    Treble damages;

      (b)    Injunctive relief;

      (c)    Reasonable attorneys' fees and costs; and

      (d)    Such other relief as the Court deems just and proper.

**COUNT II**
**Racketeering Conspiracy**
**18 U.S.C. §§ 1962(d) and 1964**
**Against All Defendants**

112.    Plaintiffs incorporate by reference the allegations of paragraph 1 through 111 of

the Complaint as though fully set forth herein.

113.    Defendants Sabre, Regal, DRN II, Cronus, CCJ, Georgetown, Optimum, L.C.C.,

Jeshay, BRB, Mud Cats, Carpus, GJ, John Bridge, B. Rochman, Jeffrey Bridge, Christopher

Rochman, Jesse Rochman, Corinne Rochman, Robert Jensen, Joseph Varan, Francis Alexander,

Jason Baumbach, Gregory Ellis, and Douglas Nash have willfully combined, conspired and

agreed to violate 18 U.S.C. § 1962(c), that is to conduct and/or participate, directly or indirectly,

in the conduct of the Rigged Bidding Enterprise's affairs through a pattern of racketeering

activity based upon numerous acts of mail fraud, in violation of 18 U.S.C. § 1962(d).

114.    The object of the conspiracy was to defraud the County and other tax buyers and

improperly acquire liens through violation of the County Rule. Each defendant embraced the

object of the conspiracy and knowingly acted to support and facilitate the accomplishment of its

goals.

115.    Plaintiffs have suffered the loss of property related to the liens they would have

been able to acquire, and the profits flowing therefrom, had these defendants not implemented

37

their scheme and acquired liens in excess of their appropriate share through their violation of the County Rule. If defendants had not engaged in such conduct, Plaintiffs would have been able to obtain additional liens, additional deeds to property, and additional sums based on the statutory penalty of 12% on subsequent taxes that could have been paid. Plaintiffs do not have access to sufficient information to identify the amount of damages they have incurred because that information, the Rigged Bidding Enterprise's profits from penalties and deeds, is in the sole possession of the Defendants.

WHEREFORE, Plaintiffs respectfully prays for judgment against defendants Sabre, Regal, DRN II, Cronus, CCJ, Georgetown, Optimum, L.C.C., Jeshay, BRB, Mud Cats, Carpus, GJ, John Bridge, B. Rochman, Jeffrey Bridge, Christopher Rochman, Jesse Rochman, Corinne Rochman, Robert Jensen, Joseph Varan, Francis Alexander, Jason Baumbach, Gregory Ellis, and Douglas Nash, and for relief as follows:

(a)    Treble damages;

(b)    Injunctive relief;

(c)    Reasonable attorneys' fees and costs; and

(d)    Such other relief as the Court deems just and proper.

## COUNT III
### Substantive Racketeering – 18 U.S. C. §§ 1962(c) and 1964
### (Against Defendants John Bridge and B. Rochman)

116.    Plaintiffs incorporate by reference the allegations of paragraph 1 through 104 of the Complaint as though fully set forth herein.

117.    At all relevant times, John Bridge and B. Rochman were "persons" within the meaning of RICO, 18 U.S.C. § 1961(3).

118.    Sabre is an "enterprise" within the meaning of RICO, 18 U.S.C. § 1961(4).

119.    John Bridge and B. Rochman have each mailed or caused to be mailed hundreds of mailings in furtherance of the scheme to obtain liens for the benefit of Sabre greatly in excess of the number of liens Sabre would have been allowed under the County Rule by utilizing entities they had created to purchase liens for Sabre. A small sample of those mailings is identified in Exhibits D through L. John Bridge and B. Rochman each has conducted and/or participated in the conduct of the Rigged Bidding Enterprise's affairs through a pattern of racketeering activity in violation of RICO, 18 U.S.C. § 1962(c), by engaging in numerous acts of mail fraud.

120.    Plaintiffs have suffered the loss of property related to the liens they would have been able to acquire, and the profits flowing therefrom, had these defendants not implemented their scheme and acquired liens in excess of their appropriate share through their violation of the County Rule. If defendants had not engaged in such conduct, Plaintiffs would have been able to obtain additional liens, additional deeds to property, and additional sums based on the statutory penalty of 12% on subsequent taxes that could have been paid. Plaintiffs do not have access to sufficient information to identify the amount of damages they have incurred because that information, the Rigged Bidding Enterprise's profits from penalties and deeds, is in the sole possession of the Defendants.

WHEREFORE, Plaintiffs respectfully prays for judgment against John Bridge and B. Rochman, and for relief as follows:

(a)    Treble damages;

(b)    Injunctive relief;

(c)    Reasonable attorneys' fees and costs; and

(d)    Such other relief as the Court deems just and proper.

**COUNT IV**
**Racketeering Conspiracy**
**18 U.S.C. §§ 1962(d) and 1964**
**(Against All Defendants Other Than Sabre)**

121.    Plaintiffs incorporate by reference the allegations of paragraph 1 through 104 of the Complaint as though fully set forth herein.

122.    At all relevant times, each Defendant was a "person" within the meaning of RICO, 18 U.S.C. § 1961(3).

123.    Sabre is an "enterprise" within the meaning of RICO, 18 U.S.C. § 1961(4).

124.    Defendants Regal, DRN II, Cronus, CCJ, Georgetown, John Bridge, B. Rochman, Jeffrey Bridge, Christopher Rochman, Jesse Rochman, Corinne Rochman, Robert Jensen, Joseph Varan, Francis Alexander, Jason Baumbach, Gregory Ellis, Douglas Nash, Sabre, Regal, DRN II, Cronus, CCJ, Georgetown, Optimum, L.C.C., Jeshay, BRB, Mud Cats, Carpus, and GJ have willfully combined, conspired and agreed to violate 18 U.S.C. § 1962(c), that is to conduct and/or participate, directly or indirectly, in the conduct of Sabre's affairs through a pattern of racketeering activity based upon numerous acts of mail fraud, in violation of 18 U.S.C. § 1962(d).

125.    The object of the conspiracy was to defraud the County and other tax buyers and improperly acquire liens through violation of the County Rule. Each defendant embraced the object of the conspiracy and knowingly acted to support and facilitate the accomplishment of its goals.

126.    Plaintiffs have suffered the loss of property related to the liens they would have been able to acquire, and the profits flowing therefrom, had these defendants not implemented their scheme and acquired liens in excess of their appropriate share through their violation of the County Rule. If defendants had not engaged in such conduct, Plaintiffs would have been able to

40

obtain additional liens, additional deeds to property, and additional sums based on the statutory penalty of 12% on subsequent taxes that could have been paid. Plaintiffs do not have access to sufficient information to identify the amount of damages they have incurred because that information, the Rigged Bidding Enterprise's profits from penalties and deeds, is in the sole possession of the Defendants.

WHEREFORE, Plaintiffs respectfully prays for judgment against defendants Regal, DRN II, Cronus, CCJ, Georgetown, Optimum, L.C.C., Jeshay, BRB, Mud Cats, Carpus, GJ, John Bridge, B. Rochman, Jeffrey Bridge, Christopher Rochman, Jesse Rochman, Corinne Rochman, Robert Jensen, Joseph Varan, Francis Alexander, Jason Baumbach, Gregory Ellis, and Douglas Nash, and for relief as follows:

(a)    Treble damages;

(b)    Injunctive relief;

(c)    Reasonable attorneys' fees and costs; and

(d)    Such other relief as the Court deems just and proper.

## COUNT V
## TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE
### (Against All Defendants)

127.    Plaintiffs incorporate by reference the allegations of paragraph 1 through 104 of the Complaint as though fully set forth herein.

128.    As indicated in detail above, Sabre, Regal, DRN II, CCJ, Cronus, Georgetown, Optimum, L.C.C., Jeshay, BRB, Mud Cats, Carpus and GJ each participated in one or more of the auctions held in 2002, 2003, 2004 and 2005, each bidding on and purchasing liens for Sabre's benefit in violation of the County Rule.

129.    Phoenix, Oak Park and BCS were registered tax buyers at the 2002, 2003, 2004 and 2005 tax sale auctions.

130.    Phoenix, Oak Park and BCS had a reasonable expectation of entering into respective, valid business relationships with the Cook County Treasurer's Office at the 2002, 2003, 2004 and 2005 tax sale auctions.

131.    John Bridge, B. Rochman, Sabre, Christopher Rochman, J. Rochman, Corinne Rochman, CCJ, Francis Alexander, DRN II, Georgetown, Optimum, Jeffrey Bridge, Regal, Ellis, L.C.C., Jeshay, Jensen, Varan, Nash, Baumbach, Cronus, BRB, Mud Cats, Carpus and GJ knew of the Plaintiffs' expectancies for the tax sales in which each of the respective defendants participated.

132.    Nevertheless, John Bridge, B. Rochman, Sabre, Christopher Rochman, J. Rochman, Corinne Rochman, CCJ, Francis Alexander, DRN II, Georgetown, Optimum, Jeffrey Bridge, Regal, Ellis, L.C.C., Jeshay, Jensen, Varan, Nash, Baumbach, Cronus, BRB, Mud Cats, Carpus and GJ purposefully interfered in the respective tax sales in which each participated by filing false registrations and conspiring to violate the Single Simultaneous Bidder Rule, thereby usurping Plaintiffs' opportunity to obtain a much larger number of liens and preventing the Plaintiffs' legitimate expectancies from ripening into valid business relationships with the Cook County Treasurer's Office.

133.    Absent the respective frauds and collusive bidding schemes of the defendants, Phoenix, Oak Park and BCS would have had an opportunity to obtain a much larger number of liens and would have enjoyed the financial benefits flowing from those purchases opportunity to bid successfully on a larger number of liens and would have enjoyed the financial benefits flowing from those purchases.

42

WHEREFORE, Plaintiffs Phoenix, Oak Park and BCS respectfully request that this Court grant judgment in its favor and against defendants John Bridge, B. Rochman, Sabre, Christopher Rochman, J. Rochman, Corinne Rochman, CCJ, DRN II, Francis Alexander, Georgetown, Optimum, Jeffrey Bridge, Regal, Ellis, L.C.C., Jeshay, Jensen, Varan, Nash, Baumbach, Cronus, BRB, Mud Cats, Carpus and GJ:

    (a)    Award of damages to compensate the Plaintiffs for their loss of profits from the defendants improper purchase of liens and other incidental and consequential damages including, but not limited to, the financial benefits flowing from successful bids; and

    (b)    Granting such other relief as the Court deems fair and just.

43

Dated:  July 14, 2005

PHOENIX BOND & INDEMNITY, CO., OAK
PARK INVESTMENTS, INC. and BCS
SERVICES, INC.

By:_____
One of Their Attorneys

Lowell E. Sachnoff
Arnold A. Pagnuicci
John W. Moynihan
Lisa A. Kistler
Sachnoff & Weaver, Ltd.
10 South Wacker Drive
Suite 4000
Chicago, IL 60606
(312) 207-1000

Jonathan L. Marks
Katten, Muchin, Rosenman, LLP
525 W. Monroe Street
Chicago, IL 60661
(312) 902-5337

Gregory M. Reiter
Carter & Reiter Ltd.
19 South LaSalle
Suite 802
Chicago, IL 60603
(312) 368-9910

44



# Exhibit A



**Office of the County Treasurer**
**COOK COUNTY, ILLINOIS**
**COUNTY BUILDING**
**118 N. CLARK STREET, ROOM 212**
**Chicago, Illinois  60602**

**MARIA PAPPAS**
**COUNTY TREASURER**

**Directions:** **This receipt MUST be signed by the tax buyer.** Attach this receipt to the top of your complete packet. A tax buyer is not eligible to bid and the Cook County Collector will neither acknowledge nor accept any bid from a tax buyer who does not sign this receipt.

1. I have received a copy of the Tax Sale Rules and Regulations.

2. I have read and understand the Tax Sale Rules and Regulations.

3. I agree to comply with these Rules and Regulations.

4. I have received the 2002 Annual Tax Sale Registration Forms, the Acknowledgement of Single, Simultaneous Bidder Rule, and this Receipt.

(Tax Buyer Signature)

Dated: _4/23/04_

**(please print)**

**TAX BUYER NAME:** _SABRE GROUP, LLC_

**ADDRESS:** _31 HOMEWOOD DRIVE_

_CARBONDALE, IL 62901_

**TELEPHONE:** _(618) 457-4334   (LOCAL)(312) 251-1333_

**FACSIMILE:** _(618) 529-4880   LOCAL -(312) 251-0133_

**E-MAIL:** _KEVSGSICH @ aol.com_

**REGISTRATION #:** _02-066_

**Maria Pappas**
Cook County Treasurer and Ex-Officio County Collector
Cook County, Illinois

*02-066*
Registration Number

## 2002 Annual Tax Sale Registration

*251-1333*

### Section I

REGISTERED TAX BUYER – Legal entity to which Certificates of Purchase will be issued:

Name: SABRE GROUP, LLC

Address: 31 HOMEWOOD DR.

City: CARBONDALE      State: IL      Zip: 62901

Telephone: (618) 457-4334      FAX: (618) 529-4880

E-Mail: Kevslesich@aol.com      SSN:

FEIN: ▓▓▓▓▓▓▓

### Section II

AUTHORIZED BIDDERS – Only the following individuals are authorized to bid on behalf of and bind the above-named Tax Buyer (**Remember to attach photocopy of all bidders' photo identification**):

| Name/SSN | Address | Telephone, FAX & E-Mail |
|---|---|---|
| 1. JOHN BRIDGE<br>SSN: ▓▓▓▓▓ | 31 HOMEWOOD DR.<br>CARBONDALE, IL 62901 | (618) 457-4334<br>(618) 529-4880 |
| 2. JOSHUA BRIDGE<br>SSN: ▓▓▓▓▓ | 31 HOMEWOOD DR.<br>CARBONDALE, IL 62901 | (618) 457-4334<br>(618) 529-4880 |
| 3. Kenneth Rochman<br>SSN: ▓▓▓▓▓ | 31 HOMEWOOD DR.<br>CARBONDALE, IL 62901 | (618) 457-4334<br>(618) 529-4880 |
| 4. Kelly Penman<br>SSN: ▓▓▓▓▓ | 31 HOMEWOOD DR.<br>CARBONDALE, IL 62901 | (618) 457-4334<br>(618) 529-4880 |

---

**FOR OFFICE USE ONLY**

[ ] CC    [ ] MO    [ ] BOND    $ 2,000,000 .00

Registration signed by all bidders    ID for all bidders

INITIAL REVIEW BY: _____    APPROVED BY: EA

1

## Section III

Identify the legal status of the tax buying entity named in Section I (Select ONLY one):

Individual ☐          Assumed Name ☐          Partnership ☐

Limited Partnership ☐     Corporation/LLC ☒     501(c)(3) ☐

If you selected "Individual", you may skip to Section V.


## Section IV

If you are buying under an **Assumed Name**, please provide the following:

County/State in which your Assumed Name is filed: _____

Name of person buying under assumed name: _____

Address of person: _____

State: _____  Zip: _____  City: _____

FAX: _____  E-Mail: _____

For each person having an ownership or profit sharing interest in the Assumed Name entity, give the following information (use an additional sheet of paper if necessary):

| Name/SSN | Address | Telephone, FAX & E-Mail |
|---|---|---|
| 1. _____ | _____ | _____ |
| SSN: _____ | _____ | _____ |
|  |  | _____ |
| 2. _____ | _____ | _____ |
| SSN: _____ | _____ | _____ |
|  |  | _____ |
| 3. _____ | _____ | _____ |
| SSN: _____ | _____ | _____ |
| _____ |  | _____ |
|  |  | _____ |

If the tax buyer is a **Partnership**, please provide the following regarding ALL PARTNERS (general, limited, equity or other) (use an additional sheet of paper if necessary):

| Name/SSN | Address | Telephone, FAX & E-Mail |
|---|---|---|
| 1. _____ | _____ | _____ |
| SSN: _____ | _____ | _____ |
|  |  | _____ |

2

2. _____    _____    _____
SSN: _____    _____    _____
                                                       _____

3. _____    _____    _____
SSN: _____    _____    _____
                                                       _____

If the tax buyer is a **Limited Partnership/LLP**, please provide the following:

State in which Limited Partnership or LLP is registered: _____
Name of the Registered Agent or Officer: _____
Address of Registered Agent or Officer: _____
_____

In addition, give the following information for each member of the Limited Partnership/LLP (use an additional sheet of paper if necessary):

| Member Name/SSN | Address | Telephone, FAX & E-Mail |
|---|---|---|

1. _____    _____    _____
SSN: _____    _____    _____
                                                       _____

2. _____    _____    _____
SSN: _____    _____    _____
                                                       _____

3. _____    _____    _____
SSN: _____    _____    _____
                                                       _____
                                                       _____

If the tax buyer is a **Corporation/LLC**, please provide the following:

State of Incorporation: _ILLINOIS_    Year of Incorporation: _2001_
Is the Corporation in Good Standing: (Yes)/ No
If the Corporation is not an Illinois Corporation, is the Corporation licensed to do business in Illinois: Yes / No
Is the Corporation Publicly Held: Yes /(No)

Name of Registered Agent: _JAMES MORRIS_
Address of Registered Agent: _805 W. DEYOUNG ST., MARION, IL 62959_

3

For each person with a stock or profit sharing interest in the corporation, please provide the following, (use an additional sheet of paper if necessary):

| Name/SSN | Address | Telephone, FAX & E-Mail |
|----------|---------|--------------------------|
| 1. BARRETT ROCHMAN<br>SSN: ▓▓▓▓▓ | 31 HOMEWOOD DRIVE<br>CARBONDALE, IL 62901 | (618) 457-4334<br>(618) 529-4880 |
| 2. CHARLES DECKER<br>SSN: ▓▓▓▓▓ | 31 HOMEWOOD DRIVE<br>CARBONDALE, IL 62901 | (618) 457-4334<br>(618) 529-4880 |
| 3. _____<br>SSN: _____ | _____ | _____ |

If the tax buyer is a **501(c)(3) Charitable Organization**, please provide the following:

Name of Chief Executive Officer: _____
Address of headquarters: _____
_____

Do you have tax exempt status with the Illinois Department of Revenue?   Yes / No

## Section V

## REPRESENTATIONS AND WARRANTIES

I represent and warrant, except as is fully disclosed below, with copies of the documentation of the matters disclosed, that the bidding entity registering to be permitted to participate in the 2002 Annual Sale is not affiliated with any other entity or person registering to bid at the 2002 Annual Sale, in that:

(A)     It has no capital, purchase money, or other finances in common with any other bidding entity or person registering to bid at the 2002 Annual Sale;

(B)     It shares no common ownership interest or common source of funds with any other bidding entity or person registering to participate at the 2002 Annual Sale;

(C)     It has no agreements to purchase or sell any parcels successfully bid on at the 2002 Annual Sale by any other registering bidding entity or person at the 2002 Annual Sale;

(D)     It has no agreements to purchase or sell any parcels successfully bid on at the 2002 Annual Sale by any entity or person known to be ineligible to bid at the 2002 Annual Sale;

4

(E) It does not stand to gain financially pursuant to an agreement with another bidding entity registering for the 2002 Annual Sale concerning parcels to be bid upon or purchased by such other entity at the 2002 Annual Sale.

Explanations, if needed:

_____

_____

_____

_____

_____

_____

_____

Attach additional pages if necessary.  Attach exhibits, if any, to application.

Each of the undersigned states under oath or affirmation pursuant to §1-109 of the Illinois Code of Civil Procedure that all of the information set forth in this registration is true, correct, and complete.

Signature of Purchaser

Date: 4/23/04

Signature(s) of ALL Registered Bidder(s):

1. _____

2. _____

3. _____

4. _____

5



**OFFICE OF THE COOK COUNTY TREASURER**
**COOK COUNTY, ILLINOIS**
**ROOM 212, COUNTY BUILDING**
**CHICAGO, ILLINOIS 60602**

# <u>Acknowledgement of Single, Simultaneous Bidder Rule</u>

As in prior tax sales, the Cook County Treasurer will enforce the Single, Simultaneous Related Bidding Entity[1] rule.

This rule provides that one tax buying entity (principal) may not have its/his/her/their actual or apparent agents, employees, or related entities, directly or indirectly register under multiple registrations for the <u>intended or perceived</u> purpose of having more than one person bidding at the tax sale at the same time for the <u>intended or perceived</u> purpose of increasing the principal's likelihood of obtaining a successful bid on a parcel.

This rule does not prevent a single bidder from alternating the identity of the buyer for whom they are bidding at any given time, <u>so long as related bidding entities, or entities perceived to be related</u>, are not bidding at the same time.

The determination of whether registered entities are related, so as to prevent the entities from bidding at the same time, is in the <u>sole and exclusive discretion</u> of the Cook County Treasurer or her designated representatives.

*By signing below, I certify under penalty of perjury pursuant to § 1-109 of the Illinois Code of Civil Procedure, that I am a duly authorized agent, officer, or representative for* Sabre Group LLC. *; that I have received and understand the above-stated rules; that at no time during the 2002 Annual Tax Sale shall I, or the entity that I represent, or an entity directly or indirectly related to the above tax buyer, have multiple bidders registered as separate bidding entities, simultaneously bidding at the 2002 Annual Sale.*

I agree that if the tax buying entity that I represent is challenged by the Cook County Treasurer with respect to having related, or allegedly related, entities simultaneously bidding at the Annual Sale, that all such disputes shall have as exclusive venue and jurisdiction in the Circuit Court of Cook County.

_____         Date  4/23/04
Authorized Agent for the above Tax Buyer

Barrett Rochman
Printed Name

---

[1] "Related Bidding Entity" is defined as any individual, corporation, partnership, joint venture, limited liability company, business organization, or other entity that has a shareholder, partner, principal, officer, general partner or other person or entity having an ownership interest in common with, or contractual relationship with, any other registrant in the 2002 Annual Tax Sale.



**OFFICE OF THE COOK COUNTY TREASURER**
**COOK COUNTY, ILLINOIS**
**ROOM 222, COUNTY BUILDING**
**CHICAGO, ILLINOIS 60602**

June 11, 2004

SABRE Group, LLC
31 Homewood Dr.
Carbondale, IL 62901

Re:    Return of Collateral
       Buyer Number: 02-00066

Dear Tax Buyer:

Enclosed is your letter of credit # 10-04 that was posted with our office for the 2002 Annual Tax Sale.   Please return this letter of credit to the financial institution along with the enclosed letter for their records.

By signing the bottom of this letter, you acknowledge receipt of the aforementioned letter of credit.

If you have further questions regarding this matter, you may contact the undersigned, (312) 603-5494.

Sincerely,

Gina Quesada
Legal Department

THOMAS L GEREZ
6/17/04

Per phone Conversation
w/ John Budzl
OK Pickupby



**OFFICE OF THE COOK COUNTY TREASURER
COOK COUNTY, ILLINOIS
ROOM 222, COUNTY BUILDING
CHICAGO, ILLINOIS 60602**

June 11, 2004

First National Bank of Carmi
201 E. Main St.
Carmi, IL 62821

Re:    Your customer:    SABRE Group, LLC
       <u>Letter of Credit</u>:    # 10-04

Dear Sir or Madam:

Your client has satisfied all purchasing requirements for the 2002 Annual Tax Sale. This office will not need to draw on your letter of credit, referenced above.

If you have further questions regarding this matter, you may contact the undersigned, (312) 603-5494.

Sincerely,

Gina Quesada
Legal Department

/GQ



**OFFICE OF THE COOK COUNTY TREASURER**
**COOK COUNTY, ILLINOIS**

## Request to Reduce Collateral or
## Cancel Registration:
## 2002 Annual Tax Sale

I, _Kelly Penman_____, a duly authorized agent for the following entity registered as a tax buyer at the 2002 Cook County Annual Tax Sale:

Buyer Name: _SABRE GROUP, LLC_____

Buyer Number: _66_____; hereby request to:

[ X ] **Withdraw the letter of credit** deposited as collateral & **cancel the buyer's registration;**

[    ]    **Withdraw the bond** posted as collateral & **cancel the buyer's registration;**

[    ] **Withdraw all certified funds deposited** as collateral & **cancel the buyer's registration;**

[    ] **Reduce** the certified funds deposited by $ _____, and **continue to maintain the buyer-s registration.**

Checks will be made payable in the name of the registered buyer only. Checks will only be mailed to buyers at their registration address.

I certify that prior to withdrawing or reducing collateral for the above-referenced buyer that said buyer has satisfactorily paid for all tax purchases made by them at the 2002 Annual Sale, and that if subsequent payment is later determined necessary by the Cook County Treasurer for any tax purchase made by the above buyer, that said registered buyer will remain liable for any such unpaid tax purchases.

Printed Name: _Kelly Penman_____    Signature: _Kelly Penman_____

Telephone: _(312) 251-1333_____    FAX: _(312) 251-0133_____

E-Mail: _kellbell817@hotmail.com____

Date: _6/8/04_____

02-066



# FIRST BANK
### Established 1893

## UNCONDITIONAL AND IRREVOCABLE LETTER OF CREDIT

**BENEFICIARY**
Maria Pappas
Treasurer and Ex-Officio Collector
Cook County, IL
118 N. Clark Street, Room 212
Chicago, IL  60602

**APPLICANT**
Sabre Group, LLC
P. O. Box 3074
31 Homewood Dr.
Carbondale, IL  62902

Date: May 10, 2004

To the Treasurer and Ex-Officio Collector:

We hereby issue the Unconditional and Irrevocable Letter of Credit No. 10-04 in favor of the Beneficiary for the account of Sabre Group, LLC up to the aggregate amount of Two Million Dollars ($2,000,000.00).

This credit is issued, presentable and payable on sight at The First National Bank of Carmi, Carmi, Illinois. Drawings may be made by facsimile, attention Jack I. Martin, Senior Vice President, 201 E. Main Street, Carmi, Illinois, 62821 at (618) 382-5881. Information may be obtained from Jack I. Martin, Senior Vice President (618)382-4118. If the drawing is made by facsimile, the original drawing document shall be mailed, on the same day, to the attention of Jack I. Martin, Senior Vice President at The First National Bank of Carmi, 201 E. Main Street, Carmi, Illinois 62821, or delivered within 24 hours to the attention of the same person at the indicated address.

Funds under this Letter of Credit are available to the Beneficiary unconditionally against sight drafts or facsimile purporting to be signed by the Beneficiary (whether actual or acting) for any sum or sums not exceeding a total of Two Million ($2,000,000.00) drawn on our Office mentioning the Letter of Credit by number and Applicant. The sight draft or facsimile shall state that Applicant has failed to complete a payment of the amount she/he/it has successfully bid for taxes at the 2002 Annual Tax Sale, or shall state that the drawing is being made at the unilateral discretion of the Treasurer and Ex-Officio Collector and shall further state that the reason for the drawing (which reason is also within the sole and exclusive discretion of the Treasurer and Ex-Officio Collector). Funds drawn under this Letter of Credit shall be sent by overnight delivery to the Beneficiary at the address listed above.

Partial and multiple drawings are permitted.

This Letter of Credit shall expire at 12 Noon Chicago time on August 13, 2004, unless prior to the expiration date a request is made in writing to this Office by the Beneficiary, attention Jack I. Martin, Senior Vice President at The First National Bank of Carmi, 201 E. Main Street, Carmi, IL 62821 requesting an extension, in which case it shall automatically be renewed for one year.

This Letter of Credit sets forth in full the terms of this Office's undertaking, and may be amended only by a written amendment signed by us and by the beneficiary. Our obligations are primary obligations to the beneficiary. We shall honor drafts drawn and presented hereunder and in compliance with the terms of the Letter of Credit.

If there are any disputes or claims with respect to this Letter of Credit, venue and jurisdiction shall lie exclusively with Circuit Court of Cook County, Illinois.

This Letter of Credit is subject to the Uniform Customs and Practice for Documentary Credits, International Chamber of Commerce Publication No. 500, 1993 revision ("UPC"), and the Uniform Commercial Code, Letter of Credit, 810 ILCS 5/5-101 et seq. as amended, and as in effect in the State of Illinois ("UCC"). To the extent the provisions of the UCP and the UCC shall conflict, the provisions of the UCC shall govern.

The First National Bank of Carmi

Alvin D. Fritschle
President

| Albion | Carmi | Enfield | Grayville | Mt. Carmel | West Carmi |
|---|---|---|---|---|---|
| 26 E. Elm | 201 E. Main | 105 E. Main | 102 S. Court | 601 Market | 1206 W. Main |
| Albion, IL 62806 | Carmi, IL 62821 | Enfield, IL 62835 | Grayville, IL 62844 | Mt. Carmel IL 62863 | Carmi, IL 62821 |
| Tel. 618.445.2371 | Tel. 618.382.4118 | Tel. 618.963.2313 | Tel. 618. 375.2200 | Tel. 618. 263.3833 | Tel. 618. 382.3195 |
| Fax. 618.445.3958 | Fax. 618. 382.5881 | Fax.618.963.2613 | Fax. 618. 375.4904 | Fax. 618. 262.7929 | Fax. 618. 382.8503 |

www.surffirst.net          E-Mail:



## LLC FILE DETAIL REPORT

| | | | |
|---|---|---|---|
| | SABRE GROUP, LLC | | 00511706 |
| | GOODSTANDING | | 01/08/2004 |
| | LLC | | Domestic |
| | 01/29/2001 | | IL |
| | MICHAEL A. LANGENSTEIN | | 08/01/2002 |
| | 31 HOMEWOOD DR PO BOX 3074 | | 31 HOMEWOOD DR CARBONDALE 62901 |
| | CARBONDALE | | MBR |
| | 62902 | | 12/31/2021 |
| | 00/00/0000 | | 2005 |
| | 03/28/2001 - SABRE INVESTMENTS, LLC | | |

**Return to the Search Screen**





# Exhibit B

ZC
11/9/05

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT - COUNTY DIVISION

IN THE MATTER OF THE APPLICATION OF THE
COUNTY COLLECTOR FOR JUDGMENT AND
ORDER OF SALE AGAINST LANDS AND LOTS
RETURNED DELINQUENT FOR NONPAYMENT OF
GENERAL TAXES AND/OR SPECIAL
ASSESSMENTS FOR THE YEAR 2001 AND PRIOR
YEARS

PETITION OF: Sabre Group, L.L.C.

5COTD    2127

NO.:
CERTIFICATE NO.: 01-
0000468
VOLUME NO.: 015



### PETITION FOR TAX DEED

NOW COMES Sabre Group, L.L.C., Petitioner herein and, in Petition to this
Honorable Court for Tax Deed, states as follows:

1. The following described real estate was sold on March 10, 2003, at the annual
tax sale held on said date by the Cook County Treasurer of Cook County, Illinois; which
sale of said property was held in accordance with the judgment of this court duly entered
after due notice had been made in accordance with the Illinois Property Tax Code, as
amended:

Lot 6 in Block 65 in Chicago Heights, a Subdivision in the
Southwest 1/4 of Section 21, Township 35 North, Range 14 East
of the Third Principal Meridian, in Cook County, Illinois.

Permanent Index Number: 32-21-311-020-0000

2. That a Certificate of Purchase, No. 01-0000468 was duly issued or assigned to
Sabre Group, L.L.C., your Petitioner, which is still the owner of said Certificate.

3. That a true and exact copy of the aforementioned Certificate of Purchase is
attached hereto and made a part hereof as Exhibit "A".

4. That said real estate has not been redeemed from said tax sale and that the time
for redemption will expire on November 2, 2005.

5. That all taxes and special assessments which became due and payable on said
parcel(s) of real estate subsequent to the date of said sale and prior to and including the

date of the filing of this petition will be redeemed. Prior to the entry of an order directing the County Clerk to issue a tax deed, all other taxes and special assessments falling due on said parcel(s) of real estate between the date of filing this Petition and the date of said order, if any, will be paid and all forfeitures and sale occurring in said interval, if any, will be redeemed.

6. That all notices required by law to be given will be given prior to the entry of an order directing the issuance of a tax deed to said parcel(s) of real estate to petitioner unless redemption is made within the time and in the manner provided by law.

7. That your Petitioner has complied with and will hereafter fully comply with all provisions of Statutes and of the Constitution of the State of Illinois relative hereto and will be entitled to the issuance of a Tax Deed if the real estate herein is not redeemed from the sale within the time allowed by law.

WHEREFORE, your Petitioner prays:

A. That this Honorable Court doth find:

1. that due notice of said tax sale and of the time for redemption therefrom has been given to all parties entitled thereto as required by law;

2. that due notice of the filing of this Petition has been given to all parties entitled thereto as required by law;

3. that all general taxes and special assessments which became due and payable on the real estate herein subsequent to the date of sale herein have been paid or redeemed as required by law;

4. that your Petitioner has fully complied with all applicable provisions of the Illinois Property Tax Code, as amended, and of all other applicable statutes of the State of Illinois and the Constitution of the State of Illinois, entitling Petitioner to a Tax Deed; and

5. that no redemption has been made from the tax sale herein prior to the expiration of time of redemption.

B. That this Honorable Court enter an Order directing the County Clerk of Cook County to issue a Tax Deed to your Petitioner.

C. That this Honorable Court enter an Order as may be necessary to

Certificate No.: 01-0000468                                    TSSPFTD - Page 2 of 3

place and maintain Petitioner, as grantee, in possession of said real estate.

D. That this Honorable Court grant such other and further and different relief in the premises as the nature of this case may require.

Sabre Group, L.L.C., Petitioner

By: _____
One of its Attorneys

Heather A. Ottenfeld. # 39731
Attorney for Petitioner
120 West Madison Street, Suite 918
Chicago, Illinois  60602
(312) 251-1333

CERTIFICATE OF PURCHASE

STATE OF ILLINOIS )
                  ) ss
COUNTY OF COOK    )

CERTIFICATE NUMBER.01-0000458

--CERTIFICATE OF PURCHASE--

FOR GENERAL TAXES AND SPECIAL ASSESSMENTS, A.D. 2001, ETC.

I, DAVID D. ORR, County Clerk in and for the County and State aforesaid DO HEREBY CERTIFY THAT  CCJ INVESTMENTLLC                        did, on the day hereinafter set forth , purchase at Public Auction, at the Court House in CHICAGO, the property designated by PERMANENT REAL ESTATE NUMBER  3 2 - 2 1 - 3 1 1 - 0 2 0 - 0 0 0 0, situated in said County for the taxes, interest and costs due and unpaid thereon for the tax year 2001 and prior and paid as purchase money on said property the total amount of taxes, interest and costs thereon as stated herein

VOLUME  0 1 5          PERMANENT INDEX NUMBER   3 2 - 2 1 - 3 1 1 - 0 2 0 - 0 0 0 0

| TAXES | Date of Sale | Rate of Percent Sold | | | Total Amt. of TAXES and Interest | Date Paid |
|---|---|---|---|---|---|---|
| GENERAL 2001 | 03/10/03 | 0.00 | Tax Interest | 509.11 38.20 | | 03/10/03 |
| BACK TAX YRS - | | | Tax Interest | | 547.31 | |
| SPECIAL ASSESSMENT 2002 | | | Tax Interest | | | |
| STATUTORY TREASURER FEES | | | | | | |
| STATUTORY CLERK FEES | | | | | 227.37 | |
| PRIOR YEARS' SPECIAL & GENERAL TAXES | | | | | 47.00 | |
| 20 | | | | | | |
| 20 | | | | | | |
| 20 | | | | | | |
| 2C | | | | | | |
| TOTAL | | | | | 821.68 | |

Received this  27  day of  MARCH   , 2003 , the sum of $   821.68  the amount of the purchase money on the above property.

If the aforesaid property is not redeemed in the manner and within the time provided by law, the above-named purchaser, his heirs or assigns, will, upon application and compliance with the provisions of law pertaining thereto, be entitled to receive a deed of conveyance for said real estate herein described by said permanent index number, provided that unless the holder of this certificate shall take out said deed, as entitled by law, and file same for record within one year from and after expiration of the time of redemption, the said certificate or deed, and the sale upon which it is based, shall from and after the expiration of one year, be absolutely null.

WITNESS my hand and the official seal at CHICAGO in said County this     27    day of  MARCH   , A.D. , 2003 .

Assessee:

Countersigned:

_Maria Pappas_
County Treasurer and Ex-Officio Collector
of Cook County

_David D. Orr_
County Clerk of Cook County

STATE OF ILLINOIS )
                 ) ss
COUNTY OF COOK   )

In consideration of the sum of     TEN            DOLLARS, I do hereby sell, assign,
transfer and set over to  SABRE GROUP, LLC      , his heirs, executors, administrators
and assigns, the within CERTIFICATE OF PURCHASE, and all my right, title and interest in
or to the real estate therein described, to have and to hold the same to himself, his heirs,
executors, administrators and assigns, to his and their sole use, benefit and behoof forever.

Given under my hand and seal this 15ᵗʰ    day of MAY    A.D. 20 05

_Kelly Penman_
By: CCJ Investments, LLC
    Kelly Penman, Agent





# Exhibit C



**Office of the County Treasurer**
**COOK COUNTY, ILLINOIS**
**COUNTY BUILDING**

**MARIA PAPPAS**
**COUNTY TREASURER**

**118 N. CLARK STREET, ROOM 212**
**Chicago, Illinois  60602**

**Directions:  This receipt MUST be signed by the tax buyer.** Attach this receipt to
the top of your complete packet. A tax buyer is not eligible to bid and the
Cook County Collector will neither acknowledge nor accept any bid from a
tax buyer who does not sign this receipt.

1.  I have received a copy of the Tax Sale Rules and Regulations.

2.  I have read and understand the Tax Sale Rules and Regulations.

3.  I agree to comply with these Rules and Regulations.

4.  I have received the 2002 Annual Tax Sale Registration Forms, the
    Acknowledgement of Single, Simultaneous Bidder Rule, and this Receipt.

X _Frances L. Alexander_
(Tax Buyer Signature)

X Dated: _4/19/04_

**(please print)**

TAX BUYER NAME:  _GEORGETOWN INVESTORS LLC_

ADDRESS:  _P.O. BOX 565 / 40 TERRY DRIVE_
_SUGAR GROVE, IL    60554_

TELEPHONE:  _630-466-1211_

FACSIMILE:  _630-466-1299_

E-MAIL:  _falex1211@aol.com_

REGISTRATION #:  _02-072_

Maria Pappas
## Cook County Treasurer and Ex-Officio County Collector
Cook County, Illinois

02-072
Registration Number

## 2002 Annual Tax Sale Registration

### Section I

REGISTERED TAX BUYER – Legal entity to which Certificates of Purchase will be issued:

Name: ~~TEST~~ GEORGETOWN INVESTORS LLC

Address: P.O. BOX 565 / 40 TERRY DRIVE ~~60554~~

City: SUGAR GROVE     State: IL     Zip: 60554

Telephone: 630-466-1211     FAX: 630-466-1299

E-Mail: faley1211@aol.com     SSN: ███████████

✱ FEIN: 20-1047180

### Section II

✱ AUTHORIZED BIDDERS – Only the following individuals are authorized to bid on behalf of and bind the above-named Tax Buyer (Remember to attach photocopy of all bidders' photo identification):

| Name/SSN | Address | Telephone, FAX & E-Mail |
|---|---|---|
| 1. Caitlin M Siegert<br>SSN: ███████ | 38½ Sauk trail<br>Park forest, IL, 60446 | (708) 748-5602 |
| 2. Patrick Siegert<br>SSN: ███████ | 38½ Sauk trail<br>park forest, IL, 60446 | (708) 748-5602 |
| 3.<br>SSN: | | |
| 4.<br>SSN: | | |

---

**FOR OFFICE USE ONLY**

[ ] LOC  [X] CC  [ ] MO  [ ] BOND    $ 200,000 .00

[ ] Registration signed by all bidders [ ] ID for all bidders

INITIAL REVIEW BY: _Li_     APPROVED BY: _Eff_

1

<u>Section III</u>

Identify the legal status of the tax buying entity named in Section I (<u>Select ONLY one</u>):

Individual ☐        Assumed Name ☐        Partnership ☐

Limited Partnership ☐     Corporation/LLC ✓     501(c)(3) ☐

If you selected "Individual", <u>you may skip to Section V</u>.

<u>Section IV</u>

If you are buying under an <u>**Assumed Name**</u>, please provide the following:

County/State in which your Assumed Name is filed: _____
Name of person buying under assumed name: _____
Address of person: _____          City: _____
State: _____   Zip: _____   Telephone: _____
FAX: _____          E-Mail: _____

For each person having an ownership or profit sharing interest in the Assumed Name entity, give the following information (use an additional sheet of paper if necessary):

| <u>Name/SSN</u> | <u>Address</u> | <u>Telephone, FAX & E-Mail</u> |
|---|---|---|
| 1. _____ | _____ | _____ |
| SSN: _____ | _____ | _____ |
| | | _____ |
| 2. _____ | _____ | _____ |
| SSN: _____ | _____ | _____ |
| | | _____ |
| 3. _____ | _____ | _____ |
| SSN: _____ | _____ | _____ |
| | | _____ |

If the tax buyer is a <u>**Partnership**</u>, please provide the following regarding ALL PARTNERS (general, limited, equity or other) (use an additional sheet of paper if necessary):

| <u>Name/SSN</u> | <u>Address</u> | <u>Telephone, FAX & E-Mail</u> |
|---|---|---|
| 1. FRANCES ALEXANDER | 40 TERRY DR | (630) 466-1211 |
| SSN: ███████ | SUGAR GROVE, IL 60554 | (630) 466-1299 |

2

2. _____     _____     _____
SSN: _____     _____     _____
                                                            _____

3. _____     _____     _____
SSN: _____     _____     _____
                                                            _____

If the tax buyer is a **Limited Partnership/LLP**, please provide the following:

State in which Limited Partnership or LLP is registered: _____
Name of the Registered Agent or Officer: _____
Address of Registered Agent or Officer: _____

In addition, give the following information for each member of the Limited Partnership/LLP (use an additional sheet of paper if necessary):

<u>Member Name/SSN</u>          <u>Address</u>                    <u>Telephone, FAX & E-Mail</u>

1. _____     _____     _____
SSN: _____     _____     _____
                                                            _____

2. _____     _____     _____
SSN: _____     _____     _____
                                                            _____

3. _____     _____     _____
SSN: _____     _____     _____
                                                            _____

If the tax buyer is a **Corporation/LLC**, please provide the following:

State of Incorporation: _Illinois_     Year of Incorporation: _2003_
Is the Corporation in Good Standing: _Yes_ / No
If the Corporation is <u>not</u> an Illinois Corporation, is the Corporation licensed to do business in Illinois: Yes / No
Is the Corporation Publicly Held: Yes / _No_

Name of Registered Agent: _Francis L. Alexander_
Address of Registered Agent: _PO Box 505 140 Terry Drive_

3

For each person with a stock or profit sharing interest in the corporation, please provide the following, (use an additional sheet of paper if necessary):

| Name/SSN | Address | Telephone, FAX & E-Mail |
|----------|---------|-------------------------|
| ✱ 1. FRANCES ALEXANDER  SSN: ▓▓▓▓▓▓ | 40 TERRY DR.  SUGAR GROVE, IL 60554 | (630) 466-1211  (630) 466-1299 |
| 2. _____  SSN: _____ | _____ | _____ |
| 3. _____  SSN: _____ | _____ | _____ |

If the tax buyer is a **501(c)(3) Charitable Organization**, please provide the following:

Name of Chief Executive Officer: _____
Address of headquarters: _____

Do you have tax exempt status with the Illinois Department of Revenue?   Yes / No

Section V

REPRESENTATIONS AND WARRANTIES

I represent and warrant, except as is fully disclosed below, with copies of the documentation of the matters disclosed, that the bidding entity registering to be permitted to participate in the 2002 Annual Sale is not affiliated with any other entity or person registering to bid at the 2002 Annual Sale, in that:

(A)   It has no capital, purchase money, or other finances in common with any other bidding entity or person registering to bid at the 2002 Annual Sale;

(B)   It shares no common ownership interest or common source of funds with any other bidding entity or person registering to participate at the 2002 Annual Sale;

(C)   It has no agreements to purchase or sell any parcels successfully bid on at the 2002 Annual Sale by any other registering bidding entity or person at the 2002 Annual Sale;

(D)   It has no agreements to purchase or sell any parcels successfully bid on at the 2002 Annual Sale by any entity or person known to be ineligible to bid at the 2002 Annual Sale;

4

(E) ᵒ does not stand to gain financially pursuant to an agreement with another bidding entity registering for the 2002 Annual Sale concerning parcels to be bid upon or purchased by such other entity at the 2002 Annual Sale.

Explanations, if needed:

_____

_____

_____

_____

_____

_____

_____

Attach additional pages if necessary.  Attach exhibits, if any, to application.

---

Each of the undersigned states under oath or affirmation pursuant to §1-109 of the Illinois Code of Civil Procedure that all of the information set forth in this registration is true, correct, and complete.

*Frances L. Alexander*

Signature of Purchaser

Date: _4/19/04_

Signature(s) of ALL Registered Bidder(s):

1. *Caitlin Siegert*
2. *Patrick Siegert*
3. _____
4. _____



OFFICE OF THE COOK COUNTY TREASURER
COOK COUNTY, ILLINOIS
ROOM 212, COUNTY BUILDING
CHICAGO, ILLINOIS 60602

# Acknowledgement of Single, Simultaneous Bidder Rule

As in prior tax sales, the Cook County Treasurer will enforce the Single, Simultaneous Related Bidding Entity[1] rule.

This rule provides that one tax buying entity (principal) may not have its/his/her/their actual or apparent agents, employees, or related entities, directly or indirectly register under multiple registrations for the intended or perceived purpose of having more than one person bidding at the tax sale at the same time for the intended or perceived purpose of increasing the principal's likelihood of obtaining a successful bid on a parcel.

This rule does not prevent a single bidder from alternating the identity of the buyer for whom they are bidding at any given time, so long as related bidding entities, or entities perceived to be related, are not bidding at the same time.

The determination of whether registered entities are related, so as to prevent the entities from bidding at the same time, is in the sole and exclusive discretion of the Cook County Treasurer or her designated representatives.

By signing below, I certify under penalty of perjury pursuant to § 1-109 of the Illinois Code of Civil Procedure, that I am a duly authorized agent, officer, or representative for Sabre Group Georgetown ; that Investors LLC I have received and understand the above-stated rules; that at no time during the 2002 Annual Tax Sale shall I, or the entity that I represent, or an entity directly or indirectly related to the above tax buyer, have multiple bidders registered as separate bidding entities, simultaneously bidding at the 2002 Annual Sale.

I agree that if the tax buying entity that I represent is challenged by the Cook County Treasurer with respect to having related, or allegedly related, entities simultaneously bidding at the Annual Sale, that all such disputes shall have as exclusive venue and jurisdiction in the Circuit Court of Cook County.

_Frances L. Alexander_
Authorized Agent for the above Tax Buyer        Date   4/19/04

_FRANCES L. ALEXANDER_
Printed Name

---

[1] "Related Bidding Entity" is defined as any individual, corporation, partnership, joint venture, limited liability company, business organization, or other entity that has a shareholder, partner, principal, officer, general partner or other person or entity having an ownership interest in common with, or contractual relationship with, any other registrant in the 2002 Annual Tax Sale.



# Maria Pappas

**Cook County Treasurer**

June 21, 2004

Georgetown Investors LLC
40 Terry Drive
Sugar Grove, IL 60554

Re:    Return of Collateral
      Buyer Number: *02-00072*

Dear Tax Buyer:

Enclosed is your check that was posted for collateral with our office for the 2002 Annual Tax Sale.

If you have further questions regarding this matter, you may contact the undersigned, (312) 603-5494.

Sincerely,

Gina Quesada
Legal Department



**OFFICE OF THE COOK COUNTY TREASURER**
**COOK COUNTY, ILLINOIS**

## Request to Reduce Collateral or
## Cancel Registration:
## 2002 Annual Tax Sale

I, _FRANCES ALEXANDER_____, a duly authorized agent for the following entity registered as a tax buyer at the 2002 Cook County Annual Tax Sale:

Buyer Name: _GEORGETOWN INVESTORS, LLC_____

Buyer Number: ___72_____; hereby request to:

[_____] Withdraw the letter of credit deposited as collateral & cancel the buyer's registration;

[_____] Withdraw the bond posted as collateral & cancel the buyer's registration;

[__X__] Withdraw all certified funds deposited as collateral & cancel the buyer's registration;

[_____] Reduce the certified funds deposited by $ _____, and continue to maintain the buyer=s registration.

Checks will be made payable in the name of the registered buyer only. Checks will only be mailed to buyers at their registration address.

I certify that prior to withdrawing or reducing collateral for the above-referenced buyer that said buyer has satisfactorily paid for all tax purchases made by them at the 2002 Annual Sale, and that if subsequent payment is later determined necessary by the Cook County Treasurer for any tax purchase made by the above buyer, that said registered buyer will remain liable for any such unpaid tax purchases.

Printed Name: _Frances L. Alexander_ Signature: _Frances L. Alexander_

Telephone: _(630) 466-1211_    FAX: _(630) 466-1299_

E-Mail: _falex1211@aol.com_

Date: _6/8/04_



# Maria Pappas
## Cook County Treasurer

# Check Request Form

Please complete the following information for a check request and submit to *ACCOUNTS PAYABLE*. Attach any reports that need to be sent to the payee with the check. *Please note:* If all sections are not completed the check will not be processed and the form will be returned.

**Description (refer to list – CIRCLE ONLY ONE):**

1   2   3   4   5   6   7   8   9   10   11   12   13

14   15   16   17   18   19   20   (21)   22   23

**PIN/Case/Agency Number (if applicable):**

**Issue Check to:**
Payee Name (max-35 characters including spaces):

Georgetown Investors LLC

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Address:   40 Terry Drive
Sugar Grove, IL   60554

Payee Telephone Number: (        )        .

Payee Fax Number: (        )        .

Payee E-Mail Address:

Amount: $   200,000.00

Interest: $

Total:   $   200,000.00

**ACCOUNTING USE ONLY:**

Home Rule Tax – G/L Distribution Acct:

Special Fee – G/L Distribution Acct:

---

Date:   6-21-04

Requested By:   EG

Approved By:

**Once Check is received it should be (check ONLY one):**

☐   Forward to:

☑   Mail to: (ONLY complete this if the mail to address is different than they payee's address on the left):

Name:

Address:

Telephone Number: (        )        .

Fax Number: (        )        .

Cover letter required? (Circle one)   (Yes)   No

Report/Attachments Required? (Circle one)   Yes   No
If yes, you *must* forward the report/attachments with this form.

W-9 Required? (Circle one):   Yes   No
If yes, attach the completed W-9 or provide the SSN/FEIN# below:

---

**For AP Use Only:**

Supplier/Payee#:

Batch#:

Doc#:

Entered By/Date:

---

**Descriptions**

1. 911
2. ACH Return check to agency
3. Capital Litigation (Other)
4. Capital Litigation-Public Def.
5. Condemnations
6. Condemnations-Tax
7. Counterfeit/Forgery
8. Estate of Heirs (known)
9. Estate of Heirs (unknown)
10. General D
11. DOR (Home Rule) Refunds
12. Indemnity (Refund Dept.)
13. Indemnity-Judge-(Legal)
14. Overage
15. Publication Cost
16. Receivership
17. Redemption Fee
18. Senior Citizen
19. Special Assessment
20. Special Fee Refunds
21. Tax Sale Collateral
22. PIN Deletion
23. Suspense

Revised: June 12, 2003

 **Old Second**

Old Second National Bank

37 South River Street
Aurora, IL 60506

*Cashiers Check* 3⁵

THE PURCHASE OF AN INDEMNITY BOND WILL BE REQUIRED BEFORE ANY
CASHIER'S CHECK OF THIS BANK WILL BE REPLACED OR REFUNDED IN
THE EVENT IT IS LOST, MISPLACED OR STOLEN.

Date: 4/21/04

REMITTER    OSNB GEORGETOWN INVESTORS LLC
            DDA #707166

Branch:    1012

**PAY**
**TO THE**
**ORDER OF** EXACTLY **200,000 AND 00/100 DOLLARS

COOK COUNTY TREASURER

$200,

02 - 072

SIGNATURE HAS A COLORED BACKGROUND · BORDER CONTAINS

⑈0000358055⑈ ⑈071900760⑈ 18⑈

**Robert Sieker**

| | |
|---|---|
| From: | Ivana Dabizljevic |
| Sent: | Tuesday, July 13, 2004 10:37 AM |
| To: | Martha A. Mills |
| Cc: | Robert Sieker; Brigid Madro |
| Subject: | Tax sale Collateral Check Returned in Mail |

We have received a Tax Sale Collateral Check payable to Georgetown Investors LLC (buyer no. 02-00072) for $200,000.00 back in mail as undeliverable.
The mailing address provided by Legal Dept. on the check request was:
40 Terry Drive
Sugar Grove, IL 60554

Please let us know where the checks should be re-mailed.

Thanks,
Ivana Dabizljevic

1



## LLC FILE DETAIL REPORT



| | | | |
|---|---|---|---|
| | GEORGETOWN INVESTORS LLC | | 00866393 |
| | GOODSTANDING | | 03/05/2004 |
| | LLC | | Domestic |
| | 02/14/2003 | | IL |
| | FRANCIS ALEXANDER | | 02/14/2003 |
| | 40 TERRY DRIVE | | 40 TERRY DRIVE SUGAR GROVE 60554 |
| | SUGAR GROVE | | MBR |
| | 60554 | | PERPETUAL |
| | 03/05/2004 | | 2004 |

**Return to the Search Screen**



BACK TO CYBERDRIVEILLINOIS.COM

# Exhibit D

**EX. D**
**Mailings Related To Liens That Sabre Purchased**

| County Pin # | Volume # | Date (On or About) | Document Mailed |
|---|---|---|---|
| 29-18-401-013-0000 | 211 | 08/14/2002 | 22-5 |
| 29-18-417-013-0000 | 211 | 08/14/2002 | 22-5 |
| 13-01-423-018-0000 | 317 | 08/20/2002 | 22-5 |
| 13-01-427-010-0000 | 317 | 08/20/2002 | 22-5 |
| 13-01-427-012-0000 | 317 | 08/20/2002 | 22-5 |
| 13-02-428-039-0000 | 318 | 08/20/2002 | 22-5 |
| 13-06-103-039-0000 | 323 | 08/20/2002 | 22-5 |
| 13-07-104-069-0000 | 324 | 08/20/2002 | 22-5 |
| 00-00-202-010-9034 | 429 | 08/20/2002 | 22-5 |
| 02-02-011-101-0000 | 429 | 08/20/2002 | 22-5 |
| 20-20-102-016-0000 | 429 | 08/20/2002 | 22-5 |
| 20-20-111-043-0000 | 429 | 08/20/2002 | 22-5 |
| 20-20-202-020-0000 | 429 | 08/20/2002 | 22-5 |
| 20-20-213-017-0000 | 429 | 08/20/2002 | 22-5 |
| 20-20-217-018-0000 | 429 | 08/20/2002 | 22-5 |
| 20-20-219-034-0000 | 429 | 08/20/2002 | 22-5 |
| 20-20-224-004-0000 | 429 | 08/20/2002 | 22-5 |
| 20-20-226-042-0000 | 429 | 08/20/2002 | 22-5 |
| 31-34-110-023-0000 | 180 | 07/16/2003 | 22-5 |
| 31-35-408-026-0000 | 180 | 07/16/2003 | 22-5 |
| 07-07-201-058-0000 | 187 | 07/16/2003 | 22-5 |
| 25-22-201-014-0000 | 290 | 07/18/2003 | 22-5 |
| 25-22-317-009-0000 | 291 | 07/18/2003 | 22-5 |
| 25-27-109-015-0000 | 293 | 07/18/2003 | 22-5 |
| 25-27-130-051-0000 | 293 | 07/18/2003 | 22-5 |
| 26-05-308-006-0000 | 295 | 07/18/2003 | 22-5 |
| 26-06-306-007-0000 | 296 | 07/18/2003 | 22-5 |
| 26-06-321-015-0000 | 296 | 07/18/2003 | 22-5 |
| 26-06-414-025-0000 | 297 | 07/18/2003 | 22-5 |
| 32-21-305-021-0000 | 015 | 07/19/2004 | 22-25 |
| | | 07/16/2004 07/19/2004 07/21/2004 | 22-10 |
| 32-33-322-033-0000 | 021 | 07/19/2004 | 22-25 |
| | | 07/19/2004 07/20/2004 07/21/2004 | 22-10 |

**EX. D**
**Mailings Related To Liens That Sabre Purchased**

| County Pin # | Volume # | Date (On or About) | Document Mailed |
|---|---|---|---|
| 32-33-418-026-0000 | 021 | 07/19/2004 | 22-25 |
| | | 07/19/2004 07/20/2004 07/21/2004 | 22-10 |
| 33-18-200-010-0000 | 022 | 07/19/2004 | 22-25 |
| | | 07/20/2004 07/21/2004 08/31/2004 | 22-10 |
| 33-31-112-026-0000 | 022 | 07/19/2004 | 22-25 |
| | | 07/19/2004 08/29/2004 08/30/2004 09/10/2004 | 22-10 |
| 28-17-213-005-0000 | 031 | 07/19/2004 | 22-25 |
| | | 07/19/2004 07/20/2004 08/12/2004 08/31/2004 | 22-10 |
| 30-17-200-003-0000 | 224 | 04/27/2005 | 22-25 |
| | | 04/29/2005 05/02/2005 | 22-10 |
| 28-34-402-022-1092 | 035 | 05/24/2005 | 22-25 |
| 32-30-107-059-0000 | 019 | | |
| | | 07/19/2004 | 22-25 |
| | | 07/18/04 07/21/04 07/22/04 | 22-10 |
| 25-10-102-029-0000 | 284 | 11/04/2004 | 22-25 |
| 25-10-317-029-0000 | 285 | 10/1/2004 | 22-25 |
| | | 10/02/2004 10/04/2004 | 22-10 |

764485

2



# Exhibit E

**EX. E**
**Mailings Related to Liens That Regal Purchased**

| County Pin # | Volume # | Date (On or About) | Document Mailed |
|---|---|---|---|
| 29-18-400-026-0000 | 211 | 08/14/2002 | 22-5 |
| 29-19-228-046-0000 | 211 | 08/14/2002 | 22-5 |
| 13-05-400-025-0000 | 322 | 08/20/2002 | 22-5 |
| 13-09-328-062-1010 | 329 | 08/20/2002 | 22-5 |
| 20-20-105-011-0000 | 429 | 08/20/2002 | 22-5 |
| 20-20-118-010-0000 | 429 | 08/20/2002 | 22-5 |
| 20-20-305-041-0000 | 430 | 08/20/2002 | 22-5 |
| 20-20-306-022-0000 | 430 | 08/20/2002 | 22-5 |
| 20-20-314-025-0000 | 430 | 08/20/2002 | 22-5 |
| 20-20-325-025-0000 | 430 | 08/20/2002 | 22-5 |
| 20-20-408-036-0000 | 430 | 08/20/2002 | 22-5 |
| 31-34-101-032-0000 | 180 | 07/16/2003 | 22-5 |
| 31-36-114-041-0000 | 180 | 07/16/2003 | 22-5 |
| 31-36-311-029-0000 | 180 | 07/16/2003 | 22-5 |
| 31-36-410-030-0000 | 180 | 07/16/2003 | 22-5 |
| 15-12-303-028-0000 | 182 | 07/16/2003 | 22-5 |
| 15-26-105-026-0000 | 184 | 07/16/2003 | 22-5 |
| 25-22-212-031-0000 | 290 | 07/18/2003 | 22-5 |
| 25-27-103-010-0000 | 293 | 07/18/2003 | 22-5 |
| 25-27-109-020-0000 | 293 | 07/18/2003 | 22-5 |
| 25-34-112-021-0000 | 293 | 07/18/2003 | 22-5 |
| 26-06-207-024-0000 | 296 | 07/18/2003 | 22-5 |
| 26-06-312-004-0000 | 296 | 07/18/2003 | 22-5 |
| 26-06-405-022-0000 | 297 | 07/18/2003 | 22-5 |
| 28-34-409-012-0000 | 035 | 09/22/2004 | 22-5 |
| 06-13-411-006-0000 | 060 | 09/22/2004 | 22-5 |
| 18-35-412-025-0000 | 085 | 09/09/2004 | 22-5 |
| 10-27-218-032-0000 | 124 | 09/22/2004 | 22-5 |
| 02-34-200-038-0000 | 150 | 09/22/2004 | 22-5 |
| 31-12-100-075-1016 | 178 | 09/22/2004 | 22-5 |
| 29-08-318-020-0000 | 200 | 09/22/2004 | 22-5 |
| 30-17-406-010-0000 | 224 | 09/22/2004 | 22-5 |
| 20-25-121-007-0000 | 262 | 09/27/2004 | 22-5 |
| 13-14-405-039-1016 | 337 | 03/27/2004 | 22-5 |
| 32-21-305-021-0000 | 015 | 07/19/2004<br><br>07/16/2004<br>07/19/2004<br>07/21/2004 | 22-25<br><br>22-10 |

1

**EX. E**
**Mailings Related to Liens That Regal Purchased**

| County Pin # | Volume # | Date (On or About) | Document Mailed |
|---|---|---|---|
| 32-33-322-033-0000 | 021 | 07/19/2004 | 22-25 |
| | | 07/19/2004 | 22-10 |
| | | 07/20/2004 | |
| | | 07/21/2004 | |
| 32-33-418-026-0000 | 021 | 07/19/2004 | 22-25 |
| | | 07/19/2004 | 22-10 |
| | | 07/20/2004 | |
| | | 07/21/2004 | |
| 33-18-200-010-0000 | 022 | 07/19/2004 | 22-25 |
| | | 07/20/2004 | 22-10 |
| | | 07/21/2004 | |
| | | 08/31/2004 | |
| 33-31-112-026-0000 | 022 | 07/19/2004 | 22-25 |
| | | 07/19/2004 | 22-10 |
| | | 08/29/2004 | |
| | | 08/30/2004 | |
| | | 09/10/2004 | |
| 28-17-213-005-0000 | 031 | 07/19/2004 | 22-25 |
| 28-34-402-022-1092 | 035 | 05/24/2005 | 22-25 |







# Exhibit F

### EX. F
### Mailings Related to Liens That DRN II Purchased

| County Pin # | Volume # | Date (On or About) | Document Mailed |
|---|---|---|---|
| 20-10-303-013-0000 | 253 | 08/14/2002 | 22-5 |
| 20-11-304-015-1013 | 254 | 08/14/2002 | 22-5 |
| 20-15-314-016-0000 | 257 | 08/14/2002 | 22-5 |
| 20-22-105-007-0000 | 258 | 08/14/2002 | 22-5 |
| 20-22-302-031-0000 | 259 | 08/14/2002 | 22-5 |
| 20-22-316-009-0000 | 259 | 08/14/2002 | 22-5 |
| 20-22-401-031-0000 | 259 | 08/14/2002 | 22-5 |
| 20-22-424-017-0000 | 259 | 08/14/2002 | 22-5 |
| 20-23-115-003-0000 | 260 | 08/14/2002 | 22-5 |
| 20-23-407-016-0000 | 261 | 08/14/2002 | 22-5 |
| 20-23-412-044-0000 | 261 | 08/14/2002 | 22-5 |
| 31-26-206-009-0000 | 180 | 07/16/2003 | 22-5 |
| 31-34-106-003-0000 | 180 | 07/16/2003 | 22-5 |
| 31-35-105-023-0000 | 180 | 07/16/2003 | 22-5 |
| 31-35-201-036-0000 | 180 | 07/16/2003 | 22-5 |
| 31-35-209-012-0000 | 180 | 07/16/2003 | 22-5 |
| 31-35-320-010-0000 | 180 | 07/16/2003 | 22-5 |
| 25-22-113-061-0000 | 290 | 07/18/2003 | 22-5 |
| 25-22-212-043-0000 | 290 | 07/18/2003 | 22-5 |
| 25-22-320-012-0000 | 291 | 07/18/2003 | 22-5 |
| 25-27-106-001-0000 | 293 | 07/18/2003 | 22-5 |
| 25-27-118-051-0000 | 293 | 07/18/2003 | 22-5 |
| 25-28-418-008-0000 | 293 | 07/18/2003 | 22-5 |
| 32-30-107-059-0000 | 019 | 07/19/2004 | 22-25 |
|  |  | 07/18/04 | 22-10 |
|  |  | 07/21/04 |  |
|  |  | 07/22/04 |  |
| 25-10-102-029-0000 | 284 | 11/04/2004 | 22-25 |
| 25-10-317-029-0000 | 285 | 10/1/2004 | 22-25 |
|  |  | 10/02/2004 | 22-10 |
|  |  | 10/04/2004 |  |

# Exhibit G

**EX. G**
**Mailings Related to Liens That Cronus Purchased**

| County Pin # | Volume # | Date (On or About) | Document Mailed |
|---|---|---|---|
| 31-26-100-014-0000 | 180 | 07/16/2003 | 22-5 |
| 31-33-102-043-0000 | 180 | 07/16/2003 | 22-5 |
| 31-34-403-028-0000 | 180 | 07/16/2003 | 22-5 |
| 31-36-109-025-0000 | 180 | 07/16/2003 | 22-5 |
| 31-36-200-025-1085 | 180 | 07/16/2003 | 22-5 |
| 31-36-200-028-1086 | 180 | 07/16/2003 | 22-5 |
| 25-22-201-024-0000 | 290 | 07/18/2003 | 22-5 |
| 25-22-317-012-0000 | 291 | 07/18/2003 | 22-5 |
| 25-27-104-006-0000 | 293 | 07/18/2003 | 22-5 |
| 25-34-111-003-0000 | 293 | 07/18/2003 | 22-5 |
| 26-05-313-034-0000 | 295 | 07/18/2003 | 22-5 |
| 26-06-104-044-0000 | 295 | 07/18/2003 | 22-5 |

# Exhibit H

**EX. H**
**Mailings Related To Liens That CCJ Purchased**

| County Pin # | Volume # | Date (On or About) | Document Mailed |
|---|---|---|---|
| 31-26-414-009-0000 | 180 | 07/16/2003 | 22-5 |
| 31-34-307-006-0000 | 180 | 07/16/2003 | 22-5 |
| 31-35-106-024-0000 | 180 | 07/16/2003 | 22-5 |
| 01-50-120-601-9000 | 181 | 07/16/2003 | 22-5 |
| 07-07-202-057-0000 | 187 | 07/16/2003 | 22-5 |
| 07-08-300-020-0000 | 187 | 07/16/2003 | 22-5 |
| 25-22-108-015-0000 | 290 | 07/18/2003 | 22-5 |
| 25-22-308-027-0000 | 291 | 07/18/2003 | 22-5 |
| 25-27-105-019-0000 | 293 | 07/18/2003 | 22-5 |
| 25-27-116-014-0000 | 293 | 07/18/2003 | 22-5 |
| 25-34-118-020-0000 | 293 | 07/18/2003 | 22-5 |
| 26-06-204-028-0000 | 296 | 07/18/2003 | 22-5 |
| 26-06-305-061-0000 | 296 | 07/18/2003 | 22-5 |
| 26-06-311-047-0000 | 296 | 07/18/2003 | 22-5 |
| 28-03-211-061-0000 | 025 | 09/21/2004 | 22-5 |
| 12-29-304-012-0000 | 070 | 09/21/2004 | 22-5 |
| 10-26-108-023-0000 | 123 | 09/21/2004 | 22-5 |
| 31-05-102-011-1009 | 178 | 09/21/2004 | 22-5 |
| 03-24-200-133-0000 | 233 | 09/24/2004 | 22-5 |
| 21-30-202-015-1015 | 274 | 09/24/2004 | 22-5 |
| 13-14-202-001-0000 | 336 | 09/24/2004 | 22-5 |
| 19-12-315-016-0000 | 387 | 09/24/2004 | 22-5 |
| 20-17-301-007-0000 | 424 | 09/24/2004 | 22-5 |
| 16-24-204-011-0000 | 572 | 09/28/2004 | 22-5 |
| 30-17-200-003-0000 | 224 | 04/27/2005 | 22-25 |
|  |  | 04/29/2005 | 22-15 |
|  |  | 05/02/2005 |  |

764507       1

# Exhibit I

**EX. I**
**Mailings Related to Liens That Georgetown Purchased**

| County Pin # | Volume # | Date (On or About) | Document Mailed |
|---|---|---|---|
| 16-20-302-016-0000 | 004 | 09/22/2004 | 22-5 |
| 18-30-306-032-0000 | 084 | 09/22/2004 | 22-5 |
| 15-09-210-020-0000 | 159 | 09/22/2004 | 22-5 |
| 29-04-314-002-0000 | 195 | 09/22/2004 | 22-5 |
| 30-17-212-022-0000 | 224 | 09/22/2004 | 22-5 |
| 21-31-212-012-0000 | 276 | 09/27/2004 | 22-5 |
| 13-27-326-017-0000 | 357 | 09/27/2004 | 22-5 |
| 20-07-204-012-0000 | 416 | 09/27/2004 | 22-5 |
| 16-08-215-016-0000 | 548 | 09/28/2004 | 22-5 |
| 17-07-323-027-0000 | 588 | 09/28/2004 | 22-5 |

# Exhibit J

**EX. J**
**Mailings Related to Liens That Optimum Purchased**

| County Pin # | Volume # | Date (On or About) | Document Mailed |
|---|---|---|---|
| 31-15-207-011-0000 | 179 | 09/22/2004 | 22-5 |
| 30-20-413-053-0000 | 226 | 09/22/2004 | 22-5 |
| 13-13-402-033-0000 | 335 | 09/27/2004 | 22-5 |
| 19-21-102-034-0000 | 398 | 09/27/2004 | 22-5 |
| 20-08-303-037-0000 | 419 | 09/27/2004 | 22-5 |
| 14-08-207-017-0000 | 477 | 09/28/2004 | 22-5 |
| 13-36-420-015-0000 | 531 | 09/28/2004 | 22-5 |
| 17-08-227-007-1012 | 589 | 09/28/2004 | 22-5 |





# Exhibit K

**EX. K**
**Mailings Related to Liens That L.C.C. Purchased**

| County Pin # | Volume # | Date (On or About) | Document Mailed |
|---|---|---|---|
| 32-29-205-014-0000 | 019 | 09/22/2004 | 22-5 |
| 33-31-103-030-0000 | 022 | 09/22/2004 | 22-5 |
| 28-01-320-005-0000 | 023 | 09/22/2004 | 22-5 |
| 28-26-309-014-0000 | 033 | 09/22/2004 | 22-5 |
| 28-27-411-002-0000 | 034 | 09/22/2004 | 22-5 |
| 16-20-404-037-0000 | 041 | 09/27/2004 | 22-5 |
| 16-28-219-019-0000 | 044 | 09/27/2004 | 22-5 |
| 06-27-209-015-0000 | 061 | 09/27/2004 | 22-5 |
| 18-31-307-034-0000 | 084 | 09/28/2004 | 22-5 |
| 12-02-409-006-0000 | 135 | 09/28/2004 | 22-5 |



# Exhibit L

**EX. L**
**Mailings Related to Liens That Jeshay Purchased**

| County Pin # | Volume # | Date (On or About) | Document Mailed |
|---|---|---|---|
| 32-29-205-006-0000 | 019 | 09/22/2004 | 22-5 |
| 09-14-111-053-0000 | 088 | 09/22/2004 | 22-5 |
| 27-25-313-008-0000 | 147 | 09/22/2004 | 22-5 |
| 19-30-405-028-0000 | 190 | 09/22/2004 | 22-5 |
| 30-20-409-039-0000 | 226 | 09/22/2004 | 22-5 |
| 20-35-222-005-0000 | 270 | 09/27/2004 | 22-5 |
| 13-01-121-014-0000 | 316 | 09/27/2004 | 22-5 |
| 19-24-404-005-0000 | 403 | 09/27/2004 | 22-5 |
| 25-08-102-044-0000 | 454 | 09/28/2004 | 22-5 |
| 16-02-318-030-0000 | 539 | 09/28/2004 | 22-5 |