**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **PHOENIX BOND & INDEMNITY, CO., et al.** ) | |
| ) | |
| **Plaintiffs,** ) | |
| **v.** ) | **No. 05 C 4095** |
| ) | |
| **JOHN BRIDGE, et al.** ) | **Judge James Holderman** |
| ) | **Magistrate Judge Nan Nolan** |
| **Defendants.** ) | |

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY**

[FILED COPY HAS BEEN REDACTED PURSUANT TO PROTECTIVE
ORDER ENTERED ON NOVEMBER 29, 2005. THIS FIRST AMENDED
COMPLAINT AND THE EXHIBITS CONTAIN INFORMATION
DESIGNATED AS HIGHLY CONFIDENTIAL AND MUST BE
MAINTAINED IN ACCORDANCE WITH THE NOVEMBER 29, 2005
PROTECTIVE ORDER]

Plaintiffs Phoenix Indemnity & Bond Co. ("Phoenix") and BCS Services, Inc. ("BCS")

(collectively, "Plaintiffs"), by and through their attorneys, complain against defendants John

Bridge, Barrett Rochman ("B. Rochman"), Sabre Group, LLC ("Sabre"), Jeffrey Bridge, Regal

One, LLC ("Regal"), Robert Jensen ("Jensen"), Joseph Varan ("Varan"), Cronus Projects, LLC

("Cronus"), Jesse Rochman ("J. Rochman"), Christopher Rochman, Corinne Rochman, CCJ

Investments, LLC ("CCJ"), BRB Investments LLC ("BRB"), Douglas Nash ("Nash"), DRN II,

Inc. ("DRN II"), DRN 2 LLC ("DRN 2"), Jeshay, LLC ("Jeshay"), Mud Cats Real Estate LLC

("Mud Cats"), Francis Alexander ("Alexander"), Georgetown Investors, LLC ("Georgetown"),

Jason Baumbach ("Baumbach"), Optimum Financial, Inc. ("Optimum"), Carpus Investments

("Carpus"), Gregory Ellis ("Ellis"), L.C.C. Venture, LLC ("L.C.C."), and GJ Venture LLC,

("GJ") (collectively "Defendants"), and allege as follows:

**Nature of the Action**

1.      Two tax buyers—Phoenix and BCS—bring this action against individuals and

corporate entities that conspired to violate and violated the Cook County Single Simultaneous

Bidder Rule (the "Rule" or the "Single Bidder Rule") in the 2002, 2003, 2004 and 2005 annual tax sales, thereby damaging the Plaintiffs, as well as other tax buyer participants in those tax sales. John Bridge, B. Rochman, and Sabre (the "Sabre Defendants") directed and controlled secret agreements with the other defendants, and others, to do Sabre's bidding—literally. Through a series of fraudulent schemes and collusive bidding, the Defendants unlawfully obtained the opportunity to purchase a greater number of the liens available for bid at the tax sales through the conspiracy, thus reducing the number of liens Plaintiffs were able to purchase and costing Plaintiffs the financial benefits flowing from those purchases. Phoenix and BCS seek to enjoin the Defendants and to recover damages Plaintiffs suffered as a result of these schemes under sections 1962(c) and 1962(d) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and tortious interference with prospective business advantage.

### Jurisdiction and Venue

2.      This Court has jurisdiction over federal law claims under 28 U.S.C. § 1331 and 18 U.S.C. § 1965(a). This Court has pendant jurisdiction over the state law claims of tortious interference with prospective business advantage arising out of these transactions.

3.      Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391 and 18 U.S.C. § 1965 because the Defendants reside in, are found in, have an agent in, and/or transact their affairs in, the Northern District of Illinois where a substantial part of the events complained of occurred.

### Parties

4.      Plaintiff Phoenix Bond & Indemnity Co. is an Illinois corporation. Its business includes buying tax liens, and it participated in the Cook County tax sales held in 2002 through 2005, inclusive, for delinquent taxes for the years 2000 through 2003.

- 2 -

5.      BCS Services, Inc. is an Illinois corporation. Its business includes buying tax liens, and it participated in the Cook County tax sales held in 2002 through 2005, inclusive, for delinquent taxes for the years 2000 through 2003.

6.      Defendant John Bridge is an Illinois resident. He, together with B. Rochman, operated and controlled the affairs of Sabre. He was a registered tax bidder of Sabre in the 2004 annual tax sale.

7.      Defendant Barrett Rochman is an Illinois resident. He, together with John Bridge, operated and controlled the affairs of Sabre, and he is a principal of Sabre.

8.      Defendant Sabre Group, LLC is an Illinois limited liability company. Its business includes buying tax liens and acquiring deeds to properties for which real estate taxes were unpaid, and it participated in the 2002, 2003 and 2004 Cook County tax sales. Its named principal is B. Rochman. Its affairs were operated and controlled by John Bridge and B. Rochman.

9.      Defendant Regal One, LLC is an Illinois limited liability corporation. Its business includes buying tax liens, and it participated in the 2002 through 2005 Cook County tax sales. Its principal is Jeffrey Bridge.

10.     Defendant Jeffrey Bridge is an Illinois resident. Jeffrey Bridge is a principal of Regal One and was its registered tax bidder at the 2004 and 2005 annual tax sales. Jeffrey Bridge and John Bridge are brothers.

11.     Defendant DRN II, Inc. is an Illinois corporation. Its business includes buying tax liens, and it participated in the 2002 Cook County tax sale. Its principal is Douglas Nash.

12. Defendant DRN 2, LLC, on information and belief, is an Illinois limited liability company. Its business includes buying tax liens, and it participated in the 2003 Cook County tax sale. Its principal is Douglas Nash.

13. Defendant Jeshay, LLC is an Illinois limited liability company. Its business includes buying tax liens, and it participated in the 2004 Cook County tax sale. Its principal is Douglas Nash.

14. Defendant Mud Cats Real Estate, LLC is an Illinois limited liability company. Its business includes buying tax liens, and it participated in the 2005 Cook County tax sale. Its principal is Douglas Nash.

15. Defendant Douglas Nash is an Illinois resident. He is a principal of DRN II, DRN 2, Jeshay and Mud Cats.

16. Defendant Cronus Projects, LLC is an Illinois limited liability company. Its business includes buying tax liens, and it participated in the 2003, 2004 and 2005 Cook County tax sales. Its principals are Robert Jensen and Joseph Varan.

17. Defendant Robert Jensen is an Illinois resident. He is a principal of Cronus and was a registered bidder for Cronus in the 2004 and 2005 annual tax sales.

18. Defendant Joseph Varan is an Illinois resident. He is a principal of Cronus and was a registered bidder for Cronus at the 2004 annual tax sale.

19. Defendant CCJ Investments, LLC is an Illinois limited liability company. Its business includes buying tax liens, and it participated in the 2003 and 2004 Cook County tax sales. Its principals are Christopher Rochman, Jesse Rochman and Corinne Rochman.

20. Defendant BRB Investments, LLC is an Illinois limited liability company. Its business includes buying tax liens, and it participated in the 2005 Cook County tax sale. Its principals are Jesse Rochman, Corinne Rochman and Christopher Rochman.

21. Defendant Jesse Rochman is an Illinois resident. He is a principal of CCJ and was a registered bidder for CCJ at the 2004 annual tax sale. He is a principal for BRB and was a registered bidder of BRB at the 2005 annual tax sale. On information and belief, Jesse Rochman is Barrett Rochman's son.

22. Defendant Christopher Rochman is an Illinois resident. He is a principal of CCJ and was one of its registered bidders at the 2004 tax sale. He is a principal of BRB. On information and belief, Christopher Rochman is Barrett Rochman's son.

23. Defendant Corinne Rochman (a/k/a Corie Rochman) is a Florida resident. Corinne Rochman is a principal of CCJ and BRB. On information and belief, Corinne Rochman is related to Barrett Rochman.

24. Defendant Georgetown Investors, LLC is an Illinois limited liability company. Its business includes buying tax liens, and it participated in the 2004 and 2005 Cook County tax sales. Its principal is Francis Alexander.

25. Defendant Francis Alexander is an Illinois resident. He is a principal of Georgetown.

26. Defendant Optimum Financial, Inc. is an Illinois corporation. Its business includes buying tax liens, and it participated in the 2004 Cook County tax sale. Its principal is Jason Baumbach.

27.     Defendant Carpus Investments, LLC is an Illinois limited liability company. Its business includes buying tax liens, and it participated in the 2005 Cook County tax sale. Its principal is Jason Baumbach.

28.     Defendant Jason Baumbach is an Illinois resident. He is the principal of Optimum and Carpus. On information and belief, Jason Baumbach is John Bridge's nephew.

29.     Defendant L.C.C. Venture, LLC, is an Illinois limited liability company. Its business includes buying tax liens, and it participated in the 2004 Cook County tax sale. One of its principals is Gregory Ellis.

30.     Defendant GJ Venture, LLC is an Illinois limited liability company. Its business includes buying tax liens, and it participated in the 2005 Cook County tax sale. Its principal is Gregory Ellis.

31.     Defendant Gregory Ellis is an Illinois resident. He is currently a principal of GJ and L.C.C.

### Third-Party Co-Conspirators

32.     Heartwood 88, LLC ("Heartwood") is a Florida corporation with its principal place of business in Florida. Its business includes buying tax liens, and it participated in the Cook County tax sales held in 2003 through 2005, purchasing liens on behalf of Sabre as its nominee.

33.     Bamp, LLC ("Bamp") was an Illinois corporation that voluntarily dissolved on December 21, 2004. Its business included buying tax liens, and it participated in the 2004 Cook County tax sale, purchasing liens on behalf of Sabre as its nominee. Its principal place of business was in Maryland, and its principal was Anthony DeLaurentis ("DeLaurentis"), a Maryland resident and attorney.

- 6 -

34.     Richarony, LLC ("Richarony") was an Illinois corporation that voluntarily dissolved on December 21, 2004. Its business included buying tax liens, and it participated in the 2004 Cook County tax sale, purchasing liens on behalf of Sabre as its nominee. Its principal place of business was in Maryland, and its principal was Richard Turer ("Turer"), a Maryland resident and attorney.

35.     Sass Muni-IV ("Sass IV") is a New York corporation, with its principal place of business in New York. Its business includes buying tax liens, and it participated in the 2002, 2003 and 2004 Cook County tax sales, purchasing liens on behalf of Sabre as its nominee.

36.     Sass Muni-V ("Sass V") is a New York corporation, with its principal place of business in New York. Its business includes buying tax liens, and it participated in the 2005 Cook County tax sales, purchasing liens on behalf of Sabre as its nominee.

## Factual Background To All Counts

37.     The duly elected Treasurer and Ex-Officio Collector of Cook County, Illinois ("the Collector") is charged under the Property Tax Code (35 ILCS 200/22-70 et seq.) with the collection of delinquent real estate taxes through judicial sale of judgments obtained against delinquent property.

38.     The duly elected Clerk of Cook County, Illinois ("the Clerk") is charged under the Property Tax Code with assisting the Collector in the conduct of the tax sale and keeping related records thereafter. The Collector and the Clerk are referred to hereafter jointly as "the County."

39.     The annual Cook County tax sale is part of the Illinois property tax system. If a property owner fails to pay his property taxes due in a given year, the County offers for sale to the public a tax lien on that property. The purchaser of the tax lien pays the delinquent tax. The property owner may redeem that lien by paying the delinquent tax plus the accrued penalty.

Upon redemption, the tax buyer surrenders the lien and receives the tax amount plus the determined penalty. If the property owner does not redeem the lien within two to three years, the tax buyer may commence a judicial proceeding by filing a Petition for Tax Deed and obtain title to the property.

40.     The tax sale process begins when the Collector publishes a list of delinquent real estate parcels in area newspapers. The publication provides notice that the Collector will apply to the Circuit Court for judgments against delinquent real estate and orders to sell those judgments at public tax sale. Thereafter, the Circuit Court issues the requested judgments and orders. At the tax sale, the County tax sales the tax liens on the delinquent properties in exchange for the County's receipt of the delinquent taxes. Each tax lien represents a different parcel of real estate for which taxes are delinquent.

41.     The terms, manner and method by which the judicial sale is conducted are prescribed by the Collector. Among other things, the Collector provides a registration package to each prospective tax buyer. The package sets forth the rules by which the sale is to be conducted, including the terms and conditions with which all participants must comply. An example of the registration package is attached hereto as Exhibit A.

42.     Tax buyers must complete the registration package to be qualified to attend the tax sale and to bid on the tax liens. Registration requires the submission of an application and sworn affidavit in compliance with rules established by the Cook County Treasurer. A prospective tax buyer who fails to satisfy any of these requirements, i.e. the application, the affidavit of compliance, or the related bond, would not be permitted to bid on or purchase liens at the tax sale.

43.     Bids are not made in cash amounts and taxes are not sold to the highest bidder. When a taxpayer redeems his taxes from a tax buyer, he pays the amount of taxes paid by the tax buyer at the sale, plus penalty. At the tax sale, the tax buyers bid on the rate of penalty. The tax buyer who bids the lowest rate of penalty will win the bid. If more than one tax buyer bids at the same lowest 0% penalty rate, the auctioneer will allocate the liens on a rotational basis to ensure that there is an equal apportionment of liens among the lowest bidding tax buyers. The highest permissible penalty rate is 18% of the delinquent tax per penalty period. Since approximately 2000, the typical penalty rate has been 0%.

44.     After each tax sale, the County issues a Certificate of Purchase evidencing the tax lien sold on each parcel of real estate to and in the name of the tax buyer who made the successful bid.

45.     As a matter of law, no more than four months and fifteen days after purchase of a lien, the tax buyer who owns the certificate of purchase must draft a notice pursuant to 35 ILCS 200/22-5 (the "22-5 notice"), alerting the last assessee that the lien has been sold for delinquent taxes. The tax buyer provides the 22-5 notice to the County for the County to mail to the last assessee. The County sends the notice by U.S. mail to the last assessee, including last assessees residing outside the state of Illinois. The tax buyer retains a file-stamped copy of the same. The certificate holder pays the County for the mailing. The 22-5 notice is a mandatory condition to obtain a tax deed. The failure to file the 22-5 notice renders the tax certificate essentially worthless as it would be incapable of foreclosure through a petition for tax deed, leaving the tax buyer with no ability to secure a redemption of the tax lien, to recover its money or to obtain a deed.

46.     If the property remains unredeemed after two to three years from the date of purchase, a lien holder may file a petition for deed. These petitions must be filed five months before the end of the period of redemption. Pursuant to 35 ILCS 200/22-10, in the first sixty days of the five-month period, the lien holder is required to provide notice to property owners, occupants and other interested parties (the "22-10 notice"). Pursuant to 35 ILCS 200/22-15, the Cook County Sheriff serves the lien holders' 22-10 notice of the deed petition and the impending expiration of the period of redemption on property owners, occupants and other interested parties in person. If any owners or interested parties cannot be served in person within Cook County, Illinois, the sheriff will serve them by certified mail. Certified mail will be used to send the 22-10 notices to all parties outside of Illinois. The failure to prepare and serve 22-10 notices renders the lien essentially worthless as the lien holder cannot obtain a deed without proper service of the 22-10 notice, and the property owner will face no legal consequences for failing to redeem the tax liens.

47.     Further, during the first sixty days of that five-month period before the period of redemption expires, the tax buyer prepares a notice pursuant to 35 ILCS 200/22-25 (the "22-25 notice") and delivers that notice with the requisite fee for mailing to the Circuit Court of Cook County with direction to mail it to the relevant property owners and occupants alerting them that the lien holder has filed a petition for tax deed and the date upon which the period of redemption will expire. The County sends the notice by U.S. mail to the relevant property owners and occupants, including property owners outside the State of Illinois. The lien holder cannot obtain a deed without proper service of the 22-25 notice.

48.     The tax buyer's potential sources of profit from the tax liens include the penalty accrued on the tax lien judgment purchased, a 12% penalty accrued on any subsequent real estate

taxes the tax buyer pays on the property, and obtaining a deed through the enforcement of the tax lien.

49.     The 2002 annual tax sale was held from April 1, 2002 to April 26, 2002.  At the 2002 annual tax sale liens were sold based on property owners' failure to pay real estate taxes in 2000.

50.     The 2003 annual tax sale was held from March 10, 2003 to April 4, 2003.  At the 2003 annual tax sale liens were sold based on property owners' failure to pay real estate taxes in 2001.

51.     The 2004 annual tax sale was held from May 10, 2004 to June 7, 2004.  At the 2004 annual tax sale liens were sold based on property owners' failure to pay real estate taxes in 2002.

52.     The 2005 annual tax sale was held from July 6, 2005 to July 27, 2005.  At the 2005 annual tax sale liens were sold based on property owners' failure to pay real estate taxes in 2003.

### The Cook County Single Simultaneous Bidder Rule

53.     In order to participate in the tax sale, tax buyers must register with the Collector.

54.     At the time of registration, the tax buyer, or its authorized agent, must affirm under penalty of perjury its adherence to the Single Bidder Rule.  The Single Bidder Rule—established before the 2001 tax sale—prohibits related bidding entities from simultaneously participating in the sale.

55.     The Single Bidder Rule defines "related bidding entity" as "any individual, corporation, partnership, joint venture, limited liability company, business organization, or other entity that has a shareholder, partner, principal, officer, general partner or other person or entity

- 11 -

having an ownership interest in common with, or contractual relationship with, any other registrant" in the tax sale.

56.     As part of the registration under the Single Bidder Rule, the tax buyer represents and warrants that: (A) It has no capital, purchase money, or other finances in common with any other bidding entity or person registering to bid at the annual tax sale; (B) It shares no common ownership interest or common source of funds; (C) It has no agreements to purchase or sell any parcels successfully bid on by any other registering bidding entity or person at the same sale; (D) It has no agreements to purchase or sell any parcels at the annual sale by any entity or person known to be ineligible to bid at the annual sale; (E) It does not stand to benefit financially under an agreement with any other bidder at the sale concerning parcels to be bid on or purchased by another entity.

57.     The Single Bidder Rule ensures that no one can increase the number of liens they obtain to the detriment of other tax buyers by having two or more bidders, or tax buyers, purchasing liens for their benefit. The Single Bidder Rule protects the auctioneer's just allocation of bids on a rotational basis to guarantee an equal apportionment of liens among all tax buyers who bid the lowest rate.

### Sabre's Scheme To Obtain Additional Liens Beyond Its Appropriate Portion

58.     Determined to provide Sabre an unfair advantage, B. Rochman and John Bridge devised a scheme to enable Sabre to obtain more liens than it, individually, would have been able to obtain under the Treasurer's rotational basis of allocating liens to ensure that there is an equal apportionment of liens among the lowest bidding tax buyers.

59.     Pursuant to that scheme, John Bridge, B. Rochman and Sabre organized an enterprise by having numerous entities created and coordinated these entities' activities to

acquire liens in the tax sales for Sabre's benefit. The entities that acted as Sabre's nominees and purchased liens for Sabre's benefit included defendants Regal, DRN II, DRN 2, Cronus, CCJ, Georgetown, Optimum, L.C.C., Jeshay, BRB, Mud Cats, Carpus, and GJ, as well as third-parties Heartwood, Bamp, Richarony, Sass IV and Sass V (collectively, the "Sabre Nominees").

60.     John Bridge, B. Rochman and Sabre accomplished their objective of obtaining more liens than Sabre could obtain by itself through the following means: they directed the principals of the respective Sabre Nominees to create entities and/or to register for the tax sale; directed all of the Sabre Nominees to register to participate in the tax sales by filing registrations that concealed that they were bidding for Sabre; provided the list of liens to purchase at the tax sale to the Sabre Nominees; agreed that each of the Sabre Nominees would transfer the certificates of purchase they obtained at the tax sales to Sabre, directly or indirectly, following the respective tax sales in which each participated; and upon receipt of the liens took steps necessary for the scheme to realize the value of the liens, including causing necessary notices to be created and served, paying subsequent taxes on liens acquired by Sabre and the Sabre Nominees and taking steps to secure deeds to property where the property owner failed to redeem the liens.

61.     In the years 2002, 2003 and 2004, B. Rochman and John Bridge submitted registrations and sworn affidavits to the Collector to enable Sabre to participate in the tax sales held during those years. In those registrations, Rochman and Bridge falsely attested that Sabre (A) had no capital, purchase money, or other finances in common with another tax buyer, (B) shared no common ownership interest or common source of funds with another tax buyer, (C) had no agreements to purchase or sell any parcels successfully bid on by any other tax buyer, (D) had no agreements to purchase or sell any parcels at the annual sale by any entity or person

- 13 -

known to be ineligible to bid at the annual sale, and (E) did not stand to benefit financially under an agreement with any other bidder at the sale concerning parcels to be bid on or purchased by another entity. The registrations also falsely represented that Sabre would adhere to the Single Bidder Rule.

62. Beginning in 2002, and continuing through the present, the Sabre Defendants executed their scheme to defraud the County and the other tax buyers through violation of the Single Bidder Rule by having the Sabre Nominees file false registrations and affidavits to obtain access to the tax sales to enable them to bid on and purchase liens for Sabre's benefit.

63. Through the course of the scheme, the Defendants' improper participation in the tax sales, and their resulting acquisition of liens, deprived the other tax buyers, including Plaintiffs, of the opportunity to acquire tax liens and obtain deeds on the distinct parcels of real estate, thus depriving them of the opportunity to profit from the payment of penalties on subsequent taxes and the sale of parcels for which a deed was acquired.

### The 2002 Annual Tax Sale

64. In preparation for the 2002 tax sale, B. Rochman, John Bridge and Sabre enlisted Jeffrey Bridge to join the enterprise and obtain liens for Sabre's benefit. Jeffrey Bridge incorporated Regal on February 26, 2002, a little over a month before the 2002 tax sale, to secretly bid on Sabre's behalf. To fulfill that function, Jeffrey Bridge and Regal submitted a registration to the Cook County Treasurer's Office to participate in the 2002 tax sale. That registration misrepresented that Regal had no agreements to purchase or sell any parcels successfully bid on by any other tax buyer, had no agreements to purchase or sell any parcels at the annual sale by any entity or person known to be ineligible to bid at the annual sale, and would adhere to the Single Bidder Rule. On information and belief, based on information

- 14 -

provided by other Sabre Nominees regarding the implementation of the scheme, that registration also misrepresented that Regal had no capital, purchase money, or other finances in common with another tax buyer, and shared no common ownership interest or common source of funds with another tax buyer.

65.　　On or between April 1, 2002 and April 26, 2002—at the direction of John Bridge, B. Rochman and Sabre—Jeffrey Bridge had Regal purchase liens at the 2002 tax sale for Sabre's benefit. On May 15, 2002, less than three weeks after the 2002 tax sale ended, Regal transferred the liens it acquired to Sabre in furtherance of the scheme. ███████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████ [REDACTED]

66.　　B. Rochman, John Bridge, and Sabre also enlisted Nash to join the enterprise and obtain liens for Sabre's benefit. To fulfill that function, Nash and DRN II submitted a registration to the Cook County Treasurer's Office to participate in the 2002 tax sale. That registration misrepresented that DRN II had no agreements to purchase or sell any parcels successfully bid on by any other tax buyer, had no agreements to purchase or sell any parcels at the annual sale by any entity or person known to be ineligible to bid at the annual sale, and would adhere to the Single Bidder Rule. On information and belief, based on information provided by other Sabre Nominees regarding the implementation of the scheme, that registration also misrepresented that DRN II had no capital, purchase money, or other finances in common with another tax buyer, and shared no common ownership interest or common source of funds with another tax buyer.

67.    On or between April 1, 2002 and April 26, 2002—at the direction of John Bridge,

B. Rochman and Sabre—Nash had DRN II purchase liens at the 2002 tax sale for Sabre's

benefit. On May 15, 2002 (exactly the same day Regal transferred its liens to Sabre), less than

three weeks after the 2002 tax sale ended, DRN II transferred the liens it acquired to Sabre in

furtherance of the scheme. ███████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████ [REDACTED]

68.    John Bridge and B. Rochman also directed Sabre to purchase liens at the 2002 tax

sale. The Sabre Defendants also had Sass IV obtain admission to the tax sale pursuant to a false

registration to enable it to purchase liens at the 2002 tax sale for Sabre's benefit.

69.    By filing the false registration forms that concealed the agreements among these

entities to bid for the benefit of Sabre and/or the finances and funding in common, these entities

were able to obtain access to the tax sale and obtain liens improperly. Each bid that Sabre,

Regal, DRN II and Sass IV made at the 2002 annual tax sale was a step implementing the fraud

on the Cook County Treasurer's Office, with the intended victims being all the other tax buyers

that were not participating in the conspiracy—including Phoenix and BCS.

70.    Sabre, Regal, DRN II and Sass IV primarily bid on the same liens simultaneously

during the 2002 annual tax sale. Sabre identified liens to be bid on and purchased by each of

these entities for its benefit at the tax sale. Lists of which items to bid on were provided by

Sabre and Sabre employees to the bidders for Sabre, Regal, DRN II and Sass IV. Each entity

had to make the payments to the Treasurer for the liens it purchased at the tax sale. Sabre, Regal,

DRN II and Sass IV bid on and obtained liens that Plaintiffs also bid on, with identical

simultaneous 0% penalty bids, during the 2002 annual tax sale. Pursuant to those bids, Sabre

and its nominees obtained liens Plaintiffs would have obtained under the County's allocation

methodology. Through their fraudulent registrations, Sabre, Regal, DRN II and Sass IV were

able to obtain access to the 2002 annual tax sale and improperly purchase 4,916 liens for

$14,504,881. Had Sabre and these nominees not obtained access to the tax sale through their

misrepresentations and purchased liens improperly, Plaintiffs would have obtained more liens at

the 2002 annual tax sale, including liens obtained by Sabre, Regal, DRN II and Sass IV.

Attached as Exhibit B is a representative sample of the liens on which Plaintiffs made a 0%

penalty bid, yet lost the lien to Sabre or its nominees pursuant to their simultaneously 0% penalty

rate bids.

### The 2003 Annual Tax Sale

71.     Having successfully implemented the scheme in 2002, John Bridge, B. Rochman

and Sabre continued the enterprise through the 2003 tax sale.

72.     John Bridge and B. Rochman directed Sabre to purchase liens in its own name

during the 2003 tax sale. Sabre obtained access to the 2003 tax sale with its fraudulent

registration. Jeffrey Bridge and Nash continued their roles by having Regal and DRN 2, Nash's

new entity, bid for Sabre's benefit at the 2003 tax sale.

73.     To be able to purchase liens for Sabre at the 2003 tax sale, Jeffrey Bridge and

Regal submitted a registration to the Cook County Treasurer's Office to participate in that tax

sale. That registration misrepresented that Regal had no agreements to purchase or sell any

parcels successfully bid on by any other tax buyer, had no agreements to purchase or sell any

parcels at the annual sale by any entity or person known to be ineligible to bid at the annual sale,

and would adhere to the Single Bidder Rule. On information and belief, based on information

provided by other Sabre Nominees regarding the implementation of the scheme, that registration

also misrepresented that Regal had no capital, purchase money, or other finances in common with another tax buyer, and shared no common ownership interest or common source of funds with another tax buyer.

74. On or between March 10, 2003 and April 4, 2003—at the direction of John Bridge, B. Rochman and Sabre—Jeffrey Bridge had Regal purchase liens at the 2003 tax sale for Sabre's benefit. ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████ [REDACTED]

75. To be able to purchase liens for Sabre at the 2003 tax sale, Nash and DRN 2 submitted a registration to the Cook County Treasurer's Office to participate in that tax sale. That registration misrepresented that DRN 2 had no agreements to purchase or sell any parcels successfully bid on by any other tax buyer, had no agreements to purchase or sell any parcels at the annual sale by any entity or person known to be ineligible to bid at the annual sale, and would adhere to the Single Bidder Rule. On information and belief, based on information provided by other Sabre Nominees regarding the implementation of the scheme, that registration also misrepresented that DRN 2 had no capital, purchase money, or other finances in common with another tax buyer, and shared no common ownership interest or common source of funds with another tax buyer.

76. On or between March 10, 2003 and April 4, 2003—at the direction of John Bridge, B. Rochman and Sabre—Nash had DRN 2 purchase liens at the 2003 tax sale for Sabre's benefit. ████████████████████████████████████████████

[REDACTED]

77.     In addition to maintaining their secret agreements with the previous participants bidding on Sabre's behalf again at the 2003 sale, John Bridge, B. Rochman and Sabre added new members to the enterprise to obtain liens for Sabre's benefit.

78.     B. Rochman, John Bridge and Sabre enlisted Jensen and Varan to purchase liens for Sabre at the 2003 tax sale. To fulfill that function, Jensen, Varan and Cronus submitted a registration to the Cook County Treasurer's Office to participate in that tax sale. That registration misrepresented that Cronus had no agreements to purchase or sell any parcels successfully bid on by any other tax buyer, had no agreements to purchase or sell any parcels at the annual sale by any entity or person known to be ineligible to bid at the annual sale, and would adhere to the Single Bidder Rule. On information and belief, based on information provided by other Sabre Nominees regarding the implementation of the scheme, that registration also misrepresented that Cronus had no capital, purchase money, or other finances in common with another tax buyer, and shared no common ownership interest or common source of funds with another tax buyer.

79.     On or between March 10, 2003 and April 4, 2003—at the direction of John Bridge, B. Rochman and Sabre— Jensen and Varan had Cronus purchase liens at the 2003 tax sale for Sabre's benefit.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

[REDACTED]

80.     B. Rochman, John Bridge and Sabre also enlisted B. Rochman's children, J.

Rochman, Christopher Rochman and Corinne Rochman, to be the named principals of another

entity to bid for Sabre at the 2003 tax sale. J. Rochman, Christopher Rochman and Corinne

Rochman had CCJ incorporated on February 10, 2003, a month before the 2003 tax sale, to

secretly bid on Sabre's behalf. To fulfill that function, J. Rochman, Christopher Rochman,

Corinne Rochman and CCJ submitted a registration to the Cook County Treasurer's Office to

participate in the 2003 tax sale. That registration misrepresented that CCJ had no agreements to

purchase or sell any parcels successfully bid on by any other tax buyer, had no agreements to

purchase or sell any parcels at the annual sale by any entity or person known to be ineligible to

bid at the annual sale, and would adhere to the Single Bidder Rule. On information and belief,

based on information provided by other Sabre Nominees regarding the implementation of the

scheme, that registration also misrepresented that CCJ had no capital, purchase money, or other

finances in common with another tax buyer, and shared no common ownership interest or

common source of funds with another tax buyer.

81.     On or between March 10, 2003 and April 4, 2003—at the direction of John

Bridge, B. Rochman and Sabre— J. Rochman, Christopher Rochman and Corinne Rochman had

CCJ purchase liens at the 2003 tax sale for Sabre's benefit. On May 15, 2003, less than two

months after the County issued Certificates of Purchase, CCJ transferred liens it acquired to

Sabre in furtherance of the scheme. Plaintiffs do not have access to information regarding the

assignment of tax liens obtained by defendants other than in instances where the tax buyer has

filed a petition to obtain a deed to the property or where the County records reflect a transfer related to the payment of subsequent taxes by the tax buyer. Plaintiffs reviewed the County records for that information, and as to each lien reviewed for which such information was available, the lien examined had been transferred to Sabre. Based on this review of the County records, on information and belief, CCJ transferred all of the tax liens it acquired in the 2003 tax sale to Sabre on May 15, 2003.

82.     The Sabre Defendants also had Heartwood and Sass IV obtain admission to the tax sale pursuant to false registrations to enable each to purchase liens at the 2003 tax sale for Sabre's benefit.

83.     By filing the false registration forms that concealed the agreements among these entities to bid for the benefit of Sabre and/or the finances and funding in common, these entities were able to obtain access to the 2003 annual tax sale and obtain liens improperly. Each bid that Sabre, Regal, DRN 2, Cronus, CCJ, Sass IV and Heartwood made at the 2003 annual tax sale was a step implementing the fraud on the Cook County Treasurer's Office, with the intended victims being all the other tax buyers that were not participating in the conspiracy—including Phoenix and BCS.

84.     Sabre, Regal, DRN 2, Cronus, CCJ, Sass IV and Heartwood primarily bid on the same liens during the 2003 annual tax sale. Sabre identified liens to be bid on and purchased by each of these entities for its benefit at the tax sale. Lists of which items to bid on were provided by Sabre and Sabre employees to the bidders for Sabre, Regal, DRN 2, Cronus, CCJ, Sass IV and Heartwood. Each entity had to make the payments to the Treasurer for the liens it purchased at the tax sale. Sabre, Regal, DRN 2, Cronus, CCJ, Sass IV and Heartwood bid on and obtained liens that Plaintiffs also bid on, with identical simultaneous 0% penalty bids, during the 2003

annual tax sale. Pursuant to those bids, Sabre and its nominees obtained liens Plaintiffs would have obtained under the County's allocation methodology. Through their fraudulent registrations, Sabre, Regal, DRN 2, Cronus, CCJ, Sass IV and Heartwood were able to obtain access to the 2003 annual tax sale and improperly purchase 5,378 liens for $17,484,374. Had Sabre and these nominees not obtained access to the tax sale through their misrepresentations and purchased liens improperly, Plaintiffs would have obtained more liens at the 2003 annual tax sale, including liens obtained by Sabre, Regal, DRN 2, Cronus, CCJ, Sass IV and Heartwood. Attached as Exhibit B is a representative sample of the liens on which Plaintiffs made a 0% penalty bid, yet lost the lien to Sabre or its nominees pursuant to their simultaneously 0% penalty rate bids.

### The 2004 Annual Tax Sale

85.     John Bridge, B. Rochman and Sabre continued the enterprise for the 2004 tax sale, including another expansion by adding new participants to obtain even more liens for Sabre at the 2004 tax sale. They furthered their scheme to defraud in preparation for the 2004 annual tax sale through the same methods that were successful for them in the 2002 and 2003 sales.

86.     John Bridge, B. Rochman and Sabre maintained their secret agreements with the others who had bid for Sabre's benefit in 2002 and 2003, and who continue the practice at the 2004 sale. These entities, Regal, CCJ, Cronus, Jeshay (Nash's replacement for DRN 2), Sass IV and Heartwood—agreed to bid on liens that B. Rochman, John Bridge and Sabre chose before the tax sale. Pursuant to the secret agreements, these entities agreed that they would transfer all of their liens to Sabre after the tax sale. Sabre was thereby able to exercise more bids and obtain more liens through this scheme than was appropriate, thus injuring those tax buyers—including Phoenix and BCS—that complied with the Single Bidder Rule.

87.     The relationships among John Bridge, B. Rochman and Sabre and the other entities allowed John Bridge, B. Rochman and Sabre to effectively and efficiently direct and control all the entities' implementation of the scheme to obtain more liens for Sabre through the secret agreements. For instance, CCJ Investments lists its address in state records at B. Rochman's address—1345 East Park Street in Carbondale, Illinois. In addition, CCJ had Kelly Penman—a registered bidder for Sabre in the 2004 sale (*see* Exhibit A)—execute assignments of liens to Sabre on CCJ's behalf. An example of one of those assignments is attached as Exhibit C.

88.     To fulfill the role of obtaining liens for Sabre, Jeffrey Bridge and Regal submitted a registration to the Cook County Treasurer's Office to participate in the 2004 tax sale. That registration misrepresented that Regal had no agreements to purchase or sell any parcels successfully bid on by any other tax buyer, had no agreements to purchase or sell any parcels at the annual sale by any entity or person known to be ineligible to bid at the annual sale, and would adhere to the Single Bidder Rule. On information and belief, based on information provided by other Sabre Nominees regarding the implementation of the scheme, that registration also misrepresented that Regal had no capital, purchase money, or other finances in common with another tax buyer, and shared no common ownership interest or common source of funds with another tax buyer.

89.     On or between May 10, 2004 and June 7, 2004—at the direction of John Bridge, B. Rochman and Sabre—Jeffrey Bridge had Regal purchase liens at the 2004 annual tax sale for Sabre's benefit. ███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

██████████████████████████████████████████

████████ [REDACTED]

90.     To fulfill the role of obtaining liens for Sabre, J. Rochman, Christopher Rochman and Corinne Rochman had CCJ submit a registration to the Cook County Treasurer's Office to participate in the 2004 tax sale. That registration misrepresented that CCJ had no agreements to purchase or sell any parcels successfully bid on by any other tax buyer, had no agreements to purchase or sell any parcels at the annual sale by any entity or person known to be ineligible to bid at the annual sale, and would adhere to the Single Bidder Rule. On information and belief, based on information provided by other Sabre Nominees regarding the implementation of the scheme, that registration also misrepresented that CCJ had no capital, purchase money, or other finances in common with another tax buyer, and shared no common ownership interest or common source of funds with another tax buyer.

91.     On or between May 10, 2004 and June 7, 2004—at the direction of John Bridge, B. Rochman and Sabre—J. Rochman, Christopher Rochman and Corinne Rochman had CCJ purchase liens at the 2004 annual tax sale for Sabre's benefit. CCJ transferred liens it acquired during the 2004 annual tax sale to Sabre in furtherance of the scheme. Plaintiffs do not have access to information regarding the assignment of tax liens obtained by defendants other than in instances where the tax buyer has filed a petition to obtain a deed to the property or where the County records reflect a transfer related to the payment of subsequent taxes by the tax buyer. Plaintiffs reviewed the County records for that information, and as to each lien reviewed for which such information was available, the lien examined had been transferred to Sabre. Based on this review of the County records, on information and belief, CCJ transferred all of the tax liens it acquired in the 2004 tax sale to Sabre on December 16, 2004.

92.    To fulfill the role of obtaining liens for Sabre, Jensen, Varan and Cronus submitted a registration to the Cook County Treasurer's Office to participate in the 2004 tax sale. That registration misrepresented that Cronus had no agreements to purchase or sell any parcels successfully bid on by any other tax buyer, had no agreements to purchase or sell any parcels at the annual sale by any entity or person known to be ineligible to bid at the annual sale, and would adhere to the Single Bidder Rule. On information and belief, based on information provided by other Sabre Nominees regarding the implementation of the scheme, that registration also misrepresented that Cronus had no capital, purchase money, or other finances in common with another tax buyer, and shared no common ownership interest or common source of funds with another tax buyer.

93.    On or between May 10, 2004 and June 7, 2004—at the direction of John Bridge, B. Rochman and Sabre—Jensen and Varan had Cronus purchase liens at the 2004 annual tax sale for Sabre's benefit. ██████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████ [REDACTED]

94.    Nash incorporated Jeshay on March 11, 2004, just three months before the 2004 tax sale, as the replacement for the prior entity, DRN 2. To fulfill the role of obtaining liens for Sabre, Nash and Jeshay submitted a registration to the Cook County Treasurer's Office to participate in the 2004 tax sale. That registration misrepresented that Jeshay had no agreements to purchase or sell any parcels successfully bid on by any other tax buyer, had no agreements to purchase or sell any parcels at the annual sale by any entity or person known to be ineligible to

- 25 -

bid at the annual sale, and would adhere to the Single Bidder Rule. On information and belief, based on information provided by other Sabre Nominees regarding the implementation of the scheme, that registration also misrepresented that Jeshay had no capital, purchase money, or other finances in common with another tax buyer, and shared no common ownership interest or common source of funds with another tax buyer.

95.     On or between May 10, 2004 and June 7, 2004—at the direction of John Bridge, B. Rochman and Sabre—Nash had Jeshay purchase liens at the 2004 annual tax sale for Sabre's benefit. ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

[REDACTED]

96.     Similarly, John Bridge, B. Rochman and Sabre were able to expand the enterprise further by adding new participants to obtain liens for Sabre's benefit at the 2004 annual tax sale.

97.     John Bridge, B. Rochman and Sabre added Alexander and Georgetown to the enterprise to purchase liens for Sabre's behalf at the 2004 tax sale. To fulfill that role, Alexander and Georgetown submitted a registration to the Cook County Treasurer's Office to participate in the 2004 tax sale. That registration misrepresented that Georgetown had no agreements to purchase or sell any parcels successfully bid on by any other tax buyer, had no agreements to purchase or sell any parcels at the annual sale by any entity or person known to be ineligible to bid at the annual sale, that Georgetown had no capital, purchase money, or other finances in common with another tax buyer, shared no common ownership interest or common source of funds with another tax buyer, and would adhere to the Single Bidder Rule.

- 26 -

98.     During the 2004 tax sale, which took place between May 10, 2004 and June 7,

2004, Alexander had Georgetown purchase liens for Sabre's benefit, at the direction of John

Bridge, B. Rochman and Sabre. ███████████████████████

████████████████████████████████████

███████ [REDACTED]

99.     In order to participate in the 2004 tax sale, Georgetown filed the required

registration documentation, which was signed by Alexander. Notably, Georgetown's 2004

annual tax sale registration originally listed the tax buying entity's name as "Sabre Group." The

attestation accompanying Georgetown's registration shows that there was a line drawn through

the Sabre Group name and the name "Georgetown" was written in instead. Exhibit D.

100.   ████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

[REDACTED]



101. ██████████████████████████████
████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
██████████ [REDACTED]

102. ██████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████
██████████ [REDACTED]

103. ██████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████ [REDACTED]

104. John Bridge, B. Rochman and Sabre were able to add people to the enterprise who created new entities to bid for Sabre's benefit at the 2004 sale.

105.    John Bridge, B. Rochman and Sabre were able to add Baumbach (John Bridge's nephew) to the enterprise as a tax buyer obtaining liens for Sabre's benefit at the 2004 tax sale. Baumbach had Optimum incorporated on March 1, 2004, just three months before the 2004 tax sale, to secretly bid on Sabre's behalf at that tax sale. To fulfill that function, Baumbach had Optimum submit a registration to the Cook County Treasurer's Office to participate in the 2004 tax sale. That registration misrepresented that Optimum had no agreements to purchase or sell any parcels successfully bid on by any other tax buyer, had no agreements to purchase or sell any parcels at the annual sale by any entity or person known to be ineligible to bid at the annual sale, that Optimum had no capital, purchase money, or other finances in common with another tax buyer, shared no common ownership interest or common source of funds with another tax buyer, and would adhere to the Single Bidder Rule.

106. ██████████████████████████████████████
████████████████████████████████████
██████████████████████████████████████
████████████████████████ [REDACTED]

107.    On or between May 10, 2004 and June 7, 2004—at the direction of John Bridge, B. Rochman and Sabre—Baumbach had Optimum purchase liens at the 2004 annual tax sale for Sabre's benefit. ████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████
██████████████████ [REDACTED]

108. 

[REDACTED]

109. John Bridge, B. Rochman and Sabre also added Ellis to the enterprise to obtain liens for Sabre's benefit. Ellis had L.C.C. incorporated on May 4, 2004, almost one month before the 2004 tax sale, to secretly purchase liens for Sabre at that tax sale. To fulfill that role, Ellis and L.C.C. submitted a registration to the Cook County Treasurer's Office to participate in the 2004 tax sale. That registration misrepresented that L.C.C. had no agreements to purchase or sell any parcels successfully bid on by any other tax buyer, had no agreements to purchase or sell any parcels at the annual sale by any entity or person known to be ineligible to bid at the annual sale, and would adhere to the Single Bidder Rule. On information and belief, based on information provided by other Sabre Nominees regarding the implementation of the scheme, that registration also misrepresented that L.C.C. had no capital, purchase money, or other finances in common with another tax buyer, and shared no common ownership interest or common source of funds with another tax buyer.

110. On or between May 10, 2004 and June 7, 2004—at the direction of John Bridge, B. Rochman and Sabre—Ellis had L.C.C. purchase liens at the 2004 annual tax sale for Sabre's benefit.

[REDACTED]

111.     John Bridge and B. Rochman also directed Sabre to purchase liens at the 2004 tax sale. The Sabre Defendants also had Heartwood, Bamp, Richarony and Sass IV obtain admission to the tax sale pursuant to false registrations to enable each to purchase liens at the 2004 tax sale for Sabre's benefit. Bamp and Richarony transferred the liens they acquired at the 2004 tax sale to Sabre through Heartwood. Heartwood and Sass IV transferred liens they obtained at the 2004 annual tax sale to Sabre directly.

112.     By filing the false registration forms that failed to disclose the agreements among these entities to bid for the benefit of Sabre and/or the finances and funding in common, these entities were able to obtain access to the 2004 annual tax sale and obtain liens improperly. Each bid that Sabre, CCJ, Georgetown, Optimum, Regal, L.C.C., Jeshay, Cronus, Sass IV, Heartwood, Bamp and Richarony made at the 2004 annual tax sale was a step implementing the fraud on the Cook County Treasurer's Office, with the intended victims being all the other tax buyers that were not participating in the conspiracy—including Phoenix and BCS.

113.     Sabre, CCJ, Georgetown, Optimum, Regal, L.C.C., Jeshay, Cronus, Sass IV, Heartwood, Bamp and Richarony primarily bid on the same liens during the 2004 annual tax sale. Sabre identified liens to be bid on and purchased most of these entities for its benefit at the tax sale. Lists of which items to bid on were provided by Sabre and Sabre employees to the bidders for Sabre, CCJ, Georgetown, Regal, L.C.C., Jeshay, Cronus, Sass IV, Heartwood, and Bamp. Each entity had to make the payments to the Treasurer for the liens it purchased at the tax

- 31 -

sale. Sabre, CCJ, Georgetown, Optimum, Regal, L.C.C., Jeshay, Cronus, Sass IV, Heartwood, Bamp and Richarony bid on and obtained liens that Plaintiffs also bid on, with identical simultaneous 0% penalty bids, during the 2004 annual tax sale. Pursuant to those bids, Sabre and its nominees obtained liens Plaintiffs would have obtained under the County's allocation methodology. Through their fraudulent registrations, Sabre, CCJ, Georgetown, Optimum, Regal, L.C.C., Jeshay, Cronus, Sass IV, Heartwood, Bamp and Richarony were able to obtain access to the 2004 annual tax sale and improperly purchase 3,532 liens for $11,743,187. Had Sabre and these nominees not obtained access to the tax sale through their misrepresentations and purchased liens improperly, Plaintiffs would have obtained more liens at the 2004 annual tax sale, including liens obtained by Sabre, CCJ, Georgetown, Optimum, Regal, L.C.C., Jeshay, Cronus, Sass IV, Heartwood, Bamp and Richarony. Attached as Exhibit B is a representative sample of the liens on which Plaintiffs made a 0% penalty bid, yet lost the lien to Sabre or its nominees pursuant to their simultaneously 0% penalty rate bids.

### The 2005 Annual Tax Sale

114.    The enterprise continued through the 2005 annual tax sale.

115.    Nash incorporated Mud Cats on June 10, 2005, just one month before the 2005 tax sale, to bid on and obtain liens for Sabre's benefit at the 2005 tax sale. To fulfill the role of obtaining liens for Sabre, Nash and Mud Cats submitted a registration to the Cook County Treasurer's Office to participate in the 2005 tax sale. That registration misrepresented that Mud Cats had no agreements to purchase or sell any parcels successfully bid on by any other tax buyer, had no agreements to purchase or sell any parcels at the annual sale by any entity or person known to be ineligible to bid at the annual sale, and would adhere to the Single Bidder Rule. On information and belief, based on information provided by other Sabre Nominees

- 32 -

regarding the implementation of the scheme, that registration also misrepresented that Mud Cats

had no capital, purchase money, or other finances in common with another tax buyer, and shared

no common ownership interest or common source of funds with another tax buyer.

116.    On or between July 6, 2005 and July 26, 2005—at the direction of John Bridge,

B. Rochman and Sabre—Nash had Mud Cats purchase liens at the 2005 annual tax sale for

Sabre's benefit.



[REDACTED]

117.    Ellis incorporated GJ on June 15, 2005, just one month before the 2005 tax sale,

to bid on and obtain liens for Sabre's benefit at the 2005 tax sale.  To fulfill the role of obtaining

liens for Sabre, Ellis and GJ submitted a registration to the Cook County Treasurer's Office to

participate in the 2005 tax sale. That registration misrepresented that GJ had no agreements to

purchase or sell any parcels successfully bid on by any other tax buyer, had no agreements to

purchase or sell any parcels at the annual sale by any entity or person known to be ineligible to

bid at the annual sale, and would adhere to the Single Bidder Rule.  On information and belief,

based on information provided by other Sabre Nominees regarding the implementation of the

scheme, that registration also misrepresented that GJ had no capital, purchase money, or other

finances in common with another tax buyer, and shared no common ownership interest or

common source of funds with another tax buyer.

118.    On or between July 6, 2005 and July 26, 2005—at the direction of John Bridge,

B. Rochman and Sabre—Ellis had GJ purchase liens at the 2005 annual tax sale for Sabre's

benefit. ███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████ [REDACTED]

119.    To fulfill the role of obtaining liens for Sabre, Jensen, Varan and Cronus submitted a registration to the Cook County Treasurer's Office to participate in the 2005 tax sale. That registration misrepresented that Cronus had no agreements to purchase or sell any parcels successfully bid on by any other tax buyer, had no agreements to purchase or sell any parcels at the annual sale by any entity or person known to be ineligible to bid at the annual sale, and would adhere to the Single Bidder Rule.  On information and belief, based on information provided by other Sabre Nominees regarding the implementation of the scheme, that registration also misrepresented that Cronus had no capital, purchase money, or other finances in common with another tax buyer, and shared no common ownership interest or common source of funds with another tax buyer.

120.    On or between July 6, 2005 and July 26, 2005—at the direction of John Bridge, B. Rochman and Sabre— Jensen and Varan had Cronus purchase liens at the 2005 annual tax sale for Sabre's benefit. ███████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████ [REDACTED]

121.    To fulfill the role of obtaining liens for Sabre, Alexander and Georgetown submitted a registration to the Cook County Treasurer's Office to participate in the 2005 tax sale. That registration misrepresented that Georgetown had no agreements to purchase or sell any parcels successfully bid on by any other tax buyer, had no agreements to purchase or sell any parcels at the annual sale by any entity or person known to be ineligible to bid at the annual sale, had no capital, purchase money, or other finances in common with another tax buyer, shared no common ownership interest or common source of funds with another tax buyer, and would adhere to the Single Bidder Rule.

122.    On or between July 6, 2005 and July 26, 2005—at the direction of John Bridge, B. Rochman and Sabre— Alexander had Georgetown purchase liens at the 2005 annual tax sale for Sabre's benefit. ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████ [REDACTED]

123.    Baumbach incorporated Carpus on June 16, 2005, just one month before the 2005 tax sale, to bid on and obtain liens for Sabre's benefit at the 2005 tax sale. To fulfill the role of obtaining liens for Sabre, Baumbach and Carpus submitted a registration to the Cook County Treasurer's Office to participate in the 2005 tax sale. That registration misrepresented that Carpus had no agreements to purchase or sell any parcels successfully bid on by any other tax buyer, had no agreements to purchase or sell any parcels at the annual sale by any entity or person known to be ineligible to bid at the annual sale, had no capital, purchase money, or other

finances in common with another tax buyer, shared no common ownership interest or common source of funds with another tax buyer, and would adhere to the Single Bidder Rule.

124.     On or between July 6, 2005 and July 26, 2005—at the direction of John Bridge, B. Rochman and Sabre— Baumbach had Carpus purchase liens at the 2005 annual tax sale for Sabre's benefit. ███████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████ [REDACTED]

125.     On June 7, 2005, just one month before the 2005 tax sale, J. Rochman, Christopher Rochman and Corinne Rochman incorporated BRB to replace CCJ as their entity to bid on and obtain liens for Sabre's benefit at the 2005 tax sale.  To fulfill the role of obtaining liens for Sabre, J. Rochman, Christopher Rochman, Corinne Rochman and BRB submitted a registration to the Cook County Treasurer's Office to participate in the 2005 tax sale. That registration misrepresented that BRB had no agreements to purchase or sell any parcels successfully bid on by any other tax buyer, had no agreements to purchase or sell any parcels at the annual sale by any entity or person known to be ineligible to bid at the annual sale, and would adhere to the Single Bidder Rule.  On information and belief, based on information provided by other Sabre Nominees regarding the implementation of the scheme, that registration also misrepresented that BRB had no capital, purchase money, or other finances in common with another tax buyer, and shared no common ownership interest or common source of funds with another tax buyer.

126.     On or between July 6, 2005 and July 26, 2005—at the direction of John Bridge, B. Rochman and Sabre— J. Rochman, Christopher Rochman and Corinne Rochman had BRB purchase liens at the 2005 annual tax sale for Sabre's benefit.

127.     The Sabre Defendants also had Heartwood and Sass V obtain admission to the tax sale pursuant to false registrations to enable each to purchase liens at the 2005 tax sale for Sabre's benefit.

128.     By filing the false registration forms that failed to disclose the agreements among these entities to bid for the benefit of Sabre and/or the finances and funding in common, these entities were able to obtain access to the 2005 annual tax sale and obtain liens improperly.  Each bid that Georgetown, Regal, Mud Cats,  GJ, Cronus, Carpus, BRB, Sass V, and Heartwood made at the 2005 annual tax sale was a step implementing the fraud on the Cook County Treasurer's Office, with the intended victims being all the other tax buyers that were not participating in the conspiracy—including Phoenix and BCS.

129.     Georgetown, Regal, Mud Cats, GJ, Cronus, Carpus, BRB, Sass V, and Heartwood primarily bid on the same liens during the 2005 annual tax sale.  Sabre identified liens to be bid on and purchased by most of these entities for its benefit at the tax sale.  Lists of which items to bid on were provided by Sabre and Sabre employees to the bidders for BRB, Georgetown, Regal, Cronus, Mud Cats, Sass IV, and Heartwood.  Each entity had to make the payments to the Treasurer for the liens it purchased at the tax sale.  Georgetown, Regal, Mud Cats, GJ, Cronus, Carpus, BRB, Sass V, and Heartwood bid on and obtained liens that Plaintiffs also bid on, with identical simultaneous 0% penalty bids, during the 2005 annual tax sale.  Pursuant to those bids, Sabre and its nominees obtained liens Plaintiffs would have obtained under the County's allocation methodology.   Through their fraudulent registrations, Georgetown, Regal, Mud Cats,

GJ, Cronus, Carpus, BRB, Sass V, and Heartwood were able to obtain access to the 2005 annual tax sale and improperly purchase 2,892 liens for $12,312,382. Had Sabre's nominees not obtained access to the tax sale through their misrepresentations and purchased liens improperly, Plaintiffs would have obtained more liens at the 2005 annual tax sale, including liens obtained by Georgetown, Regal, Mud Cats, GJ, Cronus, Carpus, BRB, Sass V, and Heartwood. Attached as Exhibit B is a representative sample of the liens on which Plaintiffs made a 0% penalty bid, yet lost the lien to Sabre or its nominees pursuant to their simultaneously 0% penalty rate bids.

### RICO Predicate Acts

130.    During the tax sales held in 2002, 2003 and 2004, Sabre purchased hundreds of liens. Sabre, John Bridge and B. Rochman prepared and caused to be prepared 22-5 notices of the lien sale and caused Cook County to mail those notices to the last tax assessees in order to ensure that Sabre could enforce the liens. Sabre, John Bridge and B. Rochman also prepared and caused to be prepared 22-10 and 22-25 notices for the liens that were available to convert into deeds. Sabre, John Bridge and B. Rochman caused Cook County to mail these notices to enable them to convert the liens into deeds for Sabre. These mailings of the 22-5, 22-10, and 22-25 notices were integral parts of the scheme to obtain additional liens and the profits therefrom in violation of the Single Bidder Rule. This conduct violated 18 U.S.C. § 1341. Exhibit G identifies a representative sample of these mailings related to the liens that Sabre purchased during the tax sales.

131.    During the tax sales held in 2002, 2003, 2004 and 2005, Regal purchased hundreds of liens for Sabre's benefit in violation of the Single Bidder Rule. Regal, Sabre, Jeffrey Bridge, John Bridge and B. Rochman prepared and caused to be prepared 22-5 notices of the lien sale and caused Cook County to mail those notices to the last tax assessees in order to

- 38 -

ensure that Sabre could enforce the liens. Regal, Sabre, Jeffrey Bridge, John Bridge and B. Rochman also prepared and caused to be prepared 22-10 and 22-25 notices for the liens that were available to convert into deeds. Regal, Sabre, Jeffrey Bridge, John Bridge and B. Rochman caused Cook County to mail these notices to enable them to convert the liens into deeds for Sabre. These mailings of the 22-5, 22-10 and 22-25 notices were integral parts of the scheme to obtain additional liens and the profits therefrom in violation of the Single Bidder Rule. This conduct violated 18 U.S.C. § 1341. Exhibit H identifies a representative sample of these mailings related to the liens that Regal purchased during the tax sales.

132. During the tax sales held in 2002, 2003, 2004 and 2005, Nash's entities, DRN II, DRN 2, Jeshay and Mud Cats purchased hundreds of liens for Sabre's benefit in violation of the Single Bidder Rule. DRN II, DRN 2, Jeshay and Mud Cats, Sabre, Nash, John Bridge and B. Rochman prepared and caused to be prepared 22-5 notices of the lien sale and caused Cook County to mail those notices to the last tax assessees in order to ensure that Sabre could enforce the liens. DRN II, DRN 2, Jeshay and Mud Cats, Sabre, Nash, John Bridge and B. Rochman also prepared and caused to be prepared 22-10 and 22-25 notices for the liens that were available to convert into deeds. DRN II, DRN 2, Jeshay and Mud Cats, Sabre, Nash, John Bridge and B. Rochman caused Cook County to mail the 22-10 and 22-25 notices to enable them to convert the liens into deeds for Sabre. These mailings of the 22-5, 22-10 and 22-25 notices were integral parts of the scheme to obtain additional liens and the profits therefrom in violation of the Single Bidder Rule. This conduct violated 18 U.S.C. § 1341. Exhibits I, J, K and L identify a representative sample of these mailings related to the liens that DRN II, DRN 2, Jeshay and Mud Cats purchased during the tax sales.

133. During the tax sales held in 2003, 2004 and 2005, Cronus purchased hundreds of liens for Sabre's benefit in violation of the Single Bidder Rule. Cronus, Sabre, Robert Jensen, Joseph Varan, John Bridge and B. Rochman prepared and caused to be prepared 22-5 notices of the lien sale and caused Cook County to mail those notices to the last tax assessees in order to ensure that Sabre could enforce the liens. Cronus, Sabre, Robert Jensen, Joseph Varan, John Bridge and B. Rochman also prepared and caused to be prepared 22-10 and 22-25 notices for the liens that were available to convert into deeds. Cronus, Sabre, Robert Jensen, Joseph Varan, John Bridge and B. Rochman caused Cook County to mail the 22-10 and 22-25 notices to enable them to convert the liens into deeds for Sabre. These mailings of the 22-5, 22-10 and 22-25 notices were integral parts of the scheme to obtain additional liens and the profits therefrom in violation of the Single Bidder Rule. This conduct violated 18 U.S.C. § 1341. Exhibit M identifies a representative sample of these mailings related to the liens that Cronus purchased during the tax sales.

134. During the tax sales held in 2003, 2004, and 2005, CCJ and BRB purchased hundreds of liens for Sabre's benefit in violation of the Single Bidder Rule. CCJ, BRB, Sabre, Christopher Rochman, J. Rochman, Corinne Rochman, John Bridge and B. Rochman prepared and caused to be prepared 22-5 notices of the lien sale and caused Cook County to mail those notices to the last tax assessees in order to ensure that Sabre could enforce the liens. CCJ, BRB, Sabre, Christopher Rochman, J. Rochman, Corinne Rochman, John Bridge and B. Rochman also prepared and caused to be prepared 22-10 and 22-25 notices for the liens that were available to convert into deeds. CCJ, BRB, Sabre, Christopher Rochman, J. Rochman, Corinne Rochman, John Bridge and B. Rochman caused Cook County to mail the 22-10 and 22-25 notices to enable them to convert the liens into deeds for Sabre. These mailings of the 22-5, 22-10 and 22-25

notices were integral parts of the scheme to obtain additional liens and the profits therefrom in violation of the Single Bidder Rule. This conduct violated 18 U.S.C. § 1341. Exhibits N and O identify a representative sample of these mailings related to the liens that CCJ and BRB purchased during the tax sales.

135.    During the tax sales held in 2004 and 2005, Georgetown purchased hundreds of liens for Sabre's benefit in violation of the Single Bidder Rule. Georgetown, Sabre, Francis Alexander, John Bridge and B. Rochman prepared and caused to be prepared 22-5 notices of the lien sale and caused Cook County to mail those notices to the last tax assessees in order to ensure that Sabre could enforce the liens. Georgetown, Sabre, Francis Alexander, John Bridge and B. Rochman also prepared and caused to be prepared 22-10 and 22-25 notices for the liens that were available to convert into deeds. Georgetown, Sabre, Francis Alexander, John Bridge and B. Rochman caused Cook County to mail the 22-10 and 22-25 notices to enable them to convert the liens into deeds for Sabre. These mailings of the 22-5, 22-10 and 22-25 notices were integral parts of the scheme to obtain additional liens and the profits therefrom in violation of the Single Bidder Rule. This conduct violated 18 U.S.C. § 1341. Exhibit P identifies a representative sample of these mailings related to the liens that Georgetown purchased during the tax sale.

136.    During the tax sales held 2004 and 2005, Baumbach's entities Optimum and Carpus purchased hundreds of liens for Sabre's benefit in violation of the Single Bidder Rule. Optimum, Carpus, Sabre, Jason Baumbach, John Bridge and B. Rochman prepared and caused to be prepared 22-5 notices of the lien sale and caused Cook County to mail those notices to the last tax assessees in order to ensure that Sabre could enforce the liens. Optimum, Carpus, Sabre, Jason Baumbach, John Bridge and B. Rochman also prepared and caused to be prepared 22-10 and 22-25 notices for the liens that were available to convert into deeds. Optimum, Carpus,

Sabre, Jason Baumbach, John Bridge and B. Rochman caused Cook County to mail the 22-10 and 22-25 notices to enable them to convert the liens into deeds for Sabre. These mailings of the 22-5, 22-10 and 22-25 notices were integral parts of the scheme to obtain additional liens and the profits therefrom in violation of the Single Bidder Rule. This conduct violated 18 U.S.C. § 1341. Exhibits Q and R identify a representative sample of these mailings related to the liens that Optimum and Carpus purchased during the tax sales.

137.    During the tax sales held in 2004 and 2005, Ellis's entities L.C.C. and GJ purchased hundreds of liens for Sabre's benefit in violation of the Single Bidder Rule. L.C.C., GJ, Sabre, Gregory Ellis, John Bridge and B. Rochman prepared and caused to be prepared 22-5 notices of the lien sale and caused Cook County to mail those notices to the last tax assessees in order to ensure that Sabre could enforce the liens. L.C.C., GJ, Sabre, Gregory Ellis, John Bridge and B. Rochman also prepared and caused to be prepared 22-10 and 22-25 notices for the liens that were available to convert into deeds. L.C.C., GJ, Sabre, Gregory Ellis, John Bridge and B. Rochman caused Cook County to mail the 22-10 and 22-25 notices to enable them to convert the liens into deeds for Sabre. These mailings of the 22-5, 22-10 and 22-25 notices were integral parts of the scheme to obtain additional liens and the profits therefrom in violation of the Single Bidder Rule. This conduct violated 18 U.S.C. § 1341. Exhibits S and T identify a representative sample of these mailings related to the liens that L.C.C. and GJ purchased during the tax sales.

138.    The 22-10 and 22-25 notices Defendants caused to be mailed, as discussed in paragraphs 130-137 above, included notices mailed to interested parties at addresses located out of state.

### COUNT I
### Substantive Racketeering – 18 U.S. C. §§ 1962(c) and 1964
### Against All Defendants

139.    Plaintiffs incorporate by reference the allegations of paragraph 1 through 138 of the Complaint as though fully set forth herein.

140.    At all relevant times, each defendant were "persons" within the meaning of RICO, 18 U.S.C. § 1961(3).

141.    All Defendants, together with Heartwood, Bamp, Richarony, Sass IV, Sass V Turer, and DeLaurentis constitute an association-in-fact "enterprise" (the "Rigged Bidding Enterprise") as that term is defined in 18 U.S.C. § 1964(4), that engages in, and the activities of which affect, interstate commerce. The members of the Rigged Bidding Enterprise are and have been associated through time, joined in purpose and organized in a manner amenable to hierarchal and consensual decision-making, with each member fulfilling a specific and necessary role to carry out and facilitate its purpose. Specifically, Jeffrey Bridge, Christopher Rochman, Jesse Rochman, Corinne Rochman, Robert Jensen, Joseph Varan, Francis Alexander, Jason Baumbach, Gregory Ellis, Douglas Nash, Turer and DeLaurentis incorporated and became the principals of entities which could bid at the tax sales, operated and directed certain aspects of the affairs of these entities to enable them to bid at the tax sales, executed and prepared and directed or authorized others to execute and prepare registration documentation, participated in securing and moving funds in order to acquire tax liens in the name of their particular entities, had dealings with the Cook County and the Treasurers Office on behalf of their particular entities, bid at tax sales or directed others to bid at tax sales, prepared and/or executed documentation to give the appearance of a legitimate transfer of liens to Sabre, and pretended to act as legitimate, unrelated bidders at tax sales on behalf of those entities. Regal, DRN II, DRN 2, Cronus, CCJ,

- 43 -

Georgetown, Optimum, L.C.C., Jeshay, BRB, Mud Cats, Carpus, GJ, Heartwood, Bamp, Richarony, Sass IV and Sass V were formed to bid at tax sales, submit registration documentation in order to participate in such sales, appear to be entities capable of obtaining funds that could be used to participate at tax sales, deal directly with Cook County and the Cook County Treasurer, enter into agreements with Sabre to transfer liens acquired to Sabre, create the appearance of legitimate, unrelated entities, registered to bid at tax sales, submit registrations to the Cook County Treasurer's Office to obtain access to the tax sales, purchased liens at the tax sales and transferred those liens to Sabre. Sabre registered to bid at the 2002, 2003, and 2004 tax sales, submitted false registrations to the Cook County Treasurer's Office in connection with those sales, purchased liens at those tax sales in its own name, dealt with Cook County and the Cook County Treasurer on behalf of itself. For the 2002, 2003, 2004 and 2005 tax sales, Sabre provided lists to the Sabre Nominees identifying which liens should be bid on, acquired liens by transfer from the Sabre Nominees, prepared documentation to create the impression of a post-auction agreement to transfer liens acquired by the Sabre Nominees to Sabre, prepared and caused to be mailed 22-10 and 22-25 notices for liens acquired by itself and each of the other entities so that the liens acquired would not become worthless, and was responsible for and took steps to obtain deeds on any lien acquired by itself or any of the other entities for which the property owner did not redeem. John Bridge and B. Rochman directed the affairs of Sabre and of others which included forming entities to bid at the tax sale, registering those entities to bid, submitting registrations to the Cook County Treasurer's Office falsely stating adherence to the Single Bidder Rule, identifying liens to purchase at the tax sale, ████████████████████████ ████████████████, purchasing liens at the tax sales, having all those liens transferred to Sabre, and insuring that participants were compensated for their participation. The planning and

carrying out of the scheme would have been beyond the capacity of each member of the Rigged Bidding Enterprise acting singly and without the aid of each other.

142.    The Rigged Bidding Enterprise affects interstate commerce. Participants in the auction, including members of the Rigged Bidding Enterprise, are entities located outside the State of Illinois. Additionally, parties with interest in the property subject to the liens sold at the tax sale, who received the 22-5, 22-10 and 22-25 notices caused to be sent by lien buyers, including defendants, are located outside the State of Illinois.

143.    Each defendant is or has been employed by and/or associated with the Rigged Bidding Enterprise.

144.    All of the individual defendants and the entity defendants received a financial benefit for their participation in the Rigged Bidding Enterprise. Such financial benefits for defendants were the product of the scheme and could not have been realized had Sabre not been able to secure more liens than it was entitled to, and obtain the corresponding profits from such liens.

145.    Each of the defendants to this Count have mailed or caused to be mailed hundreds of mailings in furtherance of the scheme to obtain liens for the benefit of Sabre greatly in excess of the number of liens Sabre would have been allowed under the Single Bidder Rule. A representative sample of those mailings is identified in Exhibits G through T. Further, each of the defendants to this Count has conducted and/or participated in the conduct of the Rigged Bidding Enterprise's affairs through a pattern of racketeering activity in violation of RICO, 18 U.S.C. § 1962(c), by engaging in numerous acts of mail fraud.

146.    Plaintiffs have suffered the loss of property related to the liens they would have been able to acquire, and the profits flowing therefrom, had these defendants not implemented

their scheme and acquired liens inappropriately by obtaining access to the annual tax sales by

defrauding the County. If defendants had not engaged in such conduct, Plaintiffs would have

been able to obtain additional liens, additional deeds to property, and additional sums based on

the statutory penalty of 12% on subsequent taxes that could have been paid. Plaintiffs do not

have access to sufficient information to identify the amount of damages they have incurred

because that information, the Rigged Bidding Enterprise's profits from penalties and deeds, is in

the sole possession of the Defendants.

WHEREFORE, Plaintiffs respectfully prays for judgment against defendants Sabre,

Regal, DRN II, DRN 2, Cronus, CCJ, Georgetown, Optimum, L.C.C., Jeshay, BRB, Mud Cats,

Carpus, GJ, John Bridge, B. Rochman, Jeffrey Bridge, Christopher Rochman, Jesse Rochman,

Corinne Rochman, Robert Jensen, Joseph Varan, Francis Alexander, Jason Baumbach, Gregory

Ellis, and Douglas Nash, and for relief as follows:

      (a)     Treble damages;

      (b)     Injunctive relief;

      (c)     Reasonable attorneys' fees and costs; and

      (d)     Such other relief as the Court deems just and proper.

## COUNT II
### Racketeering Conspiracy
### 18 U.S.C. §§ 1962(d) and 1964
### Against All Defendants

147.    Plaintiffs incorporate by reference the allegations of paragraph 1 through 146 of

the Complaint as though fully set forth herein.

148.    Defendants Sabre, Regal, DRN II, DRN 2, Cronus, CCJ, Georgetown, Optimum,

L.C.C., Jeshay, BRB, Mud Cats, Carpus, GJ, John Bridge, B. Rochman, Jeffrey Bridge,

Christopher Rochman, Jesse Rochman, Corinne Rochman, Robert Jensen, Joseph Varan, Francis Alexander, Jason Baumbach, Gregory Ellis, and Douglas Nash have, along with Heartwood, Bamp, Richarony, Sass IV, Sass V, Turer, and DeLaurentis, willfully combined, conspired and agreed to violate 18 U.S.C. § 1962(c), that is to conduct and/or participate, directly or indirectly, in the conduct of the Rigged Bidding Enterprise's affairs through a pattern of racketeering activity based upon numerous acts of mail fraud, in violation of 18 U.S.C. § 1962(d).

149.    The object of the conspiracy was to defraud the County and other tax buyers and improperly acquire liens by obtaining access to the tax sales through the filing of fraudulent registrations with the County Treasurer. Each defendant embraced the object of the conspiracy and knowingly acted to support and facilitate the accomplishment of its goals.

150.    Plaintiffs have suffered the loss of property related to the liens they would have been able to acquire, and the profits flowing therefrom, had these defendants not implemented their scheme and obtained access to the tax sales by defrauding the County, thus enabling them to acquire liens in excess of the number of liens they would have been able to obtain. If defendants had not engaged in such conduct, Plaintiffs would have been able to obtain additional liens, additional deeds to property, and additional sums based on the statutory penalty of 12% on subsequent taxes that could have been paid. Plaintiffs do not have access to sufficient information to identify the amount of damages they have incurred because that information, the Rigged Bidding Enterprise's profits from penalties and deeds, is in the sole possession of the Defendants.

WHEREFORE, Plaintiffs respectfully prays for judgment against defendants Sabre, Regal, DRN II, DRN 2, Cronus, CCJ, Georgetown, Optimum, L.C.C., Jeshay, BRB, Mud Cats, Carpus, GJ, John Bridge, B. Rochman, Jeffrey Bridge, Christopher Rochman, Jesse Rochman,

Corinne Rochman, Robert Jensen, Joseph Varan, Francis Alexander, Jason Baumbach, Gregory

Ellis, and Douglas Nash, and for relief as follows:

(a)     Treble damages;

(b)     Injunctive relief;

(c)     Reasonable attorneys' fees and costs; and

(d)     Such other relief as the Court deems just and proper.

## COUNT III
### Substantive Racketeering – 18 U.S. C. §§ 1962(c) and 1964
### (Against Defendants John Bridge and B. Rochman)

151.     Plaintiffs incorporate by reference the allegations of paragraph 1 through 138 of

the Complaint as though fully set forth herein.

152.     At all relevant times, John Bridge and B. Rochman were "persons" within the

meaning of RICO, 18 U.S.C. § 1961(3).

153.     Sabre is an "enterprise" within the meaning of RICO, 18 U.S.C. § 1961(4).

154.     Sabre's activities affect interstate commerce. Participants in the auction,

including Sabre's Nominees, are entities located outside the State of Illinois. Additionally,

parties with interest in the property subject to the liens sold at the tax sale, who received the 22-

5, 22-10 and 22-25 notices caused to be sent by lien buyers, including Sabre, are located outside

the State of Illinois.

155.     John Bridge and B. Rochman have each mailed or caused to be mailed hundreds

of mailings in furtherance of the scheme to obtain liens for the benefit of Sabre greatly in excess

of the number of liens Sabre would have been allowed under the Single Bidder Rule by utilizing

other entities to purchase liens for Sabre. A representative sample of those mailings is identified

- 48 -

in Exhibits G through T. John Bridge and B. Rochman each has conducted and/or participated in the conduct of the Rigged Bidding Enterprise's affairs through a pattern of racketeering activity in violation of RICO, 18 U.S.C. § 1962(c), by engaging in numerous acts of mail fraud.

156.    Plaintiffs have suffered the loss of property related to the liens they would have been able to acquire, and the profits flowing therefrom, had these defendants not implemented their scheme and acquired liens in excess of their appropriate share through their violation of the Single Bidder Rule. If defendants had not engaged in such conduct, Plaintiffs would have been able to obtain additional liens, additional deeds to property, and additional sums based on the statutory penalty of 12% on subsequent taxes that could have been paid. Plaintiffs do not have access to sufficient information to identify the amount of damages they have incurred because that information, the Rigged Bidding Enterprise's profits from penalties and deeds, is in the sole possession of the Defendants.

WHEREFORE, Plaintiffs respectfully prays for judgment against John Bridge and B. Rochman, and for relief as follows:

        (a)     Treble damages;

        (b)     Injunctive relief;

        (c)     Reasonable attorneys' fees and costs; and

        (d)     Such other relief as the Court deems just and proper.

### COUNT IV
### Racketeering Conspiracy
### 18 U.S.C. §§ 1962(d) and 1964
### (Against All Defendants Other Than Sabre)

157.    Plaintiffs incorporate by reference the allegations of paragraph 1 through 138 of the Complaint as though fully set forth herein.

158.     At all relevant times, each Defendant was a "person" within the meaning of RICO, 18 U.S.C. § 1961(3).

159.     Sabre is an "enterprise" within the meaning of RICO, 18 U.S.C. § 1961(4).

160.     Defendants Regal, DRN II, DRN 2, Cronus, CCJ, Georgetown, John Bridge, B. Rochman, Jeffrey Bridge, Christopher Rochman, Jesse Rochman, Corinne Rochman, Robert Jensen, Joseph Varan, Francis Alexander, Jason Baumbach, Gregory Ellis, Douglas Nash, Sabre, Regal, DRN II, Cronus, CCJ, Georgetown, Optimum, L.C.C., Jeshay, BRB, Mud Cats, Carpus, and GJ have willfully combined, conspired and agreed to violate 18 U.S.C. § 1962(c), that is to conduct and/or participate, directly or indirectly, in the conduct of Sabre's affairs through a pattern of racketeering activity based upon numerous acts of mail fraud, in violation of 18 U.S.C. § 1962(d).

161.     The object of the conspiracy was to defraud the County and other tax buyers and improperly acquire liens by obtaining access to the tax sales through the filing of fraudulent registrations with the County Treasurer. Each defendant embraced the object of the conspiracy and knowingly acted to support and facilitate the accomplishment of its goals.

162.     Plaintiffs have suffered the loss of property related to the liens they would have been able to acquire, and the profits flowing therefrom, had these defendants not implemented their scheme and acquired liens in excess of their appropriate share t through the filing of fraudulent registrations with the County Treasurer. If defendants had not engaged in such conduct, Plaintiffs would have been able to obtain additional liens, additional deeds to property, and additional sums based on the statutory penalty of 12% on subsequent taxes that could have been paid. Plaintiffs do not have access to sufficient information to identify the amount of

damages they have incurred because that information, the Rigged Bidding Enterprise's profits from penalties and deeds, is in the sole possession of the Defendants.

WHEREFORE, Plaintiffs respectfully prays for judgment against defendants Regal, DRN II, DRN 2, Cronus, CCJ, Georgetown, Optimum, L.C.C., Jeshay, BRB, Mud Cats, Carpus, GJ, John Bridge, B. Rochman, Jeffrey Bridge, Christopher Rochman, Jesse Rochman, Corinne Rochman, Robert Jensen, Joseph Varan, Francis Alexander, Jason Baumbach, Gregory Ellis, and Douglas Nash, and for relief as follows:

      (a)     Treble damages;

      (b)     Injunctive relief;

      (c)     Reasonable attorneys' fees and costs; and

      (d)     Such other relief as the Court deems just and proper.

### COUNT V
### TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE
### (Against All Defendants)

163.     Plaintiffs incorporate by reference the allegations of paragraph 1 through 138 of the Complaint as though fully set forth herein.

164.     As indicated in detail above, Sabre, Regal, DRN II, DRN 2, CCJ, Cronus, Georgetown, Optimum, L.C.C., Jeshay, BRB, Mud Cats, Carpus and GJ each participated in one or more of the tax sales held in 2002, 2003, 2004 and 2005, each bidding on and purchasing liens for Sabre's benefit in violation of the Single Bidder Rule.

165.     Phoenix and BCS were registered tax buyers at the 2002, 2003, 2004 and 2005 annual tax sale tax sales.

166.    Phoenix and BCS had a reasonable expectation of entering into respective, valid business relationships with the Cook County Treasurer's Office at the 2002, 2003, 2004 and 2005 annual tax sale tax sales.

167.    John Bridge, B. Rochman, Sabre, Christopher Rochman, J. Rochman, Corinne Rochman, CCJ, Francis Alexander, DRN II, DRN 2, Georgetown, Optimum, Jeffrey Bridge, Regal, Ellis, L.C.C., Jeshay, Jensen, Varan, Nash, Baumbach, Cronus, BRB, Mud Cats, Carpus and GJ knew of the Plaintiffs' expectancies for the tax sales in which each of the respective defendants participated.

168.    Nevertheless, John Bridge, B. Rochman, Sabre, Christopher Rochman, J. Rochman, Corinne Rochman, CCJ, Francis Alexander, DRN II, DRN 2, Georgetown, Optimum, Jeffrey Bridge, Regal, Ellis, L.C.C., Jeshay, Jensen, Varan, Nash, Baumbach, Cronus, BRB, Mud Cats, Carpus and GJ purposefully interfered in the respective tax sales in which each participated by filing false registrations and conspiring to violate the Single Simultaneous Bidder Rule, thereby usurping Plaintiffs' opportunity to obtain a much larger number of liens and preventing the Plaintiffs' legitimate expectancies from ripening into valid business relationships with the Cook County Treasurer's Office. Among the specific expectancies that defendants purposefully usurped were liens that defendants simultaneously bid on and that plaintiffs also bid on, including but not limited the representative sample of liens reflected in Exhibit B.

169.    Absent the respective frauds and collusive bidding schemes of the defendants, Phoenix and BCS would have had an opportunity to obtain a much larger number of liens and would have enjoyed the financial benefits flowing from those purchases opportunity to bid successfully on a larger number of liens and would have enjoyed the financial benefits flowing from those purchases.

WHEREFORE, Plaintiffs respectfully request that this Court grant judgment in its favor and against defendants John Bridge, B. Rochman, Sabre, Christopher Rochman, J. Rochman, Corinne Rochman, CCJ, DRN II, DRN 2, Francis Alexander, Georgetown, Optimum, Jeffrey Bridge, Regal, Ellis, L.C.C., Jeshay, Jensen, Varan, Nash, Baumbach, Cronus, BRB, Mud Cats, Carpus and GJ:

(a)     Award of damages to compensate the Plaintiffs for their loss of profits from the defendants improper purchase of liens and other incidental and consequential damages including, but not limited to, the financial benefits flowing from successful bids; and

(b)     Granting such other relief as the Court deems fair and just.

Dated: June 29, 2007

PHOENIX BOND & INDEMNITY, CO. and BCS SERVICES, INC.

By:___s/ John W. Moynihan_____
          One of Their Attorneys
Lowell E. Sachnoff
David Bohan
John W. Moynihan
Sachnoff & Weaver, Ltd.
10 South Wacker Drive
Suite 4000
Chicago, IL 60606
(312) 207-1000

Jonathan L. Marks
Katten, Muchin, Rosenman, LLP
525 W. Monroe Street
Chicago, IL 60661
(312) 902-5337
Gregory M. Reiter
Carter & Reiter Ltd.
19 South LaSalle
Suite 802
Chicago, IL 60603
(312) 368-9910

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2007, a copy of the foregoing FIRST AMENDED COMPLAINT AND DEMAND FOR JURY was filed electronically. Notice of this filing will be sent by e-mail to the following parties by operation of the Court's electronic filing system [or by U.S. Mail, postage pre-paid, to anyone unable to accept electronic filing]. As, per the November 29, 2005 Protective Order, the First Amended Complaint and two Exhibits have been substantially redacted, a copy of the First Amended Complaint with Exhibits has also been sent by U.S. Mail, postage pre-paid, to each of the following parties and has been sent by pdf to these same parties:

| | |
|---|---|
| **Counsel for Defendants John Bridge, Barrett Rochman and Sabre Group, LLC** | Theodore M. Becker<br>Brandon L. Spurlock<br>James E. Bayles, Jr.<br>MORGAN LEWIS & BOCKIUS LLP<br>77 West Wacker Drive, 5th Floor<br>Chicago, Illinois 60601<br>(312) 324-1000<br>tbecker@morganlewis.com<br>jbayles@morganlewis.com<br>bspurlock@morganlewis.com<br><br>Jennifer B. Jordan<br>MORGAN LEWIS & BOCKIUS LLP<br>1701 Market Street<br>Philadelphia, Pennsylvania 19103<br>(215) 963-5959<br>jjordan@morganlewis.com |

| | |
|---|---|
| **Counsel for Defendants Robert Jensen, Joseph Varan, Cronus Projects, LLC, Gregory Ellis, GJ Venture, LLC, and L.C.C. Venture, LLC** | Kevin J. Clancy<br>Martin W. McManaman<br>Patrick R. Moran<br>LOWIS & GELLEN LLP<br>200 West Adams Street, Suite 1900<br>Chicago, Illinois 60606<br>(312) 364-2500<br>kclancy@lowis-gellen.com<br>martym@lowis-gellen.com<br>pmoran@lowis-gellen.com |
| **Counsel for Defendants Jeffrey Bridge, Regal One, LLC, Jason Baumbach, Optimum Financial, Inc., and Carpus Investments, LLC** | Elisha S. Rosenblum<br>Clifford G. Kosoff<br>O'HALLORAN, KOSOFF, GEITNER & COOK, P.C.<br>650 Dundee Road, Suite 475<br>Northbrook, Illinois 60062<br>(708) 291-0200<br>esrosenblum@okgc.com<br>ckosoff@okgc.com |
| **Counsel for Defendants Douglas Nash, DRN II, Inc., Jeshay, LLC, and Mud Cats Real Estate, LLC** | Mark F. Wolfe<br>Janet A. Flynn<br>BOLLINGER, RUBERRY & GARVEY<br>500 West Madison Street, Suite 2300<br>Chicago, Illinois 60606-2511<br>(312) 466-8000<br>mark.wolfe@brg-law.net<br>janet.flynn@brg-net.net |
| **Counsel for Defendants Frances Alexander and Georgetown Investors, LLC** | Michael J. Kralovec<br>Joseph R. Lemersal<br>Sara R. McClain<br>NASH, LALICH & KRALOVEC, LLC<br>53 West Jackson Boulevard, Suite 1102<br>Chicago, Illinois 60604<br>(312) 788-1211<br>mkralovec@nlklaw.com<br>jlemersal@nlklaw.com<br>smcclain@nlklaw.com |

| ***Counsel for Defendants Jesse Rochman, Corinne Rochman, Christopher Rochman, BRB Investments, LLC, and CCJ Investments, LLC*** | Neil S. Ament<br>LAW OFFICE OF NEIL S. AMENT<br>1955 Shermer Road, Suite 400<br>Northbrook, Illinois  60062<br>(847) 253-0700<br>litg8rrr@aol.com |

/s/ John W. Moynihan

John W. Moynihan

972769