# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| **PHOENIX BOND INDEMNITY CO., et al,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| vs. ) | **Case No. 05 CV 4095** |
| ) | **Consolidated with 07 C 1367** |
| **JOHN BRIDGE, BARRETT ROCHMAN, SABRE** ) | |
| **GROUP LLC, ROBERT JENSEN JOSEPH** ) | |
| **VARAN, CRONUS PROJECTS, LLC, JEFFREY** ) | **Chief Judge James F. Holderman** |
| **BRIDGE, REGAL ONE, LLC, CCJ** ) | |
| **INVESTMENTS, LLC, DRN II, INC., FRANCIS** ) | **Magistrate Maria Valdez** |
| **ALEXANDER, GEORGETOWN INVESTORS,** ) | |
| **LLC, JASON BAUMBACH, OPTIMUM** ) | |
| **FINANCIAL, INC., L.C.C. VENTURE, LLC,** ) | |
| **JESHAY, LLC, JESSE ROCHMAN,** ) | |
| **CHRISTOPHER ROCHMAN, CORINNE** ) | |
| **ROCHMAN, BRB INVESTMENTS, LLC,** ) | |
| **DOUGLAS NASH, MUD CATS REAL ESTATE,** ) | |
| **LLC, CARPUS INVESTMENTS, LLC,** ) | |
| **GREGORY ELLIS, GJ VENTURE, LLC,** ) | |
| ) | |
| **Defendants,** ) | |
| ) | |
| **JOHN BRIDGE, BARRETT ROCHMAN,** ) | |
| **SABRE GROUP, LLC, BRB INVESTMENTS,** ) | |
| **LLC, CORRINE ROCHMAN, JESSE** ) | |
| **ROCHMAN and CHRISTOPHER** ) | |
| **ROCHMAN,** ) | |
| ) | |
| **Counterplaintiffs and Third** ) | |
| **Party Plaintiffs,** ) | |
| ) | |
| vs. ) | |
| ) | |
| **PHOENIX BOND INDEMNITY CO., and BCS** ) | |
| **SERVICES, INC.,** ) | |
| ) | |
| **Counterdefendants,** ) | |
| and ) | |
| ) | |
| **STANFORD D. MARKS, ANDREW MARKS** ) | |
| **and JOCELYN STOLLER (a/k/a Congua),** ) | |
| ) | |
| **Third Party Defendants.** ) | |

## COUNTERCLAIM AND THIRD PARTY COMPLAINT

COUNTERPLAINTIFFS and THIRD PARTY PLAINTIFFS (hereinafter, collectively "Counterplantiffs"), JOHN BRIDGE ("Bridge"), BARRETT ROCHMAN ("Rochman"), SABRE GROUP, LLC, an Illinois limited liability company ("Sabre"), BRB INVESTMENTS, LLC, an Illinois limited liability company ("BRB"), CORRINE ROCHMAN ("Corinne"), JESSE ROCHMAN ("Jesse"), and CHRISTOPHER ROCHMAN ("Christopher"), by their attorneys, Harold L. Moskowitz and Donald B. Levine, and for their Counterclaim against Counterdefendants, PHOENIX BOND INDEMNITY CO. ("Phoenix"), and BCS SERVICES, INC. ("BCS") and Third Party Complaint against Third Party Defendants, STANFORD D. MARKS ("Marks"), ANDREW MARKS ("Andrew") and JOCELYN STOLLER (a/k/a Congua) ("Jocelyn"), (Counterdefendants and Third Party Defendants are hereinafter collectively referred to as "Counterdefendants") state as follows:

## NATURE OF ACTION

1.     The above named Counterplaintiffs bring this action against individuals and certain corporate entities which they control who have conspired to violate and have violated the Sherman Antitrust Act in order to monopolize the business of buying tax liens and acquiring deeds to real estate properties for which real estate taxes were unpaid and which unpaid taxes were subsequently sold at tax auctions by local governmental authorities thereby damaging the Counterplaintiffs as well as other tax buyer participants in those auctions. Counterplaintiffs are informed and believe, and based upon said information and belief allege that Marks and Jocelyn entered into an agreement to file a series of lawsuits whose sole purpose is to drive out all competitors from the market and have the business of buying tax

2

liens and acquiring deeds to real estate properties for which real estate taxes were unpaid to themselves by making said business too expensive for Counterplaintiffs because of said litigation. Counterplaintiffs seek to enjoin the Counterdefendants and to recover damages Counterplaintiffs have suffered as a result of this scheme under Sections 1 and 2 of the Sherman Antitrust Act (15 U.S.C. §1-2).

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this Counterclaim because it involves a federal question arising out of a law of the United States, specifically, the Sherman Anti-Trust Act, 15 U.S.C. §§1-2.

3.      Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391 and 15 U.S.C. §1 because the Counterdefendants reside in, are found in, and/or transact their affairs in the Northern District of Illinois where a substantial number of the events complained of occurred.

## PARTIES

4.      Bridge is an Illinois resident. During time periods involved in the instant proceeding, he has been providing various services for persons and entities who are or have been in the business of buying tax liens and acquiring deeds to real estate properties for which real estate taxes were unpaid and which unpaid taxes were subsequently sold at tax auctions by local governmental authorities.

5.      Rochman is an Illinois resident. He is a member of Sabre.

6.      Sabre is an Illinois limited liability company which is in the business of buying tax liens and acquiring deeds to real estate properties for which real estate taxes were unpaid

3

and which unpaid taxes were subsequently sold at tax auctions by local governmental authorities.

7.      BRB is an Illinois limited liability company which was in the business of buying tax liens and acquiring deeds to real estate properties for which real estate taxes were unpaid and which unpaid taxes were subsequently sold at tax auctions by local governmental authorities

8.      Corinne is a Florida resident.  She is a member of BRB.

9.      Jesse is an Illinois resident.  He is a member of BRB.

10.      Christopher is an Illinois resident.  He is a member of BRB.

11.      Phoenix is an Illinois corporation which is in the business of buying tax liens and acquiring deeds to real estate properties for which real estate taxes were unpaid and which unpaid taxes were subsequently sold at tax auctions by local governmental authorities.

12.      Marks and Andrew are Illinois residents who are in the business of buying tax liens and acquiring deeds to real estate properties for which real estate taxes were unpaid and which unpaid taxes were subsequently sold at tax auctions by local governmental authorities. Marks is the principal, if not the majority shareholder, of Phoenix.  Andrew is an officer and/or a director of Phoenix and, on information and belief, a shareholder of Phoenix.

13.      BCS is an Illinois corporation which is in the business of buying tax liens and acquiring deeds to real estate properties for which real estate taxes were unpaid and which unpaid taxes were subsequently sold at tax auctions by local governmental authorities.

14.      Jocelyn is an Illinois resident who is in the business of buying tax liens and acquiring deeds to real estate properties for which real estate taxes were unpaid and which unpaid taxes were subsequently sold at tax auctions by local governmental authorities.

Jocelyn is the principal, if not the sole shareholder, of BCS.

15.     Phoenix, Marks, Andrew, BCS and Jocelyn are competitors of the Counterplaintiffs.

## **OTHER TARGETS OF SCHEME**

16.     Jeffrey Bridge is an Illinois resident.  He is a member of Regal One, LLC.

17.     Regal One, LLC is an Illinois limited liability company which was in the business of buying tax liens and acquiring deeds to real estate properties for which real estate taxes were unpaid and which unpaid taxes were subsequently sold at tax auctions by local governmental authorities.

18.     DRN II, INC., is an Illinois corporation which was in the business of buying tax liens and acquiring deeds to real estate properties for which real estate taxes were unpaid and which unpaid taxes were subsequently sold at tax auctions by local governmental authorities.

19.     Georgetown Investors, LLC is an Illinois limited liability company which was in the business of buying tax liens and acquiring deeds to real estate properties for which real estate taxes were unpaid and which unpaid taxes were subsequently sold at tax auctions by local governmental authorities.

20.     Optimum Financial, Inc. is an Illinois corporation which was in the business of buying tax liens and acquiring deeds to real estate properties for which real estate taxes were unpaid and which unpaid taxes were subsequently sold at tax auctions by local governmental authorities.

21.     L.C.C. Venture, LLC is an Illinois limited liability company which was in the business of buying tax liens and acquiring deeds to real estate properties for which real estate

taxes were unpaid and which unpaid taxes were subsequently sold at tax auctions by local governmental authorities.

22.     Jeshay, LLC is an Illinois limited liability company which was in the business of buying tax liens and acquiring deeds to real estate properties for which real estate taxes were unpaid and which said unpaid taxes were subsequently sold at tax auctions by local governmental authorities.

23.     Carpus Investments, LLC is an Illinois limited liability company which was in the business of buying tax liens and acquiring deeds to real estate properties for which real estate taxes were unpaid and which unpaid taxes were subsequently sold at tax auctions by local governmental authorities.

24.     GJ Venture, LLC is an Illinois limited liability company which was in the business of buying tax liens and acquiring deeds to real estate properties for which real estate taxes were unpaid and which unpaid taxes were subsequently sold at tax auctions by local governmental authorities.

25.     Jason Baumbach is an Illinois resident.  He is a member of Optimum and Carpus.

26.     Douglas Nash is an Illinois resident.  He is a member of Jeshay and Mud Cats and was a member of DRN.

27.     Gregory Ellis is an Illinois resident.  He is a member of GJ and LLC.

28.     Mud Cats Real Estate, LLC is an Illinois limited liability company which was in the business of buying tax liens and acquiring deeds to real estate properties for which real estate taxes were unpaid and which unpaid taxes were subsequently sold at tax auctions by local governmental authorities.

29.     Joseph Varan is an Illinois resident. He is a member of Cronus.

30.     Robert Jensen is an Illinois resident. He is a member of Cronus.

31.     Francis Alexander is an Illinois resident. She is a member of Georgetown.

32.     Heartwood 88, LLC is a Florida corporation with its principal place of business in Florida. Its business includes buying tax liens, and it participated in the Cook County tax sales held in 2003 through 2007.

33.     Bamp, LLC was an Illinois limited liability company that voluntarily dissolved on December 21, 2004. Its business included buying tax liens, and it participated in the 2004 Cook County tax sale. Its principal place of business was in Maryland, and its member was Anthony DeLaurentis, a Maryland resident and attorney.

34.     Richarony, LLC was an Illinois limited liability company that voluntarily dissolved on December 21, 2004. Its business included buying tax liens, and it participated in the 2004 Cook County tax sale. Its principal place of business was in Maryland, and its member was Richard Turer, a Maryland resident and attorney.

35.     Sass Muni-IV is a New York corporation, with its principal place of business in New York. Its business includes buying tax liens, and it participated in the 2002, 2003 and 2004 Cook County tax sales.

36.     Sass Muni-V is a New York corporation, with its principal place of business in New York. Its business includes buying tax liens, and it participated in the 2005 through 2007 Cook County tax sales.

The parties identified in paragraph 16 through 36 of this Counterclaim and Third Party Complaint are collectively referred to herein as the "Other Targets".

## COMMON FACTS TO ALL COUNTS

37.     The duly elected Treasurer and Ex-Officio Collector of Cook County, Illinois (the "Collector") is charged under the Property Tax Code (35 ILCS 200/22-70 et seq.) with the collection of delinquent real estate taxes through judicial sale of tax liens obtained against delinquent property.

38.     The duly elected Clerk of Cook County, Illinois (the "Clerk") is charged under the Property Tax Code with assisting the Collector in the conduct of the tax sale and keeping related records thereafter.  (The Collector and the Clerk are sometimes referred to hereafter collectively as the "County.").

39.     The annual Cook County tax sale is part of the Illinois property tax system.  If a property owner fails to pay his property taxes due in a given year, the County offers for sale to the public a tax lien on that property.  The purchaser of the tax lien pays the delinquent tax. The property owner may redeem that lien by paying the delinquent tax plus the accrued penalty.  Upon redemption, the tax buyer surrenders the lien and receives the tax amount plus the determined penalty.  If the property owner does not redeem the lien within two to three years, the tax buyer may commence a judicial proceeding by filing a Petition for Tax Deed and obtain title to the property.

40.     The tax sale process begins when the Collector publishes a list of delinquent real estate parcels in area newspapers.  The publication provides notice that the Collector will apply to the Circuit Court for judgments against delinquent real estate and orders to sell those judgments at public tax sale.  Thereafter, the Circuit Court issues the requested judgments and orders.  At the tax sale, the County sells the tax liens on the delinquent properties in exchange for the County's receipt of the delinquent taxes.  Each tax lien represents a different parcel of

8

real estate for which taxes are delinquent.

41.     The terms, manner and method by which judicial sales are conducted are prescribed by the Collector.   Among other things, the Collector provides a registration package to each prospective tax buyer.  The package sets forth the rules by which the sale is to be conducted, including the terms and conditions with which all participants must comply.

42.     Tax buyers must complete the registration package to be qualified to attend the tax sale and to bid on the tax liens.  Registration requires the submission of an application and/or a sworn affidavit in compliance with rules established by the Cook County Treasurer from time to time.  A prospective tax buyer who fails to satisfy any of these requirements, i.e. the application, the affidavit of compliance, or the related bond, may not be permitted to bid on or purchase liens at the tax sale.

43.     Bids are not made in cash amounts and taxes are not sold to the highest bidder. When a taxpayer redeems his taxes from a tax buyer, he pays the amount of taxes paid by the tax buyer at the sale, plus penalty.  At the tax sale, the tax buyers bid on the rate of penalty. The tax buyer who bids the lowest rate of penalty will win the bid.  It is the policy of the Collector that if more than one tax buyer bids at the same lowest penalty rate, the auctioneer at the tax sale will attempt to decide which bidder he heard first.  If he is unable to make such determination, he asks whether any of those bidders would bid a lower penalty rate.  The one who bids a lower rate is awarded the lien.  If that does not occur the Collector does not award liens amongst bidders by use of any rotational or allocation system and, under applicable law, the lien should be forfeited so that no one would be awarded the bid.  The highest permissible penalty rate is 18% of the delinquent tax per penalty period.  Since approximately 2000, most of the bids have been at the 0% penalty rate.

9

44.     After each tax sale, the County issues a Certificate of Purchase evidencing the tax lien sold on each parcel of real estate to and in the name of the tax buyer who made the successful bid.

45.     If the property remains unredeemed after two to three years from the date of purchase, a lien holder may file a petition for deed.  These petitions must be filed five months before the end of the period of redemption.  Pursuant to 35 ILCS 200/22-10, in the first sixty days of the five-month period, the lien holder is required to provide notice of the filing of the petition for deed to the affected property owners, occupants and other interested parties.

46.     The tax buyer's potential sources of profit from the tax liens include, among other things, the penalty accrued on the tax lien judgment purchased, a 12% penalty accrued on any subsequent real estate taxes the tax buyer pays on the property, and obtaining a deed through the enforcement of the tax lien.

47.     The 2002 annual tax sale was held from April 1, 2002 to April 26, 2002.  At the 2002 annual tax sale, liens were sold based on property owners' failure to pay real estate taxes in 2000.  At the 2002 sale, there were 122 registered bidders.

48.     The 2003 annual tax sale was held from March 10, 2003 to April 4, 2003.  At the 2003 annual tax sale, liens were sold based on property owners' failure to pay real estate taxes in 2001.  At the 2003 sale, there were 219 registered bidders.

49.     The 2004 annual tax sale was held from May 10, 2004 to June 7, 2004.  At the 2004 annual tax sale, liens were sold based on property owners' failure to pay real estate taxes in 2002.  At the 2004 sale, there were 222 registered bidders.

50.     The 2005 annual tax sale was held from July 6, 2005 to July 27, 2005.  At the 2005 annual tax sale, liens were sold based on property owners' failure to pay real estate taxes

10

in 2003.  At the 2005 sale, there were 307 registered bidders.

51.     The 2006 annual tax sale was held from June 6, 2006 to June 30, 2006.  At the 2006 annual tax sale, liens were sold based on property owners' failure to pay real estate taxes in 2004.  At the 2006 sale, there were 186 registered bidders.

52.     The 2007 annual tax sale was held from June 5, 2007 to June 26, 2007.  At the 2007 annual tax sale, liens were sold based on property owners' failure to pay real estate taxes in 2005.  At the 2007 sale, there were 165 registered bidders.

53.     The 2008 annual tax sale was held from August 12, 2008 to August 20, 2008.  At the 2008 annual tax sale, liens were sold based on property owners' failure to pay real estate taxes in 2006.  At the 2008 sale, there were approximately 140 registered bidders.

## THE COOK COUNTY SINGLE SIMULTANEOUS BIDDER RULE

54.     In order to participate in the tax sale, tax buyers must register with the Collector.

55.     At the time of registration, the tax buyer, or its authorized agent, must affirm under penalty of perjury its adherence to the Single Simultaneous Bidder Rule.  The Single Simultaneous Bidder Rule— established before the 2002 tax sale—prohibits "related bidding entities" as defined in the Single Simultaneous Bidder Rule from simultaneously bidding on the same property.

56.     The purpose of the Single Simultaneous Bidder Rule is that there is not more than one person bidding at a tax sale at the same time for the intended or perceived purpose of increasing the principal's likelihood of obtaining a successful bid on a parcel.

11

## THE RICO LAWSUITS

57.     In 2005, Counterdefendants filed this lawsuit falsely asserting that the Counterplaintiffs and some of the Other Targets had engaged in an illegal conspiracy to defraud the Collector and violate the Single Simultaneous Bidder Rule by misrepresenting their relationships amongst themselves and with the Other Targets for the sole purpose of getting additional liens at the various sales.

58.     In 2007, Counterdefendants filed a second lawsuit, *BCS Services, Inc. v. Heartwood 88, Inc., et al*, No. 07CV1367 ("*Heartwood Case*"), in which Counterdefendants again falsely asserted that the Counterplaintiffs had engaged in an illegal conspiracy with Heartwood, Sass, Bamp and the other defendants in that case to defraud the Collector and violate the Single Simultaneous Bidder Rule by misrepresenting their relationships with each other for the sole purpose of getting additional liens at the various sales.   In addition, Counterdefendants falsely asserted that there were other parties engaged in other "conspiracies" to defraud the Collector and violate the Single Simultaneous Bidder Rule by misrepresenting their relationships with each other for the sole purpose of getting additional liens at the various sales.

## COUNT I

59.     Counterplaintiffs reallege and reassert the allegations set forth in Paragraphs 1-58 above as if fully set forth herein as Paragraph 59 of this Count I.

60.     There are a limited number of properties offered for sale at the annual Cook County tax sales, and there exists greater demand to purchase them than can be met by the supply.

61.     Counterdefendants are direct competitors of Counterplaintiffs, engaging in the same business industry, and competing directly against each other in attempting to procure the properties sold at tax sales.

62.     Counterdefendants have conspired to restrain trade or commerce in violation of the Sherman Anti-Trust Act.

63.     Counterdefendants, who are, under ordinary circumstances, competitors to each other, have joined together in an illegal conspiracy to wrongfully restrict Counterplaintiffs' and the Other Targets ability to compete in the same field.

64.     Counterdefendants agreed to engage in the conspiracy in or around 2005.

65.     Counterdefendants have acted to advance their conspiracy to restrain competition by jointly filing the current baseless lawsuit against Counterplaintiffs and the Other Targets with the express purpose of causing Counterplaintiffs and the Other Targets such damage that they can no longer operate their businesses and compete against Counterdefendants for tax sale certificates.

66.     Filing the present lawsuit was an overt act done by Counterdefendants in furtherance of their illegal conspiracy to restrict trade or commerce in violation of the Sherman Anti-Trust Act.

67.     Counterdefendants are prosecuting this lawsuit and the *Heartwood Case* in bad faith, with the express purpose being to intimidate and harass Counterplaintiffs and the Other Targets and cause such upheaval and expense in Counterplaintiffs' and the Other Targets' businesses so as to drive Counterplaintiffs and the Other Targets out of business and restrict them from continuing to compete in the tax sale industry.

68.     Counterdefendants' lawsuits are objectively baseless and unreasonable. Counterdefendants have no probable cause to reasonably believe that they will prevail on the merits of their alleged claims against Counterplaintiffs and the Other Targets.

69.     Counterdefendants' lawsuits are therefore a sham intended only to restrict trade and drive Counterplaintiffs and the Other Targets out of business, or make the operation of Counterplaintiffs', the Other Targets' and other potential competitors' businesses so expensive or untenable that Counterplaintiffs, the Other Targets and other potential competitors will be repressed from continuing to compete with Counterdefendants.

70.     Counterdefendants intend for this lawsuit to suppress competition from the Counterplaintiffs, the Other Targets, and other potential competitors and to drive Counterplaintiffs, the Other Targets and other potential competitors out of business, and/or to harass or intimidate Counterplaintiffs, the Other Targets, and other potential competitors sufficiently to prevent or deter them from continuing to compete with Counterdefendants.

71.     Counterdefendants have misused the governmental process of the legal system to further their scheme to inhibit competition.  They have utilized their ability to file baseless, sham lawsuits to force Counterplaintiffs and the Other Targets to incur massive fees and tarnish Counterplaintiffs' and the Other Targets' reputation in the industry, causing lenders and other entities to limit their dealings with Counterplaintiffs and the Other Targets.

72.     These actions by the Counterdefendants have caused irreparable damage to Counterplaintiffs and the Other Targets, both in the actual dollars spent to defend against this baseless lawsuit and the *Heartwood Case*, as well as in their ability to procure loans, lines of credit, and conduct business.

73.     Counterdefendants' lawsuit is an attempt to directly interfere with the business relationships of their competitors, namely, Counterplaintiffs as well as the Other Targets. Counterdefendants have conspired together to interfere with Counterplaintiffs and the Other Targets business relationships, in order to restrict competition and trade, in violation of the Sherman Anti-Trust Act.

74.     Counterdefendants attempt to restrict competition via the instrument of this lawsuit and the *Heartwood Case* has been felt at the annual Cook County tax sales as the number of registered bidders, (i.e. competitors to Counterdefendants) at the Cook County tax sales since the filing of these consolidated actions have substantially decreased and continue to do so.

75.     Even though Counterdefendants' attempt to restrict competition via the instrument of this lawsuit and the *Heartwood Case* are only some instances of such activity, the far-reaching consequences of these lawsuits are substantial enough to constitute a violation of the Sherman Anti-Trust Act.  Counterdefendants' lawsuits have had a massive impact on Counterplaintiffs and the Other Targets ability to do business, and will continue to do so as the case progresses.

WHEREFORE, Counterplaintiffs pray that this Court:

1.     Find that the Counterdefendants have engaged in an illegal conspiracy to restrict trade or commerce in violation of the Sherman Anti-Trust Act;

2.     Enter judgment in their favor and against Counterdefendants in an amount to be proven at trial but not less than $15,000,000;

3.     Grant them the costs of bringing this action including reasonable attorneys' fees and costs; and

4.      Grant them such other and further relief as this Court deems proper.


Dated: <u>January 26, 2009</u>

                                          Respectfully submitted,

                                          Counterplaintiffs,

                                          **JOHN BRIDGE, BARRETT ROCHMAN,
                                          SABRE GROUP, LLC, BRB
                                          INVESTMENTS, LLC, CORRINE
                                          ROCHMAN, JESSE ROCHMAN and
                                          CHRISTOPHER ROCHMAN**


                                          By:  ___/s/ Donald B. Levine_____
                                                  One of Their Attorneys


Donald B. Levine, ARDC 1637355
Saskia Nora Bryan, ARDC 6255682
LATIMER LeVAY JURASEK LLC
55 W. Monroe St., Suite 1100
Chicago, Illinois 60603
Telephone:  312-422-8000
Fax:    312-422-8001


Harold L. Moskowitz, ARDC  3128347
Law Offices of Harold L. Moskowitz
55 W. Monroe St., Suite 1100
Chicago, Illinois  60603
Telephone:  312-419-3016
Fax:  312-422-8001