## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| PHOENIX BOND & INDEMNITY CO., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| v.                          ) | **Case No. 05 C 4095** |
| ) | **Consolidated with No. 07 C 1367** |
| ) | |
| JOHN BRIDGE, et al.,              ) | **Chief Judge James F. Holderman** |
| ) | |
| ) | **Magistrate Judge Maria Valdez** |
| Defendants.           ) | |
| ) | |

## PLAINTIFFS' EMERGENCY MOTION FOR RELIEF

Plaintiffs seek immediate relief in connection with Defendant Sabre Group, LLC's ("Sabre") recent admission that it has misrepresented its compliance with an agreement to produce electronic data. On March 31, 2009, this Court conducted a hearing concerning a dispute over the production of electronic data used by the Sabre Defendants[1] to compile lists of liens for sale at the Cook County tax sales and to track the performance of tax certificates purchased at those sales. At the March 31 hearing, Sabre's counsel agreed to produce the electronic data in question (including two databases). As explained more fully below, several months passed before Sabre produced *any* electronic data.

Sabre did finally produce electronic data, but plaintiffs' expert identified areas where data appeared to be missing. Plaintiffs' expert analyzed the data in an effort to determine whether its review had somehow missed data the Sabre Defendants had agreed to produce to resolve the discovery dispute. Yesterday, Sabre revealed that it did not actually produce the information that it promised the Court and the plaintiffs to produce. Instead, it manipulated its data and produced a fragmented and incomplete version of the databases, while representing that it had produced

---

[1] The "Sabre Defendants" are Sabre Group, LLC; SI Securities Management, Inc. ("SI Management"); SI Securities, LLC; CMS Services, LLC ("CMS"); John Bridge; Kevin Sierzega; Barrett Rochman; and Kenneth Rochman.

the complete data.  So with less than two months before the close of discovery, plaintiffs now find themselves in the same position they were in *more than five months ago* with respect to obtaining evidence regarding the damages caused by the Sabre Defendants' conspiracy.

## I.    Background

Defendant Kevin Sierzega, who is an employee of Defendant SI Management (a related company of Sabre), testified at his deposition that Sabre maintains two databases in connection with the services that Defendant CMS (another Sabre-related company involved in Sabre's conspiracy to obtain more liens at the Cook County tax sale) provides to its customers.  (CMS's customers include what plaintiffs have alleged to be the nominee bidders in the Sabre Rigged Bidding Enterprise.)  One of those databases contains data on liens offered for sale at the Cook County tax sales (and ultimately was used to create lists of liens on which the Sabre Nominees submitted bids) and the other is used to track the performance of certificates sold at the various tax sales.  Sierzega additionally identified a set of spreadsheets that CMS used to capture information regarding certificates purchased at the tax sales by CMS's customers.

Plaintiffs served Sabre with written discovery requests for these databases, which Sabre responded to by providing nearly 15,000 pages of PDF printouts of reports generated by the databases.  Plaintiffs objected to that manner of production, and on March 31, Sabre's counsel agreed in open court that it would produce the databases and the spreadsheets in their native electronic format to resolve Plaintiffs' motion regarding that discovery dispute.

## II.    Sabre's agreement to produce the electronic data.

Notwithstanding this case's Protective Order (which enables parties to shield "Highly Confidential" business information from view by anyone other than counsel of record in this litigation), Sabre insisted that not even plaintiffs' lawyers have access to the databases.  Despite the fact that plaintiffs immediately acceded to this request, this demand injected more than a month of delay while Sabre and plaintiffs' expert, Deloitte FAS ("Deloitte"), negotiated a non-disclosure agreement (the "Discovery Agreement," a copy of which is attached hereto as Exhibit A), providing for Sabre's production of its electronic data directly to Deloitte.  The Discovery

Agreement, which the parties entered into on April 22, 2009 specifically provides that, upon its execution, "the Sabre Defendants shall take all steps necessary to cause Deloitte FAS to have *a true and correct copy* of the Databases containing the Bid Book Database and the Certificate Database and the Spreadsheets." (Ex. A at ¶ 2 (emphasis added))

### III.    Sabre's purported production of the data.

After the parties entered the Discovery Agreement, plaintiffs encountered significant delay in arranging for the delivery of the databases to Deloitte. In fact, it was not until May 27, 2009—more than a month after execution of the Discovery Agreement—that Deloitte actually received any data from Sabre. (Affidavit of Umashankar Viswanathan (Ex. B hereto) ("Viswanathan Aff.") at ¶ 2) While Deloitte could only identify one database, Sabre continually represented that the production included both the Bid Book Database and the Certificate Database, as well as the Spreadsheet. As a result of that representation, Deloitte had to perform substantial work trying to find the Bid Book Database and Spreadsheet that it had been unable to locate. Based on Deloitte's work, it determined that neither the Bid Book Database nor the Spreadsheets were included in the production that Sabre made, and Plaintiffs' counsel immediately contacted Sabre's counsel. Eventually, Sabre's counsel conceded that the Bid Book Database and Spreadsheets had not been produced, but it took Sabre considerably more time to provide any additional data.

In the interim, Deloitte continued analyzing and testing the integrity and completeness of the Certificate Database data provided on May 27. That analysis, however, generated questions related to the content and completeness of the information that Sabre provided. But based on Sabre's repeated assurance that it had produced the complete Certificate Database, Deloitte continued to attempt to interpret the data and identify why its analysis of Cook County information showed that the Certificate Database appeared to be missing data. (*See* Viswanathan Aff. at ¶ 3.)

On August 6 (more than 10 weeks after the May 27 production), Sabre provided additional electronic media that, it said, contained the most recent Bid Book Database and

Spreadsheets. Despite Mr. Sierzega's testimony that he maintained the Bid Book Database for all the relevant years, the Sabre Defendants could only produce the Bid Book Database from the sale held in 2007, claiming that the rest had been overwritten or deleted.

On that same day, plaintiffs' counsel contacted Sabre's counsel regarding Deloitte's continued questions regarding the Certificate Database. At that time, Sabre's counsel agreed to schedule a meeting between Deloitte and Sabre personnel to address Deloitte's questions. After nearly a month of follow-up inquiries from plaintiffs' counsel regarding the scheduling of a meeting, Sabre's counsel arranged for Deloitte to meet Sierzega on September 3 to address questions concerning the data. Counsel for plaintiffs and counsel for the Sabre Defendants were also present at that meeting.

## IV.    Sabre's revelation of its misrepresentation.

At the September 3 meeting, Mr. Sierzega confirmed that Sabre has breached the agreement it reached in Court, later documented as the Discovery Agreement, to resolve the discovery dispute about the electronic data. Indeed, rather than providing "a true and correct copy of the Databases," Seirzega revealed that Sabre produced only a portion of the Certificate Database. Sabre's counsel attempted to justify its conduct by asserting that Sabre had produced all data relevant to the lawsuit. But the Discovery Agreement does not vest Sabre with discretion to decide whether or not to produce the databases in their entirety; in fact, it does precisely the opposite. To resolve the discovery dispute, Sabre represented to this Court, and confirmed in the Discovery Agreement documenting the resolution, that it would provide the Certificate Database to plaintiffs' expert. Moreover, it does not appear to be true that Sabre has produced all data relevant to this litigation. Rather, by comparing the data that Sabre provided to data obtained from Cook County, Deloitte has preliminarily determined that Sabre did not even provide complete data for CMS's customers, who are defendants in this litigation. (Viswanathan Aff. at ¶ 3)

## V.    Conclusion

Discovery in this case is set to close on October 30, 2009.  The Sabre Defendants' manipulation of the databases and misrepresentation that they would and did provide complete databases has wasted more than five months.  To enable plaintiffs' expert to analyze the data in order to timely complete its damage assessment, the Sabre Defendants should be required to make their computers available to Deloitte so it can make true and accurate copies of the Databases and Spreadsheets (as those terms are defined in the Discovery Agreement) immediately.   The Sabre Defendants should not be provided the opportunity to further delay or manipulate the production of the electronic data.

WHEREFORE, Plaintiffs Phoenix Bond & Indemnity Co. and BCS Services, Inc. request an order:

(1)    requiring the Sabre Defendants to permit the immediate inspection and copying by Deloitte FAS of the Bid Book Database, the Certificate Database, and the Spreadsheets (as those terms are defined in the parties' Discovery Agreement) from their computer systems;

(2)    requiring the Sabre Defendants to permit the immediate inspection and copying by Deloitte FAS of the Bid Book Database, the Certificate Database, and the Spreadsheets (as those terms are defined in the parties' Discovery Agreement) from their electronic data backup storage systems;

(3)    requiring the Sabre Defendants to reimburse plaintiffs for the fees incurred by Deloitte FAS and plaintiffs' counsel in connection with obtaining and analyzing the data that the Sabre Defendants falsely represented to be complete; and

(4)    any and all further relief that this Court deems appropriate.

Dated: September 4, 2009          Respectfully submitted,


PLAINTIFFS PHOENIX BOND & INDEMNITY
CO. and BCS SERVICES, INC.


By:    /s/ Andrew L. Mathews
              One of Their Attorneys

Lowell E. Sachnoff  (ARDC No. 2438062)
Jonathan S. Quinn  (ARDC No. 6200495)
John W. Moynihan  (ARDC No. 6212061)
Andrew L. Mathews  (ARDC No. 6279672)
REED SMITH LLP
10 South Wacker Drive
Suite 4000
Chicago, IL 60606
(312) 207-1000

US_ACTIVE-102275226.2

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2009, a copy of the foregoing **Plaintiff's Emergency Motion for Relief** was filed electronically. Notice of this filing will be sent by e-mail to the following parties by operation of the Court's electronic filing system [or by U.S. Mail, postage pre-paid, to anyone unable to accept electronic filing]. Parties may access the filing through the Court's system.

| | |
|---|---|
| *Counsel for Defendants John Bridge; CCPI, LLC; Kenneth Rochman; BRB Investments, LLC; CCJ Investments, LLC; CMS Services, LLC; Jesse Rochman; Corinne Rochman; Sabre Group, LLC; Barrett Rochman; Christopher Rochman; SI Boo, LLC; SI Securities Management, Inc.; SI Securities, LLC; Kevin Sierzega; Aztek Partners, LLC; Chonus, Inc. and Gregory Bingham* | Harold L. Moskowitz<br>LAW OFFICES OF HAROLD MOSKOWITZ<br>55 West Monroe, Suite 1100<br>Chicago, Illinois 60603<br>(312) 977-0223<br>hlmatty@aol.com<br><br>Donald B. Levine<br>Saskia Nora Bryan<br>LATIMER LEVAY & JURASEK LLC<br>55 West Monroe Street, Suite 1100<br>Chicago, Illinois 60603<br>(312) 422-8000<br>dlevine@lljlaw.com<br>blevay@lljlaw.com<br>sbryan@lljlaw.com |
| *Counsel for Defendants Robert Jensen; Cronus Projects, LLC; Gregory Ellis; GJ Venture, LLC and L.C.C. Venture, LLC* | Kevin J. Clancy<br>Martin W. McManaman<br>Patrick R. Moran<br>Deborah R. O'Brien<br>LOWIS & GELLEN LLP<br>200 West Adams Street, Suite 1900<br>Chicago, Illinois 60606<br>(312) 364-2500<br>kclancy@lowis-gellen.com<br>martym@lowis-gellen.com<br>pmoran@lowis-gellen.com<br>dobrien@lowis-gellen.com |
| *Counsel for Defendants Jeffrey Bridge; Regal One, LLC; Jason Baumbach; Optimum Financial, Inc.; Carpus Investments, LLC; Frances Alexander; Georgetown Investors, LLC; Bamp, LLC; Anthony DeLaurentis; Richarony, LLC and Richard Turer* | Elisha S. Rosenblum<br>Clifford G. Kosoff<br>O'HALLORAN, KOSOFF, GEITNER & COOK, P.C.<br>650 Dundee Road, Suite 475<br>Northbrook, Illinois 60062<br>(847) 291-0200<br>esrosenblum@okgc.com<br>ckosoff@okgc.com |

| | |
|---|---|
| *Counsel for Defendants Douglas Nash; DRN II, Inc.; Jeshay, LLC and Mud Cats Real Estate, LLC* | Mark F. Wolfe<br>Elise N. Willis<br>TRAUB LIEBERMAN STRAUS & SHREWSBERRY<br>303 West Madison Street, Suite 1200<br>Chicago, Illinois 60606<br>(312) 332-3900<br>mwolfe@traublieberman.com<br>ewillis@traublieberman.com |
| *Counsel for Defendants Heartwood 88, LLC and BankAtlantic* | Christopher K. Meyer<br>SIDLEY AUSTIN LLP<br>One South Dearborn Street<br>Chicago, Illinois 60603<br>(312) 853-7000<br>cmeyer@sidley.com<br><br>Robert A. Holland<br>SIDLEY AUSTIN LLP<br>555 West Fifth Street, Suite 4000<br>Los Angeles, California 90013<br>(213) 896-6000<br>rholland@sidley.com<br><br>Ana T. Barnett<br>STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.<br>150 West Flagler Street, Suite 2200<br>Miami, Florida 33130<br>(305) 789-3514<br>abarnett@swmwas.com |
| *Counsel for Defendants Sass Muni–IV, LLC; Sass Muni–V, LLC; MD Sass Investors Services, Inc.; MD Sass Tax Lien Management, LLC; MD Sass Municipal Finance Partners-IV, LLC; MD Sass Municipal Finance Partners-V, LLC; Vinaya Jessani and Kirk Allison* | Theodore M. Becker<br>James E. Bayles, Jr.<br>Richard J. Pearl<br>Todd E. Domjan<br>MORGAN LEWIS & BOCKIUS LLP<br>77 West Wacker Drive, 5th Floor<br>Chicago, Illinois 60601<br>(312) 324-1000<br>tbecker@morganlewis.com<br>jbayles@morganlewis.com<br>rpearl@morganlewis.com<br>tdomjan@morganlewis.com |

| | |
|---|---|
| ***Counsel for Defendants Salta Group, Inc. and Marshall Atlas*** | Steven Rappin<br>Elizabeth Monkus<br>HAUSELMAN, RAPPIN & OLSWANG, LTD.<br>39 South LaSalle Street, Suite 1105<br>Chicago, Illinois 60603<br>(312) 372-2020<br>srappin@hrolaw.com<br>emonkus@hrolaw.com<br><br>Edward Genson<br>Genson & Gillespie<br>53 West Jackson Boulevard, Suite 1420<br>Chicago, Illinois 60604<br>(312) 726-9015<br>gensongillespie@aol.com |
| ***Counsel for Defendants HBZ, Inc.; Lori Levinson and Judith Berger*** | S. Joseph Formusa<br>RABENS, FORMUSA & GLASSMAN, LTD.<br>33 North LaSalle Street, Suite 2800<br>Chicago, Illinois 60602<br>(312) 782-8334<br>formusa12@sbcglobal.net<br><br>Michael D. Sher<br>Athanasios Papadopoulos<br>Sarah Malia<br>NEAL, GERBER & EISENBERG LLP<br>Two North LaSalle Street, Suite 2200<br>Chicago, Illinois 60602<br>(312) 269-8000<br>msher@ngelaw.com<br>tpapadopoulos@ngelaw.com<br>smalia@ngelaw.com |
| ***Counsel for Defendants Josh Atlas and Arlene Atlas*** | Michael D. Sher<br>Athanasios Papadopoulos<br>Sarah Malia<br>NEAL, GERBER & EISENBERG LLP<br>Two North LaSalle Street, Suite 2200<br>Chicago, Illinois 60602<br>(312) 269-8000<br>msher@ngelaw.com<br>smalia@ngelaw.com |

| | |
|---|---|
| *Counsel for Defendants B G Investments, Inc.; Bonnie J. Gray; Atlantic Municipal Corporation; Midwest Real Estate Investment Company; Midwest Real Estate Investment Company Employee Profit Sharing Plan & Trust and David Gray* | Arthur W. Friedman<br>Edward W. Feldman<br>Stuart M. Widman<br>MILLER SHAKMAN & BEEM LLP<br>180 North LaSalle Street, Suite 3600<br>Chicago, Illinois 60601<br>(312) 263-3700<br>afriedman@millershakman.com<br>efeldman@millershakman.com<br>swidman@millershakman.com |
| *Counsel for Defendants Wheeler-Dealer, Ltd. and Timothy E. Gray* | William T. Huyck<br>LAW OFFICE OF WILLIAM THOMAS HUYCK<br>122 South Michigan Avenue, Suite 1850<br>Chicago, Illinois 60603<br>(312) 427-7500<br>tomhuyck@yahoo.com |
| *Counsel for Defendants Patrick Quinn; Tax Play, Inc. and Tax Capital, LLC* | Patrick Joseph Heneghan<br>Schopf & Weiss LLP<br>One South Wacker Drive<br>28th Floor<br>Chicago , IL 60606<br>(312) 701-9300<br>Fax: (312) 701-9335<br>Email: heneghan@sw.com |
| *Counsel for Defendants G3 Holdings, LLC; Gregory Wilson and Donald Wilson* | E. Bryan Dunigan , III<br>Law Offices of E. Bryan Dunigan<br>221 North LaSalle Street<br>Suite 1454<br>Chicago , IL 60601<br>(312) 857-2114<br>Fax: (312) 372-1733<br>Email: bdunigan@duniganlaw.com<br><br>Mark H. How<br>Mark Frels<br>How Frels Berman Rohde Woods & Duke PC<br>2027 Young Street<br>Dallas, TX 75201<br>mhow@2027law.com<br>mfrels@2027law.com |

| *Counsel for Defendants Michael DeLuca and Gary Branse* | Scott Nelson<br>Tammy Lynn Wade<br>Ruff, Weidenaar & Reidy, Ltd.<br>222 North LaSalle Street<br>Suite 700<br>Chicago , IL 60601<br>(312) 263-3890<br>snelson@rwrlaw.com<br>tlwade@rwrlaw.com |
| --- | --- |

By:___ */s/ Andrew L. Mathews*_____
      One of Plaintiffs' Attorneys

Lowell E. Sachnoff  (ARDC No. 2438062)
Jonathan S. Quinn  (ARDC No. 6200495)
John W. Moynihan  (ARDC No. 6212061)
Andrew L. Mathews  (ARDC No. 6279672)
REED SMITH LLP
10 South Wacker Drive, Suite 4000
Chicago, Illinois  60606
(312) 207-1000

# EXHIBIT A

## DISCOVERY AGREEMENT

This Discovery Agreement ("Agreement") is made and entered into as of April 22, 2009, by and between Reed Smith LLP as counsel for BCS Services, Inc. and Phoenix Bond & Indemnity Co., ("Plaintiffs") in the "Consolidated Proceedings" described below, Harold Moskowitz and Latimer LeVay Jurasek LLC as counsel for certain defendants in the Consolidated Proceedings and Deloitte Financial Advisory Services LLP ("Deloitte FAS").

1.    BACKGROUND.    There is pending before The Honorable Judge James Holderman in the United States District Court for the Northern District of Illinois, Eastern Division, certain consolidated proceedings entitled **Phoenix Bond & Indemnity Co., Inc., et al., Plaintiffs, v. John Bridge, et al., Defendants,** Case No 05 C 4095 and **BCS Services, Inc., et al., Plaintiffs, v. Heartwood 88, Inc., et al. Defendants,** Case No. 07 C 1367 (collectively, the "Consolidated Proceedings"). Certain protective orders were entered in each of the Consolidated Proceedings, true and correct copies of which are attached hereto as Exhibits "A" and "B", respectively. The Consolidated Proceedings are currently in the midst of the discovery stages of litigation. In that context, Plaintiff has requested from certain defendants, specifically Sabre Group LLC, John Bridge and Barrett Rochman (collectively "Sabre Defendants"), and Judge Holderman has directed that Sabre cause to be produced for counsel for Plaintiff, access to certain electronic databases owned and maintained by SI Securities Management, Inc., ("SI"), specifically Microsoft Access databases developed and maintained by SI to compile bid books for use at Cook County tax sales ("Bid Book Database") and to track all transactions regarding certificates its customers, both direct and indirect, purchased at Cook County tax sales ("Certificate Database") and Microsoft Excel spreadsheets in electronic format prepared from the Bid Book Database ("Spreadsheet") SI developed and maintained to track the purchases of its customers at Cook County tax sales (the Bid Book Database and the Certificate Database are sometimes hereinafter referred to collectively as the "Databases").

The parties recognize that Defendants are able, under the Protective Orders, to designate the Databases and the Spreadsheets as "Highly Confidential" and thereby preclude access to or disclosure of the Databases or the Spreadsheets to third parties except as permitted by the terms of the Protective Orders. However, even with the designation of "Highly Confidential", all parties hereto recognize that such designation would still enable and permit counsel for plaintiffs and others identified in Paragraph 5 of each of the Protective Orders, the right of access to the Databases and Spreadsheets. However, counsel for Plaintiff has acknowledged and agreed that they seek no such access for anyone other than Deloitte FAS, to whom the Databases and Spreadsheets would be provided for the sole purpose of preparing from the information contained in the Databases and the Spreadsheets, and solely for use in the Consolidated Proceedings, certain reports or making calculations therefrom as requested by counsel for Plaintiff during the pendency of the Consolidated Proceedings.

1

In furtherance of the foregoing, and in consideration of the mutual promises and undertakings set forth herein, the parties hereto agree as set forth in this Agreement.

2.    SABRE DEFENDANTS RESPONSIBILITIES.  As soon as practicable following the execution of this Agreement by Deloitte FAS, counsel for Plaintiff and counsel for the Sabre Defendants, the Sabre Defendants shall take all steps necessary to cause Deloitte FAS to have a true and correct copy of the Databases containing the Bid Book Database and the Certificate Database and the Spreadsheets.  Upon delivery thereof to Deloitte FAS, the Sabre Defendants shall provide certification to counsel for Plaintiff that such has occurred and is complete.

3.    RESPONSIBILITIES OF THE DELOITE FAS.    During the pendency of the Consolidated Proceedings, Deloitte FAS shall:

3.1    execute a confirmation acknowledging that it is bound by the provisions of the Protective Orders and deliver copies of the same to the parties hereto;

3.2    maintain the Databases and Spreadsheets and all the information contained therein as confidential and secret and not permit access thereto to any person or entity for any reason or purpose whatsoever except as permitted by the terms of this Agreement, absent in each instance the prior written consent of counsel for the Sabre Defendants, or as required to be disclosed by Deloitte FAS pursuant to subpoena issued to Deloitte FAS, or by any law but only after written notice to the Sabre Defendants , to the extent not prohibited by applicable law or regulation, and allowing them a reasonable period of time to seek to quash the same, or in connection with litigation pertaining to this Agreement, and subject to such reasonable protective order provisions as the Court in such litigation proceeding  shall permit upon request of the Sabre Defendants;

3.3    have access to the Databases the spreadsheets and be able to utilize the Databases and the Spreadsheets to provide to counsel for Plaintiff from the information contained in the Databases such reports and make such calculations as counsel for Plaintiff may from time to time request of Deloitte FAS related to issues involved in the Consolidated Proceedings.  Deloitte FAS shall not be responsible for the disclosure, use or other treatment of the information contained in the Databases and the Spreadsheets by the Plaintiff so long as Deloitte FAS so long as Deloitte FAS is not in breach of its obligations pursuant to this Agreement;

3.4    not use the Databases or the Spreadsheets or any information contained therein for any other purpose or other than in connection with the Consolidated Proceedings;

3.5    not modify, re-program or reverse engineer the Databases or the Spreadsheets or their software in any manner; and,

3.6    Deloitte FAS may disclose information in the Databases and the Spreadsheets to its personnel, affiliates and member firms of Deloitte Touche Tohmatsu and its affiliates

2

(collectively the "Representatives"). Deloitte FAS shall be responsible for any breach of this Agreement by its Representatives.

4.    EFFECT OF TERMINATION OF THE CONSOLIDATED PROCEEDINGS.   Upon termination of the Consolidated Proceedings by whatever reason, Deloitte FAS shall:

    4.1    have no further right to use or have access to the Databases or the Spredsheets or any information contained therein for any purpose whatsoever;

    4.2    purge all systems owned, maintained or utilized by Deloitte FAS or any of its employees or agents of every trace of the Databases and the Spreadsheets;

    4.3    retain no copies of the Databases or the Spreadsheets or any information contained therein for any purpose or in any format or manner;

    4.4    confirm to counsel for the Sabre Defendants that such purging of its systems has been completed;

    4.5    destroy or return to counsel for the Sabre Defendants all reports or calculations prepared from the Databases or the Spreadsheets and confirm to counsel for the Sabre Defendants that such return or destruction, as the case may be, is complete; and,

    4.6    Notwithstanding anything herein to the contrary, Deloitte FAS shall have the right to retain copies of any summaries, analyses, notes or extracts prepared by Deloitte FAS which are based on or contain information in the Databases or the Spreadsheets, but not the actual Databases or the Spreadsheets themselves, evidencing its services as required by law, regulation, professional standards or reasonable business practice. Such retained information containing information in the Databases and the Spreadsheets shall continue to be subject to the confidentiality provisions of this Agreement.

5.    EXCEPTIONS. The confidentiality provisions of this Agreement shall not apply to information contained in the Databases or the Spreadsheets which (a) now is or hereafter becomes available to the public (including, without limitation, any information filed with any governmental agency and available to the public) other than as the result of a disclosure by Deloitte FAS in breach hereof, (b) becomes available to Deloitte FAS on a nonconfidential basis from a source other than Sabre Defendants which Deloitte FAS does not believe is prohibited from disclosing such information to Deloitte FAS by obligation to Sabre Defendants, (c) is developed by Deloitte FAS independently of, or was known by Deloitte FAS prior to, any disclosures made by Sabre Defendants to Deloitte FAS of such information, or (d) is disclosed with the written consent of Sabre Defendants.   ·

6.    INJUNCTIVE RELIEF. Deloitte FAS  understands and acknowledges that the Sabre Defendants may suffer irreparable injury in the event of a breach by Deloitte FAS of the provisions of this Agreement. In view thereof, Deloitte FAS agrees that in the event of a breach of any of the provisions of this Agreement by Deloitte FAS, the Sabre Defendants shall be

entitled to seek, in addition to any and all other remedies and damages available to the Sabre Defendants by reason of any such breach a temporary, preliminary and/or permanent injunction to restrain violation of this Agreement by Deloitte FAS and any other person acting for or in concert with Deloitte FAS, together with all costs, losses and other damages, including attorneys' fees, incurred by the Sabre Defendants arising out of or related to such breach or the enforcement of the provisions of this Agreement.

7.     NOTICES.  All notices required or desired to be given in connection with this Agreement shall be in writing and shall be deemed delivered on the date received if delivered personally, on the third day after mailing if sent by registered or certified mail, return receipt requested, postage prepaid, on the date following delivery if sent  by overnight courier, or on the first business day following transmission if sent by confirmed telefax to the addresses and/or telefax numbers reflected below the signatures to this Agreement.

8.     CONSTRUCTION.  This Agreement shall be interpreted, governed, and construed in accordance with the laws of the state of Illinois.  The parties hereto hereby consent to the jurisdiction of any state or federal court located within Cook County, Illinois, in the United States of America, for purposes of enforcing this Agreement and agree that all actions or proceedings arising out of or relating to this Agreement shall be litigated in such courts.  The parties each accept, generally and unconditionally, the exclusive jurisdiction and venue of the aforesaid courts and waive any defense based on lack of personal jurisdiction or under the doctrine of forum non-conveniens, and irrevocably agree to be bound by any non-appealable judgment rendered thereby in connection with this Agreement.

8.1     If any provision of this Agreement is held to be unenforceable by a court of competent jurisdiction, then this Agreement shall be considered divisible and inoperative as to such provision to the extent it is deemed to be unenforceable, and in all other respects, this Agreement shall remain in full force and effect; provided, however, if any provision of this Agreement is deemed to be unenforceable as written, though such provision may be enforceable by limitation thereof, then such provision shall be enforceable to the maximum extent permitted by law.

8.2     This Agreement and the rights and obligations of the parties contained herein shall inure to the benefit of and be binding upon the parties hereto and their respective successors and permitted assigns. None of the parties may assign, transfer or delegate any of its rights hereunder (including, without limitation, interests or claims relating to this Agreement) without the prior written consent of the other party.  Any purported assignment in violation to this Section 8.2 shall be null and void.

8.3     The various titles of the paragraphs in this Agreement are used solely for convenience and reference only and do not construe nor shall they be deemed to construe or interpret any word, clause, paragraph or provision of this Agreement; reference herein to

4

"Paragraph" or "Sub-Paragraph" means the various paragraphs and sub-paragraphs of this Agreement.

8.4    No provision of this Agreement may be modified except by a writing duly signed and delivered by all of the parties hereto.

8.5    This Agreement may be executed in multiple counter-parts, each of which shall be deemed an original, and of all which together shall constitute one and the same agreement.

8.6    The provisions contained herein, constitute the entire agreement between the parties with respect to the subject matter hereof and supersede all previous communications or representations, whether oral or written, between the parties with respect to the subject matter hereof.

8.7    The term "Deloitte FAS" means Deloitte Financial Advisory Services LLP, its successors and permitted assigns .

8.8    The obligations set forth in this Agreement precluding disclosure of the Confidential Information contained in the Databases expires on the later to occur of (i) three (3) years after the effective date of this Agreement, or (ii) the termination of the Consolidated Proceedings.

The parties hereto have signed this Agreement as of the date first appearing above.

**Signatures**

DELOITTE FINANCIAL ADVISORY SERVICES LLP

By:

*[signature]*

Name:  Scott I. Shaffer
Title:   Partner

REED SMITH LLP

By:    *[signature]*

Name:   JONATHAN S. QUINN
Title:    PARTNER

SABRE GROUP LLC                    HAROLD MOSKOWITZ

By:                                By:

Name:                              Name:
Title:                             Title:

LATIMER LEVAY JURASEK LLC

By:

Name:
Title:

6

"Paragraph" or "Sub-Paragraph" means the various paragraphs and sub-paragraphs of this Agreement.

8.4     No provision of this Agreement may be modified except by a writing duly signed and delivered by all of the parties hereto.

8.5     This Agreement may be executed in multiple counter-parts, each of which shall be deemed an original, and of all which together shall constitute one and the same agreement.

8.6     The provisions contained herein, constitute the entire agreement between the parties with respect to the subject matter hereof and supersede all previous communications or representations, whether oral or written, between the parties with respect to the subject matter hereof.

8.7     The term "Deloitte FAS" means Deloitte Financial Advisory Services LLP, its successors and permitted assigns .

8.8     The obligations set forth in this Agreement precluding disclosure of the Confidential Information contained in the Databases expires on the later to occur of (i) three (3) years after the effective date of this Agreement, or (ii) the termination of the Consolidated Proceedings.

The parties hereto have signed this Agreement as of the date first appearing above.

**Signatures**

DELOITTE FINANCIAL ADVISORY SERVICES LLP

By:
Name:
Title:

REED SMITH LLP

By:
Name:
Title:

SABRE GROUP LLC                              HAROLD MOSKOWITZ

By:                                          By:
Name: *DARRETT DOCHMAN*                      Name:
Title: *MEMBER*                              Title:

LATIMER LEVAY JURASEK LLC

"Paragraph" or "Sub-Paragraph" means the various paragraphs and sub-paragraphs of this Agreement.

8.4     No provision of this Agreement may be modified except by a writing duly signed and delivered by all of the parties hereto.

8.5     This Agreement may be executed in multiple counter-parts, each of which shall be deemed an original, and of all which together shall constitute one and the same agreement.

8.6     The provisions contained herein, constitute the entire agreement between the parties with respect to the subject matter hereof and supersede all previous communications or representations, whether oral or written, between the parties with respect to the subject matter hereof.

8.7     The term "Deloitte FAS" means Deloitte Financial Advisory Services LLP, its successors and permitted assigns .

8.8     The obligations set forth in this Agreement precluding disclosure of the Confidential Information contained in the Databases expires on the later to occur of (i) three (3) years after the effective date of this Agreement, or (ii) the termination of the Consolidated Proceedings.


The parties hereto have signed this Agreement as of the date first appearing above.


**Signatures**

DELOITTE FINANCIAL ADVISORY SERVICES LLP

By:
Name:
Title:


REED SMITH LLP

By:
Name:
Title:


SABRE GROUP LLC                           HAROLD MOSKOWITZ

By:                                       By:
Name:                                     Name:
Title:                                    Title:

LATIMER LEVAY JURASEK LLC

Donald E Levine
Counsel for Defendants

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PHOENIX BOND & INDEMNITY CO., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 05 C 4095 |
| v. | ) | Consolidated with No. 07 C 1367 |
| | ) | |
| JOHN BRIDGE, et al., | ) | Chief Judge James F. Holderman |
| | ) | |
| | ) | Magistrate Judge Maria Valdez |
| Defendants. | ) | |
| | ) | |

## AFFIDAVIT OF UMASHANKAR VISWANATHAN

Umashankar Viswanathan, being duly sworn, states as follows:

1.      I am a Manager at Deloitte FAS ("Deloitte"), which Phoenix Bond & Indemnity Co. and BCS Services, Inc. have hired as a consulting expert for damages in this litigation.

2.      Deloitte first received electronic data from Sabre Group, LLC ("Sabre") in connection with the Discovery Agreement (a copy of which is attached as Exhibit A to Plaintiffs' Emergency Motion for Relief) on May 27, 2009. The data that Sabre provided on May 27 contained one database, which appeared to be the Certificate Database, as that term is defined in the Discovery Agreement. On August 6, 2009, Sabre provided additional data, which appeared to be a Bid Book Database.

3.      Deloitte has reviewed and analyzed all of the electronic data that Sabre has provided to date. That analysis has included, among other things, comparing Sabre's data to tax sale data maintained by Cook County. Deloitte is familiar with the identity of defendants in this case who are also customers of CMS Services, LLC ("CMS"), and its review of the electronic data included an analysis of the completeness of information related to those defendants. Based on this analysis, the data provided by Sabre is missing, among other things, information regarding tax certificates purchased by other defendants in this litigation who are also customers

of CMS.

Dated: September 4, 2009

_____
UMASHANKAR VISWANATHAN

STATE OF ILLINOIS
COUNTY OT COOK

Sworn to and subscribed before me
this 4th day of September 2009

_____
NOTARY PUBLIC

OFFICIAL SEAL
JANET M DALLAVIA
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:07/03/10

US_ACTIVE-102278032.1