IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PHOENIX BOND & INDEMNITY CO., and BCS SERVICES, INC. | ) ) ) | |
| Plaintiffs, | ) ) | No. 05 C 4095 Consolidated with No. 07 C 1367 |
| v. | ) ) | |
| JOHN BRIDGE, et al., | ) ) | Judge Matthew F. Kennelly |
| Defendants. | ) | |

MOTION OF WHEELER-DEALER LTD AND TIMOTHY GRAY
FOR JUDGMENT AS A MATTER OF LAW

Wheeler-Dealer Ltd. and Timothy Gray move pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, for judgment against plaintiffs on Counts 5, 6 and 7 of the Complaint, on the grounds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the plaintiffs on those counts.

Plaintiffs have presented no evidence against the Gray Defendants from which a reasonable jury could find that there was a "tax buying entity" which was amassing liens through multiple bidders in violation of the Single Simultaneous Bidder Rule ("SSB Rule")(copy attached). A violation of that Rule is the basis of plaintiffs' lawsuit, being the only arguable criminal violation of the Mail Fraud statute which has been asserted in these cases.

No Violation of the SSB Rule

The evidence is uncontested that in 2003-2005, Wheeler-Dealer was not bidding on behalf of BG and BG was not bidding on behalf of Wheeler-Dealer, and neither of them were bidding on behalf of Midwest Real Estate Investment Company (MREIC) or any other entity. Each company

-1-

was acting independently and for its own benefit. The same was true in 2006 and 2007 as to Wheeler-Dealer and Atlantic Municipal. (T.Gray 924, 983, 991; D.Gray 807, 820). The evidence is uncontradicted that no liens were transferred from one entity to another, with the exception of one purchase on behalf of a profit-sharing plan. (T.Gray 982-83, D.Gray 812, Palasz 1810). The profit-sharing plan was not a bidder, and had no one else bidding on its behalf. ((T.Gray 982)

As summarized by Timothy Gray (Tr.988):

I own a hundred percent of my company. I have a hundred percent control in the line of credit which I went out and got from the bank, and I'm using that. No one owns my company. No one controls my finances. I have my own employees. And there is absolutely no question that there was anyone else bidding in that room for me.

Wheeler-Dealer doesn't get information on what BG is bidding on, and BG doesn't get information on what Wheeler-Dealer is bidding on. (T.Gray 973. D.Gray 825-26) In preparing for the tax sale, Timothy Gray receives basic information from the MREIC computer, then adds his own information to the bidding sheets, which he shows to no one. (T.Gray 971-74) Timothy Gray personally or his employee do the bidding at the sale. He personally or with his employees performs the many post sale tasks in managing the certificates, and managing the real estate when liens go to deed. (D.Gray 831-340, T.Gray 980-81). He receives assistance post-sale from MREIC only in the furnishing of lawyers to file petitions for deed. (T.Gray 920) Wheeler-Dealer pays a management fee to MREIC for office space and services provided. (D.Gray 835-841, T.Gray 922)

"Midwest Entities"

Plaintiffs attempted to show that "Midwest Entities" was such a "tax buying entity" having multiple bidders, but failed to show that this "entity" was anything more than the title that the accountant Robert Palasz gave to consolidated financial statements. (T.Gray 066, Palasz 1798) It was not an entity and it was not providing financing for the tax sales, or receiving any liens. or in

any way controlled the bidding entities. The consolidated statements relied upon by plaintiffs predated the period charged in the Complaint, and were issued because of a common line of credit that various entities shared. (Palasz 1799, 1811). It is undisputed that in 2001, well before the period charged in the Complaint, Wheeler-Dealer obtained its own line of credit that financed its purchases at the tax sales, after which Wheeler-Dealer was no longer on the common line of credit, and no longer included in the "Midwest Entities" consolidated statements. (T.Gray 912-13, 968-69, Palasz 1749, 1807-08, 1812). Plaintiffs attempt to spin the change in Wheeler-Dealer's treatment in the statements from 2000 to 2001 and the accompanying footnote, by asserting that it is a false declaration that Wheeler-Dealer is now independent. The evidence, however, is that the change is Wheeler-Dealer going off the common line of credit and obtaining its own line for use at the sales. Otherwise, it had always been a competitor at the sales. (T.Gray 970)

"Related Bidding Entities"

  Plaintiffs have argued that BG and Wheeler-Dealer in 2003-2005 and Wheeler-Dealer and Atlantic Municipal in 2006-2007 were "related" and thereby committed a criminal scheme to defraud. The meaning of a "related bidding entity" for purposes of the SSB Rule is clearly spelled out in a footnote to the Rule. There is no evidence the Treasurer was ever asked to expand the scope of that footnote, and, as stated in the Rule, "The determination of whether registered entities are related, so as to prevent the entities from bidding at the same time, is in the <u>sole and exclusive discretion</u> of the Cook County Treasurer or her designated representatives." (copy of the rule attached).

  "Related Bidding Entity": for purposes of the SSB Rule is defined in the footnote as an individual or entity "that has a shareholder, partner, principal, officer, general partner or other

person or entity having an ownership interest in common with, or contractual relationship with any other registrant..'' (copy attached) The term is limited to registered bidding entities. There is no evidence to contradict Timothy Gray's testimony that Wheeler-Dealer had no such relationship with either BG or Atlantic Municipal during the sales in issue in this case. (T.Gray 989) Timothy Gray sold his interest in Atlantic Municipal in 2004. (T.Gray 868, Palasz 1810).

     Any attempt to assert a broader meaning to "related entity" in the context of a RICO case risks the creation of a do-it-yourself crime. Although prosecutors are sometimes accused of doing this with the Mail Fraud statute, it certainly cannot be allowed as a strategy for a private business attempting to exact treble damages and attorney's fees from its competitors. In a mail fraud prosecution, the jury is informed by the indictment precisely what conduct of the defendant they must find in order to convict the defendant of a scheme to defraud. There is no such guidepost in this civil RICO case, with its bloated complaint that will not be sent to the jury. By playing with the word "related," both at the summary judgment stage and during this trial, plaintiffs are making the description of the scheme to defraud a moving target. For instance, plaintiff's counsel defined the rule in questioning Lori Levinson, "you can't have any relations with anyone else attending the sale." Seeking "relationship," plaintiffs dwell on the details of services provided to Wheeler-Dealer by MREIC, and the details of how the management fee charged to Wheeler-Dealer is calculated.. Plaintiffs read the accountant's terminology in financial statements like tea leaves, spinning terms such as "common business purpose," "affiliates," and "related party." As explained by the accountant, Robert Palasz, "common business purpose" did not mean that they were one business, or say anything about their relationship other than that they had a common line of credit and were in the same kind of business. It did not imply that entities were not competing with each

other at the tax sales. "Common business purpose" was a requirement of GAAP in order to have a combined statement. (Palasz 1799-1801) By "affiliates" he meant only that the entities were owned by members of the same family. (Palasz 1802) Palasz did not mean to imply in the statements that David Gray "controlled" the entities. (Palasz 1803)

No Attempt at Secrecy

The relationship between Wheeler-Dealer and BG in 2003-05 and Wheeler-Dealer and Atlantic Municipal in 2006-07 was no secret. David Gray was an "old timer" in the business and Dan Elkin, who did most of the bidding for BG and Atlantic Municipal was a long-time employee of David Gray's company, MREIC. There was no attempt to hide the fact that Timothy Gray was David Gray's son. (T.Gray 990-991) In fact there was an unsuccessful attempt to expel Wheeler-Dealer from the sale because of this family connection. Timothy Gray testified that he was challenged by a supervisor of the Treasurer's office that he was possibly in violation of the SSB Rule, and after examining the documents, the supervisor allowed both Gray family entities to continue participating in the sale (T.Gray 996-999).

"Representations and Warranties"

The registration papers for the tax sales beginning in 2004 contain a separate section called "Representations and Warranties." (copy attached). Again, as in the case of the footnote to the rule, this questionnaire is limited to a bidder's relations to "any other bidding entity." Although the form may have been motivated by a desire to discover violations of the SSB Rule, there is no indication that a false answer would constitute a violation of the rule. Martha Mills, the former chief legal counsel to the Count Treasurer, testified that doesn't know what the penalty would have been for false statements on the form. Certainly the making of a misstatement in a county

government form cannot, of itself, constitute the Federal crime of Mail Fraud. And it cannot be made a crime by the possibility that an entity would be excluded from the sale as the result of such a misstatement. The alleged scheme to defraud in this case must be confined to the placing of multiple bidders secretly obtaining liens for a common "principal," not the making of a misstatement on a form. If the latter were a crime, the courts would be inundated with civil RICO cases. As stated in an earlier court decision in this case, "The mail fraud statute, 18 U.S.C. §1341, defines a fraudulent scheme, rather than a particular false statement, as the crime." Phoenix Bond & Indemnity Co. v. Bridge, 477 F.3d 928, 932 (7th Cir. 2007).

No Misrepresentations

In any event, the affirmations of the Representations and Warranties by Wheeler-Dealer and BG in 2003-2005 and Wheeler-Dealer and Atlantic Municipal in 2006-2007 were not false. No evidence has been presented that these bidding entities had finances in common, common ownership or common source of funds. Timothy Gray testified to his reasonable belief that "common source of funds" meant funds used at the tax sale. (T.Gray 984-85, 999)

Guarantee of Loan

Plaintiffs assert that the fact that David Gray guaranteed the line of credit that Wheeler-Dealer used at the sale might come within the Representations and Warranties. It would take the ingenuity of a lawyer to demonstrate that a guarantee of a loan is the equivalent of "finances" or "source of funds." The finances for the sale came from the bank, not from David Gray. There is no evidence that the Treasurer was ever asked to put such a slant on these words. Certainly the point is obscure enough that failure of a lay person to perceive it cannot be evidence of a criminal "intent to defraud."

Loans from "Affiliates"

Plaintiffs have also dwelled on the loans made to Wheeler-Dealer by Atlantic Municipal, David Gray and the Profit-Sharing Plan. The testimony of David Gray, Timothy Gray and Robert Palasz that none of these funds was used at the tax sale, is uncontradicted. (T.Gray 959-60, 970, Palasz 1807-08) Plaintiffs have asserted that Wheeler-Dealer "continued to be funded" by Atlantic Municipal, whereas the evidence is that there was one loan made sometime prior to 2000 which remained on the books of Wheeler-Dealer until it was gradually repaid in 2005. This was obviously not new funding, but an old loan.. (Palasz 1777-80, 1789, 1792-95, 1806-07)

Tortious Interference

Judgment should be against plaintiffs on Count 7 of the Complaint, charging tortious interference with business expectancy. No violation of the SSB Rule by these defendants having been proved, defentants have done nothing to interfere with plaintiffs' expectancy of fair competition at the tax sales.

                                                      Respectfully submitted

                                                      s/ William T. Huyck

                                                      _____

                                                      Attorney for Wheeler-Dealer Ltd.
                                                        and Timothy Gray

William T. Huyck
122 S. Michigan Ave.
Suite 1850
Chicago IL 60603
(312) 427-7500
tomhuyck@yahoo.com

<u>CERTIFICATE OF SERVICE</u>

   The undersigned, an attorney, hereby certifies that on October 27, 2011, he served copies of the foregoing Motion of Wheeler-Dealer Ltd. and Timothy Gray for Judgment as a Matter Of Law on the parties of record pursuant to ECF.

    \_\_\_\_ s/ William T. Huyck \_\_\_\_\_