# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| **PHOENIX BOND & INDEM. CO.,** *et al.*, | ) | |
| | ) | |
| Plaintiffs | ) | No. 05 cv 4095 |
| | ) | |
| **JOHN BRIDGE,** *et al.* | ) | Judge Matthew Kennelly |
| | ) | |
| Defendants. | ) | |

## THE SASS DEFENDANTS' RENEWED AND SUPPLEMENTAL
## MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendants Sass Muni-IV, LLC; Sass Muni-V, LLC; MD Sass Tax Lien Management, LLC; MD Sass Municipal Finance Partners-IV, LLC; MD Sass Municipal Finance Partners-V, LLC; MD SASS Investor Services, Inc.; Vinaya Jessani; and Kirk Allison (the "Sass Defendants"), by their counsel, and pursuant to Federal Rule of Civil Procedure 50(a), respectfully renew their motion for judgment as a matter of law now that presentation of evidence to the jury has closed in these proceedings. In support of this renewed motion for judgment as a matter of law, the Sass Defendants adopt, and incorporate herein by this reference, the Memorandum of Law filed in support of their original motion for judgment as a matter of law. (*See, e.g.*, Dkt. Nos. 857 and 858).

### Adoption of Certain Grounds that Co-Defendants Have Raised

In addition, the Sass Defendants adopt, and incorporate herein by this reference, the arguments made by the BG Defendants in their motion for judgment as a matter of law with respect to the absence of evidence presented to the jury sufficient to support a finding that the Single Simultaneous Bidder Rule was violated, (*see* Dkt. 861 at Sect. I, p. 2-7), because these arguments are equally applicable to the Sass Defendants. The Sass Defendants also adopt, and incorporate herein by this reference, the arguments made by the Salta and HBZ Defendants in

their motion for judgment as a matter of law with respect to Plaintiffs' experts' damages calculation being based on unsupported assumptions, (*see* Dkt. No. 860 at p. 2-6), because these arguments are equally applicable to the Sass Defendants. Similar arguments were also presented by the BG Defendants, (*see* Dkt. 861 at Sect. III, p. 10-14), which the Sass Defendants also adopt, and incorporate herein by this reference.

**Supplemental Grounds and Authority for Judgment as a Matter of Law**

Beyond adopting these arguments by co-defendants, the Sass Defendants supplement their earlier Rule 50 motion with one new ground, a failure by plaintiffs to prove proximate cause, and additional authority on an existing ground, namely the plaintiffs' failure to prove a deprivation of property as required by the federal mail fraud law at issue.

With respect to proximate cause, in this matter, the Supreme Court has stated that "if the county knew petitioners' attestations were false but nonetheless permitted them to participate in the auction, then arguably the county's actions would constitute an intervening cause breaking the chain of causation between petitioners' misrepresentations and respondents' injury." *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 659 (2008). In evidence are numerous letters that the plaintiffs and their agents sent to the Treasurer that informed her of the alleged inaccuracies in auction registration attestations, along with testimony describing these and related efforts by the plaintiffs to ensure a fully-informed Treasurer. Tr. at 745-53. Yet, as Andrew Marks admitted during his testimony, "[d]espite all of these letters," the Treasurer's office "never barred [the accused] from the sale." Tr. at 752. What the Supreme Court described as arguably an intervening cause has now become, on the present trial record, action and inaction by the Treasurer that constitutes, as a matter of law, an actual intervening cause breaking the chain of proximate causation. *Bridge*, 553 U.S. at 659; *see Anza v. Ideal Steel Supply Corp.*, 547 U.S.

451, 461 (2006) ("When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries").[1] Plaintiffs have failed to segregate any portion of their alleged injuries that they suffered in the absence of the intervening cause. Hence, their claims should be dismissed as a matter of law.

With respect to the plaintiffs' failure to prove the deprivation of property rights as required under federal mail fraud laws, the Sass Defendants hereby supplement the authority set forth in Point II of their memorandum in support of their initial Rule 50 motion. Additional authority exists that precludes a finding here of cognizable "property rights" that could support the mail fraud allegations. Such "property rights" have been found not to exist when a mail fraud defendant has merely sought (1) to obtain a license from a state or municipality to participate in certain business activities, or (2) generally to increase its "market share." In *Cleveland v. United States*, 531 U.S. 12, 20-21 (2000), the Supreme Court delivered a unanimous opinion holding that false applications for state licenses to operate video poker machines did not involve the requisite "deprivation of property rights" to support a mail fraud conviction. The *Cleveland* Court acknowledged it did "not here question that video poker licensees may have property interests in their licenses," which gave rise to ensuing "stream of revenue" effects. *Id.* at 22, 25. Nevertheless, the Supreme Court rejected several arguments by prosecutors and vacated the conviction, in part to avoid "a sweeping expansion of federal criminal jurisdiction" and because "ambiguity concerning the ambit of criminal statutes should be resolved in favor of

---

[1] With respect to the Sass Defendants, the intervening cause argument is even more compelling than it is for other defendants because un-refuted evidence reflects the Sass Defendants never used multiple bidders and never shared funding sources with other bidders. *Cf.*, *BCS Services, Inc v. Heartwood*, 637 F.3d 750, 753 (7th Cir. 2011) ("[i]n each of the three conspiracies a kingpin financed the bidding activity of the group's members and when the kingpin agent's bidder would win a lien the kingpin would buy it from him"). As Judge Martha Mills testified, the concern she had in connection with the Single Simultaneous Bidder rule was shared funding sources. Tr. at 2774. That testimony reflects a good reason why no action was ever taken to bar any of the Sass Defendants from an auction. Moreover, each of these considerations reinforce the Sass Defendants' prior arguments that the Plaintiffs' evidence fails to demonstrate that the Sass Defendants participated in material false statements with scienter and a common fraudulent purpose. *See, e.g.*, Dkt. 858 at Sect. I, p 5-6.

lenity." *Id.* at 24-25. Importantly, the Supreme Court "conclude[d] that § 1341 [mail fraud] requires the object of the fraud to be ***'property' in the victim's hands.***" *Id.* at 26 (emphasis added). Consistent with this principle, courts have held that no such "property" in the victim's hands is at issue when a party has merely sought generally to increase its "market share." Last year, the court in *Edgenet, Inc. v. GS1 AISBL*, 742 F. Supp. 2d 997 (E.D. Wis. 2010), dismissed RICO claims finding an absence of "property" rights to support predicate acts of mail or wire fraud:

> [T]he alleged acts of mail and wire fraud cannot serve to create victims through a general scheme to eliminate competition. The Seventh Circuit has cited approvingly the proposition, and this court agrees, that competitive injury is not the type of harm which may form the basis for mail or wire fraud.

*Id.* at 1018 (citing *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1327 (7th Cir.1994). The *Edgenet* court adopted the reasoning that a "defendant's conduct was aimed at increasing market share at the expense of competitors, and '[m]arket share is neither tangible or intangible property; its loss is far too amorphous a blow to support a claim of mail fraud.'" *Id.* at 1019 n.13 (citations omitted). Likewise, theories involving a future effect on "market share" suffer from an additional defect because, for mail fraud, a "property" right must exist at the time of the false statement. *See United States v. Hosseini*, 436 F. Supp. 2d 963, 965-66 (N.D. Ill. 2006) (dismissing mail fraud charge based on the lack of a "deprivation of property rights" in connection with a money laundering scheme that placed false liens on automobiles to obstruct future forfeitures) (Shadur, J.).

Here, the plaintiffs' entire theory rests on the distribution of the lowest bids, namely zero-penalty rate bids, which forecloses harm to Cook County or the property owners. For this and other reasons stated in the Sass Defendants' initial motion, neither Cook County nor property

owners were ever "deprived of property rights" because there is no evidence that any of them ever paid any higher prices or received any lower prices or value as a result of any allegedly false statements. To the extent the plaintiffs could be considered potential victims, they never suffered the loss of any requisite "property in th[eir] hands," *Cleveland*, 531 U.S. at 26, only at most an incidental loss, if any,[2] based on alleged activities by defendants seeking an increase in market share, *Edgenet,* 742 F. Supp. 2d at 1018. Such limited proof is insufficient to support mail fraud charges. This is not a case in which a municipality's payment of money from its coffers is at issue. This is not a case in which a municipality or other victim paid for something that had different features or a lesser value than the bargained-for service or product. This is not a case in which a particular competitor was targeted for a particular piece of property it held. This is not a case involving allegations of corruption, such as bribery or kickbacks. In fact, the alleged scheme apparently promoted competition, or at least more favorable terms for the property owners, to the extent it resulted in more zero-penalty rate bids. Under these circumstances, the Sass Defendants should be granted judgment as a matter of law dismissing the claims against them.

**Conclusion**

For all these reasons, and for those as stated in the Sass Defendants' initial motion for judgment as a matter of law, the Sass Defendants respectfully renew their request that this Court grant them judgment as a matter of law dismissing all of the claims against them.

//

//

//

---

[2] Had the Treasurer barred related bidders, at some future points the plaintiffs would still have had to pay market value for any liens they did not actually receive. This is not a case in which either property was diverted after a competitor paid for it or confidential information was taken from a competitor.

Dated: October 30, 2011　　　　　　　　　Respectfully Submitted,


By:  /s/   Theodore M. Becker

Theodore M. Becker
Richard J. Pearl
Tedd M. Warden
MORGAN LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, Illinois 60601
(312) 324-1000 phone
(312) 324-1001 fax

*COUNSEL FOR DEFENDANTS SASS MUNI-IV, LLC; SASS MUNI-V, LLC; MD SASS TAX LIEN MANAGEMENT, LLC; MD SASS MUNICIPAL FINANCE PARTNERS-IV, LLC; MD SASS MUNICIPAL FINANCE PARTNERS-V, LLC; MD SASS INVESTOR SERVICES, INC.; VINAYA JESSANI; AND KIRK ALLISON (THE "SASS DEFENDANTS")*

**CERTIFICATE OF SERVICE**

    The undersigned, an attorney, certifies that he caused the foregoing Sass Defendants' Renewed Motion for Judgment as a Matter of Law to be served on all counsel of record by way of automatic notification using the Court's electronic filing system on this 30th day of October, 2011.

                                               /s/ Tedd M. Warden