IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PHOENIX BOND & INDEM. CO., et al., )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>JOHN BRIDGE, et al., )<br>)<br>Defendants. )<br>------------------------------------------------------- )<br>)<br>BCS SERVS., INC., et al., )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>HEARTWOOD 88, LLC, et al., )<br>)<br>Defendants. ) | Case No. 05 C 4095<br>consolidated with<br>Case No. 07 C 1367 |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

The Court has considered the parties' submissions regarding the judgment to be entered based on the claims decided by the jury at trial. The issues before the Court are: (1) whether and to what extent the defendants who lost at trial should get a setoff based on amounts plaintiffs received from other defendants in settlement; (2) whether the judgment should include the punitive damages plaintiffs were awarded on their state-law claims, in light of the fact that their compensatory damages awards under

RICO are subject to trebling; (3) whether the Court should make a finding under Rule 54(b) permitting an appeal even though the claims against the Wheeler-Dealer defendants remain to be adjudicated; and (4) whether and when post-judgment interest begins to accrue.

## Discussion

1.    The "one satisfaction" rule applies to plaintiffs' federal RICO claims. Under this rule, a plaintiff is entitled to only one satisfaction for a single injury. This rule "operates to prevent double recovery, or the overcompensation of a plaintiff for a single injury." *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 517 F.3d 1271, 1277 (11th Cir. 2008).

Under the one-satisfaction rule, amounts received in settlement from an alleged tortfeasor are credited against judgments for the same injury against non-settling tortfeasors. *Id.* at 1276; *Singer v. Olympia Brewing Co.*, 878 F.2d 596, 600 (2d Cir. 1989). Non-settling defendants "are entitled to a reduction in the judgment against them by the amounts received by [plaintiff] in settlement of claims for the same injury." *BUC Int'l Corp.*, 517 F.3d at 1278; *Singer*, 878 F.2d at 600 (under the one-satisfaction rule, "when a plaintiff receives a settlement from one defendant, a nonsettling defendant is entitled to a credit of the settlement amount against any judgment obtained by the plaintiff against the nonsettling defendant as long as both the settlement and judgment represent common damages.").

Plaintiffs' RICO claims involved three distinct "enterprises." The damages that plaintiffs were awarded based on injury they sustained at the hands of a defendant that participated in a particular enterprise do not represent the same injury as that caused by

2

any other enterprise.[1] On the other hand, as to multiple defendants that were claimed to have participated in the same RICO enterprise, there was a single compensatory damages award that covered both the RICO claims and the state-law claims against those defendants. These compensatory damages all arose from the same course of conduct and thus arise from the same injury.

The BG defendants were claimed to be part of the "Gray Enterprise." Because it does not appear that plaintiffs received any amounts in settlement from any other defendants who were claimed to have participated in that enterprise, the BG defendants are not entitled to any setoff based on any settlements obtained by plaintiffs.

By contrast, the injury represented by the RICO damage award against the Sass defendants is the same injury as that caused by other settling defendants in the "Sabre Enterprise," the enterprise in which the Sass defendants were claimed to have participated. Thus the one satisfaction rule entitles the Sass defendants to a setoff relating to amounts paid in settlement by the other Sabre Enterprise defendants.

Plaintiffs contend that there should be no setoff because the settlements with the other defendants covered matters beyond RICO compensatory damages, specifically, the state-law tortious interference claims, punitive damages, and RICO attorney's fees. Because plaintiffs suffered a single injury at the hands of the Sabre Enterprise, the fact that the settlements with those defendants may have involved both the RICO and state-law claims is not a basis to decline a setoff.

---

[1] The Court rejects the defendants' contention that the damages awarded against them in effect hold a given defendant liable for the conduct of others. The Court previously rejected this (or an indistinguishable) argument when defendants raised it before and during the trial and need not repeat here its basis for doing so.

With regard to attorney's fees, it is true that the settling defendants may well have settled based in whole or in part on their potential exposure to a statutory fee award. But this is not a separate injury; it stems from the same RICO violation. Because any attorney's fee award after a trial would not have been individualized on a defendant-by-defendant basis among the Sabre defendants, this factor affects only the amount against which any setoff should be made. Specifically, the setoff should be applied against the total amount of money to which plaintiffs are entitled to recover from the Sass defendants on the RICO claim, namely, the total damages (including trebling) plus any award of attorney's fees and expenses. Determining the setoff in this way furthers the one satisfaction rule's policy of preventing double payment.

The fact that the settling defendants were also resolving their exposure to punitive damages requires somewhat different treatment. Unlike compensatory damages, which were essentially determined on an enterprise-by-enterprise basis, punitive damages are individualized on a defendant-by-defendant basis. It is reasonable to assume that if the settling defendants had gone to trial, the overall amount of punitive damages assessed by the jury would have been greater than the overall amount that it assessed against the defendants who actually went to trial. In addition, any given settling defendant's punitive damages exposure might have been greater or lesser than that of the defendants who proceeded to trial.

Determining how to factor the punitive damages issue into the amount of setoff is no simple matter. Plaintiffs contend that because the settlements covered all types of exposure, there should be no setoff. Defendants contend that because the settlements did not specify what proportions of a settlement payment covered what aspects of the

4

settling defendant's exposure, then the entire settlement payment should be set off. The Court is unpersuaded that this is simply a matter of the allocation of the burden of proof, as each side essentially argues.[2] Rather, it involves adherence to the principles underlying the one satisfaction rule, which is a rule of equity. *See* BG Defs.' Resp. at 4 (citing authorities). Though it is equitable to give the Sass defendants a setoff for amounts paid to settle exposure for which they would have been jointly liable – compensatory damages and attorney's fees – equity does not entitle them to a setoff of amounts paid to settle punitive damages exposure, for which each defendant would have been separately liable. In addition, punitive damages do not represent "common damages," *Singer*, 878 F.2d at 600, given their assessment on a defendant-by-defendant basis.

Neither plaintiffs nor the Sass defendants has offered a proposal for how the settlements should be allocated if the Court did not adopt the all-or-nothing approach. The Court will direct them to do so (separately if necessary) in a joint submission to be filed by no later than January 9, 2012. Each side's proposal should take the Court's rulings in this order as a given and should address how the setoff should be performed in light of those rulings. The Court also expects each side to provide a reasoned justification for its particular proposal regarding how to take account of the punitive

---

[2] Defendants make the point that they did not have the opportunity to review the other defendants' settlement agreements before they were concluded, but the fact is that no legal rule entitled them to do so (nor did they ask the Court to order this). Federal law provides no common law right of contribution, and the Illinois Contribution Act, which gives a non-settling defendant an opportunity to object to a settling defendant's request for a "good faith" finding insulating it from further liability, *see* 140 ILCS 100/2(c) & (d), does not apply to intentional torts. *See Gerill Corp. v. Jack L. Hargrove Builders, Inc.*, 128 Ill. 2d 179, 206, 538 N.E.2d 530, 542 (1989).

damages issue as addressed in this decision.

The Court's conclusion that the setoff should be applied against a total that includes not-yet-assessed attorney's fees gives rise to a logistical problem, because it will be some time before the Court makes a fee award (assuming the judgment survives defendants' post-trial motions). Plaintiffs are entitled to a judgment now due to the fact that the amount the jury awarded declines in value every day that interest is not accruing – and both sides appear to agree that interest is not yet accruing. The Court directs plaintiffs and the Sass defendants to make proposals regarding how to handle this. Their respective proposals should be included in the January 9 submission.

2. Defendants argue that plaintiffs are not entitled to a judgment that cumulates their trebled damages under RICO and the punitive damages awarded on their tortious interference claim. The Court disagrees.

Defendants contend that trebling under RICO is a form of punitive damages, citing a Third Circuit case and *Liquid Air Corp. v. Rogers*, 834 F.2d 1297 (7th Cir. 1987). They do not cite *Liquid Air* correctly on this point.

The Seventh Circuit has drawn a distinction between "punitive damages" and "a statutory penalty such as treble damages under the antitrust laws." *Jackson v. Resolution GGF Oy*, 136 F.3d 1130, 1133 (7th Cir. 1998). Congress modeled RICO's civil action provision on the civil action provision of the antitrust laws. *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 267 (1992). In *Liquid Air*, the Seventh Circuit stated that "[a]lthough there is some sense in which RICO treble damages are punitive, they are largely compensatory in the special sense that they ensure that wrongs will be redressed in light of the recognized difficulties of itemizing

6

damages." *Liquid Air Corp.*, 834 F.2d at 1310 n.8.

Statutory trebling sometimes is considered the equivalent of punitive damages and sometimes is not; the question is statute-dependent.[3] The Supreme Court has consistently characterized RICO's treble damages provision (and the parallel treble damages provision in the Clayton Act, on which RICO's damage provision was modeled) as remedial rather than punitive. *See Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 151 ("Both RICO and the Clayton Act are designed to remedy economic injury by providing for the recovery of treble damages, costs, and attorney's fees."), *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 240(1987) (referring to the "remedial role of the treble-damages provision" in RICO), *Am. Soc'y of Mech. Eng'rs, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 575 (1982) (stating that the provision for treble damages in private antitrust cases "make[s] the remedy meaningful by counter-balancing the difficulty of maintaining a private suit under the antitrust laws" (internal quotation marks and citation omitted)), *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 485–86 (1977) (characterizing the antitrust statutes' treble damages provision as "in essence a remedial provision"). *See also PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 406 (2003) (stating that the application of an arbitration agreement's punitive damages prohibition to RICO's provision for treble damages "is,to say the least, in doubt" given the Court's characterization of RICO trebling as remedial).

---

[3] *See, e.g., Estate of Parsons v. Palestinian Authority*, 651 F.3d 118, 148-49 & n.9 (D.C. Cir. 2011) (Brown, J., concurring in part and dissenting in part); *Alea London Ltd. v. American Home Servs., Inc.*, 638 F.3d 768, 777-78 (11th Cir. 2011); *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708, 715-16 (9th Cir. 2010); *In re Seagate Technology, LLC*, 497 F.3d 1360, 1382-83 (Fed. Cir. 2007).

For this reason, the Seventh Circuit's decision in *Perez v. Z Frank Oldsmobile, Inc.*, 223 F.3d 617 (7th Cir. 2000), cited by defendants, is not controlling in the present situation. In *Perez*, the court said that a plaintiff could not get both statutory trebling under the Federal Odometer Act and an additional multiplier under the parallel Illinois statute. Given the Supreme Court's characterization of RICO's trebling provision as remedial, trebling under RICO does not constitute double payment of the same damages assessed by the jury in its punitive damages awards on the tortious interference claim. The latter damages, unlike RICO trebling, are unquestionably punitive in nature. Thus they are not parallel to RICO trebling, in contrast to the two parallel statutes at issue in *Perez*.

For these reasons, the Court rejects defendants' proposal to vacate the state-law punitive damages awards and concludes that plaintiffs are entitled to recover both the state-law punitive damages and RICO damage as trebled under that statute.

3 & 4. Plaintiffs request a Rule 54(b) finding. Defendants object and have requested a further opportunity to brief the point. Defendants likewise appear to contend that interest will not begin to accrue on the judgment unless and until the Court makes a Rule 54(b) finding. Were the Court to accept both defendants' position that there should be no Rule 54(b) finding and their position that interest will not accrue until there is a Rule 54(b) finding, it would give rise to an unfair situation in which plaintiffs' judgment continues to decline in value while everyone awaits adjudication of the claims against the Wheeler-Dealer defendants.

The Court questions whether it is true, as defendants suggest, that post-judgment interest does not accrue in this situation until there is either a complete

judgment involving all parties or a partial judgment with a Rule 54(b) finding. It may be that post-judgment interest will begin to accrue once a judgment is entered against the defendants who lost at trial, even though that judgment would be non-appealable absent a Rule 54(b) finding.

The parties' joint submission that is due on January 9 should include their respective positions on these issues – both the issue of when post-judgment interest begins to accrue and the issue of whether the Court should make a Rule 54(b) finding.

5. The Sass defendants did not provide the Court with the settlement amounts that they argued should be offset against the amounts to which plaintiffs otherwise would be entitled. Plaintiffs and the Sass defendants are directed to provide these amounts in the same January 9 joint submission. Although the settlements may have been subject to confidentiality agreements, the Court will be using them as the basis for an offset of a judgment that must be entered in the public record. The joint submission therefore should be filed in the public record as well.[4]

The parties likewise have not addressed how the Court should account via the setoff for the fact that there are two separate plaintiffs with two separate sets of damage awards. This, too, should be addressed in the parties' joint submission due on January 9.

Finally, the Court requests further input regarding whether, in view of the Court's ruling regarding the Sass defendants' entitlement to a setoff, the judgment as it relates to those defendants should be in the full amount awarded by the jury; whether it should

---

[4] The Court notes that by virtue of electronic service as accomplished by the federal courts' electronic docketing system, the settling parties, whose attorneys' appearances are still on the docket, will receive notice of the present order.

state that amount and then reduce it via the setoff; whether it should state only the net amount after the setoff; or whether some other method is appropriate. The parties should address this in their January 9 joint submission.

## Conclusion

The Court rules on the defendants' request for a setoff as described in this decision. A joint submission addressing the points identified in the submission is to be filed by January 9, 2011. The Court acknowledges that this is a short time frame, but at this point plaintiffs have been awaiting entry of a judgment of some sort (final or otherwise) for nearly two months, and they should not have to wait much longer. The case is set for a status hearing on January 12, 2011 at 9:30 a.m.

                                                                s/ Matthew F. Kennelly
                                                              MATTHEW F. KENNELLY
                                                              United States District Judge

Date: January 2, 2012