IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PHOENIX BOND & INDEM. CO., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 05 C 4095 |
| | ) | consolidated with |
| JOHN BRIDGE, et al., | ) | Case No. 07 C 1367 |
| | ) | |
| Defendants. | ) | |
| ---------------------------------------------------------- | ) | |
| | ) | |
| BCS SERVS., INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| HEARTWOOD 88, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The Court has considered the parties' arguments regarding setoff and entry of judgment.

**Prior determinations by the Court**

1. The Court previously determined that the BG defendants are not entitled to a setoff based on settlements the plaintiffs obtained from other defendants. *Phoenix Bond & Indem. Co. v. Bridge*, Nos. 05 C 4095 & 07 C 1367, 2012 WL 8706, at *1 (N.D. Ill. Jan. 2, 2012).

2.     The Court also determined that the Sass defendants are entitled to a setoff based on the so-called "one satisfaction" doctrine. Specifically, the Court ruled that the total amount the plaintiffs are entitled to recover from the Sass defendants on the RICO claims (including trebled damages, attorney's fees, and costs) should be offset by amounts the plaintiffs obtained via settlement from other members of the Sabre Enterprise, in which the Sass defendants were alleged to have participated. *Id.* at *1-2.

3.     The Court further determined that the punitive damages awards that the jury made against the Sass defendants on the tortious interference claim are not subject to setoff and that plaintiffs are entitled to recover those amounts over and above whatever they recover on the RICO claims. *Id.* at *2.

### Plaintiffs' additional setoff argument

4.     Plaintiffs contend that a setoff is inappropriate because the jury was asked to award only damages caused by the Sass defendants themselves, not the Sabre enterprise. Plaintiffs' first argument, involving the name change from "Sabre defendants" to "Sass defendants" on the verdict form that the Court made at the last minute, is without merit. The Court made this change to avoid unfair prejudice against the Sass defendants (who had been called the "Sass defendants" throughout the trial), not to affect how the jury considered and awarded damages.

Plaintiffs' second argument is based on a comparison between the compensatory damages awarded and the amount they requested. The jury was told to award damages caused by "the defendant's wrongful conduct." Plaintiffs' damages evidence as presented at trial was based on damages caused by the Sabre Enterprise

as a whole. The jury awarded BCS Services about fifty-six percent of the compensatory damages it sought from the Sass defendants ($1,232,500 / $2,200,000) and awarded Phoenix Bond about forty-eight percent of the compensatory damages it sought from those defendants ($875,000 / $1,818,000). Plaintiffs infer from these differentials that the jury was attempting to parse out the damages caused by the Sass defendants as distinct from those caused by other members of the enterprise.

The Court notes that with regard to the BG defendants (who, like the Sass defendants, constituted some but not all of the members of the RICO enterprise in which they were alleged to have participated), the jury awarded BCS Services about seventy-seven percent of the damages it sought from the BG defendants ($363,000 / $468,000) and awarded Phoenix Bond about seventy percent of the damages it sought from those defendants ($304,625 / $455,000).

Though plaintiffs have offered an arguably plausible interpretation of the jury's decision, it is not the only plausible interpretation. The other is that the jury was unpersuaded that plaintiffs had proven the full amount of damages they sought. Given the fact that the disparities between the requested amounts and the awards against the Sass defendants are not uniform with regard to the two plaintiffs, the Court believes that the latter interpretation is the most reasonable. For this reason, the Court rejects plaintiffs' contention that a setoff is inappropriate.

### The jury's award

5. The jury's compensatory damages award in favor of each plaintiff and against various defendants was, for each plaintiff, a single award that covered both the RICO and tortious interference claims. The jury awarded compensatory damages as

3

follows:

    For Phoenix Bond:  $ 875,000 against Sass defendants

                             $ 304,625 against BG defendants

    For BCS Services:  $1,232,500 against Sass defendants

                             $ 363,000 against BG defendants

6.     The jury awarded punitive damages in varying amounts against different defendants, with the totals as follows:

    For Phoenix Bond:  $ 757,500 against Sass defendants

                              351,300 against BG defendants

    For BCS Services:  $1,048,000 against Sass defendants

                             $ 291,000 against BG defendants

### Allocation of the settlements

7.     The plaintiffs received a total of $7,075,000 in settlement from other members of the Sabre Enterprise. The two plaintiffs divided this evenly – $3,537,500 each.

8.     Each of the settling defendants was exposed to liability for compensatory damages on the RICO and tortious interference claims as well as punitive damages on the tortious interference claim. This is so even if the complaint, at the relevant time, did not specifically request punitive damages on the tortious interference claim. It is settled law in Illinois that punitive damages are available in appropriate circumstances on a claim of that type.

9.     The settlements did not allocate the payments as between actual and punitive damages. This is not surprising, nor it is determinative of how the Court

allocates the settlement payments for purposes of setoff. A contrary rule would, among other things, encourage parties to manipulate settlement agreements to affect how they are used in a setoff.

10. The Sass defendants argue that the settlement payments should not be considered to include anything for punitive damages at all. This argument borders on the frivolous. There was no question that the settling defendants were exposed to, and knew they were exposed to, liability for punitive damages just as they were exposed to liability for compensatory damages. It would defy common sense to consider the settlements, for setoff purposes, as covering only compensatory damages.

11. The one-satisfaction doctrine is an equitable rule that operates to prevent double payment of a plaintiff. It should not, however, be applied in a way that leads to causes less-than-single payment. The Sass defendants' proposal for how punitive damages should be figured in if they are considered is strained and convoluted, and in the Court's view it would result in undercompensation.

12. Plaintiffs' proposal to allocate the settlement payments between compensatory and punitive damages in the same proportion in which the jury awarded compensatory and punitive damages is a reasonable and equitable means of allocation that does not unduly favor either side. The Court adopts plaintiffs' proposal to allocate 46.14 percent of the settlement payments to punitive damages and the rest to compensatory damages.

**Other issues**

13. The Court cannot appropriately add "prejudgment interest" as such to the amount awarded by the jury, because that is a factual matter whose determination was

5

conferred on the jury. That said, plaintiffs are unfairly prejudiced by the delay between the return of the verdict on November 7, 2011 and the date on which judgment is entered, which the Court anticipates will be no later than January 24, 2012. The delay was not the result of any fault by the plaintiffs but rather occurred because of two factors: the fact the jury did not return a verdict as to defendants Wheeler-Dealer, Ltd. and Timothy Gray (who are, at this point, no longer parties to the case), and defendants' contention that they were entitled to a setoff.

The Court has ruled that the Sass defendants should get a setoff, but this does not entitle them or the BG defendants (who are not entitled to a setoff) to the windfall they would receive were there no interest on the jury's award running from its date. Under normal circumstances, the Court would have entered judgment the after the jury's verdict, November 8, 2011, and post-judgment interest would have run from that date. For this reason, and to avoid unfair prejudice to plaintiffs, the judgment that the Court will enter will state that post-judgment interest pursuant to 28 U.S.C. § 1961 will run from the date of November 8, 2011.

## Conclusion

The Court will enter judgment consistent with the rulings made in this decision.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: January 24, 2012