**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PHOENIX BOND & INDEMNITY, CO., *et al.*, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case Nos.    05 C 4095 |
| | ) | <u>and</u>         07 C 1367 |
| JOHN BRIDGE, *et al.*, | ) | |
| Defendants. | ) | |

**<u>DEFENDANT SASS PARTIES' RESPONSE TO PLAINTIFFS' PETITIONS FOR
ADDITIONAL ATTORNEYS' FEES</u>**

Now come Defendants MD Sass Investors Services, Inc., MD Sass Municipal Finance

Partners – IV, LLC, MD Sass Municipal Finance Partners – V, LLC, MD Sass Tax Lien

Management, LLC, Sass Muni-IV LLC and Sass Muni-V LLC (the "*Sass Parties*"), by their

counsel, Goldstein & McClintock LLLP, pursuant to Rule 54 of the Federal Rules of Civil

Procedure and Rule 54.3 of the Local Rules for the United States District Court for the Northern

District of Illinois and submit this response to Plaintiffs Phoenix Bond & Indemnity Company

("*Phoenix Bond*") and BCS Services, Inc.'s ("*BCS*") Petitions for Additional Attorneys' Fees and

in support thereof state as follows:

**<u>INTRODUCTION</u>**

As a result of this seven-year litigation, the Sass Parties have paid Plaintiffs Phoenix

Bond and BCS $10,458,132.21 in attorneys' fees.  This includes the entire $8,158,262.97 amount

for which the Sass and Gray Parties[1] were jointly and severally liable.  Now, more than two

years after judgment was entered and nearly four months after the Seventh Circuit decided the

---

[1] As with previous briefing, the term "Gray Parties" refers to Defendants BG Investments, Inc., Bonnie
Gray, Midwest Real Estate Investment Co., David Gray, Atlantic Municipal Corp., and Midwest Real Estate
Investment Company Employee Profit Sharing Plan & Trust

1

resulting appeals, Plaintiffs demand more from the Sass Parties. This has come in the form of their petitions for additional attorneys' fees.

As a threshold matter, both petitions are untimely and should be denied outright. Under Federal Rule 54 and Local Rule 54.3, Plaintiffs had ninety-one days from the Seventh Circuit's appellate decision to file their petitions. The Seventh Circuit decided the appeals on August 23, 2013. Plaintiffs filed their petitions on December 20, 2013 – 119 days later. As such, the petitions exceed the deadline in the Rules and on that basis, must be denied.

But even if this were not the case, the Sass Parties still should not have to pay any of Plaintiffs' additional fees. The Sass Parties have already covered a disproportionate share of the attorneys' fees. Most notably, they paid the entire $8,158,262.27 joint and several award, while the equally liable Gray Parties paid nothing. So the burden of any additional fees should fall exclusively on the Gray Parties.

In the alternative, the Court should strike most of the requested fees as unreasonable or inappropriate. Specifically, Plaintiffs ask for $305,214.40 in fees that they did not pay. Plaintiffs also request $56,821.50 in fees that relate exclusively to the Gray Parties and $7,823.50 that relates to the Sass Parties motion for contribution (which did not involve the Plaintiffs). Aside from these problems, Plaintiffs have submitted numerous time entries with vague descriptions, like "attention to" or "worked on," and bundled identical descriptions for several consecutive entries. Taken together, all of these issues demonstrate that, on numerous occasions, Plaintiffs have not met their burden of showing that their fees are reasonable. And so these unreasonable fees should be stricken.

In short, Plaintiffs' petitions run afoul of two federal rules and seek additional fees from defendants that have already paid more than enough. The petitions should be denied, and this case should be allowed to end.

## ARGUMENT

I. **PLAINTIFFS' PETITION IS UNTIMELY UNDER FEDERAL RULE 54 AND LOCAL RULE 54.3**

Under Federal Rule 54, a party has fourteen days from the entry of judgment to seek an award of fees, "unless a statute…provides otherwise." Fed. R. Civ. Pro. 54(d)(2)(B)(i); *Robinson v. City of Harvey*, 617 F.3d 915, 918 (7th Cir. 2010). In the Northern District of Illinois, Local Rule 54.3 qualifies as a statute that "provides otherwise." *Id.* The Local Rule extends the time for filing the petition to ninety-one days after the entry of judgment. Local R. N.D. Ill. 54.3(b); *Robinson*, 617 F.3d at 918. Courts apply this deadline strictly. *Id.* ("We are not disposed to undermine time limits in the national and local rules."); *see also Quick v. People's Bank of Cullman Cty.*, 993 F.2d 793, 799 (11th Cir. 1993) ("An overly permissive exercise of discretion in excusing unawareness of time limits under the local rules would render them meaningless.").

Rule 54 defines "judgment" as "any decree or order from which an appeal lies." Fed. R. 54(a); *see Robinson*, 617 F.3d at 918 (setting the last "entry of judgment" date as the date the last appeal was decided); *Quigley v. Rosenthal*, 427 F.3d 1232, 1236-37 (10th Cir. 2005). Here, the Seventh Circuit decided the last appeal on August 23, 2013. (No. 12-3235, *et al*; Dkt #110). Plaintiffs filed their petitions for additional fees on December 20, 2013 – 119 days later. (No. 05-cv-04095; Dkt. #s 1185, 1187). So Plaintiffs' petitions fall outside of the ninety-one day window in Local Rule 54.3(b). Therefore, they are untimely and should be denied in their entirety.

The Court cannot excuse Plaintiffs' neglect. First, prior to filing their petitions, Plaintiffs made no attempt to meet and confer with the Defendants, as required by Local Rule 54.3(d). Local R. N.D. Ill. 54.3(d). Plaintiffs cannot plead ignorance to this requirement because they engaged in an extensive meet and confer prior to filing their original fee petition.[2] (Judge Kennelly 11/23/11 Order); (2/3/12 Joint Statement Regarding Plaintiffs' Petition for Attorneys' Fees and Costs). The meet and confer is important, as it is the reason that the Local Rules extend the time for filing a fee petition from fourteen to ninety-one days. *Robinson*, 617 F.3d at 918. So Plaintiffs' refusal to comply is not insignificant, but rather, evidences a complete disregard for the rules governing fee petitions. Such neglect cannot be excusable.

Further, as the Seventh Circuit explained, courts "need good reasons for permitting litigants to exceed deadlines." *Robinson*, 617 F.3d at 919. And "good reasons" do not exist in situations such as this, where a party does not seek extensions and ignores the rules. *Id.*

In *Robinson*, a plaintiff filed his motion for additional fees outside Local Rule 54.3's ninety-one day window. *Id.* The plaintiff did not ask for any extensions and did not attempt to meet and confer. *Id.* The district court excused the plaintiff's neglect and allowed the fee petition to proceed. *Id* at 918-919. But the Seventh Circuit reversed, holding that the plaintiff's failure to ask for an extension or attempt to meet and confer defeated his claim of excusable neglect. *Id.* The Court asserted that it was "not disposed to undermine time limits in the national and local rules," which are intended to prevent what occurred in *Robinson* – "the revival of a case that the defendant supposed had long been closed." *Id.* at 918.

Phoenix Bond and BCS have mirrored the plaintiff in *Robinson*. They have filed a petition for additional fees outside the ninety-one day window. They never asked for an

---

[2] This included the exchange of time entries, a conference between the parties' attorneys and a twenty-five page joint statement with fifty-two pages of exhibits. (2/3/11 Joint Statement Regarding Plaintiffs' Petition for Attorneys' Fees and Costs).

extension. They did not attempt to meet and confer. And moreover, like the plaintiff in *Robinson*, they filed their petitions long after the case was closed. Thus, Plaintiffs have no claim that their failure to meet the deadlines in Local Rule 54.3 is excusable neglect.

In short, Local Rule 54.3 sets forth a strictly applied deadline that Plaintiffs did not meet. Therefore, the Court should deny their petitions for additional fees.

## II.     THE SASS PARTIES HAVE ALREADY PAID A DISPROPORTIONATE SHARE OF THE ATTORNEYS' FEES

In its original fee award, the Court held the Sass and Gray Parties jointly and severally liable for $8,158,262.97, or 60% of Plaintiffs' attorneys' fees. (Judge Kennelly 12/21/12 Op. at 6-7). Given that the Court held both parties equally responsible for these fees, a fair share for each would have been half, or $4,079,131.47. Instead, the Sass Parties paid the entire $8,158,262.97 on their own. In other words, they paid $4,079,131.47 more than their fair share, while the Gray Parties paid nothing.

In their petitions for additional fees, Plaintiffs seek a combined $1,063,799.15. This is well below the excess $4,079,131.47 that the Sass Parties paid on the original award. Thus, any additional fees should fall solely on the Gray Parties. In fact, even if the Court were to make the Gray Parties pay all $1,063,799.15 of the additional fees that Plaintiffs request, they would still have paid approximately $3 million less than their fair share of Plaintiffs' total fees. So leaving the Gray Parties with the entirety of any additional fee award would hardly be an inequitable result.

Thus, any additional fees should fall solely on the Gray Parties.

### III. IN THE ALTERNATIVE, THE COURT SHOULD REDUCE THE PLAINTIFFS REQUESTED FEES

Under RICO, Plaintiffs can collect their "reasonable" attorneys' fees. 18 U.S.C. 1964(c). But they have the burden of demonstrating that the fees are reasonable. *Golzer v. Astrue*, No. 09 C 1847, 2011 WL 3755180, at *1 (N.D. Ill. Aug. 25. 2011).

Combined, Plaintiffs ask for $1,080,650.15 in additional fees and costs.[3] Immediately, the Court should exclude $56,821.50 that Plaintiffs' time entries attribute exclusively to the Gray Parties. (Ex. A; Gray Party Fees). Further, Plaintiffs should not be compensated for $7,823.50 in fees that relate to the Sass Parties' motion for contribution. (Ex. B; Motion for Contribution Fees). That motion did not involve the Plaintiffs.

The remaining fees should be reduced as follows:

#### A. Plaintiffs Cannot Seek $78,620.90 in Fees to Reed Smith and $226,593.60 in Fees to Richard J. Pendergrast Because Plaintiffs Did Not Pay Those Charges

As the Supreme Court has explained, "hours not properly billed to one's *client* are not properly billed to one's *adversary* pursuant to [a fee-shifting provision]." *Hensley v. Eckersley*, 461 U.S. 424, 434 (1983) (emphasis in original). Here, Plaintiffs seek a total of $305,214.50 in fees that they did not pay.

***First,*** Phoenix Bond and BCS each seek $70,216.50 in fees for Reed Smith's work between September 4, 2012 and January 22, 2013. This only covers the period where Reed Smith represented both plaintiffs. With their petitions, each plaintiff submitted a time entry sheet showing $140,433.00 in charges for this period. The time entries for each plaintiff were

---

[3] Individually, Phoenix Bond requests $391,385.42, and BCS requests $689,265.15. By contrast, from September 1, 2012 through December 31, 2013, the Sass Parties spent only $275,753.32 on fees and costs. (Ex. C; Sass Parties' Legal Bills). So the Sass Parties were able to complete their appellate work for 70% of Phoenix Bond's requested fees and costs and 40% of BCS' requested fees and costs.

identical. So rather than seeking a double recovery for the same work, Plaintiffs each asked for half of these fees, or $70,216.50.

But the invoice attached as Exhibit 4 to Phoenix Bond's petition shows a combined charge of only $61,761.10 to both Plaintiffs. Of this, Phoenix Bond's total bill is $30,906.05. That includes $10,048.93 in hourly charges that it paid, $10,048.93 in hourly charges that had not yet been paid, and a $10,808.19 success fee. BCS is allocated $20,097.86 in hourly charges, without a success fee indicated. This leaves $10,808.19 unaccounted for. Even if this amount is charged to BCS, it would mean that each Plaintiff was charged only $30,906.05 by Reed Smith. This is $39,310.45 less than each Plaintiff seeks in its petition.

The chart below indicates the breakdown:

|  | Phoenix Bond | BCS |
|---|---|---|
| Amount on Time Entries (Phoenix Bond Ex. 3 and BCS Ex. 1 ) | $140,433.00 | $140,433.00 |
| Amount Sought | $70,216.50 | $70,216.50 |
| Amount Invoiced (Phoenix Bond Ex. 4) | $30,880.55 | $30,880.50 |
| Amount Paid, including Success Fee (Phoenix Bond Ex. 4) | $30,880.55 | $20,072.36 |
| Amount Sought but not Charged to Client | $39,335.95 | $39,335.95 |

Consequently, both Plaintiffs were not billed for $39,335.95 in fees from Reed Smith that they seek in their petitions. (Ex. D; Unpaid Reed Smith Fees and Costs). As such, the Court should exclude that amount from both of their awards.

**Second**, BCS has shown no evidence that it paid anything beyond a $35,000 retainer to Richard J. Pendergrast Ltd. ("*Pendergrast*"). (Ex. E; Unpaid Pendergrast Fees). The invoice BCS attached to its petition shows $261,593.50 in charges. After subtracting the $35,000 retainer, BCS has a bill of $226,593.50. There is no evidence in the petition or the attached

exhibits that BCS paid this amount. Therefore, the Court should strike $226,593.50 in fees from BCS' petition.

### B. Plaintiffs' Fees are Unreasonable

Fees are unreasonable if no client, in an "arms-length" transaction, would pay them. *Matter of Chi., Milw., St. Paul & Pacific, R.R. Co.*, 840 F.3d 1308, 1318 n. 7 (7th Cir. 1988). In this case, five categories of Plaintiffs' fees are unreasonable: (1) Unpaid fees and costs to Reed Smith and Pendergrast; (2) All of Pendergrast's Fees; (3) Vague time entries; (4) Fees for preparing these petitions; and (5) Fees for the preparing the supplements to Plaintiffs' original fee petitions.

#### 1. The Reed Smith and Pendergrast Fees Are Not Reasonable Because Plaintiffs Did Not Pay Them

As noted above, unlike the fees at issue in the original petition, Plaintiffs did not pay $78,620.90 of Reed Smith's fees and $226,593.50 of Pendergrast's fees. Plaintiffs also did not pay $1,752 in costs from Reed Smith. (Ex. D; Unpaid Reed Smith Fees and Costs); (Ex. E; Unpaid Pendergrast Fees and Costs). Consequently, they cannot demonstrate that a client would have paid these charges in an "arms-length" transaction.

*First,* Reed Smith did not include many of the entries on its time sheets in its invoice to Phoenix Bond. (Ex. D; Unpaid Reed Smith Fees and Costs). Exhibit 3 of Phoenix Bond's petition shows time entries adding up to $140,433. But the time entries on the invoice attached as Exhibit 4 only add up to $61,761.10. As to costs, the story is the same. Phoenix Bond's Exhibit 3 shows costs adding up to $1,752.43. But Exhibit 4 shows that Reed Smith only invoiced one $51.00 meal expense. Thus, Reed Smith did not believe Plaintiffs would pay the fees and costs noted on Exhibit D and, accordingly, omitted them from the bill.

***Second,*** Pendergrast submitted an invoice with time entries adding up to $261,593.50. The invoice subtracted $35,000 for the retainer, but did not indicate that BCS had paid the remaining $226,593.50. (Ex. E; Unpaid Pendergrast Fees). BCS has presented no evidence that it paid these fees, or even that it intends to pay these fees.

In sum, there is no evidence that Plaintiffs did or would pay the costs and fees noted on Exhibits D and E. Therefore, those costs and fees are unreasonable and should not be charged to the Sass Parties.

### 2. All of Pendergrast's Fees are Unreasonable Because BCS has not Demonstrated Why it Needed to Hire Pendergrast

BCS hired Pendergrast solely for the appeal. But neither BCS' petition nor the attached exhibits explain why BCS needed Pendergrast, especially when it already had competent counsel that had just won significant damage and attorneys' fee awards. Pendergrast's website does not tout any particular expertise in appeals. Indeed, the time entries that BCS attaches as exhibits show that Pendergrast did no more (and possibly less) substantive work on the appeal than Reed Smith.

Consequently, by hiring Pendergrast, BCS overstaffed its appeal. Thus, all of Pendergrast's fees are unnecessary and unreasonable, and the Sass Parties should not have to pay them.

### 3. Plaintiffs' Attorneys' Time Entries are Too Vague to Be Compensable

Many of Plaintiffs' attorneys' time entries are too vague to be compensable. *See Gibson v. City of Chicago*, 873 F. Supp. 2d 975, 987 (N.D. Ill. 2012); (Ex. F; Vague Time Entries). For example, Reed Smith attorneys billed a total of $58,879.90 for "attention" to various matters.[4] In

---

[4] This calculation omits more substantive time entries with the word "attention" in them.

another example, Jonathan Quinn submitted an entry that read only, "Judge Kennelly." And in two more instances, Max Stein listed numerous consecutive time entries with the exact same descriptions. Both times, the descriptions were vague – "Worked on issues related to responding to Appellants' briefs" and "Worked on issues related to drafting brief on appeal." These charges totaled more than $47,000.00.

These and other entries marked on Exhibit F do not provide a fair description of what the attorney did to earn his fees. As such, the entries are unreasonable, and the Court should strike them.

### 4. The Fees for Preparing the Petitions for Additional Fees are Unreasonably High and Stem From Plaintiffs' Failure to Comply with the Rules

The Sass Parties should not be forced to pay for the $116,396.90 in fees that Plaintiffs generated preparing their petitions. (Ex. G; Unreasonable Fees for Preparing Petitions)

*First*, $116,396.90 is unreasonably high for the work involved. Unlike the original petitions, which encompassed seven years of litigation, and included virtually every possible form of legal work, these petitions covered one appeal and a few small issues over a period of approximately one year. Further, the petitions were largely similar, which reduced the total work each plaintiff's attorney had to do. All told, Plaintiffs' attorneys had to write two overlapping ten page briefs and print their time sheets. This work can be done for much less than $116,396.90.

*Second,* Plaintiffs have no claim to the full $116,396.90 because they avoided steps that could have made the petitions less costly. For example, Plaintiffs waited until twenty-seven days after the deadline in the Local Rules to file their petitions for additional fees. This meant that Plaintiffs expended fees for twenty-seven days after their petitions should have been finished.

Plaintiffs also ignored the meet-and-confer requirement in the Local Rules. This step would have narrowed the parties' issues and saved time and money. Accordingly, the Sass Parties should not have to pay for extra fees Plaintiffs incurred through their delay and missteps.

Plaintiffs have lengthened this fee dispute and ignored actions that could have simplified their petitions. Therefore, in accordance with the notations set forth on Exhibit H, the Court should reduce the fees for preparing the petitions.

### 5. The Sass Parties should not have to pay for Plaintiffs' Supplemental Petitions Because They Result from Plaintiffs' Mistakes

Plaintiffs include twenty-one time entries, totaling $19,853.50, that relate to their supplemental fee petitions. (Ex. H; Fees for Supplemental Petitions). These petitions arose from mistakes Plaintiffs made in their initial petitions. So the Sass Parties should not have to cover the resulting fees. Further, in its opinion on the original fee award, the Court noted that Plaintiffs' charges for the supplemental fee petitions were excessive and reduced those fees by one-third. (Judge Kennelly 12/7/12 Op. at 24). Thus, while the Sass Parties believe that they should not be charged for any of these fees, they would submit that, at minimum, the supplemental petition fees should be reduced by one third.

### CONCLUSION

Plaintiffs' attorneys have collected more than $10 million in fees from this case, the entire burden of which has fallen on the Sass Parties. Not satisfied, Plaintiffs have added petitions for additional fees. These petitions fall outside the deadline imposed by the Federal Rules and demand payment for more than $535,000 in fees and costs that are either unreasonable or the Sass Parties did not generate. Plaintiffs have no basis to request additional fees from the Sass Parties, especially at this stage of the litigation.

Consequently, the Court should deny Plaintiffs' petitions for additional attorneys' fees.

**WHEREFORE,** the Defendant Sass Parties respectfully request that this honorable Court issue judgment in its favor and enter an order denying Plaintiffs Phoenix Bond & Indemnity Company and BCS Services, Inc.'s Petitions for Additional Attorneys' Fees, and granting any other relief the Court deems necessary and proper.

Respectfully Submitted,

MD SASS INVESTOR SERVICES, INC., MD SASS MUNICIPAL FINANCE PARTNERS – IV, LLC, MD SASS MUNICIPAL FINANCE PARTNERS – V, LLC, MD SASS TAX LIEN MANAGEMENT, LLC, SASS MUNI-IV LLC AND SASS MUNI-V LLCMD SASS

By: /s/ Terence D. Brennan
One of Its Attorneys

Matthew E. McClintock
Terence D. Brennan
GOLDSTEIN & MCCLINTOCK, LLLP
208 S. LaSalle Street
Suite 1750
Chicago, IL  60604
P: 312-337-7700