IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PHOENIX BOND & INDEMNITY CO., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 05 C 4095 |
| | ) | |
| JOHN BRIDGE, et al., | ) | |
| | ) | Consolidated with |
| Defendants. | ) | No. 07 C 1367 |
| | ) | |
| ------------------------------------------------- | ) | |
| | ) | |
| BCS SERVICES, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| HEARTWOOD 88, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

After six years of hard-fought litigation, the plaintiffs in these cases prevailed on claims under the Racketeer Influenced and Corrupt Organizations Act (RICO) and state law. The claims arose from defendants' rigging of the annual sale at which the Cook County Treasurer auctions liens for past due property taxes, a mechanism for collecting back taxes.

Plaintiffs then petitioned for an award of attorney's fees and expenses under RICO. In December 2012, the Court granted plaintiffs' fee petition and supplemental

fee petition. *Phoenix Bond and Indem. Co. v. Bridge*, Nos. 05 C 4095 & 07 C 1367, 2012 WL 6697559 (N.D. Ill. Dec. 23, 2012). The Seventh Circuit affirmed the underlying judgment as well as the fee award. *BCS Servs., Inc., v. BG Investments, Inc.*, 728 F.3d 633 (7th Cir. 2013).

On December 20, 2013, each plaintiff submitted a second supplemental petition for fees and expenses. The petitions pertain to work performed to enforce the judgment against the defendants and to defend the judgment on appeal, all of it after August 31, 2012. The petitions also include a request for fees for preparation of the current petitions. The Court considers the plaintiffs' supplemental petitions in this decision.

## Background

Plaintiffs filed their first case (Case No. 05 C 4095) in 2005. In December 2005, Judge Holderman dismissed the case. In February 2007, the Seventh Circuit overturned the dismissal. *Phoenix Bond & Indem. Co. v. Bridge*, 477 F.3d 928 (7th Cir. 2007). In June 2008, the Supreme Court affirmed the Seventh Circuit's judgment. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 629 (2008). In March 2007, plaintiffs filed their second case (Case No. 07 C 1367), adding new plaintiffs and new defendants. In September 2010, Judge Holderman granted summary judgment to the defendants in both cases. In March 2011, the Seventh Circuit overturned the ruling and remanded the cases, which were then reassigned to the undersigned judge's docket. *BCS Servs., Inc. v. Heartwood 88, LLC*, 637 F.3d 750 (7th Cir. 2011).

The cases went to trial before a jury in October—November 2011. Plaintiffs settled with a number of the defendants before and during the jury trial. The cases proceeded to verdict against only two groups of defendants, the Sass defendants and

the Gray defendants, both of whom were added to the suit in March 2007.  The jury found in favor of the plaintiffs as to one or more of their RICO claims against all of the Sass defendants and most of the Gray defendants.  As at trial, the Court refers to the Gray defendants who were found liable as the BG defendants.

Plaintiffs then petitioned for attorney's fees and expenses.  Thereafter, they filed a supplemental fee petition for work performed after the entry of judgment, including preparation of the fee petition and work arising from the bankruptcy filings of certain defendants.  The Court ruled as follows:

> The overall award of reasonable attorney's fees and expenses is $13,038,956.27 ($11,967.604.19 + $1,071,352.08).  Of this amount, the Sass defendants and BG defendants are all jointly and severally liable for $8,158,262.97 ($7,180,562.51 + $837,223.06 + $140,477.40); the Sass defendants are jointly liable with each other for $2,440,346.64 ($2,393,520.84 + $46,825.80) but are not jointly liable with the BG defendants for that amount; and the BG defendants are jointly liable with each other for $2,440,346.64 but are not jointly liable with the Sass defendants for that amount.

*Phoenix Bond & Indem. Co.*, 2012 WL 6697559, at *4.

Up to and during the trial, plaintiffs' attorneys were all with the Reed Smith law firm.  At some point after the trial, lead trial counsel Jonathan Quinn and second-chair trial counsel Max Stein left Reed Smith and went to, respectively, Neal Gerber & Eisenberg and Boodell & Domanskis.  They continued to represent Phoenix Bond. Phoenix Bond requests $217,949.00 in attorney's fees and $1,511.21 in expenses for Neal Gerber, $100,812.50 in attorney's fees and $20.00 in expenses for Boodell & Domanskis, and $70,216.50 in attorney's fees and $2,407.42 in expenses for Reed Smith, for a total of $428,978 in fees and $3,938.63 in expenses.  In its separately-filed petition, BCS requests a total of $679,821.15 in attorney's fees—$418,227.65 for Reed

3

Smith and $261,593.50 for Richard J. Prendergast Ltd.[1]—and $9,443.95 in expenses.

## Discussion

A plaintiff who prevails in a lawsuit brought under the RICO "shall recover . . . the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c). To determine a reasonable attorney's fee, a court begins by multiplying the hours that were reasonably expended on the litigation by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The resulting figure is commonly referred to as the lodestar. Plaintiff bears the burden of demonstrating the reasonableness both of the time expended and the hourly rate. *Id*. at 437. Courts may adjust the lodestar based on any of the twelve factors identified in *Hensley*:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 430, n. 3. That said, "'many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate.'" *Anderson v. AB Painting and Sandblasting Inc.*, 578 F.3d 542, 544 (7th Cir. 2009) (quoting *Hensley*, 461 U.S. at 434, n.9).

In the present case, both the Sass defendants and the BG defendants have raised a number of objections to plaintiffs' fee petitions. The Court addresses each objection below.

---

[1] BCS later reduced the amount it requests for Prendergast, as explained below.

**A.     General objections**

    **1.     Timeliness of plaintiffs' fee petitions**

Plaintiffs filed their second supplemental fee petitions on December 20, 2013. Both the Sass defendants and BG defendants contend that the petitions were untimely because plaintiffs filed them more than ninety days after the Seventh Circuit affirmed this court's decision on August 23, 2013. Defendants rely on Northern District of Illinois Local Rule 54.3(b), which requires a fee motion to be "filed and served no later than 91 days after the entry of the judgment or settlement agreement on which the motion is founded."

Plaintiffs complied with Local Rule 54.3(b). They filed their petitions less than ninety days after the entry of the judgment on which their request for attorney's fees and expenses depended. The court of appeals' judgment was not entered on this Court's docket until October 16, 2013, when the court of appeals' mandate, issued on October 4, 2013, was received by the district court clerk. The Court notes that it appears that the matter was still actively pending before the court of appeals through at least September 24, 2013 (when that court denied defendants' petitions for rehearing) and even beyond that, due to the pendency of defendants' motion asking that to stay issuance of its mandate. Plaintiffs' second supplemental fee petitions were filed on December 20, 2013, well under 91 days after any of these dates. The petitions are therefore timely.

    **2.     Sass defendants' argument regarding joint and several liability**

The Sass defendants argue that the BG defendants should be solely responsible for paying plaintiffs' remaining attorney's fees and expenses, because the Sass

5

defendants paid the entire $8,158,262.97 for which the Court held the defendants jointly and severally liable in its earlier attorney's fee order. The Sass defendants say that even if the Court were to direct the BG defendants to pay the $1,063,799.15 of additional fees that plaintiffs have requested, the BG defendants will have paid approximately $3 million less "than their fair share of Plaintiffs' total fees." Sass Defs.' Resp. at 5.

The Court denies the Sass defendants' request to impose plaintiffs' remaining fees and costs on the BG defendants alone. The Sass defendants seem to misapprehend the nature of joint and several liability, under which each defendant is liable for the full amount awarded, leaving plaintiffs free to recover that amount from any one defendant. Although a jointly-and-severally-liable defendant may seek contribution from the other defendants, that does not affect who the plaintiff can collect from.

**B.     Specific objections**

    **1.     Fees relating to Sass defendants' motion for contribution**

The Sass defendants moved for contribution from the BG defendants for the $8,158,262.97 that they paid to plaintiffs pursuant to the Court's December 7, 2012 order. The Sass defendants assert that plaintiffs should not be able to recover the $7,823.50 in legal fees for work relating to that motion because it did not concern the plaintiffs.

In response, Phoenix Bond contends only that the Sass defendants' motion for contribution "*potentially* impacted judgments Plaintiffs had, by that time, spent 8 years pursuing." Phoenix Bond Reply at 10-11 (emphasis added). BCS does not address the issue at all. Neither plaintiff provides an explanation for why these amounts are

6

appropriately compensable.

The Court agrees with the defendants that plaintiffs are not entitled to any fees or costs for work relating to the contribution motion, because it does not appear from the record that this work had any real potential for impact on the plaintiffs' fee award.

### 2.    Vagueness of time entries

The Sass defendants have asked the Court to reduce plaintiffs' award on the ground that a number of the attorney time entries are unduly vague. "[W]hen a fee petition is vague or inadequately documented, a district court may either strike the problematic entries or (in recognition of the impracticalities of requiring courts to do an item-by-item accounting) reduce the proposed fee by a reasonable percentage." *Harper v. City of Chicago Heights*, 223 F.3d 593, 605 (7th Cir. 2000). *See also Hensley*, 471 U.S. at 433 ("Where the documentation is inadequate, the district court may reduce the award accordingly."). The Sass defendants have flagged approximately 150 entries, *see* Sass Ex. F, that they contend are so vague or ambiguous that "no client in an arms-length relationship" would agree to pay them, warranting disallowance of the fees associated with those entries. *Matter of Chi., Milw., St. Paul & Pacific R. Co.*, 840 F.2d 1308, 1318 n.7 (7th Cir. 1988).

Contrary to the Sass defendants' argument, Phoenix Bond, a business entity headed by reasonably sophisticated business people, *did* pay the fees associated with the challenged entries. This reflects—and the Court finds independently from that fact—that the purportedly vague entries are clear enough to reasonably identify the services the attorneys had performed. Some of the entries are quite general—for example, "reviewed record," or "revisions"—but their content is sufficiently clear from

7

the context or from other relatively contemporaneous entries. The Court overrules this challenge to the fee petitions.

### 3. Fees relating to court-ordered adjustments to previous fee petitions

Defendants argue that plaintiffs should not be able to recover fees and expenses for work they performed to make the adjustments that the Court directed in their earlier fee requests. Defendants attribute the adjustments to mistakes that the plaintiffs made in their initial fee petition and argue that the burden of those mistakes should fall upon plaintiffs.

In its December 7, 2012 order, the Court disallowed fees relating to certain tasks and made percentage reductions in other areas. The Court then directed plaintiffs to calculate the amounts attributable to these reductions and make further submissions. This led to further work and further submissions by the parties.

The Court agrees with defendants that they should not have to bear the financial burden associated with the recalculation of the fee award to account for amounts that the Court concluded were not properly compensable in the first place.

### 4. Work involving bankruptcy-related issues

The BG defendants argue that plaintiffs should not be able to recover attorney's fees for work that is identified as involving the bankruptcy filings of some of the BG defendants. Defendants argue that this work is not reasonably related to the appeal and is therefore non-compensable.

Phoenix Bond argues that work performed on BG defendants who have filed for bankruptcy is not *per se* unrecoverable. That is all well and good, but Phoenix Bond has failed to show how these entries relate to work that is properly compensable in

8

connection with the appeal or to work involving anything other than the bankruptcies themselves, which is exactly what the Court previously held to be unrecoverable. The Court disallows these amounts.

### 5. Services of Richard Prendergast

BCS retained attorney Richard Prendergast, who was not involved in the trial, to work on the appeal and subsequent proceedings. BCS initially requested $261,593 in fees for Prendergast's services. Both the Sass and BG defendants contend that his services were unnecessary, with Sass arguing that BCS should be barred from recovering anything for Prendertast at all, and BG maintaining that his fees should be, at the very least, significantly reduced.

The Court concludes that it was reasonable for BCS to retain Prendergast as additional counsel. As indicated earlier, the primary trial attorneys, Jonathan Quinn and Max Stein, both left Reed Smith after the trial, and in their new law firm associations they remained as counsel only for Phoenix Bond. BCS kept Reed Smith as its counsel, but it was left without an attorney involved in the trial who reasonably could be expected to act as BCS's lead appellate counsel. One supposes (and defendants argue) that BCS could have engaged another senior attorney at Reed Smith to take over that role, but it was not required to do so given those attorneys' lack of direct participation in the trial. Prendergast is a skilled attorney with significant federal litigation expertise, including appellate expertise. Given all of these circumstances, it was reasonable for BCS to retain him.

Defendants also challenge the amount requested for Prendergast's services. BCS's arrangement with Prendergast included a fifty percent success bonus if BCS

9

prevailed on appeal. Defendants objected to this, arguing that a multiplier is not properly awardable. BCS withdrew the request in its reply. It now seeks a little over $174,000 for Prendergast's work.[2]

Defendants argue that Prendergast joined attorneys who had already won significant damages and attorney's fees and performed less substantive work than those attorneys. They contend that Prendergast's work was limited largely to reviewing e-mails and corresponding with other attorneys and that he devoted only 50 out of 299 hours to researching and drafting the appellate brief, even though he was counsel of record.

The evidence is otherwise. The record reflects that Prendergast performed significant work. It is also worth noting that BCS retained him partly (and perhaps in significant part) in order to argue the appeal. The court of appeals, however, ended up affirming without argument. BCS cannot have been expected to anticipate this, and it should not be forced to swallow Prendergast's fees because it was so successful on appeal.

The Court finds the reduced amount requested for Prendergast reasonable and sufficiently supported and thus properly compensable. In addition, looking at the big picture, plaintiffs were defending an overall award (including damages and attorney's fees) totaling around $20 million. Seen from this perspective, a fee of $174,000 for the attorney retained to act as lead appellate counsel can hardly be viewed as excessive.

---

[2] The Sass defendants asked the Court to reduce the fee award for Prendergast on the ground that BCS did not actually pay him, at least not the amount originally requested. This objection is moot because BCS provided proof of payment with its reply.

### 6. Reed Smith services from September 2012 to January 2013

Phoenix Bond and BCS seek a total of $140,433.00 in fees and $1,752 in costs for Reed Smith's services between September 4, 2012 and January 22, 2013, the time period during which the firm represented both plaintiffs. The Sass defendants have asked the Court to reduce plaintiffs' overall fee award by a little over $78,000, because Phoenix Bond's Exhibit 4 shows a total of only a little under $62,000 in charges for that period. Specifically, Phoenix Bond's Exhibit 4 (which has the $62,000 figure) is an invoice for the work that Reed Smith performed during that period; its Exhibit 3 reflects all of the work that Reed Smith performed during that period for which plaintiffs seek to recover fees, including work that was not billed.

This case involved a situation where the plaintiffs' attorneys were billing for their fees, and the plaintiffs were paying them, as the case progressed. From what the Court can determine based on the record, the fact that the attorneys evidently did not bill their clients $78,000 in incurred attorney time for this period suggests that they exercised "billing judgment" and did not charge for that amount. They are, however, required to do the same with respect to their fee petition. *See Hensley*, 461 U.S. at 434. The Court reduces the amount claimed for this period by the amount not contemporaneously billed to the plaintiffs.

### 7. Fees for preparation of current fee petition

Defendants also argue that the overall amount plaintiffs seek for preparation of the current supplemental fee petitions, which appears to be a little over $116,000, is unreasonably high. The Court is persuaded that the amount sought by counsel for Phoenix Bond is reasonable considering the work, issues, and amounts involved, but

11

BCS has not persuasively shown that the much greater amount of attorney time that its counsel spent on the fee petitions is reasonable. The Court orders a reduction of the attorney time claimed by BCS to the amount of attorney time claimed by Phoenix Bond. *See Harper*, 223 F.3d at 605. The reduction is to be made *pro rata* across the spectrum of attorneys who performed this work for BCS.

## Conclusion

For the foregoing reasons, the Court grants in part Phoenix Bond's and BCS's motions for attorney's fees and costs in [docket nos. 1185 & 1187]. Counsel are directed to confer promptly to quantify the reductions ordered by the Court and are to make a supplemental joint submission in that regard by no later than May 9, 2014. The attorney time for plaintiffs' counsel associated with this additional work will *not* be compensable, unless the Court finds that defendants or their counsel have acted unreasonably or in a dilatory fashion in connection with the additional work required.

                                                                           MATTHEW F. KENNELLY
                                                                           United States District Judge

Date: April 29, 2014